IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA


JO ANN FONZONE AKA JUDY MC GRATH,
PLAINITFF

CIVIL ACTION LAW
12-5726-LDD

VS.

JOE OTERI, PHILLIES ORGANIZATION, OFFICER KEECHEWISCKY,
OFFICER LESINETTE ORTIZ, OFFICER BEE, OFFICER KOVACS, JOHN Evans
CITY OF PHILADELPHIA, RIVERSIDE PRISON, C.O .FISHER, PHILA WARRANT
UNIT,PHILA DEFENDER ASSOCIATES, RICHARD PATTON, ELIZABETH KOTCHIAN,
DAVID AYERS,GREG ENGLE

DEFENDANTS                    JURY TRIAL DEMANDED


AMENDED COMPLAINT

Introductory Statement

1.  This is an amended complaint brought under 42 USC Sec. 1983 for violations of the Fourth
Amendment to the U.S. Constitution. Plaintiff, a thin fifty two year old woman , attended a Phillies
playoff baseball game at Citizens Bank Park ( the premises is owned by defendant Philadelphia)
on October 6, 2010 where she was harrassed and assaulted then falsely implicated by a security
guard whereupon she was later wrongly arrested, without probable cause , and while in police
custody beaten , battered brutalized so severely that she was taken to the Emergency Room by
police after transported to the 1ˢᵗ police district. The most serious injury Plainitff suffered was
blunt force chest trauma which caused a permanent heart condition . Criminal charges against
Plaintiff were terminated in her favor August 22, 2012.Unbeknownst to Plaintiff at the time of
filing this action, ADA Kotchian appealed the Judge's decision and neglected to provide Notice to
Plaintiff. Months later , the Judge informed Plaintiff that his decision had been appealed.
Plaintiff suffered severe physical and emotional damages as a result of the incidents of October 6,
2010 and as a result of the incidents of October 6, 2010 being unjustly treated as a criminal

defendant when she was actually the victim of aggravated assaults, harrassment, stalking.
She did noting to to deserve or invite the injuries she received as the hands of the security guard and police officer defendants or the abuse of process and ineffective representation of defense lawyers who slandered her and assisted the prosecution. The Phillies ,the City of Philadelphia ,defender associates, appointed attorney patton, and 3 asst. District attorneys violated plaintiff's civil rights and 1st, 4th, 5th 6th and 14th Amendment constituional rights and their duty of care and are sued in certain supplemental state claims.

## Jurisdiction and Venue

2. Original jurisdiction to hear alleged violations of the constitutional rights of American citizens, and others, is conferred on this court by 28 USC §1331 and 28 USC §1343(a) (3) & (4), via the remedial statute 42 USC §1983.

3. This court is also authorized to hear supplemental state claims by virtue of 28 USC §1367(c).

4. A jury trial is demanded.

5. Punitive damages will be demanded at an appropriate time because the actions of these defendants were particularly egregious and irresponsible.

6. Venue is properly in this court because all witnesses, evidence, and parties are common to Philadelphia and its environs which lies within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

## Rights Violated

7. Plaintiff has a right under the Fourth Amendment to he free of excessive and unnecessary force while being taken into custody.

8. Plaintiff has a right to be free of false arrest under the Fourth Amendment.

9. Plaintiff has a right, under the Fourth Amendment, to be free of unlawful searches lacking in probable cause.

10. Plaintiff has a right under the First Amendment to be free of physical assault and retaliation for being a member of a respected profession in the United States, namely for being an attorney engaged in the practice of law.

11. Plaintiff has a right under the First Amendment to be free of retaliation for placing a phone call to 911 seeking assistance while being assaulted and not suffer retaliation therefore.

12. Plaintiff has a right under the 14th amendment not to be deprived of her property without due process of law.

## Operative Facts

13. The defendant Joe Oteri was a private security guard, who by virtue of his joint actions with Philadelphia police officers in subjecting the plaintiff to the unlawful arrest, and unlawful search and seizure and excessive and unnecessary force on October 6, 2010, was cloaked with the authority of the state and is thus liable under the law of §1983.

14. The defendants Ortiz, Kelechewiscky, and Bee, were at all relevant times, police officers employed by the City of Philadelphia(hereinafter "City" and were thus state actors on or about October 6, 2010.

15. The defendant "Phillies" is a well-known professional baseball team who regularly invites the public (one member of which was the plaintiff on October 6, 2010) to "Citizens Bank Park", owned and operated by City which also holds itself out to the public as a place to purchase entertainment opportunities in return for money.

