IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

JO ANN FONZONE,              : CIVIL ACTION
a/k/a JUDY McGRATH,          :
                             :
      Plaintiff,             :
                             :     **ORIGINAL**
   VS                        :
                             :
JOE OTERI, et al.,           :
                             :
      Defendants,            : NO. 12-5726-LDD

- - -

       Oral deposition of JO ANN FONZONE (pro se), pursuant to the Federal Rules of Civil Procedure, taken at the City of Philadelphia Law Department, One Parkway Building, 14th Floor, 1515 Arch Street, Philadelphia, Pennsylvania, April 21, 2016, commencing at or about 2:05 p.m., before Jacqueline A. Geary, Certified Court Reporter - Notary Public.

- - -

SUMMIT COURT REPORTING, INC.
Certified Court Reporters & Videographers
1500 Walnut Street, Suite 1610
Philadelphia, Pennsylvania  19102
424 Fleming Pike, Hammonton, New Jersey  08037
(215) 985-2400 * (800) 447-8648 * (609) 567-3315
www.summitreporting.com

1  orders really don't protect abused women.
2     Q.  So you decided to go to the baseball
3  game by yourself and you took a bus from Allentown
4  to the game, is that correct?
5     A.  Yes.
6     Q.  Did you know anybody else on the bus
7  trip?
8     A.  No.
9     Q.  About how many people were on the bus?
10    A.  I don't know.  Fifty.  It was a full
11 bus.
12    Q.  And did you recognize anybody else on
13 the bus?
14    A.  No.
15    Q.  So as you sit here today, you don't
16 know any of their names, other people on the bus
17 trip?
18    A.  Well, I know one now, the woman I sat
19 next to.
20    Q.  What's her name?
21    A.  Florence.
22    Q.  What's her last name?
23    A.  Juraits.
24    Q.  Do you know how to spell that?
25    A.  J-U-R-A-I-T-S, something like --

| | | |
|---|---|---|
| 1 | Q. | And how did you learn her name? |
| 2 | A. | We talked all the way to the stadium. |
| 3 | Q. | So you kind of befriended her? |
| 4 | A. | Yeah.  She was by herself, too. |
| 5 | Q. | Did you sit with her? |
| 6 | A. | Yeah. |
| 7 | Q. | Do you know where she lives? |
| 8 | A. | Yes. |
| 9 | Q. | Where does she live? |
| 10 | A. | Northampton. |
| 11 | Q. | Pennsylvania? |
| 12 | A. | Yes. |
| 13 | Q. | Do you know her address? |
| 14 | A. | No. |
| 15 | Q. | When is the last time you spoke with her? |
| 17 | A. | I think July of 2011. |
| 18 | Q. | And what did you talk about in July of 2011, if you recall? |
| 20 | A. | She wrote a statement for me because she did not want to be involved other than that. |
| 22 | Q. | Is the statement attached to the Complaint, do you know? |
| 24 | A. | I don't think so. |
| 25 | Q. | Do you still have a copy of the |

```
 1  statement?
 2       A.   Yeah.
 3       Q.   Do you plan, in this case, to provide
 4  any kind of disclosures of materials that you want
 5  to use for trial?
 6       A.   Provided that you do, yeah.
 7       Q.   Well, I did.  I sent you initial
 8  disclosure --
 9       A.   But that's not -- yeah, there's a lot
10  of things, including fingerprints, that I never
11  got from the police and they lied to me about
12  that, so --
13       Q.   I guess I'm just asking whether you
14  intend to produce any documents --
15       A.   Yeah, of course, I will cooperate in
16  discovery, yeah.
17       Q.   When do you plan to send --
18       A.   Like I said, I requested a stay
19  because of my health right now.  I, you know, will
20  try to get some legal help with this because I
21  don't think I can do everything myself anymore.
22  These aren't broken bones.  This is my heart
23  condition, you know.  That was one of the
24  injuries, the most serious, but there were other
25  injuries on that day as well and I'm having to
```

1  deal with those also.
2          Q.   Well, we'll get to that.  At this
3  point, I'm just asking whether there's any kind of
4  timetable for when you'll produce the information
5  that you plan to use in this case?
6          A.   You know, to tell you the truth, I
7  haven't thought about it.  You know, I've been
8  going to the -- you know, dealing with doctors.
9  And this is one of the few days, you know, I've
10 even been out of the house.  I mean, I don't have
11 a normal life anymore, not professionally, not,
12 you know, personally.
13         Q.   Have you made any progress in terms of
14 finding an attorney to handle this case?
15         A.   I don't know.  Someone is supposed to
16 get back to me soon.
17         Q.   An attorney?
18         A.   Yeah.
19         Q.   What's his name?
20         A.   I'm not going to say that right now.
21         Q.   But you have --
22         A.   Until I got a retainer agreement, why
23 would I tell you, you know.
24         Q.   So he's kind of a prospect at this
25 point?

