FROM THE DESK OF

Ms. Joann Fonzone, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JoAnn Fonzone aka Jdy McGrath  )
     Plaintiff              (

        VS.                )

Joe Oteri, et al  )
     Defendants        )

CIVIL ACTION
JURY TRIAL DEMANDED

NO. 12-CV-5726 **RECEIVED**

APR 14 2017

**FILED**

APR 14 2017

KATE BARKMAN, Clerk
By_____ Dep. Clerk

Plaintiff's MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS
INJURY ACTION AND MOTION TO RECONSIDER ORDER OF APRIL 4, 2017,
AND MOTION FOR CO-COUNSEL AND STAY OF INJURY ACTION

1. Plaintiff by and through her attorney JoAnn Fonzone, Esquire hereby
moves this Court to strike defendant's dismissed motion in its entirety
and in support thereof avers:

2. Defense counsel is misrepresenting the facts to this Court in an
effort to unfairly, unjustly and maliciously have this injury action
dismissed in violation of Plaintiff's constitutional rights to due process.

3. Plaintiff has submitted to defense counsel materials such as
a 911 transcript of October 6, 2010, her eyewitness statement or
affidavit, some medical records & Plaintiff is disabled, will have neck surgery
after she is cleared by the cardiac thoracic appointment May 25, 2017.

4. Plaintiff has submitted medical reasons from her physicians
stating that she should not work and has had to request

Continuances for discovery, Defendants concealed this fact and the fact that Plaintiff was disabled by the injuries and consequential damages and serious medical conditions as a direct result of the misconducts, heinous and egregious violent crimes of the security guard Officer/officer Kelechovsky on October 6, 2010.

5. Plaintiff strongly objects to defense counsel's misrepresentations to this Court that Plaintiff has not complied with its document requests. Plaintiff has provided answers to Interrogatories on September 15, 2016 and its document requests September 15, 2016 and January 2017.

6. It is Plaintiff's Interrogatories to defendants and non-parties that remain unanswered or properly answered, Plaintiff's Request for Production of Documents are completely unanswered by defendants yet Plaintiff's Motions to Compel Answers to her Discovery are repeatedly denied by this Court.

7. Plaintiff strongly requests that this Court appoint co-counsel to help Plaintiff on this complex civil rights injury action, as it has the power to do so, in the interests of Justice. Plaintiff requests a Stay in the action as corroborated by her physicians.

WHEREFORE, Plaintiff respectfully requests that this Court carefully reconsider its Order of April 4, and grant the relief as stated herein.

Respectfully submitted,

Josef Fonzord, Esquire

PS. On March 23 2017 Plaintiff sent letters from orthopedic Dr. Goldberg to Judge Davis's chambers stating that Justin Fonzone should not be working for next 3 months. Previous medical reason ... were filed and sent to the Judge

—2—

# CERTIFICATE OF SERVICE

I, JoAnn Fonzone, Esquire aka Judy McGrath, hereby certify that I have this day caused to be served a true and correct copy of the Motion to Strike defendant's Motion to Dismiss, etc., by U.S. Mail upon the following:

Aaron Shotland, Esq.
Phila. law dept.
1515 Arch St., 14th fl.
Phila., PA 19102

April 12, 2011

By: _____
JoAnn Fonzone, Esquire aka Judy McGrath
Plaintiff

# Coordinated Health
Better. Together.

November 7, 2016

RE: FONZONE, JO ANN (0050341)

To Whom It May Concern:

Jo Ann Fonzone is a 58-year-old female who is under my care for her current cervical spine condition in our Back and Neck Center at Coordinated Health. Ms. Fonzone has a history of chronic neck pain since being a victim of an aggravated assault on October 6, 2010. Patient has neck pain that radiates to the upper back and down the right upper extremity. She has recently received trigger point injections in the office setting and is scheduled to receive a right sided cervical epidural steroid injection in the coming weeks. She is also currently in physical therapy for her cervical spine condition. MRI of the cervical spine was recently done on October 6, 2016 and shows significant multilevel disc protrusions causing advanced foraminal stenosis and nerve root impingement.

The patient is scheduled for her cervical epidural steroid injection on November 17, 2016 and will need several weeks after the epidural injection to allow it to take effect and should decrease her activity level during that time. Patient was originally referred to me by Dr. Randy Jaeger, an orthopedist, who was treating her for shoulder issues. She is also seeing Dr. John Williams, another orthopedic, for shoulder issues. She has received shoulder steroid injections as well.

Due to the patient's ongoing cervical spine condition with ongoing treatment, she will need time to attend her physical therapy sessions, to have her injection procedures done and to recuperate from her injection procedures. This will significantly decrease her ability to perform work related tasks and we are requesting that she be allowed an extension on her current work deadlines through the end of the calendar year. She may ultimately need several epidural injections in the course of her treatment.

If there are any questions, please do not hesitate to contact me at 610-861-8080. Thank you for your attention to this matter.

Sincerely,

Brian Goldberg, M.D.
BG/jm

---

| Allentown | 1503 N. Cedar Crest Blvd., Allentown, PA 18104 | Phillipsburg | 222 Red School Lane, Phillipsburg, NJ 08865 |
|---|---|---|---|
| | 1621 N. Cedar Crest Blvd., Allentown, PA 18104 | Hazleton | 1097 N. Church St., Hazleton, PA 18202 |
| | 1405 N. Cedar Crest Blvd., Allentown, PA 18104 | Brodheadsville | Rte 115 & Switzgable Rd.,Brodheadsville, PA 18322 |
| Bethlehem | 2775 Schoenersville Rd., Bethlehem, PA 18017 | E Stroudsburg | 505 Independence Rd.,East Stroudsburg, PA 18301 |
| | 2300 Highland Ave., Bethlehem, PA 18020 | | 511 VNA Rd., East Stroudsburg, PA 18301 |
| | 2030 Highland Ave., Bethlehem, PA 18020 | Lehighton | 239 N. First Street, Lehighton, PA 18235 |
| | 2310 Highland Ave., Bethlehem, PA 18020 | Pittston | 1120 Oak St., Pittston, PA 18640 |
| | 3100 Emrick Blvd., Bethlehem, PA 18020 | Wind Gap | 1411 Jacobsburg Rd., Wind Gap, PA 18091 |

Hospitals:       1503 N. Cedar Crest Blvd.       2310 Highland Ave.       511 VNA Rd.

877-247-8080    www.coordinatedhealth.com    610-861-8080

# Coordinated Health
### PHYSICAL MEDICINE & REHABILITATION

TOLL FREE 1-877-247-8080

2775 Schoenersville Rd., Bethlehem, PA 18017 | 3100 Emrick Blvd., Bethlehem, PA 18020
239 N. First St., Lehighton, PA 18235 | 1120 Oak St., Pittston, PA 18640

1621 N. Cedar Crest Blvd., Allentown, PA 18104
211 E. Jacobsburg Rd., Wind Gap, PA 18091
1976 W. Church St., Hazle Township, PA 18202
91 Schwabble Dr., Southeastern PA 18322
3100 Independence Rd., Ste. A, East Stroudsburg, PA 18301

NAME _JoAnn Tundine_          DOB _2/16/54_
                              DATE _3/20/17_
ADDRESS _____

**Rx** ▆▆▆▆ THIS DOCUMENT CONTAINS VOID PANTOGRAPH & BLUE SECURITY BACKGROUND ▆▆▆▆

Please excuse JoAnn from work due
to Medical condition under my care.
This Note covers from 2/16/17 until further
                Notice

Thank you.

DEA # _____

REFILL:   0   1   2   3
SUBSTITUTION PERMISSIBLE

IN ORDER FOR A BRAND NAME TO BE DISPENSED, THE PRESCRIBER MUST HANDWRITE "BRAND NECESSARY" OR "BRAND MEDICALLY NECESSARY" IN THE SPACE BELOW.

_____

Rev 2/15   FM0554

# ⊞ Coordinated Health

Better. Together.

March 23, 2017

RE: FONZONE, JO ANN (0050341)

To Whom It May Concern:

This correspondence is to followup to the letter I dictated for Jo Ann Fonzone on November 7, 2016. Jo Ann Fonzone is a 58-year-old female who remains under my care at our Back and Neck Center at Coordinated Health for a cervical spine condition.

The patient has a chronic history of neck pain since 2010. Her symptoms radiate to the right upper extremity. Since our last correspondence in November the patient has received further care. She underwent a cervical epidural steroid injection on 11/17/16 at right C7-T1 interlaminar approach with some relief of symptoms. The patient also has received trigger point injections. The pain returned on February 16, 2017. The patient underwent repeat cervical epidural steroid injection. However, this did not provide relief of her symptoms. She only received short term relief with trigger point injections and has constant pain in the neck radiating into the right scapula and shoulder region. This limits any prolonged activity, any repetitive bending or twisting of the neck region. Patient is an attorney and remains unable to fill her job duties due to her constant pain.

The patient is also currently in physical therapy at Coordinated Health for her cervical spine.

