IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANN FONZONE (a/k/a Judy McGrath), | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOE OTERI et al., | : | NO. 12-cv-5726 |
| Defendants. | : | |

ORDER

AND NOW, this 28th day of August 2017, it is hereby ORDERED as follows:

1.  Upon consideration of the Motion to Dismiss of Defendants City of Philadelphia and Officers James Kisielewski, Lesinette Ortiz, Mark Kovas, and Christopher Bee (Doc. No. 105) and Plaintiff's Response thereto (Doc. No. 107), it is hereby ORDERED that Defendants' Motion (Doc. No. 105) is DENIED in part and GRANTED in part.

2.  Upon consideration of Plaintiff's Motion to Strike Defendants' Motion to Dismiss (Doc. No. 107), Plaintiff's Motion (Doc. No. 107) is DENIED.

3.  Upon consideration of Plaintiff's Motion to Reconsider Order of April 4, 2017 (Doc. No. 107), Plaintiff's Motion (Doc. No. 107) is DENIED.

4.  Upon consideration of Plaintiff's Motion for Co-Counsel (Doc. No. 107), Plaintiff's Motion (Doc. No. 107) is DENIED.

Joann Fonzone, proceeding pro se, brings this action against the City of Philadelphia and four Philadelphia Police Officers, alleging claims based on the U.S. Constitution pursuant to 28 U.S.C. § 1983. The claims arise from events at a Phillies playoff game, which Fonzone attended, at Citizens Bank Park on October 6, 2010. Defendants move to dismiss for failure to prosecute and for summary judgment. Plaintiff moves to strike the motion to dismiss, and also moves for reconsideration of this Court's prior order and for appointment of counsel. Because Plaintiff has failed to establish a prima facie case of her claim under Monell v. Dep't of Soc. Servs. Of City of

1

<u>New York</u>, 436 U.S. 658 (1978), Defendants' motion for summary judgment is granted with respect to the <u>Monell</u> claim. For the reasons discussed herein, Defendants' motion for summary judgment of the other claims is denied, and Defendants' motion to dismiss for lack of prosecution in denied. In addition, Plaintiff's motions are denied.

I.      Background

Fonzone alleges that she was in Section 108 of Citizens Bank Park during the second inning of the baseball game "when she was roughly grabbed from the right side by security guard Joe Oteri grabbing and jerking her right arm." Third Am. Compl. ¶¶ 18– 19 (Doc. No. 46). Oteri then left, and shortly after returned with Philadelphia Police Officer Kelechewiscky.[1] <u>Id.</u> ¶ 19. Plaintiff alleges that "Kelechewiscky and Oteri then jostled [her] so fiercely that as she reacted by pulling to the left they pushed her head into the seat in front of her with great force and knocked her into the ground." <u>Id.</u> ¶ 20. Kelechewiscky and Oteri moved Plaintiff from her seat "to the landing area above her seat section," and "ordered her to stand . . . there." <u>Id.</u> ¶ 21. Approximately ten to 15 minutes later, Kelechewiscky returned with Officer Bee, and the officers grabbed Plaintiff by the elbows and "proceeded to pull [P]laintiff with great force backwards with her heels dragging on the ground" into a small room. <u>Id.</u> ¶ 23. Officer Kovac arrived and "began going through [P]laintiff's bag." <u>Id.</u> ¶¶ 24–25. Fonzone alleges later she discovered that "Kovac had stolen her souvenir ticket." <u>Id.</u> ¶ 31.

While Fonzone and the officers were in the office, Kelechewiscky "threw Plaintiff against the wall" of a small holding cell "with great force[,] causing injury to [P]laintiff's right side." <u>Id.</u> ¶ 26. Plaintiff called 911 on her cell phone while in the holding cell. <u>Id.</u> ¶ 27. Shortly after, Kelechewiscky "threw her against the wall again" and "took his night stick and began

---

[1] Defendants' Motion to Dismiss identifies Defendant as James Kisielewski.

forcibly hitting the plaintiff in her chest," demanding that Fonzone hand over her cell phone. Id. ¶¶ 28–29.

