UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANN FONZONE, also known as JUDY MCGRATH, | : | Case No. 5:12-cv-05726-JLS |
| | : | |
| | : | Reading, Pennsylvania |
| Plaintiff(s), | : | January 24, 2018 |
| | : | 11:09 a.m. |
| v. | : | |
| | : | |
| JOE OTERI, et al., | : | |
| | : | |
| Defendant(s). | : | |

. . . . . . . . . . . . . . . . .

TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE
BEFORE THE HONORABLE JEFFREY L. SCHMEHL
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff(s):     Joann Fonzone, Pro se
                          2242 Tilghman Street
                          Allentown, PA 18104

For the Defendant(s):     Aaron Shotland, Esquire
                          City of Philadelphia Law
                          Department
                          1515 Arch Street
                          14th Floor
                          Philadelphia, PA 19102

Court Recorder:           Judy Mack
                          Clerk's Office
                          U.S. District Court

Transcription Service:    Zanaras Reporting & Video
                          1845 Walnut Street
                          Suite 938
                          Philadelphia, PA 19103
                          (215) 790-7857

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1      (Call to Order of the Court.)

2           THE COURT:  Good morning, everyone.  We are here

3  today in the case of Joann Fonzone, also known as Judy

4  McGrath versus various Defendants.  Are you the Plaintiff?

5           MS. FONZONE:  Yes, Your Honor.

6           THE COURT:  And the Defendants are all represented

7  by Aaron Shotland, correct?

8           MR. SHOTLAND:  Yes, Your Honor.  Good morning.

9           THE COURT:  City of Philadelphia Law Department,

10  correct?

11           MR. SHOTLAND:  Yes.

12           THE COURT:  All right.  This is a case that seems

13  like it started in 2012.  It was assigned to Judge Davis.

14  When Judge Davis took senior status, it was reassigned to me.

15  So I'm looking through the file and this is a status

16  conference to determine what should happen next, but it

17  appears to me that it's ready for trial.  I'll let you speak

18  first -- Ms. Fonzone?

19           MS. FONZONE:  Yes.

20           THE COURT:  All right.  What's your position?

21           MS. FONZONE:  Well, Your Honor, there's an

22  outstanding motion which I filed October 4th.  I actually had

23  it dictated and my sister typed it.  I -- because of all of

24  the injuries I suffered October 6th, 2010, I could not do

25  legal work on the computer.  I cannot do legal research.  I

1  had surgery which was partially effective.  Tomorrow I have

2  another procedure on my neck.  I have suffered nerve root

3  compression of several disc herniations which radiates down

4  my right arm and into my right hand.  I'm right-handed.  This

5  motion was filed October 4th, 2017.  The following day I

6  learned that Judge Davis was retired from the bench.

7      Actually, there are other Defendants --

8      THE COURT:  What would you like me to do in your

9  motion?

10      MS. FONZONE:  At the bottom of the page, I requested

11  counsel or at least co-counsel to help me get to --

12      THE COURT:  Right.  But this is a civil case, --

13      MS. FONZONE:  -- resolution on this matter.

14      THE COURT:  -- we cannot appoint counsel in civil

15  cases.

16      MS. FONZONE:  It's a civil rights case, Your Honor,

17  and according to 28, U.S. Code, Section 1915(e)(1), you do

18  have the authority to appoint counsel to assist me.  I was

19  disabled by these injuries, Your Honor.  There's no way I can

20  do a trial in this case by myself.  I can't -- I don't know

21  that I can, you know -- if a trial would last three weeks,

22  that I can be present every day based on the physical

23  disabilities that I suffered from the incidents of October 6,

24  2010.

25      THE COURT:  Did you make a settlement offer?

1          MS. FONZONE:  No, there's been no settlement talk.

2    Actually, not all the --

3          THE COURT:  Did you make a demand?

4          MS. FONZONE:  -- Defendants are represented here

5    today.

6          THE COURT:  What would you settle the case for?

7          MS. FONZONE:  I can't say that at this point.  I'm

8    still treating for the injuries.  I --

9          THE COURT:  From 2010?

10          MS. FONZONE:  Yes, Your Honor.  The injuries have

11    caused complications.  From the chest trauma, I developed

12    atrial fibrillation and I have severe breathing difficulties

13    and was diagnosed with a thoracic aorta aneurism, which I'll

14    have another test on that next month.  I don't know the

15    severity, so I can't come up with a number today.  I also

16    suffered serious head trauma, had a concussion, a seizure

17    while in the emergency room on October 6, 2010.

18          THE COURT:  Okay.  Now, this happened at a Phillies

19    game; is that correct?

20          MS. FONZONE:  A Phillies playoff game, yes, Your

21    Honor.

22          THE COURT:  Who were they playing, do you remember?

23          MS. FONZONE:  Yes, Cincinnati Reds.  It was the Roy

24    Halladay no-hitter game.  The Phillies won 4 to 0, although,

25    I didn't see all the game.  I was --

1    THE COURT:  All right.  The remaining Defendants are

2  all Philadelphia police officers; is that correct?

3    MR. SHOTLAND:  Yes, Your Honor.

4    THE COURT:  All right.  And what's the Defendant's

5  position on the incident and the status of the case?

