JoAnn Fonzone
aka JoAnn McGrath
Plaintiff
V.
Joseph Ottey
et al
defendants

United States District Court
Eastern District ~ Case 5:12-cv-05726-JLS Document 135 Filed 04/17/19 Page 1 of 32
# 12-5726

MOTION TO COMPEL SUFFICIENT ANSWERS
to Interrogatories

**8.** WHETHER THE LOWER COURT ERRED WHEN IT DISALLOWED FONZONE TO
REPRESENT HERSELF AND THEREFORE SHE HAD DISLOYAL AND
INEFFECTIVE COUNSEL PRIOR TO AND WHEN SHE WAS NOT CO-
REPRESENTING OR SELF-REPRESENTING

SUGGESTED ANSWER: YES.

FILED
APR 1 7 2019
KATE BARKMAN, Clerk
By_____ Dep. Clerk

A defendant in a criminal action is entitled to her constitutional right to effective counsel.

Strickland v. Worthington, 466 U.S. 668, 104 SCt. 2052, 80 Led. 674 (1984). (Sixth Amendment

right to counsel includes the right to effective counsel.)

Of utmost importance in any attorney-client relationship is the duty of LOYALTY an attorney

owes a client including a duty to avoid conflicts of interest. To show that trial counsel had an actual

conflict of interest, such that prejudice would be presumed , a defendant must demonstrate that

1) trial counsel actively represented conflicting interests and 2) those conflicting interests
adversely affected trial counsel's performance and the outcome of the case.

Interests of trial counsel's clients actually conflict, such that prejudice would be presumed , when

during the course of representation they diverge with respect to a material factual or legal issue or to

a course of action. Com.v. Collins, 598 Pa. 397, 957 A.2d 237 (2008).

In Comm. v. Washington, 583 Pa. 566, 880 A.2d 536, (2005), the Court ruled that defendant must

show that prejudice resulted from counsel's dislike of client to prevail on conflict claim.

In tis case, though Fonzone told trial commissioner O' Brien at video arraignment Oct. 7, 201 that

she wanted to repressnt herself, the Defender Associates were defense counsel and were going to

the proceedings for months while Fonzone was unable to becasue of her physical injuries and

treatment of her heart condition.

Fonzone spoke to Defender Kim Gray October 15, 2010 at length on the phone and Ms Gray, said,

" Wow, you really are the victim." After that Ms Gray obtained by subpoena the 911 audio CD

from the police, but was not allowed to represent Fonzone. The CD was witheld from Fonzone

by Defender Dennis Kelly for almost 2 years, which was a major factor in her being treated like

a defendant rather than a crime victim by law enforcement.

Fonzone had been sending the Defenders medical reports and phoned to tell them why she could not appear in court. She phoned Defenders April 28 to say she could not appear the next day she she was recuperating as she had been in the hospital for her heart condition. Fonzone did not know then that a bench warrant was issued April 29, presumably because Defenders failed to tell the Judge that Fonzone was the seriously injured victim and was recuperating from physical injuries . Fonzone discovered there was a warrant a month later ,when the Defenders' receptionist finally mentioned it when Fonzone called again and again to speak with her Defender about the case and to ask when the next court date was.

On June 16, 2011, Fonzone took her hospital records to the trial commisssioner and had the warrant lifted. By the next date July 18, Fonzone retained private attorney Mr. Dixon as she realized the Defenders were not properly representing her.when he did not show up , Fonzone told the court she wanted to represent herself Judge Pew replied by having her taken to the court jail for a psych eval.

After waiting several hours in jail and having a heart episode, ( so that her friend Jack who accompanied her to court was askd to get her heart medication for her ), Fonzone had a five minute eval where the court psych was only concerned with trying to get her to plead guilty. Fonzone said she would not be coerced into a plea as she was the innocent injured victim. At the next date, August 31, defense attorney Dixon would not argue the Motion to Dismiss Fonzone had filed Nov. 9, 2010. Then they scheduled a Sept. 21 trial, Fonzone told Dixon she had a cardiologist appointment that day and was unavailable. So, the Judge issued a bench warrant even though Fonzone had filed a Continuance application Sept. 9 and served the court and the prosecution by certified mail. ( Strangely, this document is not in the court file, so Appellant has provided a copy in her Supplement to the record with the other missing pleadings .) Fonzone tried and tried to reach Dixon Sept. 21 and 22, to no avail to ask what happened in court. When the Bench warrant unit stormed into the home of Jo Ann Fonzone's mother at 2:00 a.m. Sept. 23, where they were both asleep, she learned what occurred in court.

