1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF PENNSYLVANIA

3    JO ANN FONZONE,
                                    Case No. 5:12-cv-05726-JLS
4              Plaintiff,

5    v.                             Reading, Pennsylvania
                                    June 19, 2019
6    JOE OTERI, et al,              3:24 p.m.

7              Defendants.

8

9          TRANSCRIPT OF PRE-TRIAL CONFERENCE HEARING
            BEFORE THE HONORABLE JEFFREY L. SCHMEHL
10            UNITED STATES DISTRICT COURT JUDGE

11   APPEARANCES:
     For the Plaintiff:          Jo Ann Fonzone
12                               Pro Se
                                 a/k/a Judy McGrath
13
     For the Defendants:         Aaron Shotland, Esquire
14   (Kelechewiscky, Ortiz,      City of Philadelphia Law Dept.
     Bee, Kovac)                 1515 Arch Street, 14th Floor
15                               Philadelphia, PA  19102

16   Court Recorder:             Jennifer J. Fitzko

17   Transcription Service:      Chris Hwang
                                 Abba Reporting
18                               PO Box 223282
                                 Chantilly, Virginia  20153
19

20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25

1          (Call to order at 3:24 p.m.)

2              THE COURT RECORDER:  All rise.  Court is again in

3    session.

4              THE COURT:  You may all be seated.  Good afternoon,

5    one and all.

6              MS. FONZONE:  Good afternoon.

7              MR. SHOTLAND:  Good morning, Your Honor.

8              THE COURT:  This is the case of Jo Ann Fonzone.  And

9    let me go through the remaining Defendants as I see this.  Mr.

10   Shotland, correct me if I'm wrong.  Officer Kelechewiscky?

11             MR. SHOTLAND:  Yes.

12             THE COURT:  Officer Lesinette Ortiz?

13             MR. SHOTLAND:  Yes.

14             THE COURT:  Officer Bee?

15             MR. SHOTLAND:  Yes.

16             THE COURT:  Officer Kovac?

17             MR. SHOTLAND:  Yes.

18             THE COURT:  And everybody else is terminated?

19             MR. SHOTLAND:  Yes.

20             THE COURT:  There are four Defendants.

21             MS. FONZONE:  Objection.

22             THE COURT:  Let me finish.

23             MS. FONZONE:  Sure.

24             THE COURT:  There are four Defendants in this case.

25   This case stems from an incident that happened in October of

1      2010 and the case was filed to be exact October 6th, 2010; is

2      that correct, Ms. Fonzone?

3            MS. FONZONE:  Yes, Your Honor.

4            THE COURT:  Okay, complaint and case was filed

5      October 9th, 2012.  So coming up in October, we will hit the

6      seventh anniversary, seven-year anniversary of this case.

7            Now I understand it's taken twists and turns.  I'm

8      not blaming anybody, but this case is now assigned to me.  And

9      at some point in time, we're going to have to pick a jury.

10     We're going to have to call witnesses.

11           You're going to have to testify and call whoever you

12     want to call.  The Defense can call their four witnesses and

13     other witnesses.

14           And I'm going to send the jury out and they're going

15     to render a verdict whether these four individuals did anything

16     wrong, and if they did, how much money you're entitled to.  And

17     that's what we're going to do.

18           So how -- I scheduled this for a pretrial today,

19     hoping we could try this case in July.

20           So what are your thoughts on that, Ms. Fonzone?

21           MS. FONZONE:  Well, I just submitted a status

22     conference memorandum.

23           THE COURT:  I did, I read it.

24           MS. FONZONE:  Okay, we have not had any settlement

25     conferences.  We have had no settlement offers.  With all due

1   respect --

2            THE COURT:  No, we don't have to.  There's no

3   obligation that they have to do anything.

4            MS. FONZONE:  I understand that, Your Honor, but they

5   disabled me.  But with all due respect, the other Defendants

6   were added as state supplement claims.  Actually, in the first

7   amendment that was filed by Mr. Bailey --

8            THE COURT:  That is not what Judge Davis meant in his

9   opinion.  I have ruled on that.