16. The Phillies and Citizens Bank Park are located and do business in Philadelphia Pennsylvania.

17. On October 6, 2010 plaintiff traveled to Citizens Bank Park to watch the Phillies play Cincinnati in a playoff game.

3

18. Plaintiffs seat (#6) was in Section 108, Row #32.

19. During the second inning the plaintiff was standing waving her "rally towel" just as the roughly 47,000 other fans were doing when she was roughly grabbed from the right side by security guard Oteri grabbing and jerking her right arm. Oteri then left her but returned shortly thereafter with Kelechewiscky.

20. Kelechewiscky and Oteri then jostled Fonzone so fiercely that as she reacted by pulling to the left they pushed her head into the seat in front of her with great force and knocked her into the ground. While the plaintiff was being assaulted her handbag was knocked from her hands and this occurred as she attempted to retrieve it.

21. To defendants Kelechewiscky and Oteri then took the plaintiff up to the landing area above her seat section where they ordered her to stand unattended, leaving her there for approximately 10 to 15 min.

22. At this time the plaintiff began to feel pain in her head from being banged into the seat and she began to notice the effects on her body caused by the defendants mocking her into the ground.

23. Suddenly the plaintiff was grabbed with great force from behind, by the elbows, by Officers Kelechewiscky and Bee who proceeded to pull plaintiff with great force backwards with her heels dragging on the ground into a rear office type area where they had a small room.

24. Kelechewiscky and Bee were joined by Philadelphia police officer Kovac as plaintiff was thrown into a chair and her bag was taken from her.

25. Kovac began going through plaintiff's bag and Kelechewiscky began commenting when he saw plaintiff's attorney card that she was a lawyer and also had an "Internal Affairs" card from Lehigh County.

4

26. Kelechewiscky took plaintiff into a small type of holding cell and threw the plaintiff against the wall with great force causing injury to plaintiff's right side, particularly in the upper arm shoulder area.

27. Plaintiff's cell phone was in her jacket pocket and she immediately pulled it out called 911 while she was crying and complaining that she was being assaulted and that she needed help.

28. Shortly Kelechewiscky angrily entered the small holding room and, grabbing plaintiff, threw her against the wall again. At this time plaintiff went down to the ground where she was sobbing and in pain.

29. Kelechewiscky was angrily repeating "I know you have that phone", "I know you have that phone". At this time Kelechewiscky took his night stick and began forcibly hitting the plaintiff in her chest repeating again and again "give me that phone" "give me that phone". Then for reasons unknown to plaintiff Kelechewiscky repeated a couple of times "don't resist", "don't resist". This seemed strange to plaintiff because she is only 5'6" tall and weighs 114 pounds and was on her back totally traumatized in great fear. As abruptly as he came in, Kelechewiscky left.

30. Plaintiff then was taken out of the room with handcuffs being applied behind her back and was placed in a chair.

31. Later plaintiff discovered that the defendant Kovac had stolen her souvenir ticket something of great value to her and something of significant value in and of itself.

32. Two transport officers, both Philadelphia police officers, one of whom was Officer Ortiz, then took plaintiff down to the "first district"

33. At this time Ortiz photographed and fingerprinted the plaintiff even though she had extreme swelling in her right hand and her right arm was badly bruised. The plaintiff was visibly bruised and swollen and when she was observed by a Sergeant Raymon Addison he commented

5

that she needed to go to the hospital. Plaintiff had been handcuffed at this point for over two hours.

34. Plaintiff was then transported to Jefferson Methodist Hospital by officers Baldwin and Jenkins where she arrived at approximately 9:30 PM.

35. As plaintiff was providing her medical history she suffered a seizure as a result of her head being smashed into the seat. In short plaintiff "blacked out".

36. Plaintiff was given no access to her personal information and upon awakening found herself handcuffed to a hospital bed.

37. Baldwin and Jenkins were threatening and rude to plaintiff and after a minimum of care was provided by the hospital the plaintiff was taken to the police headquarters for several hours.

38. Plaintiff then had a video arraignment with a person named "O'Brien". O'Brien released plaintiff on her own recognizance obviously recognizing how beaten and bruised she was.

39. Plaintiff was then put out the street and began walking to the bus station but stopped at the police station on 11th Street and tried to report the assault and abuses she had suffered. She spoke to an officer named Alexander.