1     A.    I hope so, yeah.
2     Q.    Because you haven't produced any
3  documents, I'd like to know what is forthcoming,
4  if you're able to describe what you plan to use in
5  this case?
6     A.    You mean, you know, document
7  production?  There could be a lot.  I mean, I
8  don't -- you know, I guess medical records.
9     Q.    Do you have medical records?
10    A.    Yeah.
11    Q.    And you have Florence Juraits'
12 statement?
13    A.    Yes.  I have a 911, you know, audio CD
14 from, you know -- that I finally got, that was
15 withheld for, you know, almost two years, which
16 should have been, you know, produced immediately.
17 I have that.  I have a police advisory commission
18 interview.  I have a lot of materials.  And at the
19 proper time, it will be considered.
20    Q.    What do you mean by the proper time?
21    A.    Well, I don't, you know, consider what
22 you sent, you know, complete discovery on your
23 part.  You know, this is the first, you know,
24 discovery we've had.  We haven't done
25 interrogatories.  We haven't done, you know,

1  anything yet.  So document production doesn't have
2  to be today.  I mean --
3         Q.   Right.  Well, discovery in this case
4  closed last month --
5         A.   No, not really, because the -- you
6  know, the issue of the stay of proceedings, as
7  required, you know, hasn't been ruled on yet,
8  so --
9         Q.   Right, but the case is not currently
10 in stay.  You understand that, right?
11        A.   Well, you know, it's got to be.  I
12 think I asked you, too, if you would consent to a
13 federal magistrate and you never answered that.
14 There was a deadline for that, but you know, I
15 don't know what the judge knows, but I don't think
16 he knows or -- you know, the seriousness of the
17 injuries that I've suffered.  I mean, I'm not just
18 saying I, you know, can't do the work because I
19 don't want to or I'm lazy.  I mean, I physically
20 cannot.
21        Q.   Right.  I think one of the hurdles
22 we're facing within this litigation right now is
23 that you have not produced any documents that
24 corroborate your allegations that you were
25 injured.  So there's nothing --

1  A.  Some were sent to the judge already
2  with certain motions, probably before you entered
3  your appearance.
4  Q.  Possibly.
5  A.  You know, I had to get a lot of
6  continuances and things like that.  He's probably
7  really, you know, exacerbated with, you know, this
8  case dragging on so long, but I can't, you know,
9  can't help it.  I'm trying.  I asked him to
10 appoint, you know, counsel and he won't, so I have
11 to do everything.  And you know -- you know, he
12 certainly could have.
13     Q.  Well, I guess we'll go back to you
14 going to the Phillies game on October 6, 2010.  I
15 think, so far, we've established that you went or
16 at least you sat next to Florence Juraits, is that
17 right?
18     A.  Yes.
19     Q.  Where did you sit?
20     A.  Section 108, Row 32, Seat 6.
21     Q.  So what part of the park is that?
22     A.  Right field.
23     Q.  And did you have anything to drink at
24 the game?
25     A.  I, out of habit, I purchased one

```
 1                    C E R T I F I C A T E
 2
 3    STATE OF NEW JERSEY      :
 4                             :    SS
 5    COUNTY OF CAMDEN         :
 6
 7
 8                I, JACQUELINE A. GEARY,
 9    Certified Court Reporter - Notary Public, within
10    and for the State of New Jersey, do hereby certify
11    that the proceedings, evidence, and objections
12    noted are contained fully and accurately in the
13    notes taken by me of the preceding deposition, and
14    that this copy is a correct transcript of the
15    same.
16
17
18             [Signature: Jacqueline A. Geary]
19             _____
20             JACQUELINE A. GEARY
21             Certified Court Reporter,
22             License No. 30XI00214200
23             Notary Public, I.D. No. 27555
24
25
```