At her last office visit on March 22, 2017 the patient still reported a pain rating of 8/10. Given her persistent pain refractory to conservative care the patient is referred to Dr. Christopher Wagener, our spine surgeon, for surgical evaluation. She sees Dr. Wagener on April 4, 2017, and it is my opinion that there is a strong likelihood that she will require surgical intervention for relief of her symptoms.

| Allentown | 1503 N. Cedar Crest Blvd., Allentown, PA 18104 | Phillipsburg | 222 Red School Lane, Phillipsburg, NJ 08865 |
|---|---|---|---|
| | 1621 N. Cedar Crest Blvd., Allentown, PA 18104 | Hazleton | 1097 N. Church St., Hazleton, PA 18202 |
| | 1405 N. Cedar Crest Blvd., Allentown, PA 18104 | Brodheadsville | Rte 115 & Switzgable Rd.,Brodheadsville, PA 18322 |
| Bethlehem | 2775 Schoenersville Rd., Bethlehem, PA 18017 | E Stroudsburg | 505 Independence Rd.,East Stroudsburg, PA 18301 |
| | 2300 Highland Ave., Bethlehem, PA 18020 | | 511 VNA Rd., East Stroudsburg, PA 18301 |
| | 2030 Highland Ave., Bethlehem, PA 18020 | Lehighton | 239 N. First Street, Lehighton, PA 18235 |
| | 2310 Highland Ave., Bethlehem, PA 18020 | Pittston | 1120 Oak St., Pittston, PA 18640 |
| | 3100 Emrick Blvd., Bethlehem, PA 18020 | Wind Gap | 1411 Jacobsburg Rd., Wind Gap, PA 18091 |

| Hospitals: | 1503 N. Cedar Crest Blvd. | 2310 Highland Ave. | 511 VNA Rd. |
|---|---|---|---|

877-247-8080   www.coordinatedhealth.com   610-861-8080

March 23, 2017
Page Two
RE:  Fonzone, Jo Ann

The patient remains unable to perform her current job position and with or without surgical intervention I do not foresee her returning to work in the next 3 months.

If there are any further questions, do not hesitate to contact me at 610-861-8080.

Sincerely,

Brian Goldberg, M.D.
BG/jm

CITIZEN'S COMPLAINT
PHILADELPHIA POLICE
DEPARTMENT

36490

CLASSIFICATION

SIGNATURE OF PERSON RECEIVING COMPLAINT

CITIZEN MAKING COMPLAINT TO COMPLETE BALANCE OF REPORT

FONZONE     Jo ANN     2242 Tilghman St.     Allentown   PA

52     9/19/58     lawyer     484-2946?

Florence     Northampton , PA

Bee

Kelowsky

See attached.

JoAnn Fonzone

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL COURT DIVISION

Pltf: JOANN FONZONE        2242 Tilghman St.        : File No. 97-PF-61
2070 WALBERT AVE,          Allentown, PA            : PROTECTION FROM ABUSE
APT B                      1997 Redwood Ave         :
ALLENTOWN PA 18104         Whitehall, PA 18052      : Permanent ORDER

vs                                                  : U.S. District Court-Phila
Dft: CARY J WOODS    fraud alias David Loew           2/01/01
aka                           David Lee Roth

D.O.B. 06-May-1957 S.S. NO. 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
                           SS, No. 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

P R E L I M I N A R Y     O R D E R

AND NOW, this 17TH day of JANUARY, 1997, after a
Preliminary Hearing and pursuant to the Protection From Abuse Act,
23 Pa. C.S. 6101 et seq; IT IS HEREBY ORDERED THAT: or through vicious abuse by his employ.

1. Defendant shall refrain from abusing, threatening, stalking,
or harassing the Plaintiff and the minor child(ren) in any manner
or at any location whatsoever. (or having her abused stalked, threatened, harassed, bet...)

2. Custody of the following minor child(ren):
N/A
(   ) a. is temporarily awarded to Plaintiff.
(   ) b. is to remain as per existing custody order, No.
(   ) c. is awarded to Plaintiff, temporarily superseding
         existing custody order, No.      N/A  .
(   ) d. is temporarily awarded to
(   ) e. temporarily superseding existing custody order,
         No.     N/A    is temporarily awarded to

3. Other PFA orders:
N/A

_____

_____

4. Defendant is evicted/excluded from the premises at the primary
residence or from any premises where the Plaintiff shall come to reside
during the effective period of this order as well as from the following:
( EXCLUDE ) Primary residence/police dept: S WHITEHALL TWSP
         2070 WALBERT AVE APT B ALLENTOWN PA 18104
(   )    Place of employment/police department: or anywhere she travels or is living.
(   )    School/police department:
(   )    Other/police department:
(   )    Exceptions to exclusion:

_____

# LEHIGH COUNTY SHERIFF DEPARTMENT

## PROTECTION FROM ABUSE SERVICE INFORMATION FORM
*& Vicarious abuse, wrongful arrests & malicious prosections*

SHERIFF'S OFFICE: (610) 820-3175  LEHI CTY RADIO: (610) 437-5252 AFTER 4:3[  ]

## 1. DEFENDANT INFORMATION:

A. NAME      : CARY J WOODS  *(estranged sociopathic spouse)*      LC ID#: 0069762
B. ADDRESS   : 13749 *Mulholland Dr. BH, CA*                        PHONE: (000) 000-0000
         2     *8700 Hollywood Blvd, Los Angeles, CA*              MUNICPAL:
         3                                                          COUNTY: Los Angeles
   DIRECTIONS FROM LEHIGH COUNTY COURTHOUSE:
   1. *IS* ADDRESS FOR DEFENDANT WAS PROVIDED. HE ~~IS~~ RESIDING
   2. IN CALIFORNIA.
   3.                                                               *Time Warner, NYC*
C. ~~NO EMPLOY~~              *Sony Loew's films*      PHONE: (000) 000-0000
   CONTACT : *Warner Bros. Records*          WORK HRS: *Woods Entertainment*
   ADDRESS : *15 Rockefeller Center* or 111 5th Ave.                       *137*
         2                *Warner/             MTV, Viacom                  *Mul...*
         3                Spelling films NY, NY*    1515 Broadway, NYC       *BH*
   NY, NY                                                                   *902..*
D. D.O.B.: 06-May-1957 AGE : 39 *NY+LA*  HEIGHT: 5'10 HAIRCLR: BLOND
   S.S.N.: 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 RACE: White     WEIGHT:        EYES: BR
   IDENTIFYING MARKS:
   TATOOS:                                             PICTURE: Y
E. VEHICLE MAKE: PORSCHE 93              COLOR: BLACK
   LICENSE NO. :                        STATE: CA
   VEHICLE MAKE:                        COLOR:
   LICENSE NO. :                        STATE:

*I never received salary royalties benefits etc*
*$11k/week*      *things assets theft etc*
                 *Identity Theft*
                        *VCTV*

## 2. PLAINTIFF INFORMATION:

A. NAME      : JOANN FONZONE  *aka Judy McGrath Pres-CEO*   NOTES:  *as reported, IRS*
B. ADDRESS   : 2070 WALBERT AVE  *4242 Tilghm # MTV*  PHONE: (610) 437-5593  *2nd 1993 FTC*
         2     APT B                                  COUNTY: LEHIGH           *SEC*
         3     ALLENTOWN PA 18104                     MUNICPAL: SOUTH WHITEHAL *US*
C. EMPLOYER: *$ MTV - VIACOM INC*                     PHONE: (000) 000-0000  *A Atty*
   CONTACT : *1515 Broadway, NYC, NY 10036*           COUNTY:                *+ State*
   ADDRESS :                                          WORK HRS:              *Atty*
D. CONTACT :                                          PHONE: (000) 000-0000  *General*
   ADDRESS : *and see list sent to*                   COUNTY:                *in CA, NY*
                                                       NOTES:                *PA*
E. SCHOOL   : *IRS in March 1997*                     PHONE: (000) 000-0000
   ADDRESS : *alleging tax fraud of employer*         COUNTY:
                                                       SCHOOL HRS:
F. D.O.B.: ~~19-Jul-1958~~                            S.S.N.: 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   *June*
G. IS PLAINTIFF STILL LIVING WITH DFT? (NO)  *I left southern California in 1994*
                                                       *(in order*
IS THIS AN EVICTION? (Y/N): N                          *to get*
                                                       *a divor*
HEARING DATE: 23-Jan-1997 10:30 AM             ROOM: 604    *I retained*
ATTY FOR PLAINTIFF:                            PHONE: 000 000-0000  *the wrong*
   *well*              *NY, NY*                         *Rohman*
POLICE JURISDICTION OF PLAINTIFF'S RESIDENCE: S WHITEHALL TWSP PD  *divorce*
POLICE JURISDICTION OF PLAINTIFF'S CONTACT:                        *atton...*
POLICE JURISDICTION OF PLAINTIFF'S EMPLOYMENT:  *legal*
POLICE JURISDICTION OF PLAINTIFF'S SCHOOL:      *malpractice*
ADDITIONAL INFORMATION:
                          *Rohman*
                  *is a conspirator*
AOSAP 1997 60            *is a conspirate  revoked 7-7-99*

8. Because the Plaintiff fears what the Defendant may do in the *cure, Plaintiff seeks the relief prayed for hereinafter.