Subsequently, Officer Lesinette Ortiz and another transport officer took Plaintiff to the first district police station. Id. ¶ 32. Ortiz photographed and fingerprinted Plaintiff. Id. ¶ 33. Sergeant Raymon Addison directed that Plaintiff be taken to a hospital for medical attention, id. ¶ 33, and Officers Baldwin and Jenkins transported Plaintiff to Jefferson Methodist Hospital. Id. ¶ 34. Plaintiff alleges that the transporting officers were "threatening and rude" to her. Id. ¶ 37. After receiving care and following a video arraignment, Plaintiff was released on her own recognizance. Id. ¶¶ 37–38. She attempted to report the events underlying her complaint "at the police station on 11th Street," but an officer named Alexander informed her that she would need to file a report with Internal Affairs "at 11th and Warden Street." Id. ¶¶ 39–40.

Plaintiff filed her complaint on October 9, 2012. See Compl. (Doc. No. 1). The initial complaint alleged claims of false arrest, excessive force, unlawful seizure, a violation of First Amendment rights, Monell liability, and premise liability. Id. The Phillies and Oteri moved to dismiss, and Fonzone filed an amended complaint (Doc. Nos. 17, 29, 30). Defendants again moved to dismiss. This Court granted their motion to dismiss. Order dated June 3, 2015 (Doc. No. 42). The City of Philadelphia and Officer Ortiz also moved to dismiss, and this Court granted in part and denied in part their motion. Id. This Court granted leave to amend, and Plaintiff submitted an amended complaint, which is the operative complaint, and is properly called the Third Amended Complaint. See Order dated July 22, 2015 (Doc. Nos. 46, 51).

Fonzone alleges seven claims in the Third Amended Complaint and names additional defendants. Count I claims that Kelechewiscky and Oteri falsely arrested Plaintiff. Count II alleges excessive force by Oteri, Kelechewiscky, and Bee. Count III alleges Oteri,

Kelechewiscky, Ortiz, and Bee unlawfully seized Plaintiff's person and property in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution. Count IV alleges Kelechewiscky and Ortiz violated Plaintiff's First Amendment rights to free speech as Fonzone cheered for the Phillies. Count V asserts a claim for <u>Monell</u> liability against the City of Philadelphia and the Phillies. Count VI alleges a claim against the Phillies and the City of Philadelphia based on premises liability. Finally, although Fonzone does not specify the claim in the Third Amended Complaint, she attempts to assert a claim against the City, other Police Officers, Oteri, assistant district attorneys, public defenders, and investigators for violating her constitutional rights pursuant to 42 U.S.C. § 1983.[2] <u>See</u> Third Am. Compl.

Defendants City of Philadelphia and Police Officers move to dismiss the Third Amended Complaint for failure to prosecute, on the basis that Fonzone ignored this Court's October 25, 2016 order granting Defendants' motion to compel and directing her to comply with discovery requests. The parties have been conducting discovery since October 2015, and through multiple amended scheduling orders, discovery has been extended to March 2017. Throughout this period, Plaintiff served numerous discovery requests and filed multiple motions for sanction. According to Defendants, however, she has not responded to Defendants' requests, or has only responded with objections.

Defendants also move for summary judgment on the basis that Fonzone has not put forth evidence to establish her claims. Def. Mot. for Summary Judgment at 1 (Doc. No. 105). Plaintiff, in response, moved to strike the motion to dismiss. Plf. Mot. at 1 (Doc. No. 107). Plaintiff also moved for reconsideration of this Court's order dated April 4, 2017, a stay of this action, and for appointment of counsel. <u>Id.</u>

---

[2] These Defendants are John Evans, Riverside Prison, C.O. Fisher, Phila. Warrant Unit, Defender Associates, Richard Patton, Elizabeth Kotchian, David Ayers, and Greg Engle.

II.     Legal Standard

    A.  Summary Judgment

Summary judgment is granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986); Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant bears the initial burden to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Id. The court may not make credibility determinations or weigh the evidence, and must draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Armour v. Cty. of Beaver, PA, 271 F.3d 417, 420 (3d Cir. 2001). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the non-moving party. A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, the non-moving party "may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982) (citing Fed. R. Civ. P. 56(e)). Instead, the non-movant must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted); Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.