6    MR. SHOTLAND:  Factually the incident?  Essentially,

7  Ms. Fonzone was at a Phillies game.  She refused to sit down.

8  She was disturbing the people around her.  They called for

9  security.  A security guard from the Phillies came, asked her

10 to sit down, she refused to sit down.  Eventually, she was

11 asked to leave by -- the guard's name was Joe Oteri.  She

12 wouldn't leave --

13    MS. FONZONE:  I object, --

14    MR. SHOTLAND:  -- so --

15    MS. FONZONE:  -- Your Honor.  That's not true.

16    THE COURT:  He's just telling me his side.

17    MS. FONZONE:  Well, that's --

18    THE COURT:  Go ahead.

19    MR. SHOTLAND:  So police officers were called.

20    THE COURT:  Joe Oteri's not in the case though?

21    MR. SHOTLAND:  No.

22    MS. FONZONE:  Yes, he is, Your Honor.

23    THE COURT:  It says terminated 6/3/15.

24    MS. FONZONE:  No, the operative complaint is the one

25 from July 7th which includes Joe Oteri and all of the

1    Defendants, so all of the --

2         THE COURT:  July 7th of what?

3         MS. FONZONE:  2015.  All of the Defendants are not

4    represented here today, Your Honor.  Only the Defendants

5    represented by the City attorney.

6         THE COURT:  Well, my -- the Docket shows that Joe

7    Oteri, the Phillies and Citizens Bank Park were all

8    terminated.

9         MS. FONZONE:  I have an order from Judge Davis

10   saying that the operative complaint is the July 7th, 2015,

11   Complaint, which includes all of the Defendants as the

12   relation-back doctrine allows them to be added.  At the time

13   that the original Complaint was filed by Mr. Bailey, the

14   criminal case against me for disorderly conduct was

15   terminated on August 22nd, 2012.  I got that case dismissed

16   after being ineffectively represented prior to that.  And

17   then while I was unaware of the fact that the case was

18   appealed even though it was dismissed with prejudice, so it

19   was wrongfully appealed, and I was never given notice by the

20   --

21        THE COURT:  Your criminal case was appealed?

22        MS. FONZONE:  Wrongfully, Your Honor.  It was

23   dismissed with prejudice and then they appealed it on the sly

24   and never gave -- never served me with the Notice of Appeal.

25   I actually discovered that they appealed the case when the

1    judge wrote me a letter after I tried to expunge the case.

2    He said they appealed it and that was like a month later,

3    they told -- the judge actually.  Then I called the judge's

4    clerk and he said the next date is December 17th.  I was

5    unaware that they even appealed it.

6         THE COURT:  What judge was that?  Well, you can't

7    appeal a criminal dismissal, it's double jeopardy.

8         MS. FONZONE:  Exactly.  Especially with prejudice.

9    The case was done and over with, but --

10        THE COURT:  (Indiscernible.)

11        MS. FONZONE:  -- the assistant district attorney in

12   Philadelphia just tried -- you know, broke all kinds of rule

13   -- discovery orders.  There were four violations of discovery

14   orders by Elizabeth Kotgian (ph) one of the Defendants in

15   this case.  And as it's public knowledge -- common knowledge,

16   the Court can take notice 30-some of those assistant district

17   attorneys were fired by the new DA in Philadelphia.  So they

18   dragged the case on, that's why I added these three assistant

19   district attorneys because they knowingly and willfully --

20        THE COURT:  Well, where are they?  They're not in

21   the --

22        MS. FONZONE:  -- and maliciously --

23        THE COURT:  They're not in the case.

24        MS. FONZONE:  -- prosecuted me.

25        THE COURT:  They're not on the Docket.

1          MS. FONZONE:  They're on that Complaint that I

2   amended, which Judge Davis said was the operative complaint,

3   that was July 7th, and I also supplemented the supplemental

4   claims on that Complaint.  Most particularly, I think it was

5   paragraph 142, the case of Black v. Bear, where attorneys and

6   investigators conspired to deprive a person of constitutional

7   rights.  They can all be added in the 1983 civil rights

8   action.  So actually, the state action public function test,

9   Mr. Oteri isn't even required because he was the one that

10  conspired to deprive me of my constitutional rights.  I was

11  standing like everyone else at the stadium exercising my

12  First Amendment right to cheer for my team, and Superior

13  Court case, Commonwealth versus Mastrangelo said that you

14  could not be found guilty of disorderly conduct for

15  exercising a constitutional right which certainly if you're

16  cheering like the other 70,000 fans with rally towels --

17          THE COURT:  But you could be asked to leave.

18          MS. FONZONE:  I was not asked to leave.  I was

19  standing and sitting like everyone else doing the wave with

20  the rally towels.  A man in a shirt with no uniform started

21  pushing and pulling on my shoulder.  Then eventually pushed

22  my head into the seat in front of me, so I fell to the

23  ground.  While I was reaching down to get my bag, I had this

24  support our troops, remember our veterans bag, I was trying

25  to get the bag.  Instead of getting me medical help, he went

1 to get a police officer.  The two of them again were rough

2 with me and hit my head on the seat and then took me out of

3 there, pushed me up the one flight of stairs to the concourse

4 where they left me alone for 10 or 15 minutes.  I was

5 watching the game without any incident like all the other

6 people in the concourse area.

7   Then two officers approached me from behind, grabbed me

8 by my elbows and started dragging me across the concourse.

9 Of course, I started screaming what are you doing, I'm just

10 here to watch the game.  They said we just want to talk to

11 you.  They took me into the police room, threw me on a chair,

12 went through my bag, took my Phillies ticket out of the bag,

13 took my attorney ID card and got belligerent about that.

14   Then the one officer, Kelechewiscky, took me into the

15 adjacent room, which was the -- like the jail cell without

16 bars, there's a door, threw me against the door -- against

17 the wall and I fell to the ground.  They had not searched me,

18 so I had a cell phone in my pocket and I managed to call 911,

19 tell them my name, where I was and that I was in danger of

20 being seriously injured or killed.  Unbeknownst to me, they -

21 - dispatch had called right at that police station so that

22 the officer came back into the room, threw me against the

23 wall again.  This time, he took his stick and started hitting

24 me on the chest demanding that I give him my cell phone.  He

25 must have thought I had a camera phone which I did not.  He

1  started hitting me repeatedly on my chest until I got -- gave

2  him the phone.