Jo Ann Fonzone was taken to Philadelphia by the Unit, and en route went into atrial fibrilation and told the driver to take her to the hospital. Because medical personnel are not fond of prisoner patients, she was there a few hours instead of being admitted . Then , Fonzone was taken to Riverside prison, though the warrant stated that she was to be taken to court at Filbert St. Appellant asked her mother and sister to please hire a new attorney to get her released as it was obvious Dixon was not helping her.They retained Frumer at a substantial fee ,yet he did not get her released until September 28, despite the 3 day PaRCrimP Rule 150 (A) 5, which states that a person can only be held 3 days on a bench warrant. Fonzone was impriosned 6 days and missed a scheduled Argument on an important civil ID theft case in Lehigh County.

Frumer appeared Sept. 28, Oct. 19, Nov. 22, and Jan. 25, 2012. He allowed prosecution to continue and continue the case , each time assuring his client that next time it would be dismissed. He did not argue any Motions to dismiss, do any discovery , investigation, or trial prep. He did not challenge them about why his client was in mental health court or argue the Objections on the issue which Fonzone filed Sept. 9, 2012. Fonzone grew weary of the continuances and told Frumer she needed to obtain other counsel, and this case was taking a toll on her physical health.

In Feb. 2012, Fonzone was assured that her case would be dismissed at next date, April 25 , when she hired Earle. Instead, he asked the court to withdraw April 25 because he did not want to subpoena her witnesses or do any trial prep. The court denied his withdrawal after Fonzone told the court she had spent thousands of dollars on defense counsel yet they were not helping her. Prosecutor Ayers misrepresented facts to the court they did not have psych reports from independent eval at JFK, though Frumer had given them the reports the previous October. 2011. That report stated that Jo Ann Fonzone was competent and had PTSD from the physical trauma and injuries she sustained October 6, 2010.Consequesntly, the court had Fonzone get another eval Again , on April 25, Fonzone was found competent by a court psychiatrist and diagnosed with PTSD. Though Judge Neufeld then deemed Fonzone competent and herruling is on the docket,

prosecution continued to misrepresent the facts to subsequent Judges , presumably because they did

not want Fonzone to be allowed to speak for and represent herself.

In June, July and August, 2012, Fonzone represented herself and the case was dismissed August 22,

2012. on her 1013 Motion to dismiss with prejudice . Kotchian was the asst. District attorney

during these proceedings and subsequently with Engel at some of them.

Unbeknownst to Appellant until 3 months later, Kotchian appealed the dismissal and deliberately

did not serve Fonzone with the NOA. Kotchian served the Defenders though they had not been

Fonzone 's defense counsel since July 2011. and Kotchian was aware of that.

In November 2012 when Fonzone was filing her Expungement Petition she was prohibited from

filing it and was told the case had been appealed. In disbelief, Fonzone contacted Judge Kosinski's

clerk and soon recieved a letter from the Judge confirming that they appealed his decision and

there was a proceeding scheduled Dec. 17, 2012. Prosecution had ex parte gotten the appeal

granted as they were in court with no opposition in Sept., Oct. And Nov. 2012.

Though Fonzone wanted to self represent, because prosecution told the court she was not allowed

*[Fonzone was not in court Dec 28 as she was given no notice]*

to, counsel was appointed Dec. 28 ex parte by Judge Gehret. On Jan. 18, 2013, Fonzone met and

frst spoke with appointed counsel Marni Snyder 10 minutes before the trial and agreed to be co

-counsel. Because she did not believe there would be a trial that day, Fonzone did not have her

subpoenaed witnesses there, but the bench trial occurred anyway.Ms Snyder is a talented litigator.

The Municipal Judge Eubanks acquitted Fonzone of the misdeameanor charges , and Kotchian went

on and on , so the Judge finally said lesser included disorderly conduct.

Fonzone filed her Reconsideration Jan. 28 as she could not reach Ms. Snyder who was ill. Snyder

filed her Motion for Extraordinary relief based on insufficient evidence Jan. 29, 2013, the Order is

the subject of Fonzone's Petition filed April 1, 2015 with this Court *[When Fonzone obtained a copy of Judges order, it appears Mistrial was granted (2 yrs. later)]*

Based on the docket, and not having the Order on the Jan. 29 Motion, an appeal to Common Pleas *[and vacated]*

was filed Feb. 11, 2013 on the sumamry disorderly conduct charge.