10           MS. FONZONE:  There were incidental -- there were

11  all -- arose out of the same incident of October 6th, 2010.

12  With all due respect, Judge Davis ruled order --

13           THE COURT:  What Defendant is --

14           MS. FONZONE:  -- that the operative complaint --

15           THE COURT:  What Defendant is in one of these four

16  that you think you have a claim against?

17           MS. FONZONE:  All of those four and everyone -- well,

18  Mr. Oteri is the lead Defendant.  How can he not be -- there

19  would be no case for him.

20           THE COURT:  Judge Davis dismissed him.  Judge Davis

21  dismissed him from the case.  His order says that.  His opinion

22  says that.

23           MS. FONZONE:  There's an order.  He says the

24  operative complaint is July 5th of 215 -- 2015.

25           THE COURT:  After his rulings, the facts in that

1   complaint, but after his rulings.  It doesn't mean the

2   Defendants that were listed in that complaint are still listed

3   after he dismissed them.

4           MS. FONZONE:  The operative complaint according to

5   Judge Davis is July 7th, 2015.  All of these other

6   Defendants --

7           THE COURT:  That doesn't mean they're still

8   Defendants.

9           MR. SHOTLAND:  I think that's what the word operative

10  means, that this is the complaint -- he meant that this

11  complaint is the complaint at issue, Your Honor, respectfully.

12          THE COURT:  But that -- a complaint could be at issue

13  after a judge grants a motion to dismiss for various Defendants

14  in the complaint.

15          MS. FONZONE:  There was an order and it's on the

16  docket, Your Honor.  He said July 7th, 2015 is the complaint at

17  issue including all of these Defendants, including the state

18  supplemental claims where the other Defendants, after they

19  dragged me through the system being the injured crime victim,

20  they knowingly dragged me through the system.  And that's why

21  these other --

22          THE COURT:  Nobody dragged you through the system.

23  Why are you saying that?

24          MS. FONZONE:  Because I was a victim of aggravated

25  assault twice.  First by Joe Oteri, the lead Defendant.  Later,

1    by Kelechewiscky, police officer.  I mean, if we could continue

2    and complete discovery, you know, we can make that available to

3    Your Honor.

4                THE COURT:  Mr. Shotland says he gave you everything

5    that the City has a long time ago.

6                MS. FONZONE:  I disagree.

7                THE COURT:  There's nothing left to give.

8                MS. FONZONE:  I disagree.  He has provided nothing

9    in --

10               THE COURT:  He's an officer of the Court.  I have to

11   take him at his word.

12               MS. FONZONE:  Well, so am I, Your Honor.

13               THE COURT:  Well, technically, you're not.

14               MS. FONZONE:  Well, that's not true.  Technically, I

15   am.

16               THE COURT:  All right, well, so your position is you

17   are in this case.

18               MS. FONZONE:  I requested document production.  I got

19   nothing from him in that.  He is -- his Defendant, it's the

20   City.  Everyone that he represents did not answer

21   interrogatories sufficiently or at all.  There's been no --

22               MR. SHOTLAND:  Judge --

23               MS. FONZONE:  -- depositions.  I mean, I keep -- you

24   know, I thought I had an attorney, Ms. Middleton.  She stood

25   here.  She said on the phone to you December 12th she was

1    representing me.  I didn't find out until I called your Clerk

2    in late February that she wasn't representing me.

3              And she won't return my attorney-work product, my

4    transcripts, my materials, which you know, is just incredulous

5    to me.  She's an officer of the Court.

6              THE COURT:  Where's her office located?

7              MS. FONZONE:  Philadelphia.  I have gone to her

8    office.  I have called.  I have emailed.  The email stopped in

9    February.

10             THE COURT:  You should go to the Philadelphia Bar

11   Association and make a complaint.

12             MS. FONZONE:  I went to the state bar.

13             THE COURT:  They have an attorney complaint

14   association.

15             MS. FONZONE:  So does the state.

16             THE COURT:  They're supposed to hire somebody to

17   mediate and try to resolve it in a swift fashion.