40. Officer Alexander would not take plaintiff's complaint telling her she had to report to "Internal Affairs" at 11th and Warden Street

41. Plaintiff suffered severe injuries as a result of the abuses by the aforementioned defendants and then was subjected to a malicious prosecution after which all charges against her were withdrawn.

6

42. Plaintiff is acquiring documents and collecting facts to bring additional claims which may take the form of requests to amend this complaint there which may be brought as a new complaint.

## Count I

### Plaintiff against Defendants Kelechewiscky and Oteri for False Arrest

43. Paragraphs 1 - 42 above are incorporated herein by reference.

Wherefore plaintiff demands judgment of the defendants jointly and severally for the deprivation of her federally guaranteed rights to be free of false arrest devoid of probable cause and lacking any proper law enforcement objective, together with damages for pain and suffering, embarrassment and humiliation, emotional distress, medical expenses and costs, cost of entertainment denied and all benefits and emoluments connected thereto, all together with fees and costs, punitive damages, attorneys' fees and such other relief as may be deemed appropriate.

## Count II

### Plaintiff against the Defendants Oteri, Kelechewiscky, and Bee for Excessive Force

44. Paragraphs 1-43 above are incorporated herein by reference.

Wherefore plaintiff demands judgment of the defendants jointly and severally for the deprivation of her federally guaranteed rights to be free of excessive force while being taken into custody, together with damages for pain and suffering, embarrassment and humiliation, emotional distress, medical expenses and costs, punitive damages, fees and costs attorneys' fees and such other relief as may be deemed appropriate.

7

## Count III

**Plaintiff against the Defendants Oteri, Kelechewiscky, Ortiz, and Bee for the Unlawful Seizure of Person and Property under Both the 4th and 14th Amendments.**

45. Paragraphs 1-44 above are incorporated herein by reference.

46. The defendants Oteri, Ortiz, Kelechewiscky, and Bee not only unlawfully seized and searched plaintiff's person but Kelechewiscky and Bee also unlawfully took plaintiff's handbag and unlawfully searched it.

47. The defendant Bee unlawfully took plaintiff's souvenir playoff ticket from plaintiff's purse and has never returned it. The souvenir ticket has a high value to be determined at time of trial.

Wherefore plaintiff demands judgment of the above-named defendants jointly and severally for the deprivation of her 4th Amendment rights in the cases of all defendants named in this Count and plaintiff also demands judgment of the defendant Bee for the violation of her 14th Amendment rights in property together with damages for pain and suffering, embarrassment and humiliation, emotional distress, fees, costs, punitive damages, attorneys' fees and such other relief as may be deemed appropriate.

## Count IV

**Plaintiff against the Defendant Kelechewiscky and Ortiz for the Violation of Her First Amendment Rights.**

48. Paragraphs 1-47 are incorporated herein by reference.

49. Plaintiff alleges a First Amendment right not to be victimized or abused under badge of state authority by state actors because she is an attorney and because on October 6, 2010 she

8

had and "Internal Affairs" business card in her purse reflecting her interaction with a police department in Lehigh County.

50. Plaintiff alleges that the defendant Kelechewiscky was aware of these associations of hers i.e., as a lawyer, and as someone who was acquainted with or had business with a Lehigh County police department more specifically an internal affairs division.

51. Kelechewiscky made known his contempt for and his hostility to plaintiff's associations with these groups.

52. Ortiz falsified information indicating she was witness for purposes of protecting Kelechewiscky and other police officers from the disclosure of their unlawful actions. Upon information and belief Ortiz did this to assist Kelechewiscky in his retaliation against the plaintiff for being a lawyer and for being familiar with the aforementioned internal affairs division.

53. As described above Kelechewiscky assaulted the plaintiff causing serious injury because she placed a telephone call (which she had every right to do) while being held in a police holding cell at Citizens Bank Park. Plaintiff's right to freely express speak and to protect herself was violated by Kelechewiscky.

Wherefore plaintiff demands judgment of the defendants Ortiz and Kelechewiscky jointly and severally for the deprivation of her First Amendment rights to associate and to express yourself free of retaliation from state actors lacking any proper law enforcement objective together with damages for pain and suffering, embarrassment and humiliation, emotional distress, punitive damages, attorneys' fees, fees, costs, and such other relief as may be deemed appropriate.

9

## Count V

### Plaintiff against the City of Philadelphia (Monell claim), and the Phillies

54. Paragraphs 1-53 above are incorporated herein by reference.

55. The City of Philadelphia failed to properly supervise and train the defendants Kelechewiscky, Ortiz, Bee, and Kovac and consequently shares liability for their misconduct.