THEREFORE, the Plaintiff requests that this Honorable Court enter an Order providing to the Plaintiff the following relief:

a. Directing the Defendant to refrain from stalking, abusing, threatening, or harassing the Plaintiff, ~~and the minor child(ren);~~ *or ordery such or paying for such abuse or various abuse*

b. Directing the Defendant be ~~evicted and~~ excluded from the premises at: 2070 WALBERT AVE APT B ALLENTOWN PA 18104 or any other residence where the Plaintiff ~~and the minor child(ren) may come to reside;~~ *resides, place of employment or travels,*

c. Directing the Defendant to surrender the following weapon(s); *Professional licenses and authority to order abuse or arrest of me* and directing the Sheriff of Lehigh County to confiscate them;

d. ~~Custody of the following minor child(ren):~~

N/A

( )a. ~~is temporarily awarded to Plaintiff.~~
( )b. ~~is to remain as per existing custody order, No.~~
( )c. ~~is awarded to Plaintiff, temporarily superseding existing custody order, No.~~ N/A
( )d. ~~is temporarily awarded to~~
( )e. ~~temporarily superseding existing custody order, No. N/A is temporarily awarded to~~ *the rest of Plaintiff's life.*

e. Directing that the Order remain in effect for ~~a term of one year from the date of its entry;~~

f. Granting such other relief as your Honorable Court deems to be in the best interests of the parties.

_____ OR _____
Plaintiff

## AFFIDAVIT

I verify that the statements made in this Petition are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C. S. 4904, relating to unsworn falsification to authorities.

Date: 17-Jan-1997        _____ OR _____
Affiant

CK: CAOSAP 1997 60

115

IN THE COURT OF LEHIGH COUNTY PENNSYLVANIA

CIVIL DIVISION - LAW

Plaintiff:
JOANN FONZONE
2070 WALBERT AVE
APT B
ALLENTOWN PA 18104
        VS

Defendant:
CARY C WOODS

: File No. 97-PF-
: PROTECTION FROM ABUSE
:
:
:
:
:
:
:

D.O.B. 06-May-1957 S.S. NO. 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

*Judge Diefenderfer signed*

P E T I T I O N

TO THE HONORABLE JUDGE OF SAID COURT:

The Petition of Plaintiff pursuant to the Protection From Abuse Act, 23 Pa. C.S. 6101 et seq; respectfully represents that:

1. Plaintiff is an adult individual residing at 2070 WALBERT AVE APT B ALLENTOWN PA 18104

2. Defendant is an adult individual residing at *former employer,*

3. The relationship of the parties is ~~EX-BOYFRIEND~~ *agent, partner*

4. The parties are the parents of the following minor child(ren) N/A

_____

5. The premises is RENTED in the name of _JoAnn_ ~~CARY C~~ FONZONE

6. Defendant has engaged in the following threats and/or acts of abuse directed at the Plaintiff and the minor child(ren), STALKING, ASSAULT, BATTERY, ~~RAPE~~, OPPRESSION, ILLEGAL *withholding evidence, illeg* WARRANT AND PRISON SENTENCE. 4TH, 5TH, 6TH, 8TH, AMENDMENT VIOLATIONS, 13TH ALSO. *Legal Malpractice. Criminal conspiracy, Securities Fraud, to* MALICE, FRAUD, FALSE ARREST, FALSE IMPRISONMENT, COMMINGLING *Fed, Vi* OF FUNDS, MALICIOUS PROSECUTION, COPYRIGHT INFRINGMENT, *Age* FAILURE TO PROVIDE INSURANCE OR WAGES, BEATINGS, ABUSE *Wh* *of* PROCESS, CIVIL CONSPIRACY, MISREPRESENTATION, INTENTIONAL *A* INFLICTION OF EMOTIONAL DISTRESS, DISCRIMINATION, WRONGFUL *Vi* EVICTION, *Wrongful Termination, Theft of Property — Personal and Real,*

7. Defendant has used or threatened to use the following weapon(s) in the abuse of the Plaintiff ~~and/or minor child(ren)~~: ~~N/A~~ *by Police, Security Guards, Corrections Officers Inmates, etc.*

*Interstate domestic violence*
*Inter-state Stalking, Violation of Protection Or*

*May 1997*
*Aug 1997*
*Jan 1998 etc*

1. Because the Plaintiff fears what the Defendant may do in the future, Plaintiff seeks the relief prayed for hereinafter.

THEREFORE, the Plaintiff requests that this Honorable Court enter an Order providing to the Plaintiff the following relief:

a. Directing the Defendant to refrain from stalking, abusing, threatening, or harassing the Plaintiff ~~and the minor child(ren)~~;
*or ordering such or payity for such abuse*

b. Directing the Defendant be ~~evicted and~~ excluded from the premises at: 2070 WALBERT AVE APT B ALLENTOWN PA 18104 or any other residence where the Plaintiff ~~and the minor child(ren)~~ ~~may come to reside~~; *resides, place of employment or travels.*

c. Directing the Defendant to surrender the following weapon(s); *~~plus~~ professional licenses and authority to order abuse caused of me* and directing the Sheriff of Lehigh County to confiscate them;

d. ~~Custody of the following minor child(ren):~~

N/A

| ( | )a. is temporarily awarded to Plaintiff. |
| ( | )b. is to remain as per existing custody order, No. |
| ( | )c. is awarded to Plaintiff, temporarily superseding existing custody order, No.     N/A |
| ( | )d. is temporarily awarded to |
| ( | )e. temporarily superseding existing custody order, No.     N/A     is temporarily awarded to |

e. Directing that the Order remain in effect for a term of one year from the date of its entry;

f. Granting such other relief as your Honorable Court deems to be in the best interests of the parties.

_____
                                                    Plaintiff

AFFIDAVIT

I verify that the statements made in this Petition are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C. S. 4904, relating to unsworn falsification to authorities.

Date: 11 Jan-1997                    _____
                                                    Affiant

CK: CAOS P 1997 60

AFFADAVIT  OF FACTS  IN REPLY TO MEMORANDUM  TO POLICE COMMISSIONER FROM
INTERNAL AFFAIRS ,  COMPLAINT # 10-724


Dear Sir,


I recently  was  given a copy of the IA  report  of John Evans .  I  was  compelled to set the record
straight  and give you a true version  of  the  incident  because , in the report,  I  was  libeled, slandered
and  have had my character  almost  as viciously attacked as  my body was  on October 6, 2010.

Many  pieces of information were witheld  from me and I am still discovering  information  about the
incident  and procedures.  Preliminarily,  John Evans was  the supervisor who signed the complaint to
have me arrested  for disorderly conduct on October 6, 2010.  Then, three weeks later, he was
promoted to IA  and assigned  to investigate my IA complaint.  I  know  a lot about conflict of interest
and  clearly, this constituted  conflict  which prevented  IA  from doing a complete and thorough and
unbiased investigation.  Even before I was  aware  that  Mr. Evans had  signed  the complaint, ( I
learned of this when I obtained a copy  a few months ago),  I requested a female  officer  to investigate
my IA complaint or someone other than John Evans  because I  had a gut feeling that he would not  do
a  through investigation.  I  reached this  decision after I gave him names of witnesses  and told him
about the 911 audio CD  ( I called 911  twice  from the jail cell after I was  thrown against the wall by
Officer Kisliewski),  hospital records,  and he dismissed these as  unimportant and did not interview
these witnesses or obtain the 911  audio and did not want copies of the ER  records .  Captain Gramlich
would not assign someone else to investigate.

Though the  alleged investigation was  completed  in March 2011, I was  not  informed of this until June
2011 and only because I made  many phone calls to try to find out what was  going on with the
investigation. Each time , I was  told Evans was not available, then I would  ask for  his supervisor or
Captain  and was told the same thing. I was  treated with astounding disrespect.

When I was finally told  that the investigation was  complete  and that  the findings were unfounded,
Deputy commissioner Johnson  said that he would look into the matter.  Also, I was told by Deputy
commissioner  Fox that she was going to assign someone else to investigate because I  gave her a copy
of the 911 CD.


When  another investigator was not assigned, I went to the Police Advisory commission and gave my
statement to that agency . PAC has  been helpful, respectful and courteous  to me, and its members
have treated me with the respect and dignity that every crime victim deserves. I have sent them further
information as I obtain it. In return, they have  provided  information which no one else has  in nearly
2 years. There is another DC number  in this case, the  hospital transport  incident report which
indicates that I was  taken to the ER while in custody  because I was injured.  Though there are
inaccuracies on the report, like date  and for starters, it is  proof that I was  an injured crime victim on
October 6, 2010.

The other DC number is 2010-42106 was reviewed by Sgt. Addison #8659 1st District. Sgt. Addison when making rounds , saw that my hand, arm and wrist were bruised, contused and very swollen and told me that I needed to go to the hospital. He was a helpful police officer one that the department is lucky to have in its employ.

I obtained this report on July 3, 2012 because I was unaware of the report until June 25, 2012 when PAC told me that if the police transport someone to the hospital, they must file a report.

When I filed the IA complaint, I red on the back of the form, that , as a part of the checks and balance process that a copy of the complaint was forwarded to the District Attorney. Since I filed the complaint in November 2011, I have tried to find out who the complaint was sent to at the D.A. And have been accused of stalking because I called the DA office to obtain the name of the ADA who got the complaint. I still do not have that information or know if the complaint was ever sent to the DA.