III.    Discussion

A.  Defendants' Motion for Summary Judgment

Defendants City of Philadelphia and Police Officers move for summary judgment Count I, the claim that Kelechewiscky and Oteri falsely arrested Plaintiff; Count II, that Oteri, Kelechewiscky, and Bee used excessive force; Count III, that Oteri, Kelechewiscky, Ortiz, and Bee unlawfully seized Plaintiff's person and property in violation of the Fourth and Fourteenth Amendments; Count IV, that Kelechewiscky and Ortiz violated Plaintiff's First Amendment rights to free speech; Count V, a claim for Monell liability against the City of Philadelphia; and Count VI, a claim for premise liability against the City. Fonzone entirely fails to address Defendants' arguments for summary judgment and fails to identify disputed facts.  Rather, Fonzone merely attaches an affidavit, letters from her physician, medical records, and apparently unrelated petitions and a preliminary order for protection from abuse submitted to the Court of Common Pleas of Lehigh County. Nevertheless, where a summary judgment motion is

6

unopposed, Rule 56 still requires the Court to satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).

      i.     Count I: False Arrest

      Defendants argue that Fonzone cannot prevail on her claim of false arrest because Fonzone needs to show that the officers lacked probable cause to arrest her for disorderly conduct, but that her behavior prevents her from making this assertion. See Startzell v. City of Phila., 533 F.3d 183, 203–04 (3d Cir. 2008). Probable cause to arrest exists when the information within the officer's knowledge at the time of the arrest would be enough to allow a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested. See United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990). Under Pennsylvania law, a person is guilty of disorderly conduct if, inter alia, she "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . (1) engages in fighting or threatening, or in violent or tumultuous behavior; [or] (2) makes unreasonable noise." 18 Pa. Cons.Stat. Ann. § 5503.

      Here, Defendants offer a record of an interview of Joe Oteri, a security officer for the Philadelphia Phillies, conducted by Sergeant John Evans of the Philadelphia Police Department on December 29, 2010. Oteri states he observed Fonzone "refusing to sit down . . . disrupting fans around her, using vulgar language[,] and physically assaulting a female police order." Oteri Statement at 1. Oteri informed the officers of Fonzone's conduct. Id. at 3–4. Defendants argue that Oteri's observations provided probable cause. However, Fonzone offers an affidavit from her that she had submitted during a Philadelphia Police Department internal affairs investigation.

In the affidavit, she declared, "no fans shouted at me to sit down[,]" and "[t]he crowd of more than 46,000 was so loud cheering the for the team . . . [n]o one told me to sit down." Fonzone Dec. at 3. She also stated, "I have no knowledge of any hostess telling me to sit down and certainly not multiple times. Oteri did not ask me 'to come up to the top to discuss anything.[']' He did not offer me a seat in the handicapped section. I did not speak to him other than to yell at him, 'hey[,] let go of my arm, you're hurting me[,]'" Id. Fonzone stated, "When I was standing watching the game then abruptly grabbed [and] dragged, I yelled, 'what are you doing? I'm just watching the game." Id. at 4.

Although "conclusory, self-serving affidavits . . . are insufficient to withstand a motion for summary judgment[,]" Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009), a "non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment or judgment as a matter of law . . . even if the affidavit is self-serving in the sense of supporting the affiant's own legal claim or interests." Cappuccio v. Prime Capital Funding LLC, 649 F.3d 180, 189–90 (3d Cir. 2011). Here, Fonzone's affidavit does not contain merely opinions or conclusions. Instead, she states that no one told her to sit down, a fact that suggest she was not disrupting other fans. In the light most favorable to Fonzone, the non-movant, her affidavit contradicts that of Oteri's, and creates a dispute of fact as to Fonzone's conduct. In turn, the contradiction creates a dispute as to the information within the officers' knowledge, which could include Oteri's account as well as the officers' own observations. See Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002). This dispute is material to the resolution of the question of whether probable cause existed for Fonzone's arrest.