3      And then later, I was brought out to the room again and

4  sometime after that, two officers took me to the 1st Police

5  District.  While I was there, I made a phone call to an

6  attorney in case I needed bail money.  I didn't have anyone

7  else in Philadelphia to call.  I had met her, Cheryl Gaston

8  at a women lawyers' luncheon a few months prior to that.

9  While I was there, the sergeant of the 1st District, Ramon

10 Addison, saw that my hand was swollen about ten times the

11 size of it.  I had bruises all over me and he said I needed

12 to go to the emergency room.  So he had two other officers

13 come to take me to the emergency room.  That was about 9:30

14 and I was there until about 3:00 in the morning.

15      While in the triage area, while telling the nurse I had

16 been physically assaulted, I had a seizure and then woke up

17 in one of the emergency room beds.  They treated me, X-rayed

18 my hand and arm, shoulder.  Didn't treat me for the chest or

19 head trauma because I was taken there by police officers, so

20 they just, you know, wanted to get me out of there.  And they

21 didn't even let me get my insurance card.  I had Blue Shield

22 at the time.  They didn't even let me get my bag to give them

23 my insurance card at the hospital.

24      I was then taken to the police headquarters, arraigned --

25 video arraigned, ROR'ed, that was the next morning.  And I

1  was in a post-concussive state, so I tried to walk to the bus

2  station to get home --

3        THE COURT:  All right.  We're getting a little far

4  afield.  So why don't you take a break.  You've been talking

5  for a long time.  Let's let Mr. Shotland make his

6  presentation to the Court.  Counsel?

7        MR. SHOTLAND:  Yes.  So eventually she was removed

8  from her seat by a police officer and Mr. Oteri and taken to

9  -- there's kind of like a holding area in Citizens Bank Park.

10  She remained there for maybe a half hour, 45 minutes and then

11  was taken to the district and processed.  My -- I don't have

12  the criminal Docket in front of me.  My recollection of what

13  occurred was there was a trial at the municipal court level,

14  and I believe there was a -- she was found guilty, then

15  appealed and at the next level, she --

16        THE COURT:  That'd be Common Pleas.

17        MR. SHOTLAND:  The Common Pleas level.  I mean, I

18  don't -- because it's a summary offense, disorderly conduct,

19  there's kind of different terminology, but my understanding

20  is at the first level, there was a conviction.  The next

21  level, -- it was appealed a number of times and eventually an

22  acquittal.

23        THE COURT:  It was dismissed.

24        MR. SHOTLAND:  Yes.

25        THE COURT:  And was it appealed by the Commonwealth,

1    by the DA after it was dismissed?

2         MR. SHOTLAND:  My recollection is Ms. Fonzone

3    appealed the conviction and once it was dismissed or she was

4    acquitted, that was the end of it.  That's my recollection

5    from reviewing the Docket some time ago.

6         THE COURT:  All right.  Well, somebody can get the

7    criminal Docket and submit it to me.

8         MR. SHOTLAND:  That shouldn't be a problem.

9         MS. FONZONE:  Could I please correct --

10        THE COURT:  No, --

11        MS. FONZONE:  -- the record?

12        THE COURT:  -- not yet.  You've talked for a while,

13   let him talk.

14        MR. SHOTLAND:  So as far as damages from this case,

15   I've sent discovery requests to Ms. Fonzone.  She has filed a

16   number of medical kind of records on the Docket, but nothing

17   kind of close in time to this incident.  She claims to have a

18   lot of kind of physical problems, physical ailments.  None of

19   those relate to this at all.  I did review some emergency

20   room records that were in the police file and it didn't

21   appear there was any substantial injuries suffered by Ms.

22   Fonzone.  That's our position and if the Court --

23        THE COURT:  What's your position as far as who else

24   are Defendants in this case?  Is the City still -- is the

25   Phillies still in?  Is the Assistant District Attorneys in?

1   That's what she seems to be saying.

2        MR. SHOTLAND: No. They've all been dismissed. I

3   think what she's referring to is Ms. Fonzone filed a First

4   Amended Complaint, a Second Amended Complaint and then a

5   Third Amended Complaint. Judge Davis had ruled on the Second

6   Amended Complaint, dismissing basically all those parties.

7   She filed a Third Amended Complaint and seeked kind of

8   clarity from the Court as to what complaint was the active

9   complaint. And he said the -- or he ordered -- Judge Davis

10   ordered that the Second Amended Complaint was the complaint;

11   however, he had ruled that those parties are dismissed from

12   the case. So the remaining Defendants are all City

13   Defendants and the Phillies and the judges that were sued and

14   the --

15        MS. FONZONE: I didn't sue any judges. Now, don't,

16   you know, misstate the truth.

17        THE COURT: All right. Let him complete his --

18        MS. FONZONE: Well, --

19        THE COURT: -- presentation.

20        MR. SHOTLAND: And the district attorneys that were

21   sued have been dismissed. My recollection was there was a

22   judge that was sued --

23        MS. FONZONE: I object and I --

24        MR. SHOTLAND: -- but I could be wrong.

25        MS. FONZONE: -- did not sue a judge.

1          THE COURT:  Okay.

2          MR. SHOTLAND:  Okay.  If I'm wrong --

3          THE COURT:  I haven't seen anything about suing a

4    judge.

5          MR. SHOTLAND:  Okay.

6          THE COURT:  And I'm referring to his opinion from

7    August that states at the end of page 3, the Court granted

8    leave to amend.  The Plaintiff submitted an amended complaint

9    which is the operative complaint and is properly called the

10   Third Amended Complaint.  Is that correct?  That's what he

11   said.