After Feb. 11, Ms. Snyder could not represent Fonzone at the Arraingment date of March 4 due to

scheduling conflict and wanted to withdraw. Fonzone was again in the hospital in March and was

recuperating and unable to appear for awhile. The next date was June 24 with Judge Minehart.

Fonzone had filed a Motion to vacate the sumamry conviction and was ready to argue .Because she

wanted to play the 911 CD which had previously not been heard by any Judge, she instead chose to

have a de novo ata later date when a CD player could be found.Fonzone asked for court

appointment to help with the presence of witnesses.Muldrow withdrew due to illness; later Patton

was appointed.

Oddly , another Arraignment date was scheduled for July 15, and discovery was closed that date.
(Exhibit    )

Fonzone tried several times to reach Patton by phone and he never returned her calls. Then in Sept.

he sent a certified letter which was slanderous and derogatory especially since she had never even

spoken with him. Patton also sent an ugly letter to Judge Foglietta about his client as if his intent

was to prejudice the court against his own client He succeeded. If he did not want the appointment,

why is he getting paid by the government to be a court appointed lawyer $2$

Fonzone told Judge Foglietta that she could not work with an attorney who she could not speak to .

Later, Rainey, a lawyer in the courtroom, said that she would be her lawyer. Fonzone was okay

with that appointment until in December , she told the court that her client's Motion to dismiss on

Rule 600 was improper , instead of helping her with the Argument and getting the case dismissed.

It was strange that Rainey had the security guard's civil attorney in the court room Nov. 21, when

Fonzone was not present.Upon reading that transcript, Fonzone knew that Rainey was not loyal.

The second trial which began Oct. 2 and continued through March 19, 2014. Rainey did no

investigation,discovery,witness or trial prep, Fonzone filed a waiver of counsel Feb. 24,2014.

Appellant contends that effective counsel from the beginning would have resulted in dismissal.

All prior counsel was ineffective and the three prong Pierce test as to trial counsel's ineffectiveness

can be established.  Comm. v. Pierce, 515 Pa. 153, 527 A.2d 973 (Pa. 1987). Pierce requires a

demonstration that 1) the underlying claim of error is of arguable merit; 2) counsel had no

reasonable basis for the action or omission in question; and 3) counsel's action or omission caused

prejudice to his client such that the outcome of the proceedigns would have been different.

The first claim of error that defense lawyers violated the duty of loyalty to Fonzone by actually and

deliberately sabotaging  her defense , allowing incessant continuances ,and violated her sixth

Amendment right to assistance of counsel. They ignored her , ignored their professional

responsibilities ,and failed to convey to the court that she was the injured victim .

Defenders , private, and appointed  attorneys acted in a manner contrary to Fonzone's  interests.

Some defense lawyers acted like they worked for the prosecution and were extremely hostile to

their client.

They were deficient in their obligation to investigate , speak with witnesses,  prepare for trial and

meet with their client before trial, in  failing to object to derogatory ,untrue remarks by prosecution,

prosecution witnesses, prejudicial  and leading testimony.

Trial counsel's performance fell below objectively reasonable standards of professional attorney

conduct.they failed to act as reasonable diligent  and professional  advocates and instead assisted

the prosecution's case.From the beginning, there were sidebars wih giggling as though they were

coffee clutches  during each proceeding  and Fonzone was never told what was discussed.

Fonzone was doing the written work, research, filing Motions to try to get the case dismissed  or

later vacated  and theother lawyers refused to even read them much less argue and advocate for her.

The constitutional right to counsel in a crimianl proceeding is essential to the basic guarantee of a

fair trial in our adverserial system of justice. US v. Cronic, 466 U.S.  648, 104 SCt. 2039 (1984).

Appellant contends that these defense lawyers should go back to law  school and learn what the

Constitution  is  all about  because they seem to have forgotten that it is the Supreme law of the

land. Some of them also forgot that  we are supposed to have an adversarial system of justice.

A Motion to vacate  judgment  was appropriate remedy for claim of ineffective counsel that was

based on matters outside the record. People v. Kirk, 945 NYS 2d 818 (2012).

Motion for postconviction relief was  appropriate remedy for claim that trial counsel was ineffective

for failing to conduct adequate  pretrial investigation  to locate potential witnesses, where issues

involved matters outside the record. People v. Bahr, 96 A.D. 3D 1165 , 946 NYS 2d 675 (2012).