18             MS. FONZONE:  I didn't go to the Philadelphia Bar,

19   Your Honor.

20             THE COURT:  Well, please go immediately to the

21   Philadelphia Bar Association.

22             MS. FONZONE:  I mean, I relied on --

23             THE COURT:  Tell them --

24             MS. FONZONE:  -- on her helping me as co-counsel with

25   this case.

1          THE COURT:  Well, evidently, she's not.  I don't know

2     if she got sick or what she said, but she's not.

3          MS. FONZONE:  She said she would do the depositions.

4     She said a lot of things.

5          THE COURT:  What do you want me to do?

6          MS. FONZONE:  Well, I need time to get, you know,

7     other counsel to help me.

8          THE COURT:  You're not ready to try this case in

9     July?

10         MS. FONZONE:  No, Your Honor, I'm not.  I can't

11     possibly do my own trial.  They disabled me.

12         THE COURT:  Well, if you can't get an attorney to

13     represent you --

14         MS. FONZONE:  I didn't say I can't.  I'm in the

15     process.

16         THE COURT:  Well, it's been seven years.

17         MS. FONZONE:  I did have an attorney.  He withdrew

18     because of his medical problems.  And, by the way, she has my

19     interview with Mr. Bailey, which is a substantial bit of

20     information that I would like to have to give to a prospective

21     attorney.

22         THE COURT:  Mr. Shotland, what's your position?

23         MR. SHOTLAND:  Your Honor, I do have an issue with

24     one of my clients being in North Carolina and not being able to

25     come up in July to testify.

1          I would propose to the Court that he testify either

2     via video conference and video deposition from down there.

3          THE COURT:  All right, all right, but let me just say

4     this.

5          MS. FONZONE:  That aside, we're ready to go.

6          THE COURT:  Let me say this.  This is the first time

7     I have heard that this attorney, and you were here that day

8     when she was on the phone, correct?

9          MR. SHOTLAND:  Yes.

10         THE COURT:  Said she was going to take the case.  She

11    claims she took her file and she's -- right now, Ms. Fonzone is

12    saying she still has her file.  So I don't know how I possibly

13    could make her try the case.

14         MR. SHOTLAND:  Understood, Your Honor.

15         THE COURT:  So that's going to necessitate a

16    continuance for at least till the fall or more.  But I'm going

17    to -- I have to give you deadline to get an attorney.

18         You can't keep coming back every month and say, I

19    don't have an attorney, I don't have an attorney, I don't have

20    an attorney.

21         But I will grant you this continuance.  And I will

22    give you a chance to go to the Philadelphia Bar Association.

23         MS. FONZONE:  Yes, Your Honor.

24         THE COURT:  And I will give you a chance to get your

25    file back, but I want you to send my office a letter or some

1   proof or something that you made efforts to get your file and

2   whether you got it or not.  And then I'll schedule a status in

3   this case.

4             And I understand he has some family matters, too.

5   You're going to be unavailable soon, right or now or what

6   the -- do you have a baby?

7             MR. SHOTLAND:  Well, Your Honor, my wife had a baby

8   on last Thursday --

9             THE COURT:  Oh.

10            MR. SHOTLAND:  -- this past Thursday.  I'm going to

11   be leave -- taking paternity leave from September 16th until

12   October 11th.

13            THE COURT:  All right.

14            MR. SHOTLAND:  But if she goes back to work, I go

15   home with the baby.  We're going to stagger it.

16            THE COURT:  So till October 11th?

17            MR. SHOTLAND:  Well, from -- I'm working all summer

18   long.  She's out, and she goes back to work, and I will be out

19   for a month.

20            THE COURT:  So you're going to be out -- you're going

21   to leave when?

22            MR. SHOTLAND:  September 16th is when I leave for

23   paternity leave.

24            THE COURT:  Now I don't see that we can try this case

25   till after October 11th.  So that gives you more time.