56. Upon information and belief the City maintains a dispatch service (911) which unlawfully informed the Philadelphia City police officers who abused the plaintiff, on October 6 2010 that the plaintiff had a telephone and had called from the stadium to plead for help and assistance because she was being physically abused by Philadelphia City police officers.

57. Upon information and belief the dispatcher, Jane Doe, not being properly supervised or trained, warned the defendants Kelechewiscky and Bee that the plaintiff had a telephone and was calling for help and assistance because of police abuse.

58. Upon information and belief Jane Doe warned or "tipped-off" Kelechewiscky and Bee so that they could further abuse and threaten the plaintiff, which they subsequently did.

59. Defendant Phillies shares in liability with the City of Philadelphia because without proper supervision and training they invited the City of Philadelphia police officers to the stadium specifically to utilize their police power as a show of authority which resulted in coercive harm being applied to the plaintiff in the overzealous and unlawful fashion that is pled above.

10

Wherefore plaintiff demands judgment of the defendants jointly and severally for the violation of her federally guaranteed rights together with damages for pain and suffering, embarrassment and humiliation, emotional distress, punitive damages in the cases of City and Phillies (punitive damages cannot be collected from municipalities under current §1983 law), medical costs and expenses, incidental expenses and costs, fees, attorneys' fees, and such other relief as may be deemed appropriate.

## Count VI

### Plaintiff against the Defendants Phillies and Philadelphia for Premises Liability (as a Supplemental State Claim).

60. Paragraphs 1-59 are incorporated herein by reference.

61. Defendants Phillies and City of Philadelphia are in the business of providing entertainment opportunities to the public for money.

62. Plaintiff's relationship to the aforementioned defendants is that of a business invitee or public consumer.

63. On October 6, 2010 defendants Phillies and City had an express duty and responsibility to provide the plaintiff with a safe and comfortable environment so that she could enjoy the play-off baseball game she had purchased a ticket for.

64. By causing an improperly trained and supervised guard in the person of Joseph Oteri and the overly aggressive presence of Philadelphia police officers who severely injured and threatened the plaintiff the Defendants City and Park violated the standard of care owed the plaintiff and are liable for all damages direct and consequence therefore.

11

Count VII

Plaintiff against  City owned Riverside prison ,
and Correction Officer Fisher individually
for wrongful imprisonment  beyond  limits
of  CrimP Rule 150 (A)(1)(b)bench warrant ,
and City Bench Warrant Unit
For  Unauthorized Disregard of Judge's
Warrant Instructions ,
Negligent  supervision, hiring

65. Paragraphs  1-64 are incorporated herein by reference.

66. Defendants  Riverside prison, CO Fisher  and the Bench Warrant Unit  are all

participants in the  false  imprisonment of plaintiff  without color of legal authority or

justification  from September23, 2011 at approximately 2:oo a.m. until  her release  late

afternoon September 28, 2011.(Exhibit  l  )

67. Plaintiff was asleep in bed when the Philadelphia bench warrant unit stormed into

her mother's home  with a warrant  to take her to  court  for not appearing  the

previous day. Plaintiff had filed and served on September 9, 2011 the ADA by

certified mail  her continuance  application and reason for  such as having a

scheduled cardiologist appointment . Plaintiff also informed  her private attorney of

this and that she would not be in court  September 21, 2011.(Exhibit 2.  )

68. The  asst. District attorney had  prior notice that Plaintiff  had a valid medical

reason for not appearing in court Septemeber 21, 2011 and  sent the Bench

Warrant unit  in the middle of the night  anyway causing her and her mother

severe emotional distress with this outrageous SWAT like  intrusion.

69. En route  to Philadelphia  from Allentown, as the driver was exceeding the speed

limit by driving 100 mph, Plaintiff  became ill from her heart condition and  had

to go to the Emergency Room. Bench Warrant officers  unnecessarily placed

Plaintiff in shackles and handcuffs which  instigated fear in hospital staff so as to

12

hasten her medical treatment and discharge.

70. Instead of being admitted into the hospital, Plaintiff was discharged because she was a prisoner. Had she not been a prisoner, she would have been admitted and not suffered further injury by the lack of sufficient medical care for her cardiac condition and PTSD while at Riverside prison . The ADA and the City of Philadelphia were aware of plaintiff's heart condition as that was the reason stated on her Continuance application .
(Exhibit 3    )

71. The warrant stated that Plaintiff was to be taken to court, hut was instead taken to Riverside on Friday morning September 23, 2011. The Unit should have followed the Judge's instructions on the warrant and taken her to Filbert St.Court from the hospital, they did not.