Moving on to the Memorandum of P/O Lightfoot. I will provide correct and true information to refute the inaccurate statements in the report. I did not allege or accuse any police officer of theft of property, other than the taking of my Phillies playoff game ticket from my bag in the police room. I alleged physical injuries.

I signed the consent form on January 28, 2011 for John Evans to obtain the ER records, though I had a copy with me that day and a lot of other pertinent information, photographs of my injuries and other evidence, but he did not want to see anything and did not want the ER records. Several months ago, the ER records were sent to IA because the hospital sent me a letter which stated that.

Evans seemed more concerned about the condition of my cell phone then the physical injuries I suffered. The cell phone was in my left jacket pocket, not my right . I put the phone in my pocket after I tried to call a friend during the game, but as the crowd was so very loud, ( WIP Radio said that that game was the loudest ever at the stadium), I couldnt have the conversation and put the phone in my pocket and not my bag.

Contrary to the report, I did not request treatment. Sgt. Addison saw the bruises, contusions, and swelling of my right hand, wrist, and arm when he did his rounds , and told me that I needed to go to the hospital and would have officers take me there. ( there were also other non-visible injuries).

At the hospital, while in the triage area, I had a grand mal seizure from the trauma to my head when it was pushed into the stadium seat a few hours earlier. ( I dont take seizure meds anymore because they only recur when I suffer a trauma to my head) . I had x-rays of my hand, arm and shoulder, and a urine test because I had just finished taking antibiotics for a sinus infection . When I left, I was given a prescription for tylenol with codeine which I never had filled as I am allergic to codeine. I was in severe pain from the physical trauma to my body.

I did not tell John Evans that I was unemployed. I said that I was still treating for injuries and the heart condition that I have as a result of the serious physical injuries and blunt force trauma to my chest that I survived when I was hit repeatedly with P/O/ Kilsiewski's nightstick in the jail cell at the stadium, after he threw me against the wall the second time and I landed on the ground.

What state Bars I pay membership dues to is not Evans concern when his job was to investigate my IA complaint. My employment is unique; I represent myself on some cases because I know the facts better than other lawyers. I passed the California Bar and the Multi state in 1986 which qualifies me for the District of Columbia bar too. I applied for the PA bar and could waive into the NY Bar too. But as I am recovering from injuries and have suffered other injuries from retaliation, my Bar status is fine for me right now.

As a police officer, Evans should know that a PFA Order is issued by a Judge, not the sheriff. I have a permanent Order from a federal court, is valid in any state, so whatever Evan thinks he knows about my life and violent estranged spouse is negligible at best. I suggest that he try to listen and believe abuse victims as we tell the truth, deserve to be heard and treated with the respect.

To the best of my knowledge, no fans shouted at me to sit down. The crowd of more than 46,000 was so loud cheering for the team. No one told me to sit down.

Evans' version of what the woman next to me on the Trans Bridge bus and at the game was inaccurate. Florence did not say that everyone sat down except Jo Ann Fonzone. She did not say "fans shouted at her to sit." She did not say "a Phillies usher asked her nicely to sit ". She also did not say to the usher how much she paid for her ticket. And she did not say "it was obvious Jo Ann didnt want to walk."
The truth is that I was pushed up the steps by P/O Bee, kileweski, and oteri after suffering trauma to my head a few minutes earlier, when my head hit the seat as I was shoved by kileweski and oteri.

Philadelphia Police Dispatch recorded the 911 call for help that Jo Ann made from the jail cell at 6;13 p.m. October 6, 2010. It is rather peculiar that security guard Oteri claims that at "6;13 Jo Ann was outside being disruptive by standing at her seat during the game and refusing to sit in her seat' and that at that time," he was asking her to sit multiple times and then she cursed a t him".

Jo Ann finally obtained a copy of the 911 CD more than a year after she made the call, and the call was made a t 6:13 p.m. Of note, a copy of the CD was sent by dispatch to the District Attorney at the same time that it was sent to Kim Gray, Esquire who subpoenaed it after her interview with Jo Ann on October 15, 2010. .

There is no mention of any hostess or hostess' name in any other reports and I have no knowledge of any hostess telling me to sit down and certainly not multiple times. Oteri did not ask me "to come up to the top to discuss anything. He did not offer me a seat in the handicapped section. I did not speak to him other than to yell at him, " hey let go of my arm, you're hurting me ", what are you doing? " when he was pulling at my arm". Later I said, when he and the PO were dragging me from the seating area, hey, I'm getting my bag "which was also on the ground.
Oteri did not eject me from the game.

Officer Ortiz was not at the scene at the stadium and did not personally view anything there. She was a passenger in the transport vehicle from the stadium to the 1st district. She did not attempt to escort me from the stadium. I did not swing my arm at her or anyone. Both of my arms were grabbed from the back from behind me by P/O Bee and kileweski while I was standing in the concourse area watching the game for about 10-15 minutes . I was in this area after I was shoved up the steps by the officers.

When I was standing watching the game then abruptly grabbed abd dragged, I yelled 'what are you doing? I'm just watching the game." P/O kileweski replied, "we want to talk to you." So, I was pulled by the back of my arms with only the heels of my feet touching the ground into the police room and thrown on a chair. I was yelling for them to stop hurting me as many people watched the horrendous brutal incident.

Security guard Oteri was in the hall and not in the police room or adjacent jail cell. He did not see what occurred from outside in the hall. I was not offered anything to drink I asked what the charge was and was I under arrest. I was ignored..I was then handcuffed by P/o Bee. As my nose was running and I was crying profusely from the pain and trauma and because I still had a sinus infection, I asked for tissues and was ignored.

Oteri might have witnessed P/O Kovacs take my souvenir playoff ticket from my bag..Kovacs found my attorney ID card and an IA card from Lehigh County. P/O became enraged upon hearing P/O kovacs say, " OH , you're a lawyer, why do you have an Internal Affairs card?"

Since I have had no contact with my estranged spouse since I left California in 1994, I dont keep up with his latest publicist or whatever the so-called employees do for him. Ms. Shuck , the publicist who claims to know it all actually knows nothing about the hell my life has been since I signed my life away more than 30 years ago to a marriage contract with the fraud .

P/O Jenkins and Baldwin did not hear me tell triage nurse that my injuries occurred prior to being arrested because I did not say that. I said my head was injured before I was arrested, and other injuries occurred while I was in custody in the jail cell at the stadium,.I reported to the staff that I was the vicitm of an assault. I told the hospital staff that a security guard had grabbed my right arm, then later my head was pushed into the seat at the stadium. I then said I was thrown against the wall twice and hit in the chest with the Police nightstick and that my chest was hurting.

I did not speak to officers Baldwin and Jenkins and certainly did not say that I received all of these injuries prior to being arrested a the game. It is astonishing the lengths some go to to try to discredit innocent individuals. I was not unhappy because I was only given tylenol. I was given a prescription for tylenol with codeine which I am allergic to. I was in severe pain and could not take it for the pain. I did not fill the prescription after I got home the next day.I went to my family physician who saw the huge contusion on my chest and ordered an immediate chest x-ray and echocardiogram. I have been treating with cardiologists since then and am on medication for the blunt force trauma caused heart condition I now have from being beaten severely with the P/o kelewiski's nightstick.

Naturally , I also have Post Traumatic Stress Disorder from the aggravated assault, reckless endangerment, harrassment etc.( like a veteran or abused individual ), which I survived October 6, 2010 and since then.,

P/o Landis is incorrect. P/O Ortiz did not bring me into the police room.P/O Bee and keliwiski did, threw me on a chair. P/O Kovacs took my bag, went through it, commented about my ticket, took it and didnt put it back in the bag,As mentioned, he also commented about my ID and IA card. Admitted, I was probable disheleved as I had just suffered trauma to my head and ws dragged into the police room by my arms while doing nothing wrong, just standing watching the game for 10-15 minutes in the concourse area. Bee did not tell me I was under arrest or Mirandize me. I was not told of any criminal charge and did not know what I was charged with until the next morning at video arraignment I was told disorderly conduct. When I asked what I had done, I was told" someone wanted everyone to sit down."Who was this that falsely implicated me in the criminal system?i still do not have that 6th Amendment right to know the nature and cause of the arrest answer.

I was not cursing in the police room; there were no commands said to me. I asked "why they were doing this , I said, " I didnt do anything wrong."I said, " I'm just here to watch a playoff game."

I was traumatized, felt like I had a concussion and was crying in pain. After Kovacs and 2 others a the desks looked at the ID and IA cards in my bag and commented, P/O keliewski became extremely agitated and angry. Then, he took me from the chair into the adjacent smaller room, and when the door closed, he threw me against the wall. I fell to the ground. I knew something was going on and was not right, so I got my cell phone from my left jacket pocket and called 911. I told them where I was that I was being physically attacked and that I needed help. I mentioned Bee, Kovacs but was so upset and crying I couldnt pronounce kelewiski's name. Then, I heard the door open, so I put the phone back in my pocket. P/O again threw me against the wall again and I again fell to the floor. When he left, I again called 911, but didnt have a chance to speak because I heard the door open. P/o kelewiski then yelled, give me that phone , I know you have a phone. ( 911 dispatch had called the P/o out in the police room when I told them I was at the stadium in the jail cell). P/o kelewiski then began to hit me with his nightstick repeatedly on the chest before he finally left , I was yelling for him to stop hitting me.