Defendants also argue that, even if Fonzone did have a false-arrest claim, Defendants would nevertheless be entitled to qualified immunity because a reasonable officer in the position would not have understood that the arrest was unlawful. Entitlement to qualified immunity depends on whether (1) the plaintiff demonstrated the deprivation of a constitutional right, and (2) that right was established at the time of the alleged deprivation. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Anderson v. Creighton, 483 U.S. 635, 641 (1987) (noting that law enforcement "officials who act in ways they reasonably believe to be lawful" should not be held personally liable because "it is inevitable that [they] will in some cases reasonably but mistakenly conclude that probable cause is present"). However, because Fonzone's conduct at the time is in dispute and the dispute is material, this Court cannot decide whether a reasonable officer could have believed the arrest to be lawful in light of clearly established law and the information the officers possessed. See id.; see also Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997) (noting that even though the determination of the reasonableness of the officer's belief in the existence of probable cause is a question of law, "resort to a jury is appropriate in deciding the qualified immunity issue" if facts material to the reasonableness of the officers' beliefs and actions are in dispute). Therefore, Defendants' motion for summary judgment of the false arrest claim based on probable cause and qualified immunity is denied.

ii.     Count II: Excessive Force

Although Defendants mention that Fonzone has not established her claim "that she was assaulted [and] battered . . . by Defendants," Def. Mot. at 1 (Doc. No. 105), Defendants' cursory argument fails to address Plaintiff's federal constitutional claim. In Count II, Fonzone alleges "excessive force while being taken into custody."[3] Third Amended Compl. ¶ 44. To the extent

---

[3] This Court construes Count II as a claim for excessive force as an unreasonable seizure under the Fourth Amendment under the U.S. Constitution. See Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).

Defendants moves for summary judgment on the excessive force claim, Defendants have not

shown "the absence of a genuine issue concerning any material fact." <u>Celotex Corp.</u>, 477 U.S. at

323 ("The movant bears the initial burden to identify "those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, which it believes demonstrate the absence of a genuine issue of material fact."). Therefore,

to the extent Defendants move for summary judgment on the excessive force claim, the motion is

denied.

       iii.      Count III: Unlawful Seizure

       Next, Defendants argue summary judgment should be entered in its favor for the claim of

unlawful seizure. In this claim, Fonzone alleges the officers "unlawfully took [P]laintiff's

handbag and unlawfully searched it[,]" and that Officer Bee "unlawfully took [P]laintiff's

souvenir playoff ticket from [P]laintiff's purse and has never returned it." Third Amended

Compl. ¶¶ 46–47. In moving for summary judgment, Defendants submitted a record of a

telephone interview of Sal DeAngelis, the manager of ballpark operations and security of the

Phillies, by Sergeant John Evans. According to the record, DeAngelis "confirmed that Phillies

security did confiscate Joann Fonzone's ticket." (Doc. No. 105-3). Defendants argue that

DeAngelis' statement indicates that Phillies security rather than any officer confiscated

Fonzone's ticket, and that, as such, Fonzone's unlawful seizure claim fails. However, Fonzone's

affidavit states, "P/O Kovacs took my bag, went through it, commented about my ticket, and

took it and didn['t] put it back in the bag[.]" Fonzone Dec. at 5. Given that a court may not make

credibility determinations or weigh the evidence in considering a motion for summary judgment,

<u>Reeves</u>, 530 U.S. at 150, and must resolve all doubts as to the existence of a genuine issue of

material fact against the movants, <u>Jersey City Pub. Schs.</u>, 486 F.3d at 794, Fonzone's statement

creates a material issue of fact of whether the Phillies or a police officer confiscated her ticket. Therefore, Defendants' motion for summary judgment on the unlawful seizure claim is denied.

    iv.        Count IV: First Amendment rights

In the Third Amended Complaint, Fonzone alleges she "was engaged in constitutionally protected speech as she cheered for her team" at the game and that the officers denied her right to free speech. Third Amended Compl. ¶¶ 50, 52. She also alleges retaliation after she called 911 for help, in that "Kelewicsky threw [Plaintiff] against the wall a second time, and while she was on the ground, struck her chest repeatedly with his nightstick[.]" Id. ¶ 57. Defendants argue for summary judgment because "there is no evidence in the record which indicates that it was Plaintiff's speech, rather than her unwillingness to sit down and refrain from bothering other Phillies fans that led to [her] arrest." Def. Mot. at 10.