12         MS. FONZONE:  Yes.

13         MR. SHOTLAND:  The operative complaint is the Third

14   Amended Complaint?

15         THE COURT:  Yes.  If you look at Judge Davis's

16   opinion dated -- and order dated August 28th, 2017, I'm

17   reading from the bottom of page 3.  It is kind of confusing

18   because there's another area where it says -- no, he doesn't

19   address that.  The City's Motion for Summary Judgment for the

20   claim of premise liability is denied.  So it does seem to be

21   that those parties were dismissed with prejudice and never

22   put back into the case.

23         MS. FONZONE:  The operative complaint was the July

24   7th Complaint where the --

25         THE COURT:  Well, when they're dismissed, you can

1    file a -- you can file an amended complaint and include them,

2    that doesn't mean they're back in.

3              MS. FONZONE:  Well, he made that the operative

4    complaint.

5              THE COURT:  Well, it's the operative complaint as

6    far as the remaining Defendants.

7              MS. FONZONE:  They were --

8              THE COURT:  That's what he meant.

9              MS. FONZONE:  They were included.

10             THE COURT:  He didn't mean you go back and add

11   Defendants that he dismissed.  It's the operative complaint

12   that we're basing the case on right now with the remaining

13   Defendants who are left which are, according to my --

14             MS. FONZONE:  That was the July 7th, --

15             THE COURT:  According --

16             MS. FONZONE:  -- of 2015 --

17             THE COURT:  -- to my analysis, Officer --

18             MS. FONZONE:  -- were all the Defendants.

19             THE COURT:  -- Kelechewiscky, Officer Ortiz, Officer

20   Bee and Officer Kovac.  Those are the only four Defendants

21   that I see in this case.

22             MS. FONZONE:  Well, with all due respect, Your

23   Honor, there wouldn't be a case if it weren't for Oteri.  I

24   didn't file a complaint against him with the district

25   attorney.  I filed a private citizens' complaint when I found

1   out his name because you can't file a complaint without

2   someone's name.  Without him, there would be no case.  I

3   wouldn't have all these physical injuries.  I strongly object

4   to Mr. Shotland's diatribe of --

5           THE COURT:  I don't know why he dismissed the case

6   against Mr. Oteri.  He may not be a state actor.  It's a 1983

7   case.  You have --

8           MS. FONZONE:  He's certainly a state actor --

9           THE COURT:  -- to be a state actor to be --

10          MS. FONZONE:  -- and --

11          THE COURT:  -- a defendant.

12          MS. FONZONE:  -- according to --

13          THE COURT:  He's a security guard employed by the

14  Phillies.

15          MS. FONZONE:  Yes, but he acted like -- he was

16  delegated police duties.

17          THE COURT:  By whom?

18          MS. FONZONE:  Excuse me?

19          THE COURT:  Who delegated police duties to him?

20          MS. FONZONE:  The police and according to himself,

21  his own testimony --

22          THE COURT:  They can't do that.

23          MS. FONZONE:  -- in the criminal case, he strolled

24  around looking for people, he wrote the affidavit against me

25  which was, you know, perjurious as well as his testimony was.

```
 1            THE COURT:  All right.  Let's try to make some
 2   progress today.  All right?  So your position is --
 3            MS. FONZONE:  Well, I was basing my case on the
 4   Complaint that I filed.  First of all, the original Complaint
 5   had Citizens Bank Park as the owner of the Phillies, so I
 6   didn't file that complaint.  I had an attorney.  He later
 7   received --
 8            THE COURT:  Who filed the Third Amended Complaint?
 9            MS. FONZONE:  I did after the district attorneys
10   wrongfully --
11            THE COURT:  Not your attorney?
12            MS. FONZONE:  Excuse me?
13            THE COURT:  Not your attorney?
14            MS. FONZONE:  I'm my attorney now.
15            THE COURT:  Well, you had Don Bailey.
16            MS. FONZONE:  Yeah, only until January of 2013.
17   Then he had medical issues.  He --
18            THE COURT:  What did he do?
19            MS. FONZONE:  -- had to withdraw.
20            THE COURT:  What did he do?
21            MS. FONZONE:  He filed the original Complaint.
22            THE COURT:  Did he file the Amended Complaint?
23            MS. FONZONE:  The Amended Complaint after we
24   discovered the City owned the stadium and not Citizens Bank
25   Park, so that was the First Amended Complaint.
```

1          THE COURT:  Not the Phillies?

2          MS. FONZONE:  Right.  The Phillies are -- lease the

3    space from the City.  At the time that Mr. Bailey was in the

4    case, the case had been dismissed by me August 22nd of 2012,

5    with prejudice, meaning the case was over.  The district

6    attorneys misrepresented to the --

7          THE COURT:  I'm not talking --

8          MS. FONZONE:  -- court --

9          THE COURT:  -- about your criminal case.  This isn't

10   about your criminal case.

11         MS. FONZONE:  Well, that's -- I'm explaining why

12   they were made Defendants after --

13         THE COURT:  We don't have the record of your

14   criminal case and --

15         MS. FONZONE:  I have the record.

16         THE COURT:  -- there seems to be a conflict and --

17         MS. FONZONE:  Well, I can provide everything.

18         THE COURT:  -- he said you appealed it.  You were

19   found guilty in municipal court.

20         MS. FONZONE:  That's not true.

21         THE COURT:  You filed a summary appeal in the Court

22   of Common Pleas and they dismissed the case and that was it.

23   So are you telling me then that the district attorney

24   appealed to the Superior Court a not guilty finding on a

25   summary case?