Based on Kirk , Bahr, and Pierce , Appellant contends that she has established ineffective of counsel

by  those  who represented her when she was not self representing or co-counsel with Ms. Snyder.,

and ergo the sumamry disorderly conviction should be vactaed  . If it had not been for defense

counsel's failure to meet minimum professional standards, Fonzone would have had  her case

dismissed  in 2010, becasue she was  the victim October 6, 2010..

## 6. SUMMARY OF ARGUMENT

There was insufficient evidence for the lower court's decision because it erred in allowing

inadmissible evidence while precluding consideration of relevant material evidence.A sufficiency of

the evidence claim should be decided on a record undiminished by any error which may have

resulted from the incorrect consideration of evidence. Com. v. Moore, 590 Pa. 619 , 213 A.2d 862

(2006). Prosecution's witness testimony was fabricated in attempt to distort the truth, discredit

the defendant who was actually the injured victim of their violence, then falsely implicated .

Appellant's constitutional rights were knowingly violated throughout the very long prosecution by

the Commonwealth and some of her defense lawyers . The failure of law enforcement to

thoroughly or at all investigate the incidents of October 6, 2010 and the many misconducts of

police and prosecutors resulted in the suppression of exculpatory evidenceand suppression of

truth.The innocent injreed victim was dragged through the criminal systemwithout probable cause

while the violent perpetraors who caused her serious injuries and a life long heart condition and

disability were protected from criminal liability by other law enforcement. The lower court erred

when it denied a scheduled evidentary hearing on injured complainant Appellant's private citizen

complaint against the violent perpetrator who had injured then implicated her by lying to the police

because prosecution wanted him to instead be their stellar witness and testify against her .

Prosecution knowingly witheld specifically requested exculpatory evidence in its attempt to hide

the truth from the court and treat Appellant like a defendant rather than a victim -witness. Four

discovery orders were intentionally violated by prosecution though they had the Brady materials

since the day of the incidents.When Appellant won a dismissal August 22, 2012, prosecutor

appealed and deliberately failed to serve notice on Appellant in an effort to proceed ex parte for

three months and get the appeal granted. After trial Jan.18,2013,a Vacate Not GuiltyOrder on

appointed counsel's motion of remaining summary charge was misplaced, and case continued

Prosecution incessantly continued the case ex parte or by misrepresenting facts to different Judges

knowing Fonzone's speedy trial rights were being denied.Second trial March 2014was unecessary.

This Superior Court has ruled that when the District attorney denied a private criminal complaint, unless there is an outright abuse of discretion by the office, the Municipal court will not disturb the declination. Appellant filed her private complaint July 6, 2012 which was denied July 6 without investigation by asst. District attorney and Judge Neufeld signed it several months later. On Dec. 17,2012, Fonzone filed her appeal of the denial of the private citizen complaint and scheduled it for hearing on Jan. 17, 2013.

On Jan.4 2013, Fonzone filed her Motion to Reconsider the prosecutor's denial of her private citizen criminal complaint against Oteri, (the security guard who injured her then falsely implicated her to the police),she had filed in July 2012,as soon as she discovered his name.(Exhibit ) Motions hearing on her complaint was scheduled for January 17, 2013. For some reason, initially, her citizen complaint was put in the same file as her disorderly conduct case, rather than a separate file with another docket number. Consequently, the hearing on this Motion was scheduled at the same time and day as a proceeding on her disorderly conduct case. Of course, there was a conflict; the ADA Engle objected to the hearing on Oteri where Fonzone should have been treated as the victim witness.Fonzone at the hearing with Judge Patrick January17,2013 was prepared to speak for herself on her private citizen complaint against Oteri,since proecutors were not .

When ADA Engle objected and told the Court that she was not allowed to represent herself, { oddly it was the district attorney who was supposed to represent her as the injured victim complainant on the pivate citizen compaint }, Fonzone tried to tell the Court Jan. 17 that she had scheduled the hearing on her private citizen complaint, but someone mentioned getting the sheriff Fonzone felt physically threatened , and quickly exited the courtroom.

Fonzone then went next door to ask the clerk if her trial was really going to oocur next day as it was very harsh on her (as she had a heart condition )to travel in cold weather to Phila. the next day if it was going to be continued again.And, it was difficult for her to have her witnesses there.