1          MS. FONZONE:  Thank you, Your Honor.

2          MR. SHOTLAND:  If I may, just because there does seem

3   to be a lot of confusion with regard to discovery.  And

4   hopefully, we can address that so that in the interim, there

5   are no issues that are raised before the Court.

6          Ms. Fonzone sent fairly standard discovery to the

7   four Defendants that was answered three years ago.  And she

8   hasn't identified what her issues are with their responses.  I

9   don't know if she has any.

10         But in addition to those interrogatories and requests

11   for production, she sent I think 24 or 25 sets of

12   interrogatories out to non-defendants.

13         And I think the crux of her discovery issue is that

14   none of those people who are -- they're unrepresented, none of

15   those people responded to her request -- her discovery request

16   because they're not in the case.

17         They're not involved.  And there are no plans for me

18   to contact these people to have them answer those questions,

19   because they're not part of this case.

20         THE COURT:  And you don't represent them?

21         MR. SHOTLAND:  I do not represent them.  So I -- I

22   don't know if the Court should take a stance on that issue, but

23   I think it may be helpful to explain the discovery process to

24   Ms. Fonzone at least with respect to nonparties.

25         THE COURT:  All right, he only has to provide you

1    answers for the four Defendants that we all feel now are

2    officially in the case.  He doesn't represent anybody else.

3              MS. FONZONE:  I understand that.

4              THE COURT:  So anybody else you sent --

5              MS. FONZONE:  Some are fact witnesses.

6              THE COURT:  Anybody else you sent interrogatories to

7    or subpoenas to or whatever, that's between you and those

8    people.

9              MS. FONZONE:  I understand.  Some are fact witnesses.

10   And I believe that he does also represent the City of

11   Philadelphia as the solicitor, the Assistant City Solicitor for

12   the City of Philadelphia.  The City of Philadelphia is a

13   Defendant, Your Honor.

14             THE COURT:  Well, they're not a Defendant.

15             MS. FONZONE:  I think the Riverside Prison is also a

16   Defendant, the warrant unit.

17             THE COURT:  It says -- they're not in the complaint.

18             MS. FONZONE:  The City of Philadelphia is certainly a

19   named Defendant in the complaint.

20             MR. SHOTLAND:  Your Honor, my understanding of --

21             MS. FONZONE:  I mean, the police work for the City of

22   Philadelphia.  They're employed by the City of the

23   Philadelphia.

24             THE COURT:  Well, they're not on the back end as a

25   named Defendant.

1          MR. SHOTLAND:  That's just incredulous to me.  I

2   mean, it's -- on a July 7th, 2015 complaint, they're certainly

3   listed as one of the Defendants.

4          THE COURT:  All right, Mr. Shotland?

5          MR. SHOTLAND:  My understanding of Judge Davis' order

6   and opinion in the summary judgment motions was that the City

7   was in the case with respect to a premises liability claim that

8   Ms. Fonzone has for the injuries that, I guess, were suffered

9   as a result of negligent -- negligence at Citizens Bank Park,

10  meaning something was unnecessarily dangerous and she was

11  harmed by it.

12         That claim doesn't make any sense to me because she

13  hasn't claimed to have been -- tripped over a -- you know, a

14  sidewalk.

15         THE COURT:  An exposed piece of metal or something

16  like that.

17         MR. SHOTLAND:  Right.  But that -- my understanding

18  of Judge Davis' order was that claim did remain for some

19  reason.

20         THE COURT:  All right.  Well, it's been so long --

21         MS. FONZONE:  The City of Philadelphia owns the

22  stadium where the incidents occurred, Your Honor, respectfully.

23         THE COURT:  What?

24         MS. FONZONE:  The City of Philadelphia owns the

25  stadium where I was seriously injured.  That's why they're

1    named as Defendant.  The Phillies are the lessee of the

2    stadium.  Joe Oteri --

3              THE COURT:  The owner isn't always responsible for

4    injuries that occur, if the injuries are inflicted by a third

5    party.

6              MS. FONZONE:  Well, I understand that, but --

7              MR. SHOTLAND:  And that's effectively my point, Your

8    Honor.  She claims to have been assaulted.  She hasn't claimed

9    that there was anything wrong with Citizens Bank Park that

10   caused her injury.