72. Plaintiff spent the weekend at Riverside and trying to get her heart medication as she was not physically well because of substituted heart meds, sleep deprivation and stress from her cellmate 's (detoxing from heroin) threatening and violent behavior.

73. Plaintiff learned from her mother and sister who were told by the newly retained defense lawyer they hired that she was to go to bench warant court Monday September 26, 2011. Docket entry evidences the bench warrant court date Sept. 26, 2011. (Exhibit).

74Plaintiff was told by prison staff she was going to court and on Monday was taken to the area with other inmates for release. Suddenly, when about to exit the door and get on the bus, Plaintiff was taken out of line by CO Fisher. When she questioned him, he told her she could not leave until Wednesday, Sept. 28, 2011.

75Plaintiff was very anguished when she was not released ;she was to appear in civil court on an important Argument in her ID theft case Tuesday September 27, 2011. Plaintiff tried to obtain her release , explainig that she was to be taken to court and wrote to prison officials through grievances to no avail.(Exhibit 5  )

13

76. Riverside prison officials and Correction officers and Bench Warrant unit and asst.district attorneys involved in this case , all agents of the city of Philadelphia were aware that Plaintiff was being held unlawfully without legal justification beyond the 72 hours one can be held on a bench warrant in the state of Pennsylvania.

Wherefore plaintiff demands judgement of the defendants jointly and severally for the violations of her federally guaranteed rights together with damages for pain and suffering , embarrassment and humiliation, emotional distress, punitive damages in the cases of City and Phillies, medical costs , past , present , future, incidental expenses and costs, fees, attorneys fees, and such other relief as may be deemed appropriate.

Count VIII

Plaintiff against Sargeant John Evans, the asst. district attorneys
in this matter Ayers, Kotchian, Engel for abuse of process,
malicious prosecution, prosecutorial misconduct, intentioanl misrpresentations
to the Court , negligent investigation, Brady violations,conspiracy to deprive Plaintiff
5th & 6th Amendment constitutional rights to due process and assistance of counsel
resulting in unlawful summary conviction prohibited by double jeopardy clause
and PaRCrimP 1013 & 600

77. Paragraphs 1-76 are incorporated herein by reference . Prosecutors are not entitled to absolute immunity. Hobbs v. Cappelati, 899 F. Supp.2d 738 (N.D. Ill. 2012 )

   78. The Defender Assocs.and asst.District attorney on this matter David Ayers were aware of plaintiff's physical health problems from injuries yet chose to misrepresent facts in order to get her into mental health court since November 2010 months before she ever appeared in court. Plaintiff was unable to appear until July 18, 2011 as she was being treated for the heart conditon caused bythe police.Judge Pew ordered a courtpsych eval.

   79. After Plaintiff complied with the Court and had a psych eval with an independent psychiatrist, defendant Ayers continued to misrepresent to the Court from November 2011 to April 2012 that he did not have the reports from the psych eval though he was provided the reports from Plaintiff's counsel after the October 19, 2011 eval.

14

80. The deliberate delay and wrongful suppression of court ordered reports by defendant Ayers to keep this case from progressing and being resolved caused Plaintiff unneceesary time ,embarrassmsent , prejudice and emotional anguish. Fonzone objected to the unnecessary mental bealth eval as unconstituional and without any factual basis for their requirements and filed her objections.

81.On January 14, 2011, the Judge ordered defendant Ayers to pass discovery to Plaintiff, and this was the first of four discovery Orders violated by the prosecution

82. On Nov. 23, 2011 , the independent JFK psycb eval of October 19, 2011 was diseussed by defendant Ayers and private defense counsel Frumer , though Plaintiff was diagnosed with PTSD and deemed competent to proceed.(Exhibit 6 )

83. On January 25, 2012 , defense counsel Frumer tells the Court, " I've given the documents, (JFK psych eval report) you requested to the district attorney."

84. Astonishingly, April 25, 2012 defendant Ayers again misrepresents to the Court that he does not have the psych eval report and the Court then Orders another court psych eval.

85. On May 23, 2012, after another psych eval, Plaintiff again is deemed competent to proceed and Ayers finally admits to having the report.

86. On June 13, 2012, Plaintiff and Judge Stack had a colloquy and Fonzone was appointed to represent herself when her lawyer Earle left after he allowed Kotchian another continuance because they had no witnesses.Fonzone's witnesses were present;she wanted to proceed June 13 2013. The Judge Ordered " Must be tried next date."