P/O Landis did not see P/o keleweski throw me against the wall or hit me with a nightstick as he was not in the jail cell room.

P/o Person was the driver of the police vehicle which transported me to the 1st district from the stadium 3rd district. He was not in the police room at the time so how could he determine anything. Or that I was screaming or cursing. Admittedly, I was yelling and crying while being injured in the jail cell room. P/O Person did not see any of the physical attack as he was not in the jail cell room. P/O Person did not observe Phillies security confiscate my playoff ticket because he was not at he scene until he was called later to drive me to the 1st district. Furthermore, P/o kovacs took the ticket from my bag, not the Phillies security.

While I was standing in the concourse watching the game, I was grabbed from behind by the arms by P/O Bee and Kellweski. I did not swing at P/o Ortiz or see her then. ( she and P/o person were called in for overtime to drive me to the 1st precinct.) I was startled and scared when grabbed from behind, then dragged with only the heels of my feet touching the ground, across the concourse into the police room. I was yelling," hey what are you doing? I'm just watching the game ." I heard then, " We want to talk to you."

I was traumatized, not irrational or kicking or cursing. I was not Mirandized at the stadium or at anytime thereafter.

P/O Ortiz did not see P/o kelewiski hit me with the nightstick or throw me against the wall as she was not in the jail cell where it occurred.

P/o Ortiz did not observe Phillies security confiscate my playoff ticket because they did not do that. P/o Kovacs took the ticket from my bag.


P/O Kovacs slandered and libeled me as I was not hostile or deranged while in the police room or ever. I called 911 for help from the jail cell after I was thrown against the wall and in fear for my life. The 2nd time I called, I didnt get a chance to speak. Then, P/o keleeweski demanded that I give him the phone after he learned I had called 911 for help.

P/O Kovacs did not observe Phillies security confiscate my ticket because he had in fact taken it from my bag and did not place it back in the bag with my other property.


Neither P/o Bee or anyone else spoke to me about Phillies code of conduct. I have been to other games and never had a problem or suffered any injuries. No one ejected me from the game. No one gave me any verbal commands. I did not fling my arms around anyone. I was grabbed from behind and dragged across the concourse. Prior to this surprise from behind attack, I was standing enjoying the game for about 10 -15 minutes. I yelled" what are you doing, I'm here to watch the game" , when I was grabbed from behind. I did not scream obscenities . There was a capacity crowd at the playoff game and people were standing everywhere .

I was put in handcuffs, was crying and traumatized in the police room . Perhaps this is known as uncooperative and out of control to some.

P/O Bee did not see P/o threw me against the wall or hit me with the nightstick as he was not in the jail cell room at he time . P/o Bee did not observe Phillies security confiscate my playoff ticket , which is peculiar since everyone said they did.  .


P/o keleweski is incorrect when he says that the Phillies security decided to eject me. No one told me to sit down. And, P/O kisewelski did not ask me to leave. He and Oteri grabbed my arm forcefully, pushed and shoved me til my head hit the seat in front of me. I fell to the ground from their shoving. Then, I heard the guy in front of me yell to them, " let her alone, she didnt do anything wrong!" As I tried to pick myself up and get my bag, they continued to grab at me, pulling me out of the area. I said, "Im getting my bag." then, P/O Bee, Keleweski and Oteri pushed me up the steps until I was a t the concourse area . I stood in that area for 10-15 minutes watching the gme, until I was grabbed from behind, as previously mentioned.

P/O Ortiz did not handcuff me while I was outside the police room. I was handcuffed inside the police room by a male officer, Bee. P/o keleewski was not outside the police room. He was inside the police room and then in the jail cell room.

P/O keleewsiki did not see any other officers throw me against the wall or hit me with the nightstick because he was the violent perpetrator that committed those heinous, reckless and aggravated assaults and caused me serious and irreparable damages. There was not even any probable cause to arrest me.

I did not file any complaint against officer Ortiz but I have learned recently that Evans told her and the other officers that he interviewed that I had filed complaints against every officer that was interviewed by him for this investigation. This was an unfair, untrue, slanderous and prejudicial statement for him to make to each officer and ensured the incomplete, biased, unfavorable conclusion of this investigation. My question about that, is why and what motive did he have for doing such a thing?

Based on the foregoing actual and accurate facts, I submit that the conclusion on page 9 of the Memorandum was erroneous, unsubstantiated and reached by the negligent investigation of John Evans.

Commonwealth of PA

County of Lehigh

Respectfully,

07/06/12

Jo Ann Fonzone, Esquire ESQUIRE

07/06/12

Sworn and subscribed before me this ___ day of July, 20__

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Brenda L. Laughead, Notary Public
South Whitehall Twp., Lehigh County
My Commission Expires July 5, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

FONZONE, JOANN
ADM 10/07/2010        SEX F
DOB 07/19/1958  52y
MR# 03995832      ACCT# 39681727
DATE OF SERVICE //

**EMERGENCY DEPARTMENT NURSES NOTES - Page 1**
FORM NAME

56002                                New 06/06
FORM NO.                             REVISION DATE

**U** Methodist Hospital
Thomas Jefferson University Hospital        2301 South Broad Street
Jefferson Health System                      Philadelphia, PA 19148

Date: 10-6-10        Time: 0038

Source of Medication List: ☐ Patient  ☐ Family  ☐ Other
Allergies: PCN, Codiene
☐ No Medications Taken

| Initial and Date if Additional Meds Identified | Medication Name (Write Legibly) Home Meds/Prior to Admission | Dose | Route | Frequency |
|---|---|---|---|---|
| | Denies | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Past Med/Surg History**
SZ's
Blind @ Eye
Head Trauma
Back Surg
Rib Fx's
MVP
Asthma

**Name:** Joann Fonzon
**Category:** III
**SS #:**
**Date:** 10-6-10  **Time:** 0038
**Age:** 52  **Date of Birth:** 7/19/58
**Allergy Bracelet Applied:** ☒ Yes  ☐ N/A
**Vital Signs:** ☐ Accucheck
**Temp.** 96⁶  ☒ O  ☐ R  ☐ T
**Pulse** 112  **Resp.** 18  **BP** 158/9
**Pulse Ox** 98%  **Peak Flow**
**On:** ☒ Room Air  ☐ O₂ Therapy
**Pain Scale:** 0 - 1 - 2 - 3 - 4 - 5 - 6 - 7 - 8 - 9
**Pain Location:** @ Arm
**Pain Duration:** 7 hours
**Asthma:** ☒ Yes  ☐ No
**Height:** 5'6"  **Weight:** 112
**Immunizations:**
**Last Tetanus:** Uncl
**Visual Acuity:** OD_____  OS_____  ☐ N/A
**Glasses:** C☐ S☐  **Contact Lenses:** C☐ S☐

Pregnant/Breastfeeding: ☐ Yes  ☒ No   Urine Pregnancy: ☐ Pos.  ☐ Neg.   FDLMP: 3 wks ago
Chief Complaint / Onset / Physical Assessment: Pt States Assault

☐ REASSESSMENT  TIME:____
☐ SEE PAGE 2

Rx Prior to Arrival: ☐ NONE  Tylenol @ 1330

DIRECTED TO: ☐ WAITING ROOM  ☒ TREATMENT ROOM #____  ☐ FAST TRAC  ☐ OTHER____
TREATMENT IN TRIAGE: ☐ SPLINT  ☐ ICE  ☐ SLING  ☐ ELEVATION  ☐ DRESSING  ☐ COLLAR
☒ REQUESTED SPECIMEN  Urine  ☐ MEDICATED____

SIGNATURE OF TRIAGE NURSE: [signature]                    ☐ X-RAY:

| NEURO | | | CARDIAC | RESPIRATORY | GI / GU | APPETITE |
|---|---|---|---|---|---|---|
| **EYE OPENING** | | | INITIAL RHYTHM____ | **BREATH SOUNDS** | **ABDOMEN** | ☐ POOR  ☐ NORMAL |
| SPONTANEOUS | 4 | 4 | **PULSE** | R         L | BOWEL SOUNDS ☐ YES  ☐ NO | **VOMITING:** |
| VOICE | 3 | | ☐ REGULAR RATE  ☐ IRREGULAR RATE | CLEAR | DISTENTION ☐ YES  ☒ NO | |
| PAIN | 2 | | ☐ STRONG  ☐ THREADY | RALES | SOFT ☐  RIGID ☐ | **URINATION** |
| NONE | 1 | | ☐ NORMAL | RHONCHI | Last BM:____ | ☐ NORMAL  ☐ RETENTION |
| **VERBAL** | | | **EDEMA** | WHEEZING | | ☐ BURNING  ☐ INCONTINENT |
| ORIENTED | 5 | 5 | LOCATION: ∅ | ABSENT | | ☐ FOLEY |
| CONFUSED | 4 | | ☐ PITTING | DIMINISHED | | ☐ URINE DIP ☐ POS  ☐ NEG |
| INAPPROPRIATE RESPONSE | 3 | | ☐ NON-PITTING | SMOKER  ☐ YES  ☐ NO | | A = ABRASION |
| INCOMPREHENSIBLE SOUNDS | 2 | | **SKIN** | COUGH  ☐ YES  ☐ NO | | B = BURN |
| NONE | 1 | | ☒ NORMAL | PRODUCTIVE: | | C = CONTUSION |
| **MOTOR** | | | ☐ OTHER: | | | D = DEFORMITY |
| OBEYS COMMAND | 6 | | | | | E = ECCHYMOSIS |
| LOCALIZES PAIN | 5 | | | | | GSW = GUN SHOT WOUND |
| WITHDRAWS (PAIN) | 4 | 6 | | | | L = LACERATION |
| FLEXION (PAIN) | 3 | | | | | P = PAIN |
| EXTENSION (PAIN) | 2 | | **PSYCHOSOCIAL** | | | PS = PRESSURE SORE |
| NONE | 1 | | PRIMARY LANGUAGE: English | | R = RASH |
| **TOTAL** | 15 | | DO YOU LIVE ALONE? ☐ YES  ☒ NO | LANGUAGE BARRIER: ☐ YES  ☒ NO | FALLS RISK SCORE: 0  (see back of copy for range) | SW = STAB WOUND |