In order to prevail on a First Amendment retaliation claim, a plaintiff must prove "(1) that he or she engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004). "[U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of." Hartman v. Moore, 547 U.S. 250, 260 (2006). Here, Fonzone states in her affidavit she called 911 for help while in the holding cell, and that Officer Kelechewiscky subsequently returned to the holding cell after being contacted by 911 dispatch regarding Fonzone's call, and demanded that Fonzone hand over her phone. Fonzone Dec. at 5. Fonzone also states in her affidavit that Kelechewiscky "hit [her] with his nightstick repeatedly on the chest." Id.

Defendants argue that, based on <u>Bergdoll v. City of York</u>, Plaintiff's claim fails because she cannot show that her speech was the but-for cause of her arrest. 515 Fed. Appx. 165, 169–70 (3d Cir. 2013). However, in <u>Bergdoll</u>, the Third Circuit concluded that "[a]lthough [Plaintiff's] speech was protected and she was arrested a short time after making her remarks, the record supports the District Court's conclusion that it was Bergdoll's 'aggressive and confrontational behavior,' . . .  not her speech, that prompted her arrest." <u>Id.</u> at 170. In urging the application of <u>Bergdoll</u>, Defendants attempt to argue that summary judgment should be granted on Fonzone's claim that her First Amendment right to cheer at the game was violated. However, there is a genuine issue of fact exists over the nature of Plaintiff's behavior before her arrest. Therefore, <u>Bergdoll</u> is inapposite. In addition, Defendants do not argue that there is no genuine issue of material fact with respect to Fonzone's claim that she was retaliated against for making a 911 call. <u>See generally</u> <u>Kundractic v. Thomas</u>, 407 Fed. Appx. 625, 627–28 (3d Cir. 2011). Therefore, Defendants' motion for summary judgment on the First Amendment retaliation claim is denied.

      v.        Count V: <u>Monell</u> Claim

Defendants contend Plaintiff has adduced no evidence in support of her <u>Monell</u> claim. A municipality may be held liable for a civil rights violation that is caused by its police officer upon a showing that the municipality or municipal officials: (1) had adopted a policy, a custom, or a practice that caused the violation; (2) acted deliberately, or acted with deliberate indifference as to the known or obvious consequences; and (3) constituted the moving force behind the deprivation. <u>See</u> <u>Monell</u>, 436 U.S. at 690–91. Even though the parties have engaged in over 17 months of discovery, Plaintiff, in opposing Defendants' motion for summary judgment on the <u>Monell</u> claim, has put forth neither evidence nor argument. "[W]hen a plaintiff responds to a

defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure "constitutes an abandonment of th[o]se causes of action and essentially acts as a waiver of these issues." Campbell v. Jefferson Univ. Physicians, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014). Other district courts in the Third Circuit have found that waiver is "a necessary corollary" to the principle that summary judgment is appropriate where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Skirpan v. Pinnacle Health Hosps., 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010) (quoting Celotex, 477 U.S. at 322); see also Brenner v. Twp. of Moorestown, 2011 WL 1882394, at *11 (D.N.J. May 17, 2011) (collecting cases). Thus, Defendants' motion for summary judgment on the Monell claim is granted.

      vi.      Count VI: Premise Liability

Fonzone alleges that she purchased a ticket to the baseball game at Citizens Bank Park, and the City of Philadelphia, as a landowner, violated the standard of care owed to Plaintiff as a business invitee of the ballpark. Third Amended Compl. ¶¶ 83–85.[4] According to Fonzone, the City has a duty to protect invitees from tortious acts of third parties or employees, and thus is liable for the negligent or intentional acts of security guard and police officers. Defendants argue that Fonzone cannot establish her premise liability claim because "municipalities cannot be legally liable for the criminal actions by third parties." Def. Mot. for Summary Judgment at 10.

The Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541-8564, includes certain exceptions to immunity, one of which is the real property exception. 42 Pa. Cons. Stat. § 8542; see Williams v. Phila. Hous. Auth., 873 A.2d 81, 85–86 (Pa. Commw. Ct. 2005). As relevant here, the real property exception in the Act provides that a local agency may be held

---

[4] Although Plaintiff continues to refer to the Philadelphia Phillies as a defendant in this claim, the Phillies were previously dismissed from this action.

liable for negligent acts relating to the "care, custody or control of real property in the possession of the local agency." 42 Pa. Cons. Stat. § 8542(b)(3). For the real estate exception to apply, the negligence must make the real property itself unsafe for its intended use. <u>Snyder v. Harmon</u>, 562 A.2d 307, 312 (Pa. 1989). Stated otherwise, the negligence must create a defect in the real estate. <u>Id.</u> Further, it must be the dangerous condition or defect in the real estate that causes the injury. <u>Mascaro v. Youth Study Center</u>, 523 A.2d 1118, 1123 (Pa. 1987). If a defect merely facilitates an injury to be caused by the acts of other persons, the defect or dangerous condition is not actionable. <u>Id.</u> Finally, the real estate exception must be narrowly construed to effect the General Assembly's intent to insulate state and local agencies from tort liability. <u>Id.</u> The City contends Plaintiff's premise liability claim fails because it "cannot be legally liable for the criminal actions by third parties." Def. Mot. for Summary Judgment at 10. However, Defendants fail to explain how Plaintiff's claim fails as a matter of law, given that there has been no indication that any Phillies security personnel engaged in criminal action. Therefore, the City's motion for summary judgment for the claim of premise liability is denied.

    B.  Defendants' Motion to Dismiss for Failure to Prosecute

    Defendants also move for dismissal of this action for failure to prosecute. Federal Rule of Civil Procedure 41(b) permits dismissals by the district court to manage its docket so as to achieve the orderly and expeditious disposition of cases. <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 630–31 (1962). Such dismissals may be with prejudice. <u>Id.</u> at 629 ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."). In determining whether dismissal of a case is a proper sanction for failure to follow a court order, courts apply the factors set forth in <u>Poulis v. State Farm Fire and Casualty Co.</u>, 747 F.2d 863 (3d Cir. 1984): (1) the extent of the party's personal responsibility;

14

(2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Id. at 868 (emphases omitted). Although not all of the factors need to weigh against a plaintiff to warrant dismissal, Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988), the district court must still address each of the factors. United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 162 (3d Cir. 2003) ("[W]e have always required consideration and balancing of all six of the factors . . . .").

At this point, the Poulis factors do not warrant dismissal. First, Fonzone has brought this action pro se and thus bears all of the responsibility in complying with orders. See Briscoe v. Klaus, 538 F.3d 252, 258–59 (3d Cir. 2008) (noting that "it is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case"). Second, Plaintiff's failure to comply with discovery orders of this Court has prejudiced Defendants, whose efforts to mount a meaningful defense has been thwarted by Plaintiff's inaction.

Third, Plaintiff has begun to establish a history of dilatoriness. Based on Defendants' motion, Plaintiff has ignored this Court's October 25, 2016 order granting Defendants' motion to compel production of documents. However, Defendants have not proactively brought any issue of noncompliance to the Court's attention. Fourth, as to willfulness or bad faith, Defendants only raise the argument that Plaintiff ignored one court order, the order granting Defendants' motion to compel. Fifth, although alternative sanctions, such as monetary penalties, are inappropriate with indigent parties, dismissal with prejudice would be a drastic sanction at this juncture. Sixth, although some of Plaintiff's allegations previously survived a motion to dismiss under Fed. R.

Civ. Pro. 12(b)(6), this Court liberally construed her pro se pleadings, see Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011), and determination of the meritoriousness of claims and defenses is hindered by Plaintiff's lack of compliance with discovery.

Accordingly, Defendants' motion to dismiss for failure to prosecute is denied without prejudice.

### C.  Plaintiff's Motion to Strike

Fonzone moves to strike Defendants' motion to dismiss. Federal Rule of Civil Procedure 12(f) generally governs motions to strike pleadings and provides, as relevant here, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although rulings on motions to strike rest in the sound discretion of the court, Von Bulow v. Von Bulow, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987), that discretion is guided by certain basic principles. Because striking a pleading is viewed as a drastic remedy, such motions are "generally disfavored." Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982). As one court has aptly observed: "striking a party's pleadings is an extreme measure, and, as a result . . . '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977) (citing 5 Wright & Miller, Federal Practice and Procedure. Civil § 1380 at 783 (1969)). See also Resolution Trust Corp. v. Gibson, 829 F.Supp. 1103, 1106 (W.D. Mo. 1993); 2 James Wm. Moore et al., Moore's Federal Practice § 12.37[1] (3d ed. 2000). Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000). In practice, courts should exercise this discretion and strike pleadings only when those pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party. Ruby v. Davis Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001). Although

Fonzone asserts that "Defendants' counsel is misrepresenting the facts[,]" Fonzone has not shown that the assertions in these pleadings are both "redundant, immaterial, impertinent, or scandalous" and unfairly prejudicial. See Ruby, 269 F.3d at, 820. Therefore, this Court declines to strike Defendants' motion to dismiss.