1          MS. FONZONE:  The district attorney appealed the --

2          THE COURT:  Look, I don't want to argue with who's

3    right and who's wrong.  I want somebody to get me a record

4    and send it to me certified.  Send it to me.

5          MS. FONZONE:  I can do that, Your Honor.

6          THE COURT:  Make an exhibit for this argument.  The

7    record speaks for itself.  I don't want to argue back and

8    forth about who found who guilty and who appealed who.

9          MS. FONZONE:  Well, I was trying to explain why I

10   added the three district attorneys because they maliciously

11   prosecuted me when the case was over.  And I even told that

12   to Judge Patrick and she goes well, you're here aren't you.

13   They never served me notice that they appealed and I thought

14   the case was over with prejudice meaning they could not

15   appeal it.

16         MR. SHOTLAND:  Your Honor, the district attorneys

17   are immune from suit on the basis that she's trying to bring

18   them in on, so I mean, I just think it's fruitless to even

19   entertain argument on it.  There's -- it's not going

20   anywhere.  These are the --

21         MS. FONZONE:  I object.

22         MR. SHOTLAND:  These are the remaining Defendants in

23   the case, that that was decided years ago at this point.

24         MS. FONZONE:  I object.  There's no qualified

25   immunity when they violate somebody's constitutional rights.

1   You can't, you know, prosecute somebody once the case is

2   dismissed with prejudice.  I have all the transcripts.  I can

3   get everything to you, Your Honor.  I mean, everything I'm

4   saying --

5           THE COURT:  All I need is the --

6           MS. FONZONE:  -- is fact.

7           THE COURT:  -- Docket.  All I want is the Docket.  I

8   don't want a whole bunch of pleadings.  I just want the

9   Docket.

10          MS. FONZONE:  Well, I can provide transcripts as

11  well.  August 22nd of 2012, a transcript where the case was

12  dismissed with prejudice meaning anything they did subsequent

13  to that was unconstitutional, illegal and malicious.  That's

14  why they were added as Defendants.

15          THE COURT:  All right.  Well, I'd like to set a jury

16  selection date.

17          MS. FONZONE:  We're not even finished with

18  discovery.  I filed motions with 40 sets of interrogatories.

19          THE COURT:  This case is six years old.

20          MS. FONZONE:  Well, there were many continuances

21  because I was doing all the work, Your Honor, and I had neck

22  surgery.  I've been treating with cardiologists.  I've been

23  in the hospital five times for heart conditions.  I mean, I'm

24  one person, you know.

25          THE COURT:  Well, why don't you find an attorney?

1          MS. FONZONE:  Well, I would like to, you know.  I --

2     you know, according to the 1915(1)(e) (sic), you could

3     appoint a firm to help me with trial work.  I can't, you

4     know, do all of the work myself.  I have 40 sets of

5     interrogatories.  They never answered the interrogatories.

6     Two non-parties answered interrogatories.  And then I filed

7     them November 13th -- or November 15th of 2017.  I have the

8     receipt from the Post Office and the mailroom clerk down

9     there somehow, in Philadelphia, never got this filing to the

10    second-floor clerk, although I put her name on it, Nicole

11    Trueso (ph), and the room number 2609.  So how does that

12    happen?  I have proof here that this was filed and it never

13    got put in the Docket.  These are 40 sets of interrogatories

14    --

15         THE COURT:  What'd she say?  Maybe they lost it.

16         MS. FONZONE:  Right.  Well, that's -- you know, I

17    guess they did, but it's in the building according to the

18    Post Office, but somehow didn't get filed.

19         THE COURT:  Then you've got to file it again.

20         MS. FONZONE:  Right.  But this -- things like this

21    further delay this case and it's not my fault.  I'm doing

22    everything I can.  These were from, you know, two years ago.

23         THE COURT:  And what happened to your lawyer, he got

24    sick?

25         MS. FONZONE:  Yes.  He has -- he had some surgeries

1    and retired, so withdrew from the case.  So I've been doing

2    everything and it's kind of tough wearing all four hats,

3    being the attorney, the Plaintiff, the victim and the

4    witness.  You know, I think, you know, to move this case

5    forward to resolution if you would appoint counsel to even

6    help me, I mean, I know the facts better than anyone in this

7    case.  I've done all the work since 2013 and had I not had to

8    do that, maybe, you know, my arm and hand wouldn't be in such

9    terrible shape with this nerve compression.  I, you know,

10    have chronic pain, so, you know, it -- it's just unbelievable

11    that, you know, my opponent over here stands here and tells

12    you I didn't have any serious injuries from this incident.  I

13    wasn't born with these --

14          THE COURT:  He's saying he doesn't have doctors'

15    reports.  You need an expert that links your present

16    condition to the injuries --

17          MS. FONZONE:  Right.  And I have that.

18          THE COURT:  -- you suffered.

19          MS. FONZONE:  I have that.  He has --

20          THE COURT:  He said he doesn't have it.

21          MS. FONZONE:  -- deposed me.  He didn't depose me --

22    he didn't depos Oteri.  He said he was going to do that.  I

23    would like depositions, but I won't do that myself and I

24    can't.

25          THE COURT:  You filed a Motion to Reconsider the

1    court's order dated 9/15.  I don't see an order dated 9/15.

2          MS. FONZONE:  No, that's 28, U.S. Code, Section

3    1915(e)(1) that allows the Court to appoint counsel to help

4    in this civil rights injury litigation.  It gives you the

5    authority to do that.  That was filed October 4th, 2017, with

6    some -- and in that was a letter from my orthopedic, Dr.