Meanwhile, unbeknownst to Fonzone, appointed counsel Snyder was now in court with ADA Engle on the disorderly conduct case.Apparently, Engle objected to the hearing against Oteri,
(Trans, Jan 17,2013 p4)

1/17/19

Respectfully submitted
Colman Jo Esquire

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JO ANN FONZONE aka JUDY MC GRATH, PLAINTIFF

VS.

JOE OTERI, ET AL , DEFENDANTS

NO: 5:12-CV-5726
CIVIL ACTION
JURY TRIAL DEMANDED


Defendant Linsette Ortiz, is requested to file with this court and serve upon the undersigned counsel for Plaintiff, within the time and in the manner provided by the Federal rules, 30 days from service, sworn answers to each of the following interrogatories:

1. How long and in what capacity were you employed by the Philadelphia police department

   and at what district were you  October 6, 2010 ?

2. Isn't it true that you were the passenger  in the right front seat next to Officer Eric Person

   in  the  transport vehicle when  Jo Ann Fonzone was taken from Citizens bank park to

   the 1ˢᵗ District on Ocotober 6, 2010?

3. Where were you at 5:45p.m. October 6, 2010 ?

4. Why is your name on the citation for a 'site" arrest when you were not an eyewitness and not anywhere in the vicinity at the stadium seating section when Jo Ann Fonzone was being harrassed by a man in a blue shirt.

5. When , where and who told you to write and sign the citation, and who provided his version of the incident to you for the purpose of preparing the citation?

6. What is your understanding of probable cause? When where and what is the probable cause in this case? Is it okay for a civilian to determine probable cause?

7. On page78 of your telephonic testimony,you said, " I just observed her being intoxicated. " When , where and what exactly did you observe for you to reach such a conclusion without any evidence to support it.Did you see Fonzone drinking ?

8. Did any police officer see Jo Ann Fonzone drink any alcohol, and if so, what was she drinking, at what time, and how much did anyone observe her drink?

9. Did you or any other officer question anyone at the stadium about Fonzone's alleged intoxication?

10. Do you know the difference between behavior of someone intoxicated and behavior of someone who has just suffered a head injury or trauma, do you know the signs and symptoms of a concussion? Did you know she had a seizure in the ER?

11. Are you aware that Fonzone drank no alcohol prior to the game, was still sick with the flu, purchased only one bottle of lite beer at the game and that the bottle was in the seat cupholder almost full when she left her seating section togo to the concourse. Why didn't any police investigators investigate that?

12. Do you know what time the game started? Do you know what teams were playing?

13. Since you claim to have been at the scene to make a site arrest, do you know what time Jo Ann Fonzone was assaulted by the security guard then later pushed up the stairs to the concourse area?

14. Do you know what time Jo Ann Fonzone called 911 for help from inside the jail cell inside the police room on October 6, 2010?Do you know what an abuse survivor looks like?

15. Do you know what time Jo Ann Fonzone arrived at the stadium on October 6, 2010?

16. What did you observe during your site arrest, and when , where , how and what exactly was Jo Ann Fonzone doing that was in your words" unruly"while at her seat at the playoff baseball game? Where were you during the site arrest?

17. Because you were not at the scene, how could you have told Fonzone , "multiple times to sit down and stop being unruly?"What does unruly mean?

18. At about what time did Joe Oteri tell you want to write on the citation you signed?

19. Do you claim to be one of the two male arresting officers, and, if so, where did the arrest take place exactly and who was the other male arresting officer?

20. Why,when and who told or directed you to sign the arrest citation, though you were not present at the scene, (did not witness anything as your involvement was only in being a transport passenger,) rather than  Officer Kelewischky, who was one of the two male arresting officers  with Officer Bee?

21. When, why , who ,and how did the summary disorderly conduct charge on the citation you signed  become a  misdemeanor, was it after  police became aware that Jo Ann Fonzone was serioulsy injured by the  guard and police at the stadium  while in custody  and then taken to the ER by the police?

22. Did Oteri write the citation then you signed it  or did he give you his information  of probable cause to  "write up what happened "on the citation?

23. You and Officer Person were called from  somewhere else to transport Fonzone to the 1st district, and then you accompanied her to the district and searched her for the first time there at the 1st,and that was the extent of your involvement  is that correct? Why did you put Officer Person's name on  one  report and Oteri's name on another  as the complainant??