11             So I don't think there is a premises liability claim

12   against the City, but that what was in the judge's opinion.

13             THE COURT:  All right.

14             MS. FONZONE:  There was a negligent hire and a

15   negligent supervision by the City of the police officers that

16   assaulted me knowingly and intentionally.

17             MR. SHOTLAND:  Your Honor, that's not a claim that

18   can be made based on the Tort Claims Act.  You can't bring a

19   suit for negligent hiring of a police officer.  That's barred

20   by law.

21             MS. FONZONE:  Do you have a cite for that?

22             MR. SHOTLAND:  It's the Pennsylvania Tort Claims Act.

23   There's eight exceptions.  Negligent hiring isn't one of them.

24             THE COURT:  Pennsylvania --

25             MR. SHOTLAND:  And one of the exceptions is a

1    violation of constitutional rights, because clearly, they

2    violated my constitutional and civil rights.

3              THE COURT:  And you have a claim for that against the

4    individual officers.  The City did not violate your individual

5    rights.  It's the same as the 1983 action.

6              MS. FONZONE:  Yes, it is a 1983 action.

7              THE COURT:  You have to sue a person.  You have to

8    sue a person.  You can't sue an entity.  Anyway, what I was

9    also going to say is it's been a while since I read Judge

10   Davis' opinion, so maybe I need to re-read his opinion.

11             MS. FONZONE:  I don't understand how the lead

12   Defendant can be let out of this case.  There would be no case

13   except for Oteri.

14             THE COURT:  In fact, it says Oteri terminated

15   6/3/2015.

16             MS. FONZONE:  Yes, and then July 7th after that,

17   Judge Davis said the operative complaint was July 7th, 2015.

18   The amended complaint that I filed, which I added other

19   Defendants in supplemental state claims after they dragged me

20   through the system, maliciously prosecuted me, knowing that I

21   was a seriously injured victim.  And that's why that case drug

22   (sic) on so long.

23             THE COURT:  What is pretty -- it says granted in

24   part, denied in part.

25             MS. FONZONE:  The other Defendants were added

1    including the, you know, malicious prosecution after I had the

2    case dismissed myself August 22nd, 2012.

3            They didn't give me notice that they appealed it,

4    even though I dismissed it with prejudice.

5            THE COURT:  August 22nd, 2012?

6            MS. FONZONE:  Yes, I had it dismissed with prejudice.

7    I'm talking about the criminal case against me, Your Honor.

8    The case was dismissed.

9            And they went to a different judge to reinstate the

10   case and didn't even serve me notice of that.  They denied me

11   my constitutional rights.

12           The case was dismissed with prejudice and they

13   dragged it all.  And, you know, they went to a different judge

14   to do that.

15           I mean, there was serious prosecutorial misconduct,

16   especially by Elizabeth Khati (phonetic).  And that's why she

17   was named in this complaint.

18           THE COURT:  Which complaint?

19           MS. FONZONE:  My amended complaint of July 7th, 2015.

20           MR. SHOTLAND:  Your Honor --

21           MS. FONZONE:  I mean, I believe that as the City

22   Solicitor, Mr. Shotland, also represents Riverside, that

23   Correction Officer Fisher, the bench warrant unit.

24           I mean, they broke into my mother's home in the

25   middle of the night two days after I didn't appear.  I had

1   filed two weeks prior to that and got certified green cards

2   back.

3               THE COURT:  A few days after you didn't appear for

4   what?

5               MS. FONZONE:  For the disorderly conduct charge.  I

6   didn't appear because I had an appointment with my

7   cardiologist.

8               THE COURT:  You mean before it was dismissed or after

9   it was dismissed?

10               MS. FONZONE:  Before.

11               THE COURT:  So the --

12               MS. FONZONE:  I didn't appear because I had a lawyer

13   there.  Apparently, he didn't tell the judge why I wasn't

14   there.  I filed, and just to be sure, I filed a continuance.