15

87. On July 20, 2013, Kotchian objected to plaintiff representing herself
and misrepresented facts to the Court. So, Judge O'Neill continued
until August 22, 2012 , rather than "Must be tried next date."

89. Judge Kosinski correctly calculated the days of 237 as exceeding
the number of allowable days (180) according to Rule 1013 to
bring Fonzone to trial on disorderly conduct and granted her
motion to dismiss with prejudice on August 22, 2012.(Exhibit 7)

90.    On November 9, 2010 and several times subsequently, Plaintiff filed pre- trial Motions
for discovery requests, Right to Know Requets to police and District Attorney for all police
reports and other documents.(Exhibits 𝟇 ).Plaintiff also filed Motions to Dimsiss for lack of
probable cause to arrest and prosecute. And she filed Motions to Vacate . The prosecutors
objected to Plaintiff's Motions so she was denied hearings on them, they ignored
her discovery requests and knowingly suppressed exculpatory Brady materials.

91. The asst. District attorneys intentional suppression of exculpatory evidence ie. Police
report which showed Plaintiff was injured before arrest and taken to the hospital    was
intended for the purpose of hiding facts from the Court that she actually was the injured
victim in this action. The non-disclosure allowed the prosecution  to treat Fonzone as the
defendant rather than as the victim in the action, and thereby cover -up the violent criminal
conduct of the police and security guard that seriously injured Plainitff. Two other hidden
police reports , one signed by Lieutenant Appleton , another Sgt. Middleton,  showed that
Fonzone was the confidential informant and she had a valid IA complaint .This newly
discovered evidence would ahve changed the outcome of the case had it been presented to
the Court. Three weeks later, Evans the officer that signed to have Fonzone arrested was
promoted to IA and given  the assignment to investigate. Despite a conflict of interest,
Evans allegedly  investigated and it consisted of lying to  all the police officers  before  he

interviewed them that Fonzone filed IA complaints against them.The blatant lie would ensure he would elicit what he wanted from them to slant his investigation and obtain his desired result,contrary to the reports of the Lieutenant and originally assigned investigator.Fonzone informed the AG PCU of the plice and prosecutor misconduct July 6, 2012. Frank Fina took no action on the matter ;now is employed by the Phila District attorney and failed to appear though Fonzone subpoenaed him in this case to ask why there was no action or investigation by his Unit;despite kelechewsicky's excessive force of throwing a handcuffed arrestee against the wall twice and striking her repeatedly on the cbest with his nightstick.(Exhibits ¶    )

92. The prosecution did not investigate the incidents despite having a copy of the 911 call Plaintiff made for belp when she was being assaulted by defendant Kelewischky. Of note, officer kelechewsiky's name was omitted from official police reports and court documents and was substituted by Officer Ortiz .Ortiz was not an arresting officer or at the scene ; she was the passenger in transport vehicle from the stadium to the 1st District Ortiz was not an eyewitness though she wrote and signed the citation for disorderly. (Exhibit 10 )

93. Prosecutor Kotchian appealed Judge Kosinski's decision to dismiss but did not serve her Notice of appeal to Plaintiff at anytime . At the proceedings in Septemeber , October and November ,Fonzone did not appear because she was unaware that the case was appealed.. Kotchian was aware, however, that Fonzone was representing herself since June 2012 and that she was to be served with the NOA. Prosecution had ex parte proceedings with various Judges throughout the case from 2010 to 2014 whenever they sought an Order and wanted no objection from Fonzone.

94. Though Fonzone was not given Notice of a December 17, 2012 court date, when trying to file her Expungement Petition on November 15, she was unable to and was told they

17

had appealed.Having learned thaat the world is full of intentional misinformation and
misrepresentation , particularly in legal matters with those with some motive, Fonzone
must triple check and question everything she is told or reads in order to find the truth.

95. In her quest for the truth about the case disposition of August 22, Fonzone contacted
     Judge Kosinski's clerk. Soon she received a letter from the Judge stating that Kotchian
     had appealed his decsion and that there was a proceeding scheduled December 17.

    96. Painfully aware that she could be subjected to a warrant if she did not appear, even
         though she had not been served with a notice to appear, Fonzone appeared
         December 17. Fonzone asked the court, " Don't they have to serve me? " Judge
         Patrick replied, " They do, but you're here. " (Trans. Dec. 17, 2012, p. 5)
         Kotchian was not there and asst. District attorney Engel was.