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./DOC. | D.C. NO. | | SECT. | CIST | YEH NO. | REPORT DATE |
|---|---|---|---|---|---|---|---|
| 10 | 08 | 62707 | | 03 | 03 | 03205 | 10-6-10 |

| CRIME OR INCIDENT CLASSIFICATION | | CODE | TIME OUT | TIME IN |
|---|---|---|---|---|

| LOCATION OF OCCURRENCE | | | 5G/C7 | □ IN □OUT | TYPE OF PREM |
|---|---|---|---|---|---|
| 1 Citizens bank way | | | | | |

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR | A | NATURE OF INJURY |
|---|---|---|---|---|
| 10-6-10 | 3 | 615 | ① | none |

| COMPLAINANT | | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|---|
| Police | | | | | |

| ADDRESS | PHONE (BUSINESS) |
|---|---|

| FOUNDED | REPORT TO FOLLOW | | UNIT | CODE | INV. CONT NO. |
|---|---|---|---|---|---|
| □Yes □No | □Yes ☑No □Close Out | | | | |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| □Yes □No | □Yes □No | □Yes □No | □Yes □No |

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)

Site Arrest
Offender was placed
under arrest # 10-03-62707
for discordely conduct after
being told multiple times
to sit down and stop being
rowdy during the game.

| WITNESS | ADDRESS | PHONE NO. |
|---|---|---|

OFFENDER INFORMATION
JoAnn Fanzone    749-58  w|f-

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP CODE | INCLUED | STOLEN VALUE |
|---|---|---|---|
| | | □Yes □No | $ |

| VEHICLE 1 – OWNER'S NAME | | VEHICLE 2 – OWNER'S NAME | |
|---|---|---|---|

| VEHICLE 1 – OPERATOR'S NAME | | VEHICLE 2 – OPERATOR'S NAME | |
|---|---|---|---|

| WANTED/STOLEN MESSAGE SENT | | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|---|
| General No. | Date | | | |

| REPORT PREPARED BY | | NO. | DIST./UNIT PAGES | TOTAL NO. | PAGE |
|---|---|---|---|---|---|
| P/O Ortiz | | 4081 | 14 | | 1 |

| REVIEWED BY | | NO. | DIST./UNIT | REFERRAL DATE | GEN NO. |
|---|---|---|---|---|---|

PURSUANT TO ACT 155 OF 1982, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM.

75-48 (Rev. 6/96)          255413

She was not at the scene
to see anything.

3543

POLICE
City Of Philadelphia
03-09-11

**INVESTIGATION REPORT**                                        **PHILADELPHIA POLICE DEPARTMENT**

| # YEAR | # DISTRICT OF OCCURANCE | | # DC NUMBER | REPORT TYPE | | | | | # DISTRICT | | # SECTOR |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 3RD | | 79466 | INITIAL (49) | | Sheet 1 of 1 | | | 3RD | | |

| PREVIOUS CLASSIFICATION | | CODE | INVESTIGATING OFFICER | | BADGE | PAYROLL | DIST / UNIT PREPARING | | CODE | REPORT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | LT. APPLETON | | 131 | 0 | Iad | | 0 | 12/8/10 |

| CLASSIFICATION | # CODE | # PLACE OF OCCURRENCE | # J.A.D. INVESTIGATIONS | Juvenile Offenders | | # SEX |
|---|---|---|---|---|---|---|
| C.A.P. | 2704 | 1 CITIZENS BANK WAY | ☐ Male ☐ Female | ☐ Adult Offenders | | |

| COMPLAINANT (USE FIRM NAME) | | | # AGE | # RACE | | # SEX |
|---|---|---|---|---|---|---|
| JO ANN FONZONE | | | 52 | WHITE | | FEMALE |

| COMPLAINANT ADDRESS | COMPLAINANT PHONE |
|---|---|
| 2242 TILGHAM ST ALLENTOWN, PA | 484-294-6481 |

| # TYPE OF PREMISES | DATE REPORTED | TIME REPORTED | REPORTED BY | | ADDRESS |
|---|---|---|---|---|---|
| | 12/8/10 | 11:06 AM | | | |

| # DATE OF OCCURRENCE | # DAY CODE | # TIME | # FOUNDED | # STATUS | | UNIT |
|---|---|---|---|---|---|---|
| 10/6/10 | 3 | 6:13 PM | ☒ Yes ☐ No | 1. ☒ Active<br>2. ☐ Inactive - not cleared | 3. ☐ Arrest - cleared<br>4. ☐ Exceptionally cleared | 0 |

| STOLEN PROPERTY | # PROPERTY VALUE | # RECOVERED VALUE | INSURED | # OCCURRENCE |
|---|---|---|---|---|
| B. Miscellaneous | $ 0 | $ 0 | ☐ Yes<br>☐ No | ☐ Inside<br>☒ Outside |

## COMPLAINT AGAINST POLICE

### DC# 10-03-079466

### IAB # 10-0724

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| 10 | 03 | 794406 | 3 | 3 | IA3A | 12-9-10 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | A/P | TIME IN | A/P |
|---|---|---|---|---|---|
| CAP | 2704 | 836 | P | | |

LOCATION OF OCCURRENCE: Wissanie Bank View   ☐ IN ☑ OUT   TYPE OF PREM.

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | A/P | NATURE OF INJURY |
|---|---|---|---|---|

| COMPLAINANT | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|
| Confidential | | | | |

ADDRESS: Confidential     PHONE (BUSINESS)

| FOUNDED ☑ Yes ☐ No | REPORT TO FOLLOW ☐ Yes ☐ No ☐ Close Out | UNIT | CODE | INV. CONT NO. |
|---|---|---|---|---|

| WITNESS ☐ Yes ☐ No | TRACEABLE PROP. ☐ Yes ☐ No | UNIQUE DESCRIPTION OF OFFENDER — ☐ Yes ☐ No | OTHER EVIDENCE ☐ Yes ☐ No |
|---|---|---|---|

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)

| WITNESS | ADDRESS | PHONE NO. |
|---|---|---|

OFFENDER INFORMATION

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED ☐ Yes ☐ No | STOLEN VALUE $ |
|---|---|---|---|

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|---|---|

| VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATORS NAME |
|---|---|

| WANTED/STOLEN MESSAGE SENT General No. 4401; Date 1290 | DIST./UNIT TERMINAL 3 | RECEIPT NO. 347 | SENT BY Middleton 8194 |
|---|---|---|---|

| REPORT PREPARED BY Middleton 8194 | NO. | DIST./UNIT | TOTAL PAGES | PAGE NO. |
|---|---|---|---|---|

| REVIEWED BY | NO. | DIST./UNIT | REFERRAL DATE | CEN NO. |
|---|---|---|---|---|

PURSUANT TO ACT 139 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

# **H Coordinated Health**

Better. Together.

---

September 13, 2016

RE: FONZONE, JO ANN (0050341)
DOB: 07/19/1958

To Whom It May Concern:

Jo Ann Fonzone has been under my care over the last 12 years for multiple physical musculoskeletal issues secondary to longstanding history of physical injuries. Secondary to motor vehicle accidents in 1985 and 1991 she has undergone 2 spine surgeries for disc herniations of the lumbar spine and cervical spine. Jo Ann also has reported a history of criminal assault secondary to domestic violence with secondary PTSD, traumatic brain injury, visual impairment. She reported a history of domestic violence injuries dating back to 1993 and criminal assaults in 2004 and 2005 and 2010. Secondary to the chest trauma in 2010 she developed palpitations and arrhythmia per report and in 2013 was diagnosed with pericardial effusion. She reports that she has been hospitalized 5 times since her injury in 2010 and is currently followed by cardiology for medication management.

Secondary to the multiple physical injuries she has been physically unable to pursue gainful employment and is disabled. She is only currently taking medication for her heart condition. Jo Ann continues to see multiple specialists and has seen many specialists for her injuries. She has reported most recently shortness of breath from the chest injury with difficulty breathing, limitations in her functional activities secondary to chest pain, pressure, and shortness of breath. Jo Ann is currently working part time and is applying for disability and unable to pursue a career in her training as an attorney.