D.  Plaintiff's Motion for Reconsideration

In Plaintiff's response to Defendants' motion, Plaintiff makes a passing reference, in the title of the document, for a "motion to reconsider order of April 4, 2017." In that order, this Court denied Defendants' request for production or documents and motion for discovery extension, and directed Plaintiff to file a response to Defendants' motion to dismiss and motion for summary judgment (Doc. No. 106). For the Court to reconsider its decision, Plaintiff would have to show (1) an intervening change in controlling law; (2) new evidence not available when the court entered its original order; or (3) that reconsideration was necessary to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Plaintiff does not specify which aspect of the order she seeks reconsideration or the grounds on which she seeks reconsideration. Although this Court presumes Plaintiff seeks reconsideration of the motion to extend discovery, Plaintiff fails to present any valid basis for reconsideration. See Van Tassel v. Piccione, 608 F. App'x 66, 70 (3d Cir. 2015). Therefore, Plaintiff's motion to reconsider is denied.

E.  Plaintiff's Motion for Appointment of Counsel and for a Stay

Finally, Fonzone, who asserts she is an attorney, moves for "co-counsel and stay of injury action." Plf. Mot. at 1.

This Court construes Fonzone's motion for co-counsel as a motion for the appointment of counsel. "Indigent civil litigants possess neither a constitutional nor a statutory right to appointed

counsel." <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 498 (3d Cir. 2002). Although courts may request appointed counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1), courts exercise broad discretion in determining whether appointment of counsel is appropriate. <u>Tabron v. Grace</u>, 6 F.3d 147, 153 (3d Cir. 1993). In making this determination, this Court is mindful of the Third Circuit's cautionary statement that "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity." <u>Parham v. Johnson</u>, 126 F.3d 454, 458 (3d Cir. 1997). Upon consideration of Plaintiff's claims and the District Court's limited resources, this Court concludes that appointment of counsel is neither warranted nor practicable in this matter. Accordingly, this Court declines to appoint counsel.

The Court finally turns to Fonzone's request to stay this litigation. The "party requesting a stay bears the burden of showing that the circumstances justify an exercise" of the Court's discretion to issue a stay. <u>Nken v. Holder</u>, 556 U.S. 418, 433–34 (2009) (citing <u>Clinton v. Jones</u>, 520 U.S. 681, 708 (1997)). A district court's inherent authority "to control the disposition of the causes on its docket with economy of time and effort" implicitly carries with it "the power to stay proceedings[.]" <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254–55, (1936). In making such a determination, courts "must weigh competing interests" and strive to "maintain an even balance[,]" mindful that the stay of a civil proceeding constitutes an extraordinary remedy. <u>Id.</u> 299 U.S. at 255. Fonzone bases her request on letters from her physician. In a March 23, 2017 letter, Dr. Brian Goldberg states that Fonzone has experienced chronic neck pain since 2010 and may undergo surgery for the condition. However, neither Fonzone nor Dr. Goldberg explains, given that she has experienced chronic neck pain throughout the pendency of this action, why a stay is now warranted. Although Dr. Goldberg states, "[t]he patient remains unable to perform her current job position and with or without surgical intervention I do not foresee her returning to

18

work in the next 3 months[,]" the letter refers to Fonzone's employment rather than her ability to participate in this action. Fonzone makes her request for a stay in a single sentence in her motion. She has failed to carry the burden of showing that the circumstances justify an exercise of this Court's discretion to issue a stay.  Accordingly, Plaintiff's motion for a stay is denied.

IV.     Conclusion

   For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part; Defendants' motion to dismiss for failure to prosecute is denied without prejudice; and Plaintiff's motions are denied.

         BY THE COURT:

         /s/ Legrome D. Davis

         Legrome D. Davis, J.