7    Goldberg, where he says Ms. Fonzone has a history of chronic

8    neck pain since being a victim of an aggravated assault on

9    October 6, 2010.  I had all of the conservative treatments

10   for several years and then finally, when that no longer

11   helped, I opted to have the surgery on my neck.  And the

12   nerve compression from the discs 3/4, 4/5, 5/6, 6/7 and 7 and

13   thoracic 1 and 2 is causing this nerve compression down my

14   arm and into my hand which had I not had to do all the work

15   since 2013, maybe that wouldn't have gotten so serious and

16   debilitating.  That along with the heart conditions have

17   disabled me, so that I can't possibly take this case to

18   trial.  I can provide Mr. Shotland with medical records.  We

19   can, you know, do some more discovery.

20          THE COURT:  Well, Mr. Shotland, are you saying that

21   she hasn't answered some of your discovery requests?

22          MR. SHOTLAND:  Yes.  Yes, I'm saying that.

23          THE COURT:  All right.  Well, if she doesn't answer

24   basic requests, you can file a Motion for Sanctions, and I

25   can enter sanctions against her.

1          MR. SHOTLAND:  Well, Your Honor, I filed a Motion to

2    Compel which was granted and we were at a stage in the case

3    where it was dispositive motion deadline.  I filed a Motion

4    to Dismiss for lack of prosecution, for failure to abide by

5    the Court's order and --

6          THE COURT:  He denied that though.

7          MR. SHOTLAND:  He denied it.  So I mean, I could

8    have very well filed a Motion for Sanctions, but --

9          THE COURT:  Well, if you file a Motion for

10   Sanctions, whatever she doesn't produce can't be introduced

11   at trial.

12         MR. SHOTLAND:  Right.

13         MS. FONZONE:  I also filed a Motion to Compel for

14   lack of answers or sufficient answers to my discovery

15   requests, including production of documents.  I have

16   requested several things and got no answers, no replies and

17   no documents from the City of Philadelphia and the

18   Defendants.

19         MR. SHOTLAND:  That's inaccurate.  We responded to

20   the discovery.  That was sent to the Defendants that I

21   represent.  There was a number of discovery requests sent to

22   persons that I do not represent.  I have no obligation to

23   seek those people out.

24         THE COURT:  But they were City employees.

25         MS. FONZONE:  Yes.

1          MR. SHOTLAND:  Some of them.

2          MS. FONZONE:  All of them.

3          THE COURT:  The assistant district attorneys.

4          MR. SHOTLAND:  I mean, there's kind of a different

5    structure.  They're employed by the DA's Office, but I

6    believe their paychecks come from the City.

7          THE COURT:  Yes, I'm sure -- well, they're City --

8          MS. FONZONE:  And the bench warrant unit and other

9    Defendants that were named in that operative complaint which

10   is important, Your Honor, because all of those people, the

11   relation-back doctrine allows me to add them because --

12         THE COURT:  We're not making any progress here.  I

13   want to --

14         MS. FONZONE:  Well, I --

15         THE COURT:  -- try to -- I want to move this case

16   along.

17         MS. FONZONE:  Well, it's not that --

18         THE COURT:  If it can't be settled --

19         MS. FONZONE:  You know, it's not --

20         THE COURT:  -- it's got to be tried.

21         MS. FONZONE:  -- a simple matter, Your Honor.  This

22   case disabled me.  You know, I'm not 70 years --

23         THE COURT:  If it can't be settled, it has --

24         MS. FONZONE:  -- old.  I'm 59 --

25         THE COURT:  All right.

1        MS. FONZONE:  -- years old, --

2        THE COURT:  All right.

3        MS. FONZONE:  -- Your Honor.

4        THE COURT:  All right.  Here's what I'm going to do.

5   I'm going to -- I'll take your motion and I'll take your

6   request under consideration.  I'll look at the statute.

7   There may be a civil rights panel.  Maybe it appeals.  I'll

8   decide what to do and I'll schedule another status conference

9   in, say, 60 days or so, and that will give you two time to

10  write each other letters, ask what you want and if

11  discovery's not complied with, then you two have the right to

12  file Motions for Sanctions for discovery violations.

13       MR. SHOTLAND:  Your Honor --

14       THE COURT:  And I'll address it in -- you know, when

15  we meet again.

16       MR. SHOTLAND:  We kind of have been through that

17  process.  She filed a Motion to Compel.  Judge Davis already

18  ruled on -- that the -- at least the responses that were

19  supplied were --

20       THE COURT:  Sufficient.

21       MR. SHOTLAND:  -- complying, they were sufficient.

22       THE COURT:  Yes.

23       MR. SHOTLAND:  He ordered her to comply and respond

24  to my discovery.  She failed to do so.  I mean, we've kind of

25  gone through that and I think that, at this point, the case

1    is now -- I mean, this incident happened eight years ago --

2    or almost eight years ago.  We're pretty far from when this

3    actually happened.  One of the Defendants is a retired police

4    officer that doesn't live in Pennsylvania anymore, has

5    terminal cancer, and if we do go to trial, we're going to

6    need to take his testimony by some electronic means because

7    he's not able to come up here if he's alive at trial.

8    There's a lot of complicating factors as a case ages like

9    this.  And we're talking about a fairly straightforward

10   incident where somebody was asked and escorted out of a

11   Phillies game, charged with disorderly conduct --

12           MS. FONZONE:  I object.

13           MR. SHOTLAND:  I mean, this isn't a very complicated

14   case.  It's --

15           MS. FONZONE:  That's -- I object.

16           MR. SHOTLAND:  -- a single incident and all her

17   claims --

18           MS. FONZONE:  No.

19           MR. SHOTLAND:  -- against the district attorneys and

20   those people, they're not active claims anymore.  This is a

21   very simple set of facts that a jury can deal with and I

22   don't know that any additional discovery --

23           THE COURT:  I kind of agree with, Counsel.

24           MR. SHOTLAND:  -- is necessary.

25           THE COURT:  It's basically what happened that day

1   and what injuries sprung from that day.