Jo Ann Fonzone , Esquire aka Judy Mc Grath

Dated:    5/16/16

## Officer Kelewischeley

1.  State your full name, badge# or ID#, present address, height, date of birth, and weight on October 6, 2010.

2.  Identify all persons contributing to the answers to these interrogatories.

3.  Identify and describe your occupation or employment, rank and duty assignment.
    A.  On 10/06/10 and

    B.  At the present time

4.  State the length of time that you have been employed and assigned.

5.  How long have you been assigned at CBP for Phillies games?

7.  Why was your name omitted from any police report as arresting officer?

8.  When were you made aware that JoAnn Fonzone was taken to the ER by police?

9.  How were you made aware that JoAnne Fonzone was taken to the ER by police?

10. What were told by you by Security Guard Oteri before he brought you to the seating section concerning JoAnn Fonzone on October 6, 2010?

11. Were you aware that Security Guard Oteri had grabbed and pushed JoAnn Fonzone into a stadium seat prior to telling you to go with him to the seating section where she was on the cement floor when you and Oteri arrived?

12. Do you deny removing JoAnn Fonzone with Oteri's assistance from the seating area and pushing her up the stairs to the concourse area?

13. Do you deny leaving the area where she was standing for 10 -15 minutes watching the game , the returning with Officer Bee___ and the two of you approaching her from behind, grabbing her at the elbow part of her arms and dragging here across the concourse to the police room?

14. What were you doing and why did you exit police room or what were you told and by whom during the 10 to 15 minutes from the time you left JoAnn Fonzone until you returned with Office B _ee_ ?   Did you make a pretext arrest?

15. Do you deny hearing JoAnn Fonzone yell, "What are you doing? I'm just here to watch the game!" ?

16. Do you deny saying to JoAnn Fonzone, "We just want to talk to you." As you and Officer B ee___ were dragging her by the heels to the police room?

By:

5/12/16

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JO ANN FONZONE aka JUDY MC GRATH, PLAINTIFF

VS.

NO; 5:12-CV-5726
CIVIL ACTION
JURY TRIAL DEMANDED

JOE OTERI, ET AL, DEFENDANTS

Defendant, Officer Christopher Bee is requested to file with this court and serve upon the undersigned counsel for Plaintiff, within 30 days of service of such, and in the manner provided by the federal rules sworn answers to each of the following interrogatories:

1. State your full name , present address, height , weight on Ocotober 6, 2010, date of birth.

2. How long have you been assigned to Citizen's bank Park for duty at the baseball games?

3. When and how were you made aware that Jo Ann Fonzone was taken to the ER by the police on Ocotober 6, 2010?

4. What were you doing in the police room on Ocotober 6, 2010 immediately prior to leaving the room to approach Jo Ann Fonzone from behind and assist Officer Kelewisachky as she stood in the concourse watching the game.for 10-15 minutes?

5. Do you know why and who was responsible for substituting Officer Ortiz's name on police reports for officer Kelewischky's name though she was not at the scene at the seating area and was not an arresting officer or eyewitness to anything .

6. What , when ,where exactly and by whom was probable cause to arrest Jo Ann Fonzone established, and at what time ?

7. What was Jo Ann Fonzone doing, what criminal activity was she allegedly engaging in as sufficient for probable cause as she stood in the concourse watching the game.

8. As you and officer Kelewischky had Jo Ann Fonzone's arms restrained after grabbing her from behind would it not be a factual impossibility for her to "flail her arms around or at anyone" ?

9. Is it not true that the stadium was filled to capacity at the playoff game and there were crowds of people gathered and standing at the concourse areas and entire stadium throughout the game.

10. What was the name of the police supervisor that signed to have Jo Ann Fonzone arrested , and at what time was the arrest made?

11. Where, at what time and who wrote the arrest citation and affidavit of probable cause ?

12. Why wasn't Jo Ann Fonzone ejected from the stadium if the Phillies had really determined that she should be ejected for standing and cheering exercising her 1st Amendement right for the team at the first playoff game? Were you in the police room when Sgt. Kovacs removed items from Jo Ann Fonzone's bag including her Phillies ticket.

13. As one of the two arresting officers, state what time you and officer Kelewischky placed Jo Ann Fonzone under arrest, state where you informed her that she was under arrest and what you said to her.

14. Identify and describe plaintiff Jo Ann Fonzone's oral response and actions after being advised that she was under arrest.At what time and where did you place handcuffs on Jo Ann Fonzone.

15. Describe your educational background.

16. Within the past 10 years, indicate the number of arrests you
   a. have made
   b. have madeat Citizens bank park
   c. have assisted in
   d.have assisted in at Citizens bank park
   e. have employed the use of force
   f.have witnessed or have knowledge of officer Kelewischky'suse of force

17. How many times were you named as a defendnat in a lawsuit as a result of any complaints against you in your capacity as a police officer or a private person?