15               THE COURT:  They go out and serve a warrant for

16   disorderly conduct complaint?

17               MS. FONZONE:  Yeah, they did.

18               THE COURT:  In Philadelphia?

19               MS. FONZONE:  Philadelphia stormed in like the

20   Gestapo in the middle of the night.  You know, my mother and I

21   both could have had a heart attack.

22               They dragged me to -- you know, first I went to the

23   hospital because I wanted the atrial fibrillation.  I said you

24   better take me to the emergency room.

25               They did and I would have been admitted, however,

1    when you're taken to the Court in handcuffs and shackles, the

2    doctors just want to get you out of there.

3            So they took me to Riverside Prison.  It was Friday

4    morning.  Instead of taking me to the -- to get the bench

5    warrant released, they didn't take me to the Court.

6            So I was in the prison all weekend, you know, trying

7    to get my family to hire some -- a new lawyer to get me out of

8    there.

9            I was supposed to go to bench warrant court Monday.

10   That was scheduled for Monday.  Somehow, I didn't get out of

11   there until Wednesday, thereby missing a very important case

12   that I had an argument on on Tuesday, that was September 27th.

13           I didn't get out of there six days.  You can only

14   held on bench warrant court, Rule 150(A)(5) three days.  They

15   kept me in there six days.  That's why I put these other

16   Defendants on my amended complaint, Your Honor.

17           MR. SHOTLAND:  Your Honor, there may be a

18   misunderstanding with respect to -- so none of that is part of

19   this case.  None of that --

20           MS. FONZONE:  I object.

21           MR. SHOTLAND:  So --

22           MS. FONZONE:  It certainly is.

23           MR. SHOTLAND:  She may have put names on the

24   complaint, but she's got to serve those people.  They're not

25   represented by anyone.

1          They've been taking no part in this proceeding.

2     They're not Defendants in the case.  They've never been

3     Defendants in the case.

4                MS. FONZONE:  Objection.

5                MR. SHOTLAND:  They have no notice.  Those -- if she

6     has claims against these people, they're way out of statute.  I

7     think what we need to do is identify what is this case about?

8                It's about those four officers that she's suing for

9     what happened inside Citizens Bank Park.  Everything else that

10    happened afterward --

11               THE COURT:  Or outside.  Or outside, inside, outside.

12               MR. SHOTLAND:  Or outside.  Or at the station.

13               THE COURT:  At the stadium.

14               MR. SHOTLAND:  Whatever their involvement was, that's

15    what this case about.  It's not about anything that happened

16    afterwards.

17               MS. FONZONE:  Objection.  They all arose out of this

18    one incident of October 6th, 2010.  None of this would have

19    happened without that.

20               THE COURT:  But they weren't named Defendants and you

21    didn't serve them.  And the statute of limitations is going --

22               MS. FONZONE:  They were served, Your Honor.  They

23    were all served and he represents many of these Defendants.

24    Everybody connected to the City, employed by the City, Mr.

25    Shotland represents.

1          THE COURT:  He does not represent them.  He

2     represents who he enters his appearance for.

3          MS. FONZONE:  He's the City Solicitor.  He represents

4     --

5          THE COURT:  He's not the City Solicitor.

6          MS. FONZONE:  -- every Defendant -- yes, he is.  He's

7     assistant --

8          THE COURT:  He's an Assistant City Solicitor.

9          MS. FONZONE:  Well, Assistant City Solicitor.

10          MR. SHOTLAND:  I'm a deputy, Your Honor.

11          MS. FONZONE:  Deputy.

12          THE COURT:  Deputy Solicitor.

13          MS. FONZONE:  He represents all of the City

14     employees.

15          THE COURT:  So you could only say the Solicitor

16     represents the City, not individual solicitors.

17          MS. FONZONE:  Well, he's the Assistant City

18     Solicitor.  He represents all of the City employees.  And they

19     were served.

20          MR. SHOTLAND:  That's not how it works, Your Honor.

21          THE COURT:  Where is it on the record that they were

22     served?

23          MS. FONZONE:  They were all served.

24          THE COURT:  I'm going through the docket transcript

25     as we're speaking.