        97. Fonzone then said , " On Aug. 22 I requested dismissal with prejudice" meaning
             the decision could not be appealed. The Judge replied, " It's still with prejudice,
             the fact is they can appeal it because I'm higher than the MC Court."
             (Trans. Dec. 17, p. 5)

        98. The asst. Dist. Att. Engle then had a dialog with the Judge as though Fonzone
             was not in the room, and he misrepresented facts about the calculated days for
             . the 1013. Fonzone objected and provided accurate facts (Trans. Dec.17, p.10, 11)
             but Judge Patrick gave Engel the appeal and scheduled the next date Dec. 31.

            99. Fonzone still did not have a copy of the appeal and then went to the DA
                 office to get a copy 3 months after the DA appealed the dismissal .

100. Though the next date was set by Judge Patrick for Dec. 31, the ADA appeared in Judge
Gehret 's court on Dec.28 without Fonzone there or having been notified .          18

Engel had the judge appoint counsel by misrepresenting the facts about Judge Neifield's order.

101. On January 4, 2013 Fonzone filed Motion to Reconsider the dismissal of her private criminal complaint against Oteri and scheduled a hearing for Janaury 17, 2013.On January 17, the Motion was dismissed without a hearing because Engel objected to it.

102. At the trial January 18, 2013, Marni Snyder and Fonzone were co-counsel. ADA Kotchian knowingly allowed her witnesses to falsely testify upon her influence and her blatant misconduct was intentionally undertaken to prejudice Fonzone and thereby deny her a fair trial. Her conduct was retaliatory because Fonzone won the case against her August 22, 2012 and the PCU .The reprehensible conduct of Kotchian 's repeated misrepresentations to every new Judge about Fonzone " pro se appearance Dec. 17 in violation of a previous order" (Trans. Jan. 18, 2013, p7-8) were blatant , egregious and appalling untruths.Kotchian was present June 13, 2013 when Judge Stack appointed Fonzone to represent herself after colloquy.

103.On Feb 11, 2013 a Notice of Appeal of the summary disorderly conduct was filed from Muni Court to Common Pleas , and prosecution had 120 days June 12, 2013 to get to trial or the case dismissed.Even with 60 day defense continuance from March  4 through May, the October 2 , 2013 trial start was 173 days after the Appeal filed Feb. 11, 2013.Ergo, prosecution was in violation of Rules 600 and 1013 (g), and Fonzone's repeated Motions to vacate and dismiss should have been granted 53 days prior to trial or August 13, 2013.

104. On Feb 12, ADA misrepresented that Fonzone did not file her private criminal complaint with the Pres. Judge when in fact she did. (Exhibit  ll   ) A hearing was then scheduled.(Trans. Feb.12,2013, p.12) Fonzone stated ," that it was a conflict of interest if he (Engel) is supposed to represent me as the victim and he's prosecuting me on the summary disorderly conduct and I respectfully request that another ADA be assigned to the private criminal appeal. " (Trans. Feb. 12, 2013, p. 11,15)                                                                       19

Judge Patrick denied every request of Fonzone.

105. On August 19, 2013 ADA Kotchian was not ready as they had no witnesses. Judge Foglietta said to Fonzone " You have a right to represent yourself." ( Trans. August 19, 2013, p. 14). Fonzone moved for dismissal of the case , the Judge said, " I guess you know the law better than I do becasue I'm not dismissing the case."(Trans. August 19, 2013,p. 17).Fonzone then requested that he recuse and he denied that request.On Dec. 18, 2013 Judge Foglietta would not allow Fonzone to represent herself and argue the Motion to Vacate though she had scheduled the hearing for that.

106. The next date for trial was October 2, 2013, and everything from this date forward should be stricken from the record as violative of Fonzone's constitutioanl rights to speedy trial, and PaRCrim P 600 and 1013. ADA Kotichian left Oct. 2 and Fonzone had to appear again Oct. 3. Then it was continued until Nov, 22. , ( But Fonzone was not told the date was changed from Nov. 22 to Nov. 21, she was threatened with a bench warrant for not appearing by her appointed counsel who did not tell her the date was changed,) and it was continued until Jan. 22, 2014. Jan. 22 the Court was closed due to snow. Fonzone was not notified of the next date and had to call the clerk daily until on March 18 , and was told trial was set for March 19.