If you have any questions, please feel free to contact me.

Sincerely,

Scott Stoll, M.D.
Fellow American Board of Physical Medicine and Rehabilitation
SS/jm

---

| Allentown | 1503 N. Cedar Crest Blvd., Allentown, PA 18104 | Phillipsburg | 222 Red School Lane, Phillipsburg, NJ 08865 |
| | 1621 N. Cedar Crest Blvd., Allentown, PA 18104 | Hazleton | 1097 N. Church St., Hazleton, PA 18202 |
| | 1405 N. Cedar Crest Blvd., Allentown, PA 18104 | Brodheadsville | Rte 115 & Switzgable Rd.,Brodheadsville, PA 18322 |
| Bethlehem | 2775 Schoenersville Rd., Bethlehem, PA 18017 | E Stroudsburg | 505 Independence Rd.,East Stroudsburg, PA 18301 |
| | 2300 Highland Ave., Bethlehem, PA 18020 | | 511 VNA Rd., East Stroudsburg, PA 18301 |
| | 2030 Highland Ave., Bethlehem, PA 18020 | Lehighton | 239 N. First Street, Lehighton, PA 18235 |
| | 2310 Highland Ave., Bethlehem, PA 18020 | Pittston | 1120 Oak St., Pittston, PA 18640 |
| | 3100 Emrick Blvd., Bethlehem, PA 18020 | Wind Gap | 1411 Jacobsburg Rd., Wind Gap, PA 18091 |

Hospitals:    1503 N. Cedar Crest Blvd.    2310 Highland Ave.    511 VNA Rd.

877-247-8080    www.coordinatedhealth.com    610-861-8080

# Coordinated Health
www.coordinatedhealth.com
(877) 247-8080

**PATIENT:**    Jo Ann Fonzone
2242 W Tilghman St

**MRN:** 0050341
**DOB:** 07/19/1958

Allentown, PA 18104
**ENC DATE:**  03/02/2017 10:00AM
**PROVIDER:**  Brian Goldberg M.D.

## Vitals

|  | Recorded: 02Mar2017 10:03AM |
|---|---|
| Height | 5 ft 6 in |
| Weight | 117 lb |
| BMI Calculated | 18.88 |
| BSA Calculated | 1.59 |
| Systolic | 110 |
| Diastolic | 70 |
| Heart Rate | 76 |
| Respiration | 16 |
| Pain Scale | 06 |

## Past Medical History
- History of Anxiety (300.00) (F41.9)
- History of Atrial fibrillation (427.31) (I48.91)
- History of low back pain (V13.59) (Z87.39)
- History of Post-traumatic stress (309.81) (F43.10)

## Surgical History
- History of Hemilaminectomy
- History of Laminectomy Lumbar

## Social History
- Never a smoker
- Occupation
  - lawyer
- Social alcohol use (Z78.9)

## Family History
- Family history of Acute Myocardial Infarction (V17.3) : Father
- Family history of Hypertension (V17.49) : Mother

## End of Encounter Meds
- Advil TABS; TAKE 1 TABLET EVERY 8 HOURS AS NEEDED;
  Therapy: (Recorded:10Nov2011) to Recorded
- DiazePAM 5 MG Oral Tablet; TAKE 1-2 TABLETS 1 HOUR PRIOR TO
  PROCEDURE;
  Therapy: 02Nov2016 to (Evaluate:08Feb2017); Last Rx:07Feb2017
  Ordered
- Eliquis 5 MG Oral Tablet; one tablet twice daily;
  Therapy: (Recorded:04Mar2016) to Recorded
- Lidocaine 5 % External Ointment; APPLY 4 INCH Every 8 hours PRN;
  Therapy: 25Apr2016 to (Last Rx:21Jul2016) Requested for: 21Jul2016

    4/10/17 2:49:21 PM

**PATIENT:** Jo Ann Fonzone
**ENC DATE:** 03/02/2017 10:00AM                    **MRN:** 0050341

Will try to set patient up with home cervical pneumatic traction device
PT for Cspine
Given ESI another 2-3weeks to take effect
Patient defers on Cspine surgical referral.

## Signatures
 Electronically signed by : Brian Goldberg, M.D.; Mar  2 2017 10:16AM EST (Author)

# FONZONE, Jo Ann

**July 19, 1958**
Born

**Female**
Sex

**0050341**
MRN

2242 W Tilghman St
Allentown, PA 18104
Address

English (preferred)
Language

White
Race

Not Hispanic or Latino
Ethnicity

## Summary of Care

### Chief Complaint

Neck Pain
FreeTextChiefComplaintCopy: ;

### Functional Status

**Functional status health issues are not documented**

**Cognitive status health issues are not documented**

### Problems

**Atrial fibrillation** (427.31, I48.91)

**Cervical spinal stenosis** (723.0, M48.02)

**Closed fracture of sternum** (807.2, S22.20XA)

**Costalchondritis** (733.6, M94.0)

**Herniated nucleus pulposus, C6-7** (722.0, M50.223)

**Mitral regurgitation** (424.0, I34.0)

**Neck pain** (723.1, M54.2)

**Osteoarthritis of cervical spine** (721.0, M47.812)

**Palpitations** (785.1, R00.2)

**Right cervical radiculopathy** (723.4, M54.12)

**Right shoulder pain** (719.41, M25.511)

**Shoulder pain** (719.41, M25.519)

**Tendinitis of right rotator cuff** (726.10, M75.81)

### Medications

**Advil TABS**
TAKE 1 TABLET EVERY 4 HOURS AS NEEDED

**Digoxin 125 MCG Oral Tablet**

**Eliquis 5 MG Oral Tablet**
one tablet twice daily

**Lidocaine 5 % External Ointment**       STOLL, Scott, M.D.      Started: 16 Apr 2012
APPLY 4 INCH every 4 hours PRN                                  to SKIN 4er
Quantity: 1   Refills: 1

**Methocarbamol 750 MG Oral Tablet**      JAEGER, Randy, M.D.     Started: 16 Sep 20.5
TAKE 1 TABLET AT BEDTIME AS NEEDED
Quantity: 2?   Refills: 1

**Multi Vitamin/Minerals Oral Tablet**
TAKE 1 TABLET DAILY

Medications Administered

**Medication Administration not documented**

Allergies

**Codeine Derivatives**

**Penicillins**

Past Medical History

**History of Anxiety** (300.00, F41.9)

**History of Atrial fibrillation** (427.31, I48.91)

**History of low back pain** (V13.59, Z87.39)

**History of Post-traumatic stress** (309.81, F43.10)

Procedures

**History of Hemilaminectomy**

**History of Laminectomy Lumbar**

**CT CS**                                    **4-Apr-2017**

Immunizations

**Immunizations not documented**

Family History

**Family history of Hypertension** (V17.49)

**Family history of Acute Myocardial Infarction** (V17.3)

Social History

**Occupation**

**Social alcohol use** (Z78.9)

Vitals

| | | |
|---|---|---|
| **BP Systolic** | **110** mm[Hg] | |
| **BP Diastolic** | **72** mm[Hg] | |
| **Heart Rate** | **76** /min | |
| **Respiration Rate** | **12** /min | |
| **Height** | **66** in | |
| **Weight** | **117** lb | |
| **Body Mass Index Calculated** | **18.88** kg/m2 | |
| **Body Surface Area Calculated** | **1.59** m2 | |
| **Physical Findings** | **8** | |

Results

**Results not documented**

Treatment Plans

**CT CS**                          **12-Apr-2017**

**Planned Goals not documented** Goal

**Planned Encounters**

**Appointment; 1503 N Cedar Crest Blvd, CT** On **12-Apr-2017**

**Appointment; Wagener, Christopher, M.D.** On **19-May-2017**

---

Interventions Provided

DiazePAM 5 MG Oral Tablet - Stop

Propafenone HCl ER 425 MG Oral Capsule Extended Release 12 Hour - Stop

Call Office; Done: 04 Apr 2017

Follow-up visit - Diagnostics Review; Done: 05 Apr 2017

Surgery Scheduled:

Discussed conservative and surgical management for above diagnosis(es). Risk and benefits discussed with the patient.

ACDF C5-7 with RIGHT ICBMA

Patient has failed all conservative treatments, which included: epidural injections, physical therapy and pain medication.

The diagnosis, treatment options and associated risks were discussed with the patient to include no treatment, non surgical treatment, and the potential for surgical intervention. The patient was given the opportunity to ask questions regarding each

The diagnosis, treatment options and associated risks were discussed with the patient to include no treatment, non surgical treatment, and the potential for surgical intervention. The patient was given the opportunity to ask questions regarding each.