2          MR. SHOTLAND:  And we'll move to preclude any

3   evidence of the criminal trial unless it involves testimony

4   from one of the active Defendants.  Beyond that,

5          MS. FONZONE:  Your Honor, it does.

6          MR. SHOTLAND:  -- it's not relevant to anything.

7          MS. FONZONE:  I strongly, vehemently disagree.  It

8   is not a simple matter.  An abused and battered woman is not

9   a simple matter.  I suffered serious injuries and for him to

10  make light of this --

11         THE COURT:  He didn't say it was a simple matter.

12         MS. FONZONE:  -- I have a --

13         THE COURT:  He said the initial operative facts of

14  October 10th or whatever the date was basically --

15         MS. FONZONE:  October 6th.

16         THE COURT:  -- what happened.  Oteri will say what

17  happened, the officer will say what happened, the officer in

18  the precinct will say what happened, and then the jury will

19  decide what happened and then the jury will decide what

20  injuries flowed from that incident.

21         MS. FONZONE:  There was more than more incident.

22         THE COURT:  He's not saying it was simple.  He's

23  saying the operative facts of the initial day are simple

24  because it all happened on one day.

25         MS. FONZONE:  No, it didn't, Your Honor, because

1  there were consequences from that day, including --

2      THE COURT:  But not the tort actions.  Nobody put

3  hands on you after that day, correct?

4      MS. FONZONE:  No, that's not correct.

5      THE COURT:  All right.

6      MS. FONZONE:  In September of 2011, I did not appear

7  in court and had filed two weeks prior to that by certified a

8  Motion for Application for Continuance because I had an

9  appointment with the cardiologist.  So the district attorney

10  was aware of that.  I had a lawyer who somehow didn't convey

11  that fact to the judge, so the next day --

12      THE COURT:  And who's that -- you mean, Mr. Bailey

13  or some other lawyer?

14      MS. FONZONE:  No.  A criminal lawyer, Mr. Dickson.

15  In the middle of the night, the bench warrant unit, like a

16  swat team, like a gestapo, broke into my mother's house where

17  I live and --

18      THE COURT:  Where's that?

19      MS. FONZONE:  Allentown, Pennsylvania.  To drag me

20  out of court for not appearing -- to drag me out of home for

21  not appearing in court when they had specific knowledge why I

22  was not there that day.  The warrant was taken by the bench

23  warrant unit and I tried to get a copy of that warrant, but I

24  did do the research.  When you're picked up on a bench

25  warrant, Rule 150(a)(5), they can only hold you for 72 hours.

1    I was held for six days at the Riverside Correctional

2    Institute getting beaten up, getting threatened with a cell

3    mate who was detoxing from heroin, having a terrible

4    experience.  I wasn't given my heart medication.  I begged,

5    you know, my family to hire a new lawyer to get me out of

6    there.  I had a date on Monday, September 26th to go to

7    court.  I was at the door with the other women that were

8    being taken to bench warrant court that day.  I was stopped

9    there by someone named Officer Fischer and not allowed to get

10   on the bus to go to court.  They told me that I had to stay

11   another two days.  On that Tues -- the day after that, I had

12   an argument scheduled at Lehigh County Court on a very large

13   identify theft fraud case to which I'd been a victim for more

14   than 30 years.  I pled $150 million against three large

15   corporate defendants, MTV Networks, Time Warner and Chase

16   Manhattan Bank for all the damages I've suffered for more

17   than 30 years as they perpetuate the fraud and knowingly

18   perpetuate this fraud against me, that's through an

19   entertainment contract with the William Morris Agency and my

20   estranged spouse, which that came about in 1980 and -- the

21   entertain contract.  The marriage contract was 1983.  I've

22   been suffering abuse and retaliation ever since.

23           THE COURT:  Did you --

24           MS. FONZONE:  That case was dismissed --

25           THE COURT:  -- sign the contract?

1        MS. FONZONE:  -- was dismissed (indiscernible).

2        THE COURT:  Did you sign the contract?

3        MS. FONZONE:  With the William Morris Agency?

4        THE COURT:  Yes.

5        MS. FONZONE:  No, the agent did, but according to --

6        THE COURT:  The agent did.  How about your alleged

7 ex-spouse, did he sign it?

8        MS. FONZONE:  Well, that was him, Carey Woods, who I

9 met in college when I was at NYU.  Later, I discovered he had

10 more famous names.  That case was dismissed ex parte even

11 though my mother actually called the judge's chambers to say

12 why I couldn't be there.  I was in the medical unit at

13 Riverside, so it was impossible.  I think they -- some

14 shenanigans went on to make sure I wouldn't be able to show

15 up for that argument.  These are all facts and I have all the

16 documentations to back up everything I'm saying here today,

17 Your Honor.

18    As far as discovery, I have very voluminous medical

19 records and other documents.  Some of them are privileged so

20 I have not handed them over.  He did not -- his Defendants

21 did not sufficiently answer my interrogatories and he has

22 provided no documents which I requested.  On the other hand,

23 I answered his document request and his interrogatories.  So

24 for him to sit here and misrepresent the facts to the Court

25 just kind of makes me sick in my stomach, but I know that

1  does go on because I know a lot of the district attorneys on

2  this case did that to the judge, including dragging me

3  through mental health court when they were in possession of a

4  psych eval which said I was perfectly competent and suffered

5  from PTSD.  They hid that from the judge for eight months so

6  they could drag me through mental health court.  They have

7  humiliated me, embarrassed me, wasted my time, caused me

8  injuries.