18. From the time you came on duty on October 6, 2010, describe your actions up to and including your first contact with the plaintiff.

19. State whether you drank any alcoholic beverages or ingested any intoxicating substances either prior to your coming on duty or at the game while on duty October 6, 2010, and if so, state for each:
    a. The time when the substance was drunk or ingested;

    b. The type of substance drunk or ingested; and

    c.  The amount of the substance drunk or ingested.

20. State whether any complaint has been made against you in connection with the incident and the manner in which the arrest was made and detention ahd been effectuated, and if so, identify each and every complaint, including the name of the complainant. And how many complaints have been made against you during your employment as a police officer either with Philadelphia or any other employer?

By:

5/12/16

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


JO ANN FONZONE aka Judy Mc GRATH, PLAINTIFF

      VS.                       NO. 5;12-CV-5726
                               CIVIL ACTION
JOE OTERI, ET AL , DEFENDANTS       JURY TRIAL DEMANDED


Defendant, John Evans, is requested to file with this court and serve upon the undersigned counsel for Plaintiff, within the time and in the manner provided by the federal rules, 30 days from service, sworn answers to each of the following interrogatories:


1.  How long and in what capacity were you employed by the Philadelphia police department?


2.  When , why and by whom were you promoted to Internal Affairs of the department?


3. Where and in what capacity were you working on October 6, 2010 ?


4.  Who, when, where and how were you given the Philadelphia police Discovery report to sign for the purpose of having Jo Ann Fonzone arrested Ocotober 6,2010 for summary disorderly conduct?

5. How many Internal Affairs complaints did you investigate prior to the complaint filed by Jo Ann Fonzone  November 30, 2010?

6. When ,where and by whom were you assigned to investigate the IA complaint filed by Jo Ann Fonzone?

7. Why didn't you notify  Jo Ann Fonzone that you had finished your IA investigation in February 2011, so that she did not have to  subsequently ask for months about the report until she learned in June  you had finished it , but  then denied her a copy of the  report.

8. Why was  the hospital police report which showed that Jo Ann Fonzone was injured prior to her arrest  and taken to teh Emergency Room by police hidden and wittheld for almost two years from  the defense ?

9. Why were you untruthful to all 12  police officers you interviewed  for the investigation that Jo Ann Fonzone had filed an Internal Affairs complaint against each and every one of them, when you were well aware  that she  had filed one complaint which contained  the names of  just 4 officers. By doing so, didnt you ensure  eliciting the answers  you wanted  to slant  the investigation  .

10. How long and how well have you known Officers Bee, Kelewischky, Ortiz and Kovacs?

11. What police districts did you work at prior to being promoted to IA after you signed as supervisor on the police discovery repor to have Jo Ann Fonzone arrested for disorderly conduct?

12. Why was Sargeant Middleton who was initially assigned and reviewed and determined , along with Lieutenant Appleton (who also determined that the complaint was founded and that Fonzone was a confidential informant), that Fonzone's complaint was founded or valid, suddenly removed , not allowed to continue the investigation, and then you were substituted ?

13. Who and when were you assigned as substitute to continue Sargeant Middleton's investigation of Fonzone's IA complaint?

14. Why did you remove and completely neglect to question Fonzone or consider the attachements to the IA complaint including her Permanemt Protection From (Vicarious) Abuse Order agaisnt her estranged spouse as possible motive for this retaliation?

15. Why did you call people totally irrelevant to this investigation while failing to interview witnesses with direct and /or personal knowledge of Jo Ann Fonzone and the incidents and /or complainant , the witnesses Fonzone provided on the IA complaint like Sargeant Addison , ( who saw her bruises and had her taken to the ER) , Emergency Room staff, Fonzone's family and friends ?

16. Why did you choose not to review the entire Jefferson Emergency Room report, question any of the staff who treated Jo Ann Fonzone October 6-7, 2010, question anyone other than police at the stadium or subpoena the stadium videotape, retrieve and listen to Fonzone's 911 call for help on October 6, 2010 being after she was thrown against tthe wall by Kelewischky?You really didnt want to do a thorough investigation into the truth of the matter, did you?

17. When did you begin and how many hours did you spend on your investigation?

18. As you did not record any interview, the summary analysis parts of your report is comprised of your words and versions of what was actually said by those you inrterviewed, not their actual verbatim, exact words and phrases are they?