1          MS. FONZONE:  They were all served and they were all

2     served with interrogatories.  And I don't have all of that

3     information with me, but I do have it, Your Honor.

4          THE COURT:  Well, maybe they were served with

5     interrogatories.  That doesn't mean they were served.

6          MS. FONZONE:  No, they were served with the

7     complaint, this complaint.  I mean, I know he's trying to, you

8     know, get out of, you know, liability for these other

9     Defendants, but you know, that's not the way it works.

10          THE COURT:  He's not trying to get out of anything.

11     He wants to get the case tried, too.

12          MS. FONZONE:  Well, that's too bad.  They destroyed

13     my life.  It's not that simple.

14          THE COURT:  Don't you want to get the case over?

15          MS. FONZONE:  I want it properly handled.  And I

16     can't do everything myself and I shouldn't have to.

17          THE COURT:  You should be able to get all the damages

18     you're claiming against one of these four officers.

19          MS. FONZONE:  Against one of them?

20          THE COURT:  Well, one or all or --

21          MS. FONZONE:  This is, you know --

22          THE COURT:  -- whatever, but the City has money.  A

23     verdict against any of them --

24          MS. FONZONE:  This is a conspiracy --

25          THE COURT:  -- the City would have to pay.

1          MS. FONZONE:  -- to deprive me of my civil and

2     constitutional rights, Your Honor, by these police officers and

3     these assistant prosecutors.

4          They did no investigation.  All they did was slander

5     and libel me throughout this, treated me as a Defendant, rather

6     than the innocent crime victim that I was.

7          I mean, I was taken to the emergency room.  Did

8     anybody bother to talk to Addison Ramon (sic), Sergeant Ramon?

9     No.

10          And he was, you know, I gave him that information.  I

11     gave the police that information.  Nobody bothered to talk to

12     him.  He was the one that saw all my bruises and swelling and

13     he said you need to go to the emergency room.

14          They hid for two years, the police report that was

15     generated when the two officers took me to the emergency room.

16     They hid exculpatory evidence.

17          There were four discovery violations in municipal

18     court.  There were Brady violations.  They had exculpatory

19     evidence, including the 911 CD they hid for two years.

20          That should be given to the judge right away.  And I

21     would not have been treated like the Defendant.  I would have

22     been treated like the victim.

23          THE COURT:  You're talking about problems in your

24     criminal case.

25          MS. FONZONE:  But that's what -- that's why there

1    were all these other Defendants treated me -- mistreated me, to

2    try to cover up for what the police and security guard did to

3    me.

4         THE COURT:  That may be a separate case.  That's

5    not -- this case is about what happened to you at the Citizens

6    Bank Park --

7         MS. FONZONE:  It's all connected and Black v. Bear

8    (phonetic) connects it.  The conspiracy, Black v. Bear.  It's

9    in this complaint, July 7th, 2015.

10        THE COURT:  All right, I need to review the record.

11   You need to get your file.  You need to get an attorney.  I'm

12   going to continue the trial in this case to a later date.

13        And I'm going to schedule a status conference in

14   approximately 30 days, so everybody can report to me where, you

15   know, where the case is at.

16        In the meantime, I'll review the file.  I'll review

17   the docket.  I'll read Judge Davis' opinion and we'll go from

18   there.

19        MR. SHOTLAND:  Thank you, Your Honor.

20        MS. FONZONE:  Thank you.

21        THE COURT:  Thank you.  Everybody have a safe trip

22   back.

23        MS. FONZONE:  You, too.

24        THE COURT RECORDER:  All rise.

25     (Proceedings concluded at 3:48 p.m.)

1                              **CERTIFICATE**

2

3

4            I, Chris Hwang, court approved transcriber, certify

5   that the foregoing is a correct transcript from the official

6   electronic sound recording of the proceedings in the above-

7   entitled matter.

8

9

10

11

12

13   _____          July 8, 2019

14   Chris Hwang                  Date

15   Transcriber

16

17

18

19

20

21

22

23

24

25