107. On March 19, 2014 Fonzone requested a continuance because she did not have suffficient time to have her 4 previously subpoenaed witnessess preent, Fina, Gray, Addison, ER doctor, The Judge denied her request. Fonzone then tried to argue her Motion to Vacate citing the 120 day rule since filing the appeal Feb. 11, 2013. (Trans. March 19, 2014 pgs.. 25-31, 36-40) Kotchian objected so the Motion was denied .

108. Fonzone explained to the Court that she had been a victim of stalking ,injuries and false implication despite the existence of her permanemt Protection From Abuse Order (Exhibit *12* ) against her estranged spouse who has had her vicariously abused before.(Trans. March 19, 2014 pgs. 73-90)

20

109. Because of the falsified evidence, slander ,libel, and prejudice, influenced witnesses , evidence destroyed and witheld and ex parte conduct of the Judge, prosecutor and defense counsel, Fonzone was denied a fair trial and erroneously determined guilty of summary disorderly conduct for exercising her 1ˢᵗ amendment right to cheer for her team at a major league baseball playoff game. Fonzone's intent was to watch in person her first playoff game.

110. Fonzone's civil and constituional rights were violated throughout the conspiracy of arrest without probable cause and malicious prosecution . Though the District attorney was sent a copy of Fonzone's 911 audio Nov. 15, 2010 when it was subpoenaed by Kim Gray , there was no investigation about Fonzone's confidential complaint by their office or the Philadelphia police department.And Kotchian witheld other crucial exculpatroy evidence from Fonzone that she had since Dec. 10, 2011, until 2014.

111. Pursuant to 42 U.S.C. Sec. 1983 , two allegations are required in order to state a Sec. 1983 cause of action: 1) the complaint must allege that one or more persons have deprived Plaintiff of a federal right and 2) the persons that have deprived Plaintiff of those rights acted under color of state law . Gomez v. Toledo, (1980) 446 U.S. 635, 100 S Ct. 1970.

112. There was a civil conspiracy to obstruct justice with malice and intent to injure Plaintiff amounting to a perpetration of fraud upon the court . A genuine issue of concerted activity toward an unlawful objective existed. The wrongful concealment and intentional non-disclosure of exculpatroy evidence by defendants resulted in continunig deprivation of Plaintiff's rights to due process and equal protection.

113. Where defense lawyers, prosecutor and investigator and others conspired to prejudice an individual of her civil rights, she is thereby denied equal protection of laws in court, and private conduct of non-government employees is converted to state action for purposes of a Sec. 1983 action. Black v. Bayer, C.A. 3ʳᵈ (Pa. 1982), 672 F.2d 309.                21

WHEREFORE  Plaintiff demands damages of the defendants Philadelphia  Phillies  and City of

Philadelphia  jointly and severally for violating their duty of care under Pennsylvania tort law

( premises liability ( as a supplemental state claim ( 28 U.S.C. 1367 (c), for pain and suffering, past

present  and future medical costs and expenses,  embarrassment, humiliation,  negligent and intentional

infliction of emotional distress  ,  all costs and damages associated with their negligence since the

incidents of October 6, 2010, incidental expenses and coats together with punitive damages for

egregious , wilful  misconducts, fees, attorneys fees and such other relief as may be deemed

appropriate.

Jo Ann Fonzone  , Esquire aka Judy McGrath
Plaintiff

3/16/15

## VERIFICATION

I verify that the statements made in the aforementioned amended complaint are true and correct.

I that false statements herein are made subject to penalties relating to unsworn falsification

to authorities.

Exhibits referred to on the amended complaint will be provide during discovery.

Jo Ann Fonzone, Esq.
2242 Tilghman St.
Allentown, Pa 18104

3/16/15

## CERTIFICATE OF SERVICE

I , Jo Ann Fonzone, do hereby certify that on this day , March  19, 2015, I have served upon the

following  parties  the Amended Complaint  by   U. S. Mail  ,postage prepaid to the following

addresses:

Dimitrios Mavroudis, Esq.
City of Philadelphia law Department
1515 Arch St. , 14 th floor
Philadelphia, Pa 19102

Roger Rizzo & Darnell, LLP
Robert Foster, Esq.
2929 Arch St.
Philadelphia, Pa. 19104

Asst. District Attorneys
Kotchian, Engel, Ayers
3 Penn Square
Philadelphia, Pa 19107

By
Jo Ann Fonzone,Esq. aka Judy Mc Grath

JoAnn Fonzone Esq.
2242 W. Tilghman Street, Apt C1
Allentown, PA  18104