It was articulated to the patient that generally those patients with protracted/prolonged symptoms that are greater than four months have less successful outcomes that those who have their surgical problems addressed sooner. The natural history of cervical herniated disc/foraminal stenosis was discussed in detail. The reasons for pursuing operative intervention as they related to the patient's symptoms was specifically discussed. Surgery for this problem most reliably relieves upper extremity pain and is less successful for axial neck pain or recovery of motor or sensory deficits it may prevent progression. Surgery should be considered for patients who have failed non-operative management, have incapacitating pain, or a worsening neurological exam. Surgery is not urgent or mandatory. In my opinion, the patient would be an appropriate surgical candidate. The patient has been informed of the various risks and benefits of an anterior cervical fusion including but not limited to, the risks of anesthesia, infection, bleeding, blindness, neurologic damage up to and including complete paralysis, spinal fluid leak, nerve root damage, hoarseness/injury to the recurrent laryngeal nerve, injury to the trachea and esophagus and the possible need for repeat surgery. This also includes headache, stroke, failure of fusion, pain, discomfort, or abnormal sensation due to hardware metal sensitivity or to the bone graft harvest site, failure to relieve pain or recurrence of pain as well as the risk of degenerative changes or instability that may occur above or below the fusion. The elective nature of the surgery was stressed and the alternative of continued observation was discussed. I explained to the patient that surgery would not make their spine normal again. The goal of surgery is to decrease their symptoms and improve function. Surgery mechanically changes the spine and in the long term, other areas of the spine can be indirectly affected. We discussed the usual pre and postoperative protocol and all questions regarding this have been answered to the patient's satisfaction so that a clear understanding has been obtained by all parties involved.

Patient must be off Eliquis 7 days pre op

CT scan to be ordered for preoperative planning of cervical spine osseous structures; patient has failed PT, 2 ESI and continues with pain and disability and progression of symptoms.

Patient to be seen back with CT scan.

---

Instructions

Call Office

---

Encounters

**No Encounter data documented** On **10-Apr-2017**
Encounter Diagnoses Problem not documented

---

Health Care Providers

**Ambulatory Health Care Facilities (Referring Provider)**
Scott Stoll, M.D.                                   Unknown                          sstoll@coordinatedhealth.com
                                                    Phone                            Email

**Ambulatory Health Care Facilities**
Randy Jaeger, M.D.                                  Unknown                          rjaeger@coordinatedhealth.com
                                                    Phone                            Email

**Ambulatory Health Care Facilities (Primary Care Provider)**
Wendy Rush-Spinosa MD                               3080 Hamilton Blvd Ste 250
                                                    Allentown, PA 181033394
                                                    Address

**Pharmacy**
WEGMANS PHARMACY ALLENTOWN                          ALLENTOWN PA 18104
                                                    City, State

---

Document Details

**1621 N Cedar Crest Blvd (POD A)**
1621 N Cedar Crest Blvd          1610 80 8000      12,419,131,12 Transform 4,17,1
Allentown PA 18106               Fax 1 234         April 6 2017 5 43 03 50
Phone                                              Delivered

# FONZONE, Jo Ann

**July 19, 1958**
Born

**Female**
Sex

**0050341**
MRN

2242 W Tilghman St
Allentown, PA 18104
Address

English (preferred)
Language

White
Race

Not Hispanic or Latino
Ethnicity

## Summary of Care

### Chief Complaint

Neck Pain

FreeTextChiefComplaintCopy: ;

### Functional Status

**Functional status health issues are not documented**

**Cognitive status health issues are not documented**

### Problems

**Atrial fibrillation** (427.31, I48.91)

**Cervical spinal stenosis** (723.0, M48.02)

**Closed fracture of sternum** (807.2, S22.20XA)

**Costalchondritis** (733.6, M94.0)

**Herniated nucleus pulposus, C6-7** (722.0, M50.223)

**Mitral regurgitation** (424.0, I34.0)

**Neck pain** (723.1, M54.2)

**Osteoarthritis of cervical spine** (721.0, M47.812)

**Palpitations** (785.1, R00.2)

**Right cervical radiculopathy** (723.4, M54.12)

**Right shoulder pain** (719.41, M25.511)

**Shoulder pain** (719.41, M25.519)

**Tendinitis of right rotator cuff** (726.10, M75.81)

### Medications

**Advil TABS**
TAKE 1 TABLET EVERY 4 HOURS AS NEEDED

**Digoxin 125 MCG Oral Tablet**

**Eliquis 5 MG Oral Tablet**

**Lidocaine 5 % External Ointment**

STONE, Scott M.D.

Stopped: 15 Apr 2015
30 CM 3er

**Methocarbamol 750 MG Oral Tablet**
TAKE 1 TABLET AT BEDTIME AS NEEDED

JAEGER, Randy M.D.

Stopped: 15 Sep 2015

**Multi Vitamin/Minerals Oral Tablet**
TAKE 1 TABLET DAILY

Medications Administered

**Medication Administration not documented**

Allergies

**Codeine Derivatives**

**Penicillins**

Past Medical History

**History of Anxiety** (300.00, F41.9)

**History of Atrial fibrillation** (427.31, I48.91)

**History of low back pain** (V13.59, Z87.39)

**History of Post-traumatic stress** (309.81, F43.10)

Procedures

**History of Hemilaminectomy**

**History of Laminectomy Lumbar**

**CT CS**                                       **4-Apr-2017**

Immunizations

**Immunizations not documented**

Family History

**Family history of Hypertension** (V17.49)

**Family history of Acute Myocardial Infarction** (V17.3)

Social History

**Occupation**

**Social alcohol use** (Z78.9)

Vitals

| | | |
|---|---|---|
| **BP Systolic** | **110** mm[Hg] | |
| **BP Diastolic** | **72** mm[Hg] | |
| **Heart Rate** | **76** /min | |
| **Respiration Rate** | **12** /min | |
| **Height** | **66** in | |
| **Weight** | **117** lb | |
| **Body Mass Index Calculated** | **18.88** kg/m2 | |
| **Body Surface Area Calculated** | **1.59** m2 | |
| **Physical Findings** | **8** | |

Results

**Results not documented**

Treatment Plans

**CT CS**                              **12-Apr-2017**

**Planned Goals not documented**      Goal

**Planned Encounters**

**Appointment; 1503 N Cedar Crest Blvd, CT** On **12-Apr-2017**
11:00

**Appointment; Wagener, Christopher, M.D.** **19-May-2017**
11:30

---

Interventions Provided

DiazePAM 5 MG Oral Tablet - Stop

Propafenone HCl ER 425 MG Oral Capsule Extended Release 12 Hour - Stop

Call Office; Done: 04 Apr 2017

Follow-up visit - Diagnostics Review; Done: 05 Apr 2017

Surgery Scheduled:

Discussed conservative and surgical management for above diagnosis(es). Risk and benefits discussed with the patient.

ACDF C5-7 with RIGHT ICBMA

Patient has failed all conservative treatments, which included: epidural injections, physical therapy and pain medication.

The diagnosis, treatment options and associated risks were discussed with the patient to include no treatment, non surgical treatment, and the potential for surgical intervention. The patient was given the opportunity to ask questions regarding each

The diagnosis, treatment options and associated risks were discussed with the patient to include no treatment, non surgical treatment, and the potential for surgical intervention. The patient was given the opportunity to ask questions regarding each.

It was articulated to the patient that generally those patients with protracted/prolonged symptoms that are greater than four months have less successful outcomes that those who have their surgical problems addressed sooner. The natural history of cervical herniated disc/foraminal stenosis was discussed in detail. The reasons for pursuing operative intervention as they related to the patient's symptoms was specifically discussed. Surgery for this problem most reliably relieves upper extremity pain and is less successful for axial neck pain or recovery of motor or sensory deficits it may prevent progression. Surgery should be considered for patients who have failed non-operative management, have incapacitating pain, or a worsening neurological exam. Surgery is not urgent or mandatory. In my opinion, the patient would be an appropriate surgical candidate. The patient has been informed of the various risks and benefits of an anterior cervical fusion including but not limited to, the risks of anesthesia, infection, bleeding, blindness, neurologic damage up to and including complete paralysis, spinal fluid leak, nerve root damage, hoarseness/injury to the recurrent laryngeal nerve, injury to the trachea and esophagus and the possible need for repeat surgery. This also includes headache, stroke, failure of fusion, pain, discomfort, or abnormal sensation due to hardware metal sensitivity or to the bone graft harvest site, failure to relieve pain or recurrence of pain well as the risk of degenerative changes or instability that may occur above or below the fusion. The elective nature of the surgery was stressed and the alternative of continued observation was discussed. I explained to the patient that surgery would not make their spine normal again. The goal of surgery is to decrease their symptoms and improve function. Surgery mechanically changes the spine and in the long term, other areas of the spine can be indirectly affected. We discussed the usual pre and postoperative protocol and all questions regarding this have been answered to the patient's satisfaction so that a clear understanding has been obtained by all parties involved.

Patient must be off Eliquis 7 days pre op

CT scan to be ordered for preoperative planning of cervical spine osseous structures; patient has failed PT, 2 ESI and continues with pain and disability and progression of symptoms.

Patient to be seen back with CT scan.

---

Instructions

Call Office

---

Encounters

**No Encounter data documented**    **10-Apr-2017**
Problem not documented

---

Health Care Providers

**Ambulatory Health Care Facilities (Referring Provider)**
Scott Stoll, M.D.

**Ambulatory Health Care Facilities**
Randy Jaeger, M.D.

**Ambulatory Health Care Facilities (Primary Care Provider)**
Wendy Rush-Spinosa MD

**Pharmacy**
WEGMANS PHARMACY ALLENTOWN

---

Document Details

**1621 N Cedar Crest Blvd (POD A)**

---

Powered by Allscripts™