9      This is not a simple case, Your Honor.  The documents you

10  see here are some of what I have in my home office.  This has

11  taken, you know, years of my life, has affected me greatly

12  and then Mr. Shotland in his Rule 26 he did provide some

13  documents, not that I requested, but he included a very

14  derogatory newspaper article and he actually was the one to

15  inform me that there's all kinds of untruths about me on the

16  internet which is a permanent situation unless I could

17  successfully have an action against Google for their failure

18  to fact check things before they, you know, harm people.  In

19  fact, I believe that all of that incited this violence

20  against me because I committed no crime.  It's not a crime to

21  stand and cheer or -- like everyone else at the stadium.

22  People were standing in front of me, so I still would like to

23  know what their probable cause was to actually arrest me and

24  I have -- all through the criminal trial, I've requested

25  that, have never gotten any answer.  They didn't have any

1   probable cause at my stadium seat or I would have been taken

2   into custody then.  They didn't have any probable cause while

3   I was standing there in the concourse with everyone else

4   watching the game.  They approached me from behind.  I was

5   doing nothing but watching the game.  Then they try to say I

6   was intoxicated which was factually impossible and I have

7   witnesses here to attest to that.  And also, they have no

8   physical evidence of that.

9        Then when that didn't work, then Oteri said I must have

10  been on some kind of drugs.  The fact was I had the flu a

11  week prior to that because I was (indiscernible) for two

12  tickets, I wanted to take my boyfriend.  But by the time I

13  got to buy the tickets, there was only one available, so I

14  went.  I was taking only Tylenol, not the prescription kind

15  with codeine because I'm allergic to codeine, just regular

16  Tylenol, so that's the only medication I was taking.  I was

17  taking no heart medication or any other medication at the

18  time.  They went through my bags, so they did know that fact.

19  So they actually suborned perjury by letting Oteri say I was,

20  like, out of my mind or on drugs or -- before that, I was

21  intoxicated.  I was doing this; I was doing that.  So they

22  allowed him to perjure himself and I have all of that

23  testimony.  So all of these things make this not a simple

24  case at all.  Quite contrarily, it's a very complex case and

25  that's why I, again, --

1        THE COURT:  All right.  Thank you.

2        MS. FONZONE:  -- ask --

3        THE COURT:  I've got to wrap this up.

4        MR. SHOTLAND:  Can I --

5        THE COURT:  Is there anything you want to --

6        MR. SHOTLAND:  -- briefly respond?

7        THE COURT:  -- respond to --

8        MR. SHOTLAND:  Yes.

9        THE COURT:  -- that she said?

10       MR. SHOTLAND:  As Your Honor correctly pointed out,

11  the remaining Defendants in the case are Ortiz, Kovac, Bee

12  and Kelechewiscky.  Almost nothing she just said involves

13  those four Defendants that remain.  So everything that

14  happened after she was arrested, everything that happened in

15  the criminal trial, everything that happened by the DA's

16  Office has nothing to do with the remaining claims in the

17  case and won't come in at trial.

18       THE COURT:  So she did spend six days for failure to

19  respond to a summary warrant?  Do you know if --

20       MR. SHOTLAND:  I --

21       THE COURT:  -- that's correct or not?

22       MR. SHOTLAND:  I have no idea.  I don't represent

23  the DA's Office and --

24       THE COURT:  All right.

25       MR. SHOTLAND:  -- it's not -- that's not part of

1  this case.

2        THE COURT:  I understand that.

3        MS. FONZONE:  It certainly is.  They all come from

4  the operative facts.  The relation-back doctrine allows me to

5  add those Defendants because --

6        THE COURT:  It is not part of this case.

7        MS. FONZONE:  -- they were all a result --

8        THE COURT:  Let him finish and we've got to wrap up.

9        MR. SHOTLAND:  What she's referring to about the

10  documents that I sent her, because she filed an Internal

11  Affairs complaint, the sergeant that investigated it,

12  Sergeant John Evans, does background research on the person

13  making the complaint and pulled things from different places

14  to assess Ms. Fonzone's mental status and included that in

15  his report when he made his findings on her complaint.

16  That's what I shared with Ms. Fonzone because it's part of

17  the investigation that was done in response to her complaint.

18  Now, the Philly police department, none of these Defendants

19  have anything to do with what's on the internet about Ms.

20  Fonzone.

21        THE COURT:  Yes, I understand.  I understand.

22        MS. FONZONE:  You made it a part of this case.

23        THE COURT:  I understand.  All right.

24        MS. FONZONE:  And I'm saying that that all could

25  have incited as violence against me because I broke no law,

1  Your Honor.  I'm a lawyer.  I don't break the law.  Maybe

2  some others do.

3          THE COURT:  Well, you may not have broke the law,

4  but if you're told to sit down, you should sit down.

5          MS. FONZONE:  I wasn't -- the stadium was so loud,

6  who could hear that?  I didn't hear it and I have tinnitus

7  from head injuries, how could I hear that.  I ended up --

8          THE COURT:  All right.

9          MS. FONZONE:  -- (indiscernible).

10          THE COURT:  This matter's concluded.  I'll do the

11  research and I'll schedule something in the future.  Thank

12  you.

13          MR. SHOTLAND:  Thank you, Your Honor.

14          MS. FONZONE:  Take care, Your Honor.

15          THE CLERK:  All rise.

16     (Court adjourned at 11:53 a.m.)

17                      CERTIFICATE

18      I certify that the foregoing is a correct transcript from the

19  electronic sound recording of the proceedings in the above-entitled

20  matter.

21

22   /s/April J. Foga                    February 15, 2018

23  April J. Foga, CET, CCR, CRCR

24

25