19. Why did you refuse to give Fonzone's IA complaint with attachments to the district Attorney, though the policy,( as stated on the back of the IA complaint form)is to send them the complaint.

20. Why do you think no fans in the vicinity of the incidents at the stadium at the seating section or later in the concourse were questioned or interviewed by police at the time?

21. Why didnt you question or interview sargeant Addison or anyone at the Emergency Room about Fonzone's injuries and /or many prior injuries ( which made it impossible for her to kick and swing), or severe bruising and swelling of chest ,neck, and arm and shoulder, demeanor , concussion , or seizure from head trauma while in the triage area?

22. As a law enforcement officer who should know what a PFA Order is, Do you know what a battered woman with PTSD and abuse survivor looks like?

23. Why didnt you do a complete, unbiased , thorough, objective, impartial investigation of the facts and evidence in this case?

24. Isn't it true that you had a result in mind before you did any interviews , then you selected who to interview and what to ask , then swayed the officers your way and away from the truth by lying to them about the IA complaint in order to to reach a false conclusion, the direct opposite conclusion and findings of the first Sargeant and Lieutenant, which were that Fonzone's complaint was valid and founded .

Brye _Joann_ _Jo_, Esquire ob/o Jo/Jugbty

_John Henzon_, Esquire ob/o Jo/McGrath

5/12/16

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


JO ANN FONZONE aka JUDY MC GRATH, PLAINTIFF

VS.                                    NO:5;12-CV-5726
                                       CIVIL ACTION
JOE OTERI, ET AL, DEFENDANTS           JURY TRIAL DEMANDED



Ramon Addison, non-party to the above titled action, is requested to file with this court and serve
upon the undersigned counsel for Plaintiff, within the time, 30 days and in the manner provided by
teh Federal Rule, sworn answers to each of the follwoing interrogatories:

1. How many years have you been employed with the Philadelphia police department?


2. Were you the Sargeant on duty at the 1st district on Ocotober 6, 2010, and what hours?


3. Do you remember the Plaintiff Jo Ann Fonzone who was brought to the District on

    Oct.6,2010 from Citizens bank park?


4. If you remember her, do you recall what time she was brought to the District by

    Officers Ortiz and Person?


5. Is it police procedure for the transporting officers to remain at the district after the transport?

6.  Did you call the transport officers to take Jo Ann Fonzone to the hospital Emergency Room on Ocotober 6, 2010 and do you recall about what time she was transported to the ER?

7.  Do you remember approximately what time you signed the police report form to have Jo Ann Fonzone transported to Jefferson ER?

8.  Did you sign the form prior to the transport or at a later time? Ifyou signed it before the trsnsdport, did you then give the form to the transporting officers?

9.  What is the police procedure for completing the form and when and by whom is that done?

10. If the transporting officers completed the hospital form,where do they get the information ?

11. Are the transporting officers responsible for filing the police report form and where is the document filed?

12. When the injured person transported to the hospital by the police, is it police procedure to provide the individual with a copy of the VICTIM SERVICES FORM OR police report which states on the bottom:

"Pursuant to Act 185 of 1962, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM.

13. Is the police report filed at the district where the individual was transported from or where the injuries occurred ? And is the police reprot filed at the City Hall police records office?

14. Are the transport officers responsisble for filing the police report, when , where is this hospital transport police report filed?

15. Is there any reason and are there circumstances where and why the hospital police report would not be filed at the District of Records office ,or produced, disclosed, available, or made a public record (like other police reports are )?

16. While on duty at the 1ˢᵗ District , do you walk around to the jail cells to see and speak with those who have been arrested?

17. Do you remember if you walked around to the jail cells October 6, 2010, and at a approximately what time that was?

18. Do you recall seeing and speaking with Jo Ann Fonzone while she was in a cell where you noticed the swelling, bruises and contusions of her hand, arm, neck,chest and telling her she needed medical attention and would be taken to the hospital?

19. Do you remember Jo Ann Fonzone telling you that she was struck on her chest by a police officer 's nightstick after calling 911 for help, and was arrested at the game because a security guard had injured her head , then brought the officer to the scene?.

20. Is it police procedure for the transporting officers to inform the individual transported to the ER about the Crime Victims Assistance program and tell her that there is a mandatory police report of the incident and this report is required in order for the injured victim to receive compensation from the Crime Vicitms Board.?

Jo Ann Fonzone, Plaintiff

Dated: May 23, 2016