IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

JO ANN FONZONE AKA JUDY MC GRATH ,         DISTRICT COURT NO. 12-5726

PLAINTIFF

CIVIL ACTION

V.

JOE OTERI, ET AL, DEFENDANTS

PLAINTIFF'S MOTION TO REINSTATE ALL DEFENDANTS IN THIS CASE AS PER THE AMENDED OPERATIVE COMPLAINT FILED JULY 7, 2015

Preliminarily, the first District Court Judge presiding on this injury action , Judge Davis, who

retired in October 2017, had ruled that the operative complant in this matter was the Amended

Complaint filed by Plaintiff July 7, 2015.

Entry 51 of the docket states ALL PARTIES ARE INSTRUCTED THAT THE OPERATIVE COMPLAINT IN THIS MATTER IS THE DOCUMENT ENTITLED " AMENDED COMPLANT FILED JULY 7, 2015 .THIS DOCUMENT IS PROPERLY REFERRED TO AS "THIRD AMENDED COMPLAINT'. SIGNED BY HONORABLE LEGROME D. DAVIS ON 7/22/15. 7/23/15 ENTERED AND COPIES MAILED TO PRO SE AND E-MAILED. (mbh) (Entered 07/23/2015).

Originally, a complaint was filed by Plaintiff's then counsel, who withdrew in 2013 because of his

medical problems.Since that time, Plaintiff has done all of the legal work, has had to request some

continuances and a stay because of her many medical problems, surgery and hospitalizations from

the injuries which are the subject of this case. Without the lead defendant Oteri, there would be no

injury case, as he injured the Plaintiff and then a half hour later she was injured a second time by

others because of his false implication of her . All claims form part of the same case because they

derive from the same set of nucleus operative facts. 28 U.S.C.A. Sec. 1367 (a), The amended

complaint relates back to the date if the original pleading asserts a claim that arose out of the

conduct or occurrence set out in original pleading or the parties knew or should have known that

the action wold have been brought against them. FRCP 15All parties were on notice by their own

misconduct that they could be defendants.There was a conspiracy by Oteri, poiice, prosecutors and

some lawyers to treat the injured victim as a defendant and protect the violent perpetrstors.

Plaintiff called 911 from the cell room after officer keleweschky threw her agaisnt the wall the first time becasue she feared for her life. The second time he threw her agaisnt the wall, he knew she called for help and believed she had a camera phone and began to strike her repeatedly on her chest until he got the phne from her.

After Judge Davis retired , the case was sent to the District Court in Reading, where it was difficult for Plaintiff to appear. Among the many injuries she suffered from the two incidents, was a serious right shoulder rotator cuff injury which prevented her from driving long distance ,had to get a friend or family member to drive her for each appearance . Permanent cardiac cnditions, major spine surgery, PTSD, migraines, concussion, tinnitus,right ear deafness, right hand and arm weakness, chronic pain, are some of the other medical problems Plaintiff suffered and will endure the rest of her life. Oteri injured her head first with his pushng and pulling her so her head hit the seat in front of her, later the police caused injuries to her head.

Somehow, neither District Court Reading Judge Schmel or the Federal Magistrate who now presides(upon Motion by Plaintiff to move case back to Philadelphia) was aware of the docket entry #51 that the operative complaint was the Amended complaint of July 7, 2015. Plaintiff mentioned this during phone and status conferences but defense counsel objected to her statements to mislead the Court.Other defendants ignored Plaintiff's pleadings and Interrogatories by failng to reply.

Another fact brought to Plaintiff's attention by email of Magistrate's order of June 5, 2020 phone conference was that the case was closed September 30, 2019. Ths is a totally false and was mentioned several times to the District Court clerk to no avail., because the Federal courts are closed.This untruth has prejudiced Plaintiff in her quest to obtain counsel or co-counsel to help her. Other facts in this matter which are important include: Plaintiff had the criminal charges dropped August 22, 2012 with prejudice, but because the prosecutor went to different Municipal court judges each time and falied to serve or give (Notice and Opportunity to Ms. Fonzone )with their Appeal, it went on and on wrongly and unconstitutionally. Moreover, to the best of Plaintiff's

belief, knowledge and information, there is exculpatory evidence -videotape at Citizens bank park and the Jefferson emergency Room ,fingerprints,which exist which have not  been turned over to Ms. Fonzone in direct violation of her constitutional rights , according to  Brady v. Maryland , though she requested  all  police reports and audio tape and videotape since the malicious prosecution of an injured victim began in 2010.There were four discovery violations by prosecutors in Municipal court.

Ms. Fonzone was arrested  without probable cause, she was not arrested at her seat, but Oteri acted like a police officer  but cannot determine probable casue, then maliciously prosecuted and denied her civil  rights, equal protection of the law and  constitutional  rights to due process from October 6, 2010 to 2014. All of the defendants acted in concert to deprive Plaintiff of her $1^{st}, 4^{th}, 5th, 6^{th}, 14^{th}$ Amendment rights in a a 42 U.S.C. 1985 (3) conspriacy  to prejudice  an individual  motivated by the class based discrimination animus designed to deprive women and whistleblowers of the right to speak , cheer for her team, and assemble. Private conduct of non-government employees is converted to state action for  purposes of  this Sec. 1983 action.Black v. Bayer, C.A. 3rd (Pa. 1982), 672 F.2d 309.

Dated:  August 3, 2020

Respectfully, submitted,

Jo Ann Fonzone, Esquire  aka Judy Mc Grath

| | | |
|---|---|---|
| | | HONORABLE LEGROME D. DAVIS ON 7/7/15. 7/8/15 ENTERED AND COPIES E-MAILED AND MAILED TO PRO SE PLFF.(kw, ) (Entered: 07/08/2015) |
| 07/08/2015 | 48 | PETITION for leave of court to file supplemental claims as included as Counts VII and VIII in amended complaint, Certificate of Service, filed by PRO SE PLFF JOANN FONZONE. (kw, ) (Entered: 07/08/2015) |
| 07/20/2015 | 49 | Response to Petition to Amend re 48 Application/Petition by JOE OTERI, PHILLIES. (Attachments: # 1 Certificate of Service) (FOSTER, ROBERT) (Entered: 07/20/2015) |
| 07/21/2015 | 50 | ANSWER to 46 Amended Complaint by OFFICER BEE, OFFICER KELECHEWISCKY, OFFICER KOVAC, LESINETTE ORTIZ. (SHOTLAND, AARON) (Entered: 07/21/2015) |
| 07/21/2015 | 🔒 | (Court only) ***Issue Joined (fb) (Entered: 07/22/2015) |
| 07/22/2015 | 51 | ORDER THAT PLAINTIFF'S REQUEST FOR LEAVE OF THE COURT TO INCLUDE SUPPLEMENTAL CLAIMS IS DENIED. PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL TO ASSIST HER IS DENIED. ALL PARTIES ARE INSTRUCTED THAT THE OPERATIVE COMPLAINT IN THIS MATTER IS THE DOCUMENT ENTITLED "AMENDED COMPLAINT" AND DOCKETED AS "SECOND AMENDED COMPLAINT" FILED JULY 7, 2015. THIS DOCUMENTS IS PROPERLY REFERRED TO AS "THIRD AMENDED COMPLAINT". SIGNED BY HONORABLE LEGROME D. DAVIS ON 7/22/15. 7/23/15 ENTERED AND COPIES MAILED TO PRO SE AND E-MAILED.(mbh, ) (Entered: 07/23/2015) |
| 08/11/2015 | 52 | PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY TO DEFENDANTS ANSWER PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 7(a)(7) filed by JOANN FONZONE.. (Attachments: # 1 REPLY, # 2 REPLY)(lbs, ) (Entered: 08/11/2015) |
| 08/11/2015 | 53 | PETITION FOR RECONSIDERATION OF ORDER OF JULY 23, 2015, REQUEST FOR IFP STATUS, AND REPLY TO DEFENDANTS 12(B)(6) MOTION OF JULY 20, 2015 by JOANN FONZONE. (lbs, ) (Entered: 08/11/2015) |
| 08/19/2015 | 54 | ORDER THAT PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY TO DEFENDANTS' ANSWER IS DENIED. SIGNED BY HONORABLE LEGROME D. DAVIS ON 8/19/15. 8/20/15 ENTERED AND COPIES MAILED TO PRO SE AND E-MAILED. (mbh, ) (Entered: 08/20/2015) |
| 08/19/2015 | 55 | ORDER THAT PLAINTIFF'S REQUEST FOR RECONSIDERATION IS DENIED. PLAINTIFF'S REQUEST FOR IN FORMA PAUPERIS IS DENIED WITHOUT PREJUDICE. SIGNED BY HONORABLE LEGROME D. DAVIS ON 8/19/15. 8/20/15 ENTERED AND COPIES MAILED TO PRO SE AND E-MAILED.(mbh, ) (Entered: 08/20/2015) |
| 09/08/2015 | 56 | |

# United States District Court
# Eastern District of Pennsylvania (Allentown)
## CIVIL DOCKET FOR CASE #: 5:12-cv-05726-JLS
## Internal Use Only

FONZONE v. OTERI et al
Assigned to: HONORABLE JEFFREY L. SCHMEHL
Cause: 42:1983 Civil Rights Act

Date Filed: 10/09/2012
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**JOANN FONZONE**
*A/K/A JUDY McGRATH*

represented by **JOANN FONZONE**
2242 TILGHMAN STREET
ALLENTOWN, PA 18104
PRO SE   *FD 203914*

**DONALD A. BAILEY**
4311 N. 6TH STREET
HARRISBURG, PA 17110
717-221-9500
Fax: 717-221-9400
Email: adriennemamma6@aol.com
*TERMINATED: 03/30/2015*
*LEAD ATTORNEY*

V.

**Defendant**

**JOE OTERI**
*TERMINATED: 06/03/2015*

represented by **ROBERT J. FOSTER**
REGER RIZZO KAVULICH &
DARNALL, LLP
CIRA CENTRE 13TH FL
2929 ARCH ST.
PHILADELPHIA, PA 19104-2899
215-495-6500
Email: rfoster@regerlaw.com
*TERMINATED: 06/03/2015*

**Defendant**

**OFFICER KELECHEWISCKY**

represented by **AARON SHOTLAND**
CITY OF PHILADELPHIA LAW
DEPT
1515 ARCH ST., 14TH FL
PHILADELPHIA, PA 19102

IN  THE UNITED STATES DISTRICT COURT  FOR THE EASTERN
DISTRICT OF PENNSYLVANIA


JO ANN FONZONE  AKA JUDY MC  GRATH,
         PLAINITFF                          CIVIL ACTION LAW
                                         12-5726-LDD
         VS.


JOE OTERI,  PHILLIES ORGANIZATION,  OFFICER KEECHEWISCKY,
OFFICER LESINETTE ORTIZ, OFFICER BEE, OFFICER KOVACS,  JOHN Evans
CITY OF PHILADELPHIA, RIVERSIDE PRISON, C.O .FISHER,  PHILA WARRANT
UNIT,PHILA DEFENDER ASSOCIATES, RICHARD PATTON, ELIZABETH KOTCHIAN,
DAVID AYERS,GREG ENGLE



           DEFENDANTS               JURY TRIAL DEMANDED

                     AMENDED COMPLAINT

Introductory Statement

    1.   This is an amended complaint brought under 42 USC Sec. 1983 for violations of the Fourth

Amendment to the U.S. Constitution.  Plaintiff, a thin fifty two year old woman , attended a Phillies

playoff  baseball game at Citizens  Bank Park  ( the premises is owned by defendant Philadelphia)

on October 6, 2010 where she was harrassed and  assaulted  then falsely implicated  by a  security

guard whereupon she was  later wrongly  arrested, without probable cause , and  while in police

custody beaten , battered   brutalized so severely that she was taken to the Emergency Room by

police after transported to the  1ˢᵗ police district. The most serious injury Plainitff suffered was

blunt force chest trauma  which caused  a permanent heart condition . Criminal charges against

Plaintiff were terminated in her favor August 22, 2012.Unbeknownst to Plaintiff at the time of

filing this action,  ADA Kotchian  appealed the Judge's decision and neglected to provide Notice to

Plaintiff. Months later  , the Judge  informed Plaintiff that his decision had been appealed.

Plaintiff  suffered  severe physical and emotional damages as a result of the incidents of October 6,

2010 and  as a result of  the incidents of October 6, 2010 being unjustly treated as a criminal

defendant when she was actually the victim of aggravated assaults, harrassment, stalking.

She did noting to to deserve or invite the injuries she received as the hands of the security guard and police officer defendants or the abuse of process and ineffective representation of defense lawyers who slandered her and assisted the prosecution. The Phillies ,the City of Philadelphia ,defender associates, appointed attorney patton, and 3 asst. District attorneys violated plaintiff's civil rights and 1st, 4th, 5th 6th and 14th Amendment constituional rights and their duty of care and are sued in certain supplemental state claims.

## Jurisdiction and Venue

2. Original jurisdiction to hear alleged violations of the constitutional rights of American citizens, and others, is conferred on this court by 28 USC §1331 and 28 USC §1343(a) (3) & (4), via the remedial statute 42 USC §1983, 1985(3).

3. This court is also authorized to hear supplemental state claims by virtue of 28 USC §1367(c).

4. A jury trial is demanded.

5. Punitive damages will be demanded at an appropriate time because the actions of these defendants were particularly egregious and irresponsible.

6. Venue is properly in this court because all witnesses, evidence, and parties are common to Philadelphia and its environs which lies within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

## Rights Violated

7. Plaintiff has a right under the Fourth Amendment to be free of excessive and unnecessary force while being taken into custody.

8. Plaintiff has a right to be free of false arrest under the Fourth Amendment.

9. Plaintiff has a right, under the Fourth Amendment, to be free of unlawful searches lacking in probable cause.

10. Plaintiff has a right under the First Amendment to be free of physical assault and retaliation for being a member of a respected profession in the United States, namely for being an attorney engaged in the practice of law.

11. Plaintiff has a right under the First Amendment to be free of retaliation for placing a phone call to 911 seeking assistance while being assaulted and not suffer retaliation therefore.

12. Plaintiff has a right under the 14th amendment not to be deprived of her property without due process of law.

### Operative Facts

13. The defendant Joe Oteri was a private security guard, who by virtue of his joint actions with Philadelphia police officers in subjecting the plaintiff to the unlawful arrest, and unlawful search and seizure and excessive and unnecessary force on October 6, 2010, was cloaked with the authority of the state and is thus liable under the law of §1983.

14. The defendants Ortiz, Kelechewiscky, and Bee, were at all relevant times, police officers employed by the City of Philadelphia(hereinafter "City" and were thus state actors on or about October 6, 2010.

15. The defendant "Phillies" is a well-known professional baseball team who regularly invites the public (one member of which was the plaintiff on October 6, 2010) to "Citizens Bank Park", owned and operated by City which also holds itself out to the public as a place to purchase entertainment opportunities in return for money.

16. The Phillies and Citizens Bank Park are located and do business in Philadelphia Pennsylvania.

17. On October 6, 2010 plaintiff traveled to Citizens Bank Park to watch the Phillies play Cincinnati in a playoff game.

3

18. Plaintiffs seat (#6) was in Section 108, Row #32.

19. During the second inning the plaintiff was standing waving her "rally towel" just as the roughly 47,000 other fans were doing when she was roughly grabbed from the right side by security guard Oteri grabbing and jerking her right arm. Oteri then left her but returned shortly thereafter with Kelechewiscky.

20. Kelechewiscky and Oteri then jostled Fonzone so fiercely that as she reacted by pulling to the left they pushed her head into the seat in front of her with great force and knocked her into the ground. While the plaintiff was being assaulted her handbag was knocked from her hands and this occurred as she attempted to retrieve it.

21. The defendants Kelechewiscky and Oteri then took the plaintiff up to the landing area above her seat section where they ordered her to stand unattended, leaving her there for approximately 10 to 15 min.

22. At this time the plaintiff began to feel pain in her head from being banged into the seat and she began to notice the effects on her body caused by the defendants mocking her into the ground.

23. Suddenly the plaintiff was grabbed with great force from behind, by the elbows, by Officers Kelechewiscky and Bee who proceeded to pull plaintiff with great force backwards with her heels dragging on the ground into a rear office type area where they had a small room.

24. Kelechewiscky and Bee were joined by Philadelphia police officer Kovac as plaintiff was thrown into a chair and her bag was taken from her.

25. Kovac began going through plaintiff's bag and Kelechewiscky began commenting when he saw plaintiff's attorney card that she was a lawyer and also had an "Internal Affairs" card from Lehigh County.

4

26. Kelechewiscky took plaintiff into a small type of holding cell and threw the plaintiff against the wall with great force causing injury to plaintiff's right side, particularly in the upper arm shoulder area.

27. Plaintiff's cell phone was in her jacket pocket and she immediately pulled it out called 911 while she was crying and complaining that she was being assaulted and that she needed help.

28. Shortly Kelechewiscky angrily entered the small holding room and, grabbing plaintiff, threw her against the wall again. At this time plaintiff went down to the ground where she was sobbing and in pain.

29. Kelechewiscky was angrily repeating "I know you have that phone", "I know you have that phone". At this time Kelechewiscky took his night stick and began forcibly hitting the plaintiff in her chest repeating again and again "give me that phone" "give me that phone". Then for reasons unknown to plaintiff Kelechewiscky repeated a couple of times "don't resist", "don't resist". This seemed strange to plaintiff because she is only 5'6" tall and weighs 114 pounds and was on her back totally traumatized in great fear. As abruptly as he came in, Kelechewiscky left.

30. Plaintiff then was taken out of the room with handcuffs being applied behind her back and was placed in a chair.

31. Later plaintiff discovered that the defendant Kovac had stolen her souvenir ticket something of great value to her and something of significant value in and of itself.

32. Two transport officers, both Philadelphia police officers, one of whom was Officer Ortiz, then took plaintiff down to the "first district"

33. At this time Ortiz photographed and fingerprinted the plaintiff even though she had extreme swelling in her right hand and her right arm was badly bruised. The plaintiff was visibly bruised and swollen and when she was observed by a Sergeant Raymon Addison he commented

that she needed to go to the hospital. Plaintiff had been handcuffed at this point for over two hours.

34. Plaintiff was then transported to Jefferson Methodist Hospital by officers Baldwin and Jenkins where she arrived at approximately 9:30 PM.

35. As plaintiff was providing her medical history she suffered a seizure as a result of her head being smashed into the seat. In short plaintiff "blacked out".

36. Plaintiff was given no access to her personal information and upon awakening found herself handcuffed to a hospital bed.

37. Baldwin and Jenkins were threatening and rude to plaintiff and after a minimum of care was provided by the hospital the plaintiff was taken to the police headquarters for several hours.

38. Plaintiff then had a video arraignment with a person named "O'Brien". O'Brien released plaintiff on her own recognizance obviously recognizing how beaten and bruised she was.

39. Plaintiff was then put out the street and began walking to the bus station but stopped at the police station on 11th Street and tried to report the assault and abuses she had suffered. She spoke to an officer named Alexander.

40. Officer Alexander would not take plaintiff's complaint telling her she had to report to "Internal Affairs" at 11th and Warden Street

41. Plaintiff suffered severe injuries as a result of the abuses by the aforementioned defendants and then was subjected to a malicious prosecution after which all charges against her were withdrawn.

6

42. Plaintiff is acquiring documents and collecting facts to bring additional claims which may take the form of requests to amend this complaint there which may be brought as a new complaint.

## Count I

### Plaintiff against Defendants Kelechewiscky and Oteri for False Arrest

43. Paragraphs 1 - 42 above are incorporated herein by reference.

Wherefore plaintiff demands judgment of the defendants jointly and severally for the deprivation of her federally guaranteed rights to be free of false arrest devoid of probable cause and lacking any proper law enforcement objective, together with damages for pain and suffering, embarrassment and humiliation, emotional distress, medical expenses and costs, cost of entertainment denied and all benefits and emoluments connected thereto, all together with fees and costs, punitive damages, attorneys' fees and such other relief as may be deemed appropriate.

## Count II

### Plaintiff against the Defendants Oteri, Kelechewiscky, and Bee for Excessive Force

44. Paragraphs 1-43 above are incorporated herein by reference.

Wherefore plaintiff demands judgment of the defendants jointly and severally for the deprivation of her federally guaranteed rights to be free of excessive force while being taken into custody, together with damages for pain and suffering, embarrassment and humiliation, emotional distress, medical expenses and costs, punitive damages, fees and costs attorneys' fees and such other relief as may be deemed appropriate.

7

## Count III

**Plaintiff against the Defendants Oteri, Kelechewiscky, Ortiz, and Bee for the Unlawful Seizure of Person and Property under Both the 4th and 14th Amendments.**

45. Paragraphs 1-44 above are incorporated herein by reference.

46. The defendants Oteri, Ortiz, Kelechewiscky, and Bee not only unlawfully seized and searched plaintiff's person but Kelechewiscky and Bee also unlawfully took plaintiff's handbag and unlawfully searched it.

47. The defendant Bee unlawfully took plaintiff's souvenir playoff ticket from plaintiff's purse and has never returned it. The souvenir ticket has a high value to be determined at time of trial.

Wherefore plaintiff demands judgment of the above-named defendants jointly and severally for the deprivation of her 4th Amendment rights in the cases of all defendants named in this Count and plaintiff also demands judgment of the defendant Bee for the violation of her 14th Amendment rights in property together with damages for pain and suffering, embarrassment and humiliation, emotional distress, fees, costs, punitive damages, attorneys' fees and such other relief as may be deemed appropriate.

55. As defendants Oteri and Kelewischky dragged Plaintiff from her seating section, then pushed her up the stairs to the concourse, she was denied her 1stAmendment rights to speech and cheer for her team.

56. Plaintiff was further denied her 1st Amendment right to speech while in police custody when she called 911 for help after defendant Kelesischky threw her against the wall .

57.Upon learning that Plaintiff had called 911 for help, as dispatch had made them aware, Plaintiff was again denied her 1st Amendment right to speak because defendant Kelewicsky threw her agains the wall a second time, and while she was on the ground, struck her chest repeatedly with his nightstick demanding that she give him her cell phone.

58. As described above defendant kelewichky assaulted Plaintiff causing serious injury because Plaintiff had called 911 for help as she feared for her life; her 1st Amendment right to speak and protect herself was violated by defendant Kelewichky.

WHEREFORE Plaintiff demands judgment of defendants Oteri and Kelewichky jointly and severally for the deprivation of her First amendment rights to speech and associate free of retaliation and violence from state actors lacking any proper law enforcement objective together with damages for pain and suffering, embarrassment, humiliation, negligent and intentional infliction of emotional distress, anguish, punitive damages for wanton and wilful disregard of Plaintiff's health and safety, attorney's fees, costs, and such other relief as may be deemed appropriate.

## Count V

Plaintiff against the City of Philadelphia (Monell Claim)  and the Phillies Organization

59. Paragraphs 1-58 above are  incorporated herein by reference.

60. The City of Philadelphia failed to properly supervise, and train the defendants  Ortiz,  Bee, Kovacs, and Kelecwicky  and discipline police officers so as to prevent the unlawful arrest, detention and  seizure of Plaintifff and consequently shares liability for their misconduct.

61. Defendant's failure to train, supervise and discipline amounts to deliberate indifference to the rights  of persons with whom the defendant police department comes into contact, including  Jo Ann Fonzone It is this failure that has created and encouraged ongoing harrassment of veterans, women,  and  government whistleblowers.

62. The deficiency in the  training, supervision, hiring, and disciplining of defendant police officers , was  an actual cause of the constitutional deprivations and injuries suffered by Fonzone.

63. The deficiency in training, supervising, and disciplining of said officers represents a deliberate indifference on the part of the defendants to the rights of veterans , women, and government whistleblowers.

64. As a direct  result  of defendants' negligence, plaintiff was subjected to emotional and physical injury , embarassment, humiliation, confinement, and deprived of her liberty, freedom, and personal property.

65. The Plaintiff had at no time committed any act in the presence of defendants, or any one of them , which constituted either a  misdemeanor or violation of any State statutes, nor was there in existence any reasonable or probable cause to believe that any crime had been committed  by her.  Further, there was not in existence at this time any warrant calling for the arrest or imprisonment of   Fonzone

66. The defendants at all times material, knew that there was a complete absence  of probable cause against Fonzone with respect to the charge for which they arrested her  , but nonetheless procured the District attorney's office to fle charges because they desired to avoid any civil liability for their illegal arrest  and  serious. Injuries.

67. The plaintiff  had a right to be free  from illegal arrest and seizure of her person , a pretext arrest"and a right o be free from  unlawful detention, the rights secured to her by the Fourth,Fifth ,Sixth and Fourteenth Amendments to the Constitution of the United States and  by 42 U.S.C. Sec. 1983.

68.
Defendants  Kelewicsky, Bee, Kovacs and Ortiz, individually and in concert with other defendants  acted under color  of state law and their official capacitites , said acts were illegal , and each defendant , individually and in concert  with the others, acted willfully, knowingly, and with specific intent to deprive plaintiff of her constitutional rights.

69. The actions and misconduct of the defendant City  in failing to train and supervise its police  pursuant to its  policy of  allowing  site arrests resulted in violations of plaintiff's constitutional rights.

70.  Defendants violated Fonzone's constitutional rights with their unnecessary aggressive  injurious  manhandling of her with no real probable cause that she was in violation of any law. The actions of defendant police officers in accordance with the City's police or custom to allow police to relycompletely on security guard to estsablish probable cause for arrest  demonstrated a deliberate indifference for purposes of failure to train and supervise.

71. Defendant Oteri certainly had  a motive to provide untrue false information to the police , his  obvious self -preserving  ramblings were that  of  a violent security guard who had  just seriously injured  a business invitee to establish sufficient probable cause for arrest .The police and the Phillies demonstrated a deliberate indifference  for purposes of failure to train and supervise when they allowed  the site arrest of plaintiff based only on  a security guard's factually inaccurate  version  of events. Defendants custom or policy of  arresting  an individual soley on the  biased  report  of  a  security guard  (that just assaulted a  business invitee woman ) resulted  in a deprivation of Plaintiff's  civil and Constitutional rights, 1st, 4th,5th, 6th ,14th Amendments.

72. Defendants City of Philadelphia and the Phillies organization , through their deliberate conduct  or deliberate indifference , were the moving forces behind the injuries to  Fonzone, both while in the seating section and later in police custody.

73. Oteri 's  continuous actions were fairly attributable to the state  as the state so far insinuated itself into a position of interdependence with the security guard that he was a joint participant in the

unconstitutional activity. After he assaulted and injured Fonzone,

Oteri and the police conspired to injure, threaten and intimidate

plaintiff in the free exercise of her constitutional right to speak ,

associate and enjoy the game ,thereby violating her First and

Fourteenth Amendemant rights. Oteri's actions continued to include

falsely implicating Fonzone, further unconsented touching and

grabbing and pushing her up the stairs, then later writing a false

affidavit in the police room in order to have Fonzone arrested.

74. On the July 13, 2013 District Attorney's office private citizen

complaint ,defendant Oteri was charged with simple assault,

conspiracy and harrassment. This complaint prepared by the district

attorney linked Oteri's private defendant activity to the government

in order to bring the conduct within the state action requirement for

1983 or 1985(3) action.

75. Oteri acted under color of law as he was the impetus and alone

responsible for involving the police and implicating plaintiff by

providing false information to the police for the arrest and

subsequent prosecution of an innocent injured woman.

76.

The security guard acted in concert with police and the police and

substituted the judgment of Oteri for their own official authority in

arresting plaintiff.

14

77. Prosecutors relied upon the opinion of security guard Oteri in

whether to prosecute the case and used his verbatim words in the

affidavit signed by officer Ortiz who was not present for a site arrest..

78. The City of Philadelphia maintains a dispatch service and implemented a policy whereby

dispatchers called the police at the exact location where the 911 called was calling from for

help. This act wrongfully informed the very officers who had assaulted plaintiff on October 6,

2010 when she phoned 911 for help from the stadium police room jail cell after Kelewichky

threw her against the wall..

79. The female dispatcher, Jane Doe in following the city's policy ,called the police

room at the stadium, (rather than another police district,) to warn the officers that plaintiff

had called 911 for help from police abuse.

80. Adhering to City policy, Police dispatcher by calling the police room and tipped off

defendant Kelewichky and other police in the police room .

81. Upon learning that Fonzone called 911, Keleewichky was infuriated , returned to the

adjacant room and again threw plaintiff against the wall, screaming at her to give him

the cell phone, and proceeded to strike her repeatedly on her chest until he finally got

her phone.

As a direct and proximate result of these violations of Fonzone's

constitutional rights, she was made to suffer grievous physical injury,

severe pain and emotional trauma, PTSD, moral injury, embarrassment,

humiliation and anguish,was deprived of her liberty, her personal and

professional reputations were severely damaged, and she was forced to

retain counsel to represent her in the criminal proceedings brought by the
Philadelphia district attorney's office.

WHEREFORE ,plaintiff demands judgment from the defendants jointly and severally for
the violations of her federally guaranteed civil and constituional rights, and seeks
damages for pain and suffering, embarrassment, humiliation, damages to personal and professional
relationships and reputation, emotional distress, compensatory and punitive damages for the reckless,
wanton, egregious, malicious disregard for the safety of plaintiff with the willful misconduct of
assault and battery and harrassment , conspiracy to deprive plaintiff of her civil and constitutional
rights, attorneys' fees, costs,and interest and such other relief as plaintiff may be entitled.

## Count VI

Plaintiff against Defendants Phillies organization and City of Philadelphia for Premises Liability

82. Paragraphs 1-81are incorporated herein by reference.

83. Defendants City of Philadelphia and Phillies organization are in the joint business of
providing entertainment events to the public , a common enterprise for the purpose of
hosting sporting and other events for profit and mutual benefit.

84. Plaintiff's relationship to the aformentioned defendants is that of of the business invitee
or public consumer.

85. On October 6, 2010, defendants City of Philadelphia and Phillies organization had
an express duty and responsibility as landowner and lessee to protect and provide
plaintiff with a safe and comfortable enviornment so that she could enjoy the play-off
baseball game for which she had purchased a ticket.

16

86. As possessors of the land , defendants  City and Phillies are liable to plaintiff for the negligent or intentional  harmful acts of defendants security guard and police which cause physical injury  Defendants  land possessors had a duty to exercise reasonable care to protect invitees  and prevent tortious acts by third persons or employees.

87. Defendants City of Philadelphia  and Phillies were aware and had notice that security guard Oteri had physically injured plaintiff after he had assaulted and pushed her  into the seat and she fell to the ground, then he went to locate a police officer ,not  to help her, but help himself establish a  cover up of his violent criminal  misconduct and assault.

88. Defendants land possessors then had a duty to respond in a reasonable manner by offering plaintiff  medical help, rather than allowing  further injury and abuse by  police officer incited to violence by a false report by security guard . As a result of defendants land possessors breach of standard of care, Plaintiff was  later falsely arrested  and suffered more physical injuries by the brutality  of defendant Kelewischky.

89. Defendants City and Phillies had a duty to discover that criminal conduct was occurring and  its business invitee was an injured  victim ,there was a duty to  protect  and  maintain control over their employees as plaintiff  does not assume the danger of being harrassed,  assaulted, battered , falsely implicated , arrested and  seriously injured by security and police , when she attends her first  major league  playoff baseball game.

90.Plaintiff could not have known  nor did she assume the risk that she

would encounter violent criminal conduct of security and police including

harrassment,  physical assault and battery escalating to  life-threatening

reckless endangernment  ,willful, wanton misconduct and  malicious

disregard for her safety while attending a game  at Citizens Bank Park , then

false arrest  without probable cause  as an intended cover -up  of defendants

injurious violence  .

91.Defendants City and Phillies had a duty to provide adequate security

and their failure to do so was a breach of its duty and a substantial factor

in causing plainitff's injuries.

92. By failing to help or prevent  the violent conduct of defendants

security guard and police ,defendants City and Phillies breached their

standard of care and plaintiff suffered physical injuries to her head ,hand

arm prior to arrest, and then false implication  into the criminal system by

a security guard who needed to  place blame on the innocent woman he

had just  assaulted.

93. As a direct result of defendants City and Phillies breach of their

standard of care, Plaintiff suffered serious physical injuries causing

permanent damages while at her stadium seat at 5:45p.m.and then again

while in police custody at 6:15p.m.

$\ell\,\mathcal{X}$

WHEREFORE plaintiff demands damages of the defendants City of Philadelphia and Phillies organization jointly and severally for violating their duty of care to plaintiff under Pennsylvania tort law(28 USC 1367 (c) premises liability ) a supplemental state claim as a business invitee or licensee standard of care is the highest duty owed to a person who is privileged to enter the premises ,for pain and suffering, injury causing disability, embarrassment, humiliation, negligent and intentional emotional distress ,moral injury, loss of enjoyment of life, loss of time,damage to personal and professional relationships and reputations. damage to and delay of other legal matters, medical expenses and costs,  punitive damages , fees, attorneys fees, and all other appropriate relief as may be deemed appropriate.

Count VII
Supplemental Claims

Plaintiff against  City owned Riverside prison ,City agents asst.district attorneys, and Defender assocs.,and Correction Officer Fisher individually for wrongful imprisonment ,Sec. 1985 (3) conspiracy to deprive Plaintiff of her civil  and constitutional rights beyond  limits of  CrimP Rule 150 (A)(1)bench warrant and City Bench Warrant Unit  For Unauthorized Disregard of Judge's Warrant Instructions , Plaintiff against City for negligent supervision,  negligent investigation, hiring

94.Paragraphs  1-93 are incorporated herein by reference.

95.Defendants  Riverside prison, CO Fisher  and the Bench Warrant Unit  are all participants in the  false  imprisonment of plaintiff  without color of legal authority or justification  from September23, 2011 at approximately 2:oo a.m. until  her release  late afternoon September 28, 2011.(Exhibit        )

96.Plaintiff was asleep in bed when the Philadelphia bench warrant unit stormed into her mother's home  with a warrant  to take her to  court  for not appearing  the previous day. Plaintiff had filed and served on September 9, 2011 the ADA by certified mail  her continuance  application and reason for  such as having a scheduled cardiologist appointment . Plaintiff also informed  her private attorney  of this and that she would not be in court  September 21, 2011.(Exhibit        )

97.The  asst. District attorney had  prior notice  that Plaintiff  had a valid medical reason for not appearing in court Septemeber 21, 2011 and  sent the Bench Warrant unit  in the middle of the night  anyway causing her and her mother  severe emotional distress with this outrageous SWAT like  intrusion.

98.En route  to Phila.  from Allentown, as the driver was exceeding the speed limit by driving 100 mph, Plaintiff  became ill from her heart condition and  had to go to the Emergency Room. Bench Warrant officers  unnecessarily placed Plaintiff in shackles and handcuffs which  instigated fear in hospital staff so as to hasten her  medical treatment  and  discharge.

2ɛ

99.Instead of being admitted into the hospital, Plaintiff was discharged because she was a

prisoner. Had she not been a prisoner, she would have been admitted and not suffered

further injury by the lack of sufficient medical care for her cardiac condition and

PTSD while at Riverside prison . The ADA and the City of Philadelphia were aware of

plaintiff's heart condition as that was the reason stated on her Continuance application .
(Exhibit    )

100.The warrant stated that Plaintiff was to be taken to court, but was taken to Riverside

on Friday morning September 23, 2011. The Unit should have followed the Judge's

instructions on the warrant and taken her to Filbert St.Court from the hospital, they did not.

101.Plaintiff spent the weekend at Riverside and trying to get her heart medication as she

was not physically well because of substituted heart meds, sleep deprivation and stress

from her cellmate 's (detoxing from heroin) threatening and violent behavior.

102.Plaintiff learned from her family, who were told by the newly retained defense

lawyer they hired , that she was to go to bench warant court Monday Seember 26, 2011.

Docket entry evidences the bench warrant court date Sept. 26, 2011. (Exhibit).

103Plaintiff was told by prison staff she was going to court and on Monday was taken

to the area with other inmates for release. Suddenly, when about to exit the door and get

on the bus, Plaintiff was taken out of line by CO Fisher. When she questioned him, he

told her she could not leave until Wednesday, Sept. 28, 2011.

104.Plaintiff was very anguished when she was not released ;she was to appear in

civil court on an important Argument in her ID theft case Tuesday September 27,

2011. Plaintiff tried to obtain her release , explainig that she was to be taken to

court and wrote to prison officials through grievances to no avail.(Exhibit    )

105.Riverside  prison officials ,  Correction officers  Bench Warrant unit and asst.district

attorneys involved in this case ,all agents of the city of Phila.,conspired and were aware that

Plaintiff was being held unlawfully without legal justification  beyond the 72 hours one can

be held on a bench warrant  in the state of Pennsylvania pursuant to PaRCrimp150 A(1).

Wherefore plaintiff demands judgement of the defendants jointly and severally for the violations of

her federally guaranteed rights together with damages for pain and suffering , embarrassment and

humiliation, emotional distress, punitive damages  in the cases of City and Phillies, medical costs ,

past , present , future, incidental expenses and costs, fees, attorneys fees, and such other relief as

may be deemed appropriate.

Count VIII
Supplemental  Claims
Plaintiff against Sargeant John Evans,  Richard Patton, the asst. district attorneys
in this matter  Ayers, Kotchian, Engel for abuse of process, malicious prosecution
without probable cause , egregious and continuous  prosecutorial misconduct,  intentionl  and
slanderous misrpresentations to the Court to deprive due process,  negligent investigation, false and
libelous police     investigative report , Brady violations, Sec. 1985(3)conspiracy to deprive
Plaintiff  1st,4th,5th & 6th ,14th Amendment constitutional  rights to due process and assistance of
counsel  resulting in unlawful summary conviction prohibited by Double jeopardy clause and
PaRCrimP 1013 & 600

106.Paragraphs 1-105 are incorporated herein by reference . Prosecutors are not entitled to

absolute immunity when they are plainly incompetent or  knowingly violate the law and

individuals constitutional rights. Hobbs v.Cappelati 899 F. Supp.2d 738 (N.D. Ill. 2012 ),

Foster v. City of Philadelphia, 2014 U. S. Dist. Lexis 143107.

107.The Defender Assocs.and asst.District attorney on this matter Ayers were aware

of plaintiff's physical health problems from injuries yet chose to misrepresent facts  in

order to get her into mental health court  since November 2010 months before she ever

appeared in court. Plaintiff was  unable to appear until July  18, 2011 as she was  being

treated for the heart conditon caused bythe police.Judge Pew ordered a courtpsych eval.

108.After Plaintiff complied with the Court to have a psych eval with anindependent psychiatrist, defendant Ayers continued to misrepresent to the Court from November 2011 to April 2012 that he did not have the reports from the psych eval though he was provided the reports from Plaintiff's counsel after the October 19, 2011 eval.

109.The deliberate delay and wrongful suppression of court ordered reports by defendant Ayers to keep this case from progressing and being resolved caused Plaintiff unneceesary time ,embarrassmsent , prejudice and emotional anguish. Fonzone objected to the unnecessary mental health eval as unconstituional and without any factual basis for their requirements and filed her objections.

110..On January 14, 2011, the Judge ordered defendant Ayers to pass discovery to Plaintiff, and this was the first of four discovery Orders violated by the prosecution

111.. On Nov. 23, 2011 , the independent JFK psych eval of October 19, 2011 was discussed by defendant Ayers and private defense counsel Frumer , though Plaintiff was diagnosed with PTSD and deemed competent to proceed.(Exhibit   )

112.On January 25,2012 , defense counsel Frumer tells the Court, " I've given the documents, (JFK psych eval report) you requested to the district attorney."

113.On April 25, 2012 defendant Ayers again misrepresents to the Court that he does not have the psych eval report and the Court then Orders another court psych eval, as Fonzone tries to give Ayers a copy of report, Court has her taken out of room.

116.On May 23, 2012, after another psych eval, Plaintiff again is deemed competent to proceed and Ayers finally admits to having the report.

23

probable cause to arrest and prosecute. And she filed Motions to Vacate . The prosecutors

conduct of the police and security guard that seriously injured Plainitff. Two other hidden police reports , one signed by Lieutenant Appleton , another Sgt. Middleton, showed that Fonzone was the confidential informant and she had a valid IA complaint .This newly discovered evidence would have changed the outcome of the case had it been presented to the Court. Three weeks later, Evans the officer that signed to have Fonzone arrested was promoted to IA and given the assignment to investigate. Despite a conflict of interest, Evans allegedly investigated and it consisted of lying to all the police officers before he interviewed them that Fonzone filed IA complaints against them.The blatant lie would ensure he would elicit what he wanted from them to slant his investigation and obtain his desired result,contrary to the reports of the Lieutenant and originally assigned investigator.Fonzone informed the AG PCU of the police and prosecutor misconduct July 6, 2012. Frank Fina took no action on the matter ;now is employed by the Phila District attorney and failed to appear though Fonzone subpoenaed him in this case to ask why there was no action or investigation by his Unit;despite kelechewsicky's excessive force of throwing a handcuffed arrestee against the wall twice and striking her repeatedly on the chest with his nightstick.(Exhibits     )

121.The prosecution did not investigate the incidents despite having a copy of the 911 Plaintiff made for help when she was being assaulted by defendant Kelewischky. Of note, officer kelechewsiky's name was omitted from official police reports and court documents and was substituted by Officer Ortiz .Ortiz was not an arresting officer or at the scene ; she was the passenger in transport vehicle from the stadium to the 1st District Ortiz was not an eyewitness though she wrote and signed the citation for disorderly based on hearsay and Oteri's false report..(Exhibit     )

122.Prosecutor Kotchian appealed Judge Kosinski's decision to dismiss but did not serve Fonzone Notice of appeal to at anytime . At the proceedings in Septemeber ,

October and November ,Fonzone did not appear because she was unaware that the case was appealed.. Kotchian was aware, however, that Fonzone was representing herself since June 2012 and that she was to be served with the NOA. Prosecution had ex parte proceedings with various Judges throughout the case from 2010 to 2014 whenever they sought an Order and wanted no objection from Fonzone.

123.Though Fonzone was not givenNotice of a December 17,2012 court date,when trying to file her Expungement Petition on November 15, she was unable to and was told they had appealed.Having learned thaat the world is full of intentional misinformation and misrepresentation , particularly in legal matters with those with some motive, Fonzone must triple check and question everything she is told or reads in order to find the truth.

124.In her quest for the truth about the case disposition of August 22, Fonzone contacted Judge Kosinski's clerk. Soon she received a letter from the Judge stating that Kotchian had appealed his decsion and that there was a proceeding scheduled December 17.

125.Painfully aware that she could be subjected to a warrant if she did not appear, though she had not been served with a notice to appear, Fonzone appeared December 17. Fonzone asked the court, " Don't they have to serve me? " Judge Patrick replied, " They do, but you're here. " (Trans. Dec. 17, 2012, p. 5) Kotchian was not there and asst. District attorney Engel was.

126 Fonzone said , "On Aug. 22 I requested dismissal with prejudice" meaning the decision could not be appealed. The Judge replied, " It's still with prejudice, the fact is they can appeal it because I'm higher than the MC Court." (Trans. Dec. 17, p. 5)

127.The asst.Dist. Att. Engle then had a dialog with the Judge as though Fonzone

26

was not in the room, and he misrepresented facts about the calculated days for . the 1013. Fonzone objected and provided accurate facts (Trans. Dec.17, p.10, 11) but Judge Patrick gave Engel the appeal and scheduled the next date Dec. 31.

128.Fonzone did not have a copy of the appeal and then had to go to the district attorney office to get a copy 3 months after the DA appealed the dismissal .

129. Though the next date was set by Judge Patrick for Dec. 31, the ADA appeared in Judge Gehret 's court on Dec.28 without Fonzone there or having been notified . Engel had the Judge appoint counsel by misrepresenting facts about Judge Neifeld's order ruling Fonzone competent on May 23, 2012. Tthe asst.district attorneys were violating Fonzone's 1st Amendement right to speak in Court.

130. On January 4, 2013 Fonzone filed Motion to Reconsider the dismissal of her private criminal complaint against Oteri and scheduled a hearing for Janaury 17, 2013.On January 17, the Motion was dismissed without a hearing because Engel objected to it.

131 At the trial January 18, 2013, Marni Snyder and Fonzone were co-counsel. ADA Kotchian knowingly allowed her witnesses to falsely testify upon her influence and her blatant misconduct was intentionally undertaken to prejudice Fonzone and thereby deny her a fair trial. Her conduct was retaliatory because Fonzone won the case against her August 22, 2012 and the PCU .The reprehensible conduct of Kotchian 's repeated misrepresentations to every new Judge about Fonzone " pro se appearance Dec. 17 in violation of a previous order" (Trans. Jan. 18, 2013, p7-8) were blatant , egregious and appalling untruths.Kotchian was present June 13, 2013 when Judge Stack appointed Fonzone to represent herself after colloquy.

132.On Feb 11, 2013 a Notice of Appeal of the summary disorderly conduct was filed from Muni Court to Common Pleas , and prosecution had 120 days June 12, 2013 to get to trial or the case

dismissed.Even with 60 day defense continuance from March 4 through May, the October 2 , 2013 trial start was 173 days after the Appeal filed Feb. 11, 2013.Ergo, prosecution was in violation of Rules 600 and 1013 (g), and Fonzone's repeated Motions to vacate and dismiss should have been granted 53 days prior to trial or August 13, 2013.

133. On Feb 12, ADA misrepresented that Fonzone did not file her private criminal complaint with the Pres. Judge when in fact she did. (Exhibit    ) A hearing was then scheduled.(Trans. Feb.12,2013, p.12) Fonzone stated ," that it was a conflict of interest if he (Engel) is supposed to represent me as the victim and he's prosecuting me on the summary disorderly conduct and I respectfully request that another ADA be assigned to the private criminal appeal. " (Trans. Feb. 12, 2013, p. 11,15)

Judge Patrick denied every request of Fonzone.

134. On August 19, 2013 ADA Kotchian was not ready as they had no witnesses. Judge Foglietta said to Fonzone " You have a right to represent yourself." ( Trans. August 19, 2013, p. 14). Fonzone moved for dismissal of the case , the Judge said, " I guess you know the law better than I do becasue I'm not dismissing the case."(Trans. August 19, 2013,p. 17).Fonzone then requested that he recuse and he denied that request.On Dec. 18, 2013 Judge Foglietta would not allow Fonzone to represent herself and argue the Motion to Vacate though she had scheduled the hearing for that.

135 The next date for trial was October 2, 2013, and everything from this date forward should be stricken from the record as violative of Fonzone's constitutioanl rights to speedy trial, and PaRCrim P 600 and 1013. ADA Kotichian left Oct. 2 and Fonzone had to appear again Oct. 3. Then it was continued until Nov, 22. , ( But Fonzone was not told the date was changed from Nov. 22 to Nov. 21, she was threatened with a bench warrant for not appearing by her appointed counsel who did not tell her the date was changed,) and it was continued until Jan. 22, 2014. Jan. 22 the Court was closed due to snow. Fonzone was not notified of the next date and had to call the clerk daily until on March 18 , and was told trial was set for March 19.                                    28

136. On March 19, 2014 Fonzone requested a continuance because she did not have suffficient time to have her 4 previously subpoenaed witnessess preent, Fina, Gray, Addison, ER doctor, The Judge denied her request. Fonzone then tried to argue her Motion to Vacate citing the 120 day rule since filing the appeal Feb. 11, 2013. (Trans. March 19, 2014 pgs.. 25-31, 36-40) Kotchian objected so the Motion was denied .

137. Fonzone explained to the Court that she had been a victim of stalking ,injuries and false implication despite the existence of her permanemt Protection From Abuse Order (Exhibit ) against her estranged spouse who has had her vicariously abused before.(Trans. March 19, 2014 pgs. 73-90)

138 Because of the falsified evidence, slander ,libel, , without ever having spoken with his client appointed lawyer Richard Patton wrote a defamatory libelous letter to Judge Foglietta about his client which prejudiced the Court against Fonzone before she ever walked into Court ,influenced prosecution witnesses , non-appeasrance of defense witnessess as Fonzone had no notice of new trial date until day prior, evidence destroyed and witheld and ex parte conduct of the Judge, prosecutor and defense counsel, Fonzone was denied a fair trial and erroneously determined guilty of summary disorderly conduct for exercising her 1st Amendment right to cheer for her team at a major league baseball playoff game. Fonzone's intent was to watch in person her first playoff game.

139. Fonzone's civil and constituional rights were violated throughout the conspiracy of arrest without probable cause and malicious prosecution . Though the District attorney was sent a copy of Fonzone's 911 audio Nov.15, 2010 when it was subpoenaed by Defender Associate Kim Gray , there was no investigation about Fonzone's confidential complaint by their office ,Defenders, or the Philadelphia police department.And Kotchian and Defender Kelly witheld the 911 CD and other crucial exculpatroy evidence from Fonzone that they had since Dec. 10, 2011, until 2014.

29

140. Pursuant to 42 U.S.C. Sec. 1983 , two allegations are required in order to state a Sec. 1983 cause of action: 1) the complaint must allege that one or more persons have deprived Plaintiff of a federal right and 2) the persons that have deprived Plaintiff of those rights acted under color of state law . Gomez v. Toledo, (1980) 446 U.S. 635, 100 S Ct. 1970.

141. There was a civil conspiracy to obstruct justice with malice and intent to injure Plaintiff amounting to a perpetration of fraud upon the court . All of the defendants , City , Police, Oteri,asst. District attorneys, Defender Assocs., Patton, by falsely implicating plaintiff without probable cause, unlawfully seizing causing her serious injuries ,witholding exculpatory evidence to prosecute plaintiff, failing to objectively investigate the case ,not allowing her to represent herself by fraudulently putting her in mental health court, wrongly issuing bench warrants , resulting in wrongful imprisonment (resulting in a 14th Amendment property right loss of a civil injury case dismissal in another county) ,denying a hearing on her private citizen complaint against the security guard, a genuine issue of concerted activity toward an unlawful objective existed, to get a conviction of an innocent individual who 2 years prior had her criminal case dismissed. The wrongful concealment and intentional non-disclosure of exculpatroy evidence by defendants resulted in continunig deprivation of Plaintiff's rights to due process and equal protection.

142. Where defense lawyers, prosecutor and investigator and others conspired to prejudice an individual of her civil rights, she is thereby denied equal protection of laws in court, and private conduct of non-government employees is converted to state action for purposes of a Sec. 1983 action. Black v. Bayer, C.A. 3rd (Pa. 1982), 672 F.2d 309.

143. All of the defendants acted in concert to deprive Plaintiff of her 1st, 4th, 5th,6th,14th Amendment rights in a 42 U.S.C. 1985 (3) conspiracy motivated by the class based discrimination animus designed to deprive women and whistleblowers of the right to speak and associate .       30

WHEREFORE ,  Plaintiff demands judgment of all defendants  jointly and severally for violating

their duty of care of care,  egregious violations of their oaths and  Rules of Professional

Responsibility and Professional, Ethics  violating plaintif's civil and constitiuonal rights 1st, 4th,5th,

6th, 14th Amendments,  pain and suffering,  serious physical injuries resulting in permanent physical

disability, loss of enjoyment of life, 14th Amendment  property right loss of personal injury case

September 27, 2011,  moral injury, PTSD, negligent and intentional infliction of emotional distress,

 past, present and future medical costs and expenses, embarrassment, humiliation  past , future

earnings,  damage to personal and professional  reputations and  relationships , all costs and

damages associated with  their negligent anad intentional misconducts  sicne the incidents of

October 6, 2010, incidental expenses and all costs of this litigation  together with punitive damages

for the egregious, willful  wanton misconducts and vioaltions of plaintiff's civil and constituitonal

rights  ,atttorneys fees   ., and such other relief as this  Court may warrant   .


Respectfully submitted,

Jo Ann Fonzone, Esquire  aka  Judy Mc Grath
Pro Se for the Plaintiff


July 7, 2015

$3I$

# VERIFICATION

I  verify that the statements made  in the aforementioned amended complaint are true and correct.

I  that false statements herein are made subject to  penalties relating to unsworn falsification

to authorities.

Exhibits  referred to on  the amended complaint will be provide during discovery.

Jo Ann Fonzone, Esq.
2242 Tilghman St.
Allentown, Pa 18104

32

## CERTIFICATE OF SERVICE

I hereby certify taht I have on this day caused to be served a true and correct copy of the

aforementioned Amended Complaint on the parties listed below at the addresses as listed:

Robert Foster, Esq.
Reger Rizzo & Darnell
2929 Arch St. , 13th floor
Philadelphia, Pa. 19104

City of Philadelphia law dept.(police, John Evans, Riverside Facility, O. Fisher, Bench
1515 Arch St. 14th Floor                                          warrant unit- defendants)
Philadelphia, Pa. 19102

E.Kotchian, D.Ayers, G.Engel
Philadelphia Dist. Attorney's office
3 Penn square
Philadelphia, Pa, 19107

Defender Associates
1441 Sansum St.
Philadelphia, Pa, 19107

Richard Patton
1223 Locust St. 4th floor
Philadelphia, Pa 19107

By: Jo Ann Fonzone , Esquire aka Judy Mc Grath

07/07/15



## Philadelphia Police Radio
## Audio Reproduction Unit
### 215-686-3126

PHILADELPHIA                    PHILADELPHIA

10/06/10          6:14:58 PM
1 CITIZENS BANK WAY
DC #10-03-062707
MC #2010-0043169
JO ANN FONZONE
CH/ R/A

According to Officer Ortiz's investigation report (see the following 3 pages)
the time of arrest was 6:15 p.m. 6:20 or 6:22 p.m. At 6:14:58 p.m.
I was in the police room bil cell calling 911 for help but Ortiz
says she was arresting me outside in the stadium at that time.
The incident outside with security guard Oteri + Officer
Kelenischky occurred at 5:45 p.m.

34

## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| 10 | 03 | 62707 | | 03 | 03 | 10-6-10 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | A | TIME IN | A |
|---|---|---|---|---|---|
| | | | P | | P |

LOCATION OF OCCURRENCE: 1 Citizens bank way.   Sec /07

☐ IN   ☑ OUT   TYPE OF PREM.

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | A | NATURE OF INJURY |
|---|---|---|---|---|
| 10-6-10 | 3 | 6:15 | P | none |

COMPLAINANT: Police

AGE | RACE | SEX | PHONE (HOME)

ADDRESS | PHONE (BUSINESS)

| FOUNDED | REPORT TO FOLLOW | UNIT | CODE | INV. CONT NO. |
|---|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No ☐ Close Out | | | |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

DESCRIPTION OF INCIDENT *(Include Description of Crime Scene if Applicable)*

Site Arrest

Offender was placed under arrest #10·03·62707 for disorderly conduct after being told multiple times to sit down and stop being #rudy during the game.

WITNESS | ADDRESS | PHONE NO.

OFFENDER INFORMATION: Jo Ann Fonzone   719-58   w/f
5550 n. Ocean Drive

PROPERTY DESCRIPTION *(Include Make, Model, Color and Serial No. Where Applicable)* | PROP. CODE | INSURED ☐ Yes ☐ No | STOLEN VALUE $

DC NO.

VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME

VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATOR'S NAME

| WANTED/STOLEN MESSAGE SENT General No. Date | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|

| REPORT PREPARED BY: P/o Ortiz | NO. 9681 | DIST./UNIT PAGES 14 | TOTAL NO. 1 | PAGE 1 |
|---|---|---|---|---|

| REVIEWED BY | NO. | DIST./UNIT | REFERRAL DATE | GEN. NO. |
|---|---|---|---|---|

PURSUANT TO ACT 155 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

75-48 (Rev. 8/94)

259413.

354373

*Handwritten note in left margin:*

Ortiz was not at the scene of arrest there were 2 male police officers.

She was not an eyewitness, this is hearsay & opinions

Computer Crime Unit   Fax:215-683-1868      Dec 13 2010 11:39   P.01

Despite immediate Requests for all
police reports from the police and District Attorney

I got this police report from an
Assidia, in January

_2013_,

they hid it since
October 2010, as. evidenced
                    by the fax date Dec 13,
                                    2010
                                  (above)
but deliberately withheld it
and violated _4 discovery orders of
pre-trial discovery and Right to Know
Requests from me. crime VICTIM
                    Jo Ann Fonzone Esquire

PHILADELPHIA POLICE DEPARTMENT
**COMPLAINT OR INCIDENT REPORT**

| YEAR | DIST./OCC. | D.C. NO./0-0 | SECT. | DIST | VEH. NO. | REPORT |
|---|---|---|---|---|---|---|
| 10 | 1 | 42106 | 5 | 302 | 10-6 |

CRIME OR INCIDENT CLASSIFICATION    CODE          TIME OF O
HOSPITAL CASE          3017        1225

LOCATION OF OCCURRENCE
2301 S 24TH

DATE OF OCCUR.    DAY CODE    TIME OF OCCUR.
10-7-10          9           1225 P

COMPLAINANT M/F  DOB 2-9-58   AGE 52  RACE W  SEX F  PHONE (HOM  294 68
JOANN  FONZONE

ADDRESS    WEST PALM BEACH FLORIDA
5550   OCEAN DR

FOUNDED   REPORT TO FOLLOW              UNIT   CODE
☐Yes ☐No   ☐Yes  ☐No  ☐Close Out

WITNESS       TRACEABLE PROP.   UNIQUE DESCRIPTION OF   OTHER EVIDENCE
☐Yes ☐No     ☐Yes ☑No          ☐Yes ☐No               ☐Yes

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)
R/C  HOSP CASE

ABOVE COMP TRANSPORTED TO MER
HOSP FOR INJURYS TO HER RIGHT
HAND SHE OBTAINED AT PHILLIES GAME
DR HART ON DUTY COMP STATE
INJURYS WELL PRIOR TO BEING
ARRESTED  COMP GIVEN
500 MGS TYLENOL

PROPERTY DESCRIPTION (Include Make,   PROP. CODE   INSURED   STOLEN
Model, Color and Serial No. Where Applicable)          ☐Yes ☐No  $

VEHICLE 1—OWNER'S NAME               VEHICLE 2—OWNER'S NAME

VEHICLE 1—OPERATOR'S NAME            VEHICLE 2—OPERATOR'S NAME

WANTED/STOLEN MESSAGE   DIST./UNIT   RECEIPT   SENT BY
SENT                    TERMINAL     NO.

REPORT PREPARED BY                  NO 352   DIST./UNIT   TOTAL
BALDWIN JENKINS                     4444     5          PAGES

REVIEWED BY                         NO.      DIST./UNIT   REFERRAL DATE
Sgt Addison   8659                  /

PURSUANT TO ACT 185 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFIC
OF VICTIM SERVICES FORM.

75-48 Front (Rev. 11/08)    174431 / 229683

Sgt.Addison saw the bruises
contusions & swelling of my
right hand arm and asked
what happened. I told him
the security guard and later
the police injured me.
Officers Baldwin & Jenkins did not
        give me this report or a VICTIM SERVICES FORM.

PHILADELPHIA POLICE DEPARTMENT

# COMPLAINT OR INCIDENT REPORT

| YEAR | DIST/OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| 10 | 03 | 7946 | 3 | 3 | IA3A | 12-9-10 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | TIME IN |
|---|---|---|---|
| CAP | 2704 | 836 | P |

| LOCATION OF OCCURRENCE | IN / OUT | TYPE OF PREM. |
|---|---|---|
| 1 Citizens Bank Way | ☑ OUT | |

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | NATURE OF INJURY |
|---|---|---|---|

| COMPLAINANT | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|
| Confidential | | | | |

| ADDRESS | PHONE (BUSINESS) |
|---|---|
| Confidential | |

| FOUNDED | REPORT TO FOLLOW | UNIT | CODE | INV. CONT NO. |
|---|---|---|---|---|
| ☑ Yes ☐ No | ☐ Yes ☐ No ☐ Close Out | | | |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☑ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

**DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)**

| WITNESS | ADDRESS | PHONE NO. |
|---|---|---|

**OFFENDER INFORMATION**

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐ Yes ☐ No | $ |

| VEHICLE 1—OWNER'S NAME | VEHICLE 2—OWNER'S NAME |
|---|---|

| VEHICLE 1—OPERATOR'S NAME | VEHICLE 2—OPERATOR'S NAME |
|---|---|

| WANTED/STOLEN MESSAGE SENT | DIST/UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|
| General No. 4401  Date 12-9-10 | 3 | 547 | Middleton 8194 |

| REPORT PREPARED BY | NO. | DIST/UNIT | TOTAL PAGES | PAGE NO. |
|---|---|---|---|---|
| Middleton 8194 | | | | |

| REVIEWED BY | NO. | DIST/UNIT | REFERRAL DATE | GEN NO. |
|---|---|---|---|---|

PURSUANT TO ACT 139 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

FONZONE, JOANN
- ADM 10/07/2010
- DOB 07/19/1958  52y
- MR# 03995832    ACCT# 39681727
- DATE OF SERVICE //

**EMERGENCY DEPARTMENT NURSES NOTES - Page 1**
FORM NAME
56002                              New 06/06
FORM NO.                           REVISION DATE

**J** Methodist Hospital
Thomas Jefferson University Hospital          2301 South Broad Street
Jefferson Health System                        Philadelphia, PA 19148

Date: 10-6-10          Time: 0038

Source of Medication List: ☐ Patient ☐ Family ☐ Other

Allergies: PCN, Codiene

☐ No Medications Taken

| Initial and Date if Additional Meds Identified | Medication Name (Write Legibly) Home Meds/Prior to Admission | Dose | Route | Frequency |
|---|---|---|---|---|
| | Denies | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Pregnant/Breastfeeding: ☐ Yes ☑ No   Urine Pregnancy: ☐ Pos. ☐ Neg.  FDLMP: 3 wks ago

Chief Complaint / Onset / Physical Assessment   Pt states Assault

X Prior to Arrival: ☐ NONE   Tylenol @ 1330

DIRECTED TO: ☐ WAITING ROOM ☑ TREATMENT ROOM # _____ ☐ FAST TRAC ☐ OTHER ____

TREATMENT IN TRIAGE: ☐ SPLINT ☐ ICE ☐ SLING ☐ ELEVATION ☐ DRESSING ☐ COLLAR

☐ REQUESTED SPECIMEN  urine   ☐ MEDICATED ____

SIGNATURE OF TRIAGE NURSE: _____   ☐ X-RAY: ____

**Past Med/Surg History**
SZ's
Blind @ Eye
Head Trauma
Back Surg
Rib fx's
MVP
Asthma

Name: Joann Fonzon
Category: _____ H L
SS #:
Date: 10-6-10  Time: 0038
Age: 52  Date of Birth: 7/19/58
Allergy Bracelet Applied: ☑ Yes ☐ N/A
Vital Signs: ☐ Accucheck
Temp. 96.6  ☑ O ☐ R ☐ T U
Pulse 112  Resp. 18  BP 151/93
Pulse Ox 98%  Peak Flow ____
On: ☑ Room Air ☐ O₂ Therapy
Pain Scale: 0 - 1 - 2 - 3 - 4 - 5 - 6 - 7 - 8 - 9 - ⑩
Pain Location @ Arm
Pain Duration: 7 hours
Asthma: ☑ Yes ☐ No
Height: 5'6"  Weight: 112
Immunizations: _____
Last Tetanus: Uncl
Visual Acuity: OD ____ OS ____ ☐ N/A
Glasses: ☐ C ☐ S   Contact Lenses: ☐ C ☐ S

☐ REASSESSMENT TIME: ____
☐ SEE PAGE 2

| NEURO | CARDIAC | RESPIRATORY | GI / GU | APPETITE |
|---|---|---|---|---|
| **EYE OPENING** | INITIAL RHYTHM ____ | **BREATH SOUNDS** | **ABDOMEN** | ☐ POOR ☐ NORMAL |
| SPONTANEOUS 4 | **PULSE** | B    L | BOWEL SOUNDS ☐ YES ☐ NO | VOMITING: |
| VOICE 3  4 | ☐ REGULAR RATE ☐ IRREGULAR RATE | CLEAR | DISTENTION ☐ YES ☑ NO | |
| PAIN 2 | ☐ STRONG ☐ THREADY | RALES | SOFT ☐ RIGID ☐ | **URINATION** |
| NONE 1 | ☐ NORMAL | RHONCHI | Last BM: ____ | ☐ NORMAL ☐ RETENTION |
| **VERBAL** | **EDEMA** | WHEEZING | | ☐ BURNING ☐ INCONTINENT |
| ORIENTED 5 | LOCATION: ∅ | ABSENT | | ☐ FOLEY |
| CONFUSED 4  5 | ☐ PITTING | DIMINISHED | | ☐ URINE DIP ☐ POS ☐ NEG |
| INAPPROPRIATE RESPONSE 3 | ☐ NON-PITTING | SMOKER ☐ YES ☐ NO | | A = ABRASION |
| INCOMPREHENSIBLE SOUNDS 2 | **SKIN** | COUGH ☐ YES ☐ NO | | B = BURN |
| NONE 1 | ☑ NORMAL | PRODUCTIVE: | | C = CONTUSION |
| **MOTOR** | ☐ OTHER: | | | D = DEFORMITY |
| OBEYS COMMAND 6 | | | | E = ECCHYMOSIS |
| LOCALIZES PAIN 5  6 | | | | GSW = GUN SHOT WOUND |
| WITHDRAWS (PAIN) 4 | | | | L = LACERATION |
| FLEXION (PAIN) 3 | | | | P = PAIN |
| EXTENSION (PAIN) 2 | | | | PS = PRESSURE SORE |
| NONE 1 | **PSYCHOSOCIAL** | | | R = RASH |
| | PRIMARY LANGUAGE: English | | | SW = STAB WOUND |
| TOTAL 15 | DO YOU LIVE ALONE? ☐ YES ☑ NO | | LANGUAGE BARRIER: ☐ YES ☑ NO | |
| | | | FALLS RISK SCORE: 0 | (see back of copy for range) |

## AFFADAVIT

Jo Ann Fonzone was injured on October 6, 2010 while at Citizens Bank Park by the security , Joe Oteri, and police personnel, Officers Bee and Kelowscky.    Jo Ann was on a Phillies playoff package trip with other fans and went to the game a Trans Bridge bus trip from Allentown, PA at around 2 p.m.  Upon arrival at the stadium, Jo Ann and Florence , the woman seated next to her on the bus and at the stadium had their photos taken by the Phillies photographer at around 5:15 p. m. Jo Ann and Florence ate snacks and drank soda on the bus.

After the photo was taken, we went to our seats , section 108, row 32.  Jo Ann then decided to go to the Majestic store and did so. The store was crowded and she waited in line, then finally went in and looked around and purchased a Roy Halladay  t-shirt and put it on.  As she walked back to her seat, she  got a beer and went to her seat. ( As it was a cold, damp rainy evening, she drank just a sip and put the almost full bottle in the container in front of her). Jo Ann  had had the flu the week before  and thats  why she had only one ticket. By the time she got to the bus company to get the tickets she was on the waiting list for two,  there was only one seat left.

Right before the game started, Jo Ann called a friend to tell him that she was at the game, but as the stadium crowd was so loud, she couldn't have the conversation and put her phone in her left jacket pocket.  WIP Radio said that it was the loudest game ever played at the stadium. Roy Halladay was on the mound , the game was  very exciting as he was  doing  great. ( in fact this was a no-hitter game , the Phillies  won 4-0 against  Cinnicinati).

Around the second inning, as Jo Ann  and everyone else was standing and cheering  with Rally towels, a man in a blue shirt  began to grab at her right arm. The man  kept  doing that and it was hurting her arm. Jo Ann didnt know who he was or why he was pulling and grabbing her arm, so she naturally moved a step to her left  to get away from his grabbing. Soon, a very large man in a white shirt started to assist  the blue shirted man in grabbing and pulling and pushing Jo Ann so that she was pushed into the seat in front of her and her head hit the seat and she fell to the ground.   ( THEN, JO ANN SAW A GUY INFRONT OF HER AND A FEW SEATS TO HER RIGHT, GRAB THE SECURITY  MAN'S ARM AND SAY' LET HER ALONE, SHE'S NOT DOING ANYTHING WRONG".) But, the men dragged her out of the seating area and pushed her up the steps and placed her behind the seating area in the concourse. Jo Ann stood  there around the concession stands  without incident and watched the game. The men , who now she was aware of were security and police, were nearby. There were other people in the vicinity also  standing  and watching the game .

About 10-15 minutes  later, Jo Ann was grabbed from behind by Kelechewsicky and Bee  by the arms and dragged  across the concourse.  Her feet were dragging so that only her heels were touching the ground and her arms were restrained by the officers grasps. While this  was happening, she yelled, "what are you doing? I just wanted to watch the game? What are you doing, you are hurting my arms. "  The very large officer  replied, "We  just want to talk to you."  finally, Jo Ann  was  taken into the room behind the concession stands, which she now knows is the police room.

Jo Ann  was  thrown into a chair in the police room and her red bag was taken  from her.  There were 3 men  sitting at desks in front of computers, one of them Kovacs, was in a police uniform.  Kovacs searched  the red bag, took my Phillies  playoff souvenir ticket from my bag and it was never returned to me. Kovacs and  kelewchisky found my attorney ID card and a card from an Internal Affairs Sargeant from Allentown and became  extremely angry upon seeing this. "  "Oh, you're a lawyer."

By this time, Jo Ann was very upset, crying and in pain from the trauma she had just experienced. She was put in handcuffs, and as she still had a sinus infection, there was snot running from her nose and, a they would not give her a tissue.  When Jo Ann asked them , why they were doing this and what was she charged with, they replied," a man wanted   everyone to sit down ."

Minutes later,  the very large cop   , who she now knows  is named kelechewsicky, took her from the chair into an adjacant room, a smaller room, and when the door closed, he threw her against he wall, so that she fell to the ground.  Jo Ann's  right arm, wrist, hand and shoulder were hit harshly . Jo Ann then got her phone and called 911 for help as she was  afraid that she would be killed. She told the 911 woman her name , where she was and that she was in a jail cell and being physically assaulted by the police. Jo Ann mentioned  officers kovacs and bee but could not pronounce kelechewsicky  as she was so distraught and traumatized.  Officer Bee was  in the police room , and there were security and police out in the hallway.

The police  then came back into the room and again threw her against the wall.  Jo Ann tried to call 911 again, but then heard the door open and could not speak to 911 and put the phone in her pocket. This time, the large officer kelechewsicly said" We know you have a phone, give me the phone". He took the phone , threw me against the wall again, and this time when on the ground, he took the nightstick , placed it on my chest and began striking me with the stick repeatedly.

Sometime later,  Jo Ann was  taken out of the jail cell room and thrown onto the chair in the larger room. At no time , was she given any Miranda warnings or told she was under arrest , though she asked them if she was and what was the charge.  Officer kovacs  replied by saying "why do you have an Internal Affairs card?"   Jo Ann thought they were going to make her leave the stadium at this point, but instead  she was taken  to a police precinct  by a male and a female police officer.  She now knows their names are  Officers Person and Ortiz.

When Jo  Ann got to the precinct, she  was fingerprinted, photographed and  put in a cell  . she was allowed to make a phone call and called  a lawyer , Cheryl Gaston, who she had met at a Legal Intelligencer  luncheon for women lawyers  earlier in the year. She told her what had happened  to her.

After   some more time,  the Sargeant on duty Addison  when making rounds  saw that my arm  and hand were very bruised, contused and swollen. He told me that I needed to go to the hospital, and would be taken there.  I was in severe pain, my arm, hand , shoulder and head and felt very beaten and battered.   I had to wait for the transport officers  and eventually was  taken to Jefferson Emergency Room at about 9:30 and got to the ER about 10:00 p.m. While waiting in the triage, I had a  grand mal seizure from the head trauma hours earlier at the stadium. My blood pressure was very high before  that happened, and I began trembling.  I was taken to the ER in handcuffs and handcuffed to the ER bed.  I had x-rays on my hand and shoulder, and was given a urine test because I thought I had  a yeast infection from the antibiotics I had taken for the flu and sinus infection the week before.

I was given prescription tylenol with codeine for pain  while in the ER and a prescription but did not fill it because I am allergic to codeine.  I was taken back to the police headquarters  around 3:00 a.m, though I was in severe pain in my chest, head and entire right side.  When taken to an ER by the police, a patient does not get admitted to the hospital even if he or she should be.

At police headquarters, I was  locked in a cell  for  several hours and then the hospital discharge papers were brought to me.  Finally, I was taken to a room for video arraignment and  was questioned by  a very arrogant unhelpful pre-trial services  employee. She wouldn't let me answer some of the questions.

Then, I spoke with the bail commisioner Mr. O'Brien, told him I wanted to represent myself and that I was not guilty and was the injured victim. He released me on my signature or ROR. As I couldn't move my right arm or hand because of the swelling, ( I thought I had broken bones), I signed an "x" with my left hand. Sometime later, I was released . ( I could not write or drive for 3 or 4 weeks as I am right handed.) I was not feeling well, had a concussion, but walked into a police station on the way to the Greyhound station and tried to report the aggravated assault . At 11th and Wharton, the officer at the front window, Alexander looked at my bruised and contused arm and hand and said that I couldnt file a report and had to do that at Internal Affairs. I left and started walking, at a gas station I asked a young man if he would drive me to the bus station, he was kind enough to do that. I then had to buy a bus ticket as the bus to the game had left after the game the night before. Being a victim always costs the victim I paid $158.00 for the game and transportation.

I got home about 4;30 p.m. October 7, 2010. the next day I went to my family physician. She saw the large contusion on my chest and sent me for an immediate chest x-ray and echocardiogram. Jo Ann could not lift her right arm above her head for the chest x-ray as it was excrutiatingly painful, so the Radiologist could only take one view.I have been treating with cardiologists since then and have been in the hospital two more times , March and September 2011 for the heart condition , atrial fibrilation,I have as a result of being beaten on my chest by the police on October 6, 2010.I take medication for the heart condition. I was also diagnosed with PTSD like a veteran and suffer form nightmares, flashbacks, sleeplessness since the incident.

While recovering from a March 2011 hospital stay, Jo Ann phoned and sent medical documents to the Defenders to inform them that she could not be in court April 29. she called LaRue Werthy on April 28, 2011 to make sure they would get a continuance and tell the Judge why I could not be there. The Defenders neglected to do that, and Jo Ann discovered six weeks later that a bench warrant had been issued on April 29, the day Jo Ann was with her cardiologist.

A similar incident occurred in September 2011, though Jo Ann had retained a private attoreny because she was not being properly represented by the Defenders. Jo Ann had an appointment with a cardiologist scheduled September 21, 2011, so she filed for continuance on September 9, 2011, and told the attoreny Mr. Dixon that she could not be there on September 21, 2011. A bench warrant was issued, Mr Dixon did not tell his client this, though she called him many times to ask him what happened in court on that day. He did not answer his phone or return her calls despite the messages she left.

In the middle of the night at 2:00a.m. September 23, 2011, the bench warrant unit stormed into Jo Ann's mother's home while they were sleeping to arrest Jo Ann on a bench warrant for not appearing in court the previous day. Naturally, Jo Ann and her mother were traumatized by this gestapo like action, but Jo Ann was taken away by a swarm of law enforcement. The building was surrounded as though she was a fugitive rather than a sports fan wrongly charged with disorderly conduct for standing up at a playoff game doing the wave like everyone else.

Jo Ann was handcuffed and shackled and driven at a speed of 100 miles an hour on the turnpike toward Philadelphia to go to bench warrant court which opens at 8;00 a.m. . Jo Ann said to the driver, "please slow down so that we get there safely," he replied that, he" was going with the speed of the traffic."

Jo Ann began to have palpitations and go into atrial fibrilation and told the driver he better take her to the hospital. Jo Ann did not know where he was going and she was taken to Frankford hospital ER in

shackles and handcuffs. An echocardiogram was done, and because she was a prisoner, she was not admitted and otherwise would have been. Jo Ann was later taken to RCF prison instead of the court on Filbert St. Upon arrival, the bench warrant officers gave the bench warrant and my ER discharge papers to the Corrections Officer. Jo Ann Fonzone did not get these papers back, though she requested them during her time at RCF and several times since then by phone , in person and subpoena to the warrant officers, and the RCF Director, Chris Thomas, and requests to the legal staff of RCF and the Warden . Jo Ann Fonzone has also been denied copies of the transport forms of prisoner to hospital of October 6, 2010 and September 23, 2011.

Jo Ann was afraid for her life while at RCF. At the time, She was unaware of the PaRCrim P 150 (A) (5), that a person can only beheld on a bench warrant for 72 hours. Jo Ann called her mother and asked her to get a lawyer to get her out of RCF as she was not getting her heart medication and was not feeling well . Jo Ann was also afraid of some of the inmates that were detoxing from heroin, one of them , her roommate threatened to kill her, and finally Jo Ann got herself moved to another jail cell.

Jo Ann's sister and mother retained a new private lawyer Mr. Frumer. Jo Ann was told by her sister that Mr. frumer told her he was going to meet Jo Ann in court on Monday at bench warrant hearing court and she wold be released from there. Frumer did not get her out Friday or the next day and should have known about Rule 150. He should have called the sheriff or the warden to find out why his client had not been brought to court. Jo Ann was scheduled to go to court September 26 at noon for bench warrant hearing, but was not allowed to get on the bus to court with the others , though she was in line and at the door that day. The Officer, Fisher told her she had to wait until Wednesday. Mr. frumer was aware that Jo Ann had an Argument on a civil case in Lehigh County scheduled for September 27, 2011. When she was not present at the Argument, her civil case was dismissed ex parte. Jo Ann was instead taken to bench warrant court on September 28, 2001 and released from there at about 3;00 p.m. So, Jo Ann was imprisoned for 6 days on a bench warrant because she had an appointment with her cardiologist on September 21, 2011. Jo Ann does not tolerate the heart meds well and different meds and doses have been tried to try to avoid side effects , like migraines ,which leave her tired and with erratic blood pressure.

When do the violent perpetrators of aggravated assault, reckless endangerment that cause innocent individuals serious injuries and damages get arrested, prosecuted and imprisoned instead of punishing their victims?

Commonwealth of PA

County of Lehigh

Sworn and subscribed before me
this 25th day of June 2012

Jo Ann Fonzone, Esquire     ESQUIRE     6/26/12

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lisa Hein, Notary Public
South Whitehall Twp., Lehigh County
My Commission Expires Dec. 17, 2013
Member, Pennsylvania Association of Notaries

Ms. Elizabeth Kottias
District Attorney's office
Three S.Penn square
Philadelphia, PA 1910

June 23, 2012

RECEIVED

Re :  Comm. v. Fonzone
MC-51-CR-43169-2010

JUN 2 7 2012

ACTIVE CRIMINAL RECORDS
CRIMINAL MOTION COURT

Dear Ms. Kottias:

It is the  defense's position that discovery has not yet  been completed  as there is outstanding
discovery requests  filed  in September  2011  which have not been fully complied with by your office.
(copies  attached  herein).

Pursuant to PaRCrim P 573(C)(2) and 573(D), defense hereby requests any and all names , addresses
and dates of birth of any witnesses the prosecution intends to call . In addition, defense requests  any .
and all witness statements, documents reports, exhibits or photographs intended for use by the
prosecutor.

Some of the requested items which have not been provided  , though requested on September 9, 2011,
include:  All police reports including Police form 48 of October 6, 2010 which is the police transport to
hospital form, and  Police form 48 of September 22, 2011, which is the police warrant unit transport
form to hospital. Also, the bench warrant of September 21, 2011 constitutes a police report and has not
been provided to the defense though requested  repeatedly since then. ( then defense attorney was told
that Ms. Fonzone had an appointment with her cardiologist September 21 and could not be in court
that day). Other police reports not provided to defense include:  a police report  containing  a police
affadavit of probable cause signed by the arresting officers Kelecheswky and Bee.  The police report
containing the name of the complaining witness  and alleged victim of disorderly conduct  was
similarly not yet provided to the defense.

Furthermore, videotape of the section at Citizen Bank park was requested and not yet provided to
defense. Lastly, the fingerprints  of the accused  were not provided to the defense.

Since  the  case was first called to trial October 2010, there were three Court Orders  for the district
attorney to provide  discovery.  The defense has provided discovery  and medical reports to previous
asst. district attorneys.

Sincerely,

Jo Ann Fonzone, Esquire

39

# John F. Kennedy Community Mental Health/Mental Retardation Center



Delores Wilson Esq.
Chairperson
Board of Directors

Jo Williamson
President/CEO

March 1, 2012


RE: Joann Fonzone
DOB: 07/19/1958

Dear Sir or Madam:

Ms. Fonzone was initially evaluated on October 19, 2011 and had a follow up on December 21, 2011. She was diagnosed with Post Traumatic Stress Disorder. As of our last meeting she was competent to aide in her defense. She is not delusional or psychotic. She understands the circumstances of her situation.

Sincerely,

Buster Smith MD

Buster Smith, MD

# ⊞ Coordinated Health

Better. Together.

---

November 7, 2016

RE: FONZONE, JO ANN (0050341)

To Whom It May Concern:

Jo Ann Fonzone is a 58-year-old female who is under my care for her current cervical spine condition in our Back and Neck Center at Coordinated Health. Ms. Fonzone has a history of chronic neck pain since being a victim of an aggravated assault on October 6, 2010. Patient has neck pain that radiates to the upper back and down the right upper extremity. She has recently received trigger point injections in the office setting and is scheduled to receive a right sided cervical epidural steroid injection in the coming weeks. She is also currently in physical therapy for her cervical spine condition. MRI of the cervical spine was recently done on October 6, 2016 and shows significant multilevel disc protrusions causing advanced foraminal stenosis and nerve root impingement.

The patient is scheduled for her cervical epidural steroid injection on November 17, 2016 and will need several weeks after the epidural injection to allow it to take effect and should decrease her activity level during that time. Patient was originally referred to me by Dr. Randy Jaeger, an orthopedist, who was treating her for shoulder issues. She is also seeing Dr. John Williams, another orthopedic, for shoulder issues. She has received shoulder steroid injections as well.

Due to the patient's ongoing cervical spine condition with ongoing treatment, she will need time to attend her physical therapy sessions, to have her injection procedures done and to recuperate from her injection procedures. This will significantly decrease her ability to perform work related tasks and we are requesting that she be allowed an extension on her current work deadlines through the end of the calendar year. She may ultimately need several epidural injections in the course of her treatment.

If there are any questions, please do not hesitate to contact me at 610-861-8080. Thank you for your attention to this matter.

Sincerely,

Brian Goldberg, M.D.
BG/jm

---

| | | | | |
|---|---|---|---|---|
| Allentown | 1503 N. Cedar Crest Blvd., Allentown, PA 18104 | | Phillipsburg | 222 Red School Lane, Phillipsburg, NJ 08865 |
| | 1621 N. Cedar Crest Blvd., Allentown, PA 18104 | | Hazleton | 1097 N. Church St., Hazleton, PA 18202 |
| | 1405 N. Cedar Crest Blvd., Allentown, PA 18104 | | Brodheadsville | Rte 115 & Switzgable Rd.,Brodheadsville, PA 18322 |
| Bethlehem | 2775 Schoenersville Rd., Bethlehem, PA 18017 | | E Stroudsburg | 505 Independence Rd.,East Stroudsburg, PA 18301 |
| | 2300 Highland Ave., Bethlehem, PA 18020 | | | 511 VNA Rd., East Stroudsburg, PA 18301 |
| | 2030 Highland Ave., Bethlehem, PA 18020 | | Lehighton | 239 N. First Street, Lehighton, PA 18235 |
| | 2310 Highland Ave., Bethlehem, PA 18020 | | Pittston | 1120 Oak St., Pittston, PA 18640 |
| | 3100 Emrick Blvd., Bethlehem, PA 18020 | | Wind Gap | 1411 Jacobsburg Rd., Wind Gap, PA 18091 |

| | | | |
|---|---|---|---|
| Hospitals: | 1503 N. Cedar Crest Blvd. | 2310 Highland Ave. | 511 VNA Rd. |

877-247-8080     www.coordinatedhealth.com     610-861-8080

1621 N Cedar Crest Blvd (POD B)
Allentown, PA

# FONZONE, Jo Ann

**July 19, 1958**
Born

**Female**
Sex

0050341
MRN

2242 W Tilghman St (Apt 1C)
Allentown, PA 18104
Address

English (preferred)
Language

White
Race

Not Hispanic or Latino
Ethnicity

## Summary of Care

### Chief Complaint

FreeTextChiefComplaintCopy: Right side neck and right shoulder blade pain. ;

### Functional Status

#### Functional Status Health Issues

Functional status health issues are not documented

#### Cognitive Status Health Issues

Cognitive status health issues are not documented

### Problems

| Problem |
|---------|
| **Abnormal EKG** (794.31, R94.31) |
| **Atrial fibrillation** (427.31, I48.91) |
| **Cervical facet syndrome** (723.8, M47.812) |
| **Cervical spinal stenosis** (723.0, M48.02) |
| **Closed fracture of sternum** (807.2, S22.20XA) |
| **Complex regional pain syndrome** (355.9) |
| **Costalchondritis** (733.6, M94.0) |
| **Discoloration of skin of hand** (709.00, L81.9) |
| **Encounter for examination following surgery** (V67.00, Z09) |
| **Encounter to establish care with new doctor** (V65.8, Z76.89) |
| **Foraminal stenosis of cervical region** (723.0, M99.81) |
| **Herniated nucleus pulposus, C5-6** (722.0, M50.222) |
| **Herniated nucleus pulposus, C6-7** (722.0, M50.223) |
| **Influenza vaccine administered** (V04.81, Z23) |
| **Migraine headache** (346.90, G43.909) |
| **Mitral regurgitation** (424.0, I34.0) |
| **Myofascial pain** (729.1, M79.18) |
| **Neck pain** (723.1, M54.2) |
| **Occipital neuralgia** (723.8, M54.81) |
| **Osteoarthritis of cervical spine** (721.0, M47.812) |
| **Palpitations** (785.1, R00.2) |
| **Right cervical radiculopathy** (723.4, M54.12) |
| **Right shoulder pain** (719.41, M25.511) |
| **Shoulder pain** (719.41, M25.519) |
| **Somatic dysfunction of cervical region** (739.1, M99.01) |
| **Somatic dysfunction of thoracic region** (739.2, M99.02) |
| **Tendinitis of right rotator cuff** (726.10, M75.81) |
| **Thoracic aortic aneurysm without rupture** (441.2, I71.2) |
| **Thoracic disc herniation** (722.11, M51.24) |
| **Thoracic outlet syndrome** (353.0, G54.0) |
| **Vitamin d deficiency** (268.9, E55.9) |

*(handwritten notes:)*
PTSD
Tinnitus
PBA
Post Concussion / Seizure disorder
Fibromyalgia rt. upper back / shoulder / rt. rotator cuff injury
right ear deafness
vestibular system, nerve damage
dizziness, equilibrium
Anxiety

LVPG NEUROLOGY - 1250 CEDAR CREST
1250 S CEDAR CREST BLVD
STE 405
ALLENTOWN PA 18103-6224
Dept: 610-402-8420
Dept Fax: 610-402-1689

July 31, 2019

Jo Ann C. Fonzone
631 Primose Lane
Allentown, Pa 18104
Allentown PA 18104-4392

To Whom It May Concern:

Please be advised that Jo Ann C Fonzone is currently under my medical care for treatment of severe migraine headaches.  In its typical form, migraine is a complex neurophysiological disorder characterized by episodic, and in its progressive form, daily head pains.  The Headache attacks are often accompanied by neurological and autonomic events.  Generally, migraine is an inherited disorder; an autosomal dominant trait has been proposed.  Migraine headaches can be very painful and at times, disabling but can frequently be controlled.

Within a reasonable degree of medical certainty that the migraines, tinnitus, PBA, seizures, and concussion were caused by severe head trauma suffered as a result of being a victim of aggravated assault on 10/6/2010 in Philadelphia.

Jo Ann C Fonzone has been at the LVPG Neurology Headache Center in an attempt to bring the attacks under better control.  There are many different avenues used to prevent migraine attacks and we are exploring these in our attempt to bring the patient's condition under control.

If we can be of further assistance, do not hesitate to contact us at (610)402-8420.

Sincerely,

Vitaliy Koss, MD, FAHS

LVH-CC 1250 NEUROLOGY
1250 S CEDAR CREST
STE 405
ALLENTOWN PA 18103-6224
Dept: 610-402-8420
Dept Fax: 610-402-1689

July 28, 2020

RE: Jo Ann C Fonzone
DOB: 7/19/1958

To Whom It May Concern:

Please be advised that Jo Ann C Fonzone is currently under my medical care for treatment of severe migraine headaches. In its typical form, migraine is a complex neurophysiological disorder characterized by episodic, and in its progressive form, daily head pains. The Headache attacks are often accompanied by neurological and autonomic events. Generally, migraine is an inherited disorder; an autosomal dominant trait has been proposed. Migraine headaches can be very painful and at times, disabling but can frequently be controlled.

In addition to intractable migraine, Jo Ann also has hearing loss that is related to a head injury which occurred in October of 2010. Jo Ann developed tinnitus since the injury which caused the hearing loss.

Jo Ann C Fonzone has been at the LVPG Neurology Headache Center in an attempt to bring the attacks under better control. There are many different avenues used to prevent migraine attacks and we are exploring these in our attempt to bring the patient's condition under control.

If we can be of further assistance, do not hesitate to contact us at (610)402-8420.

Sincerely,

Vitaliy Koss MD

From: ecf_paed@paed.uscourts.gov,
To: paedmail@paed.uscourts.gov,
Subject: Activity in Case 5:12-cv-05726-MH FONZONE v. OTERI et al Telephone Conference
Date: Fri, Jun 5, 2020 12:32 pm

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

United States District Court

Eastern District of Pennsylvania

**Notice of Electronic Filing**

The following transaction was entered on 6/5/2020 at 12:32 PM EDT and filed on 6/5/2020
**Case Name:**    FONZONE v. OTERI et al
**Case Number:**    5:12-cv-05726-MH
**Filer:**
WARNING: CASE CLOSED on 09/30/2019    *UNTRUE*
Document Number: 164

**Docket Text:**
**Minute Entry for Telephone Conference held on 6/5/20 before MAGISTRATE JUDGE MARILYN HEFFLEY (mbh, )**

**5:12-cv-05726-MH Notice has been electronically mailed to:**

MICHAEL EIDEL    meidel@foxrothschild.com, jjaggers@foxrothschild.com

AARON SHOTLAND    aaron.shotland@phila.gov, anne.taylor@phila.gov

JOANN FONZONE    jo76erjo@aol.com

**5:12-cv-05726-MH Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=6/5/2020] [FileNumber=16952156-0
] [7a7ce4953f88e26d8bc8eb38da9e7fd8a46316adb2df3d810e3be4c5ae8a4a64ba2
e88d3464041651c7b53444bb697df35660e79f6af20ad1bde2d2f475590a6]]

From: ecf_paed@paed.uscourts.gov,

To: paedmail@paed.uscourts.gov,

Subject: Activity in Case 5:12-cv-05726-MH FONZONE v. OTERI et al Scheduling Order

Date: Fri, Jun 5, 2020 3:01 pm

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**United States District Court**

**Eastern District of Pennsylvania**

**Notice of Electronic Filing**

The following transaction was entered on 6/5/2020 at 3:01 PM EDT and filed on 6/5/2020

| | |
|---|---|
| **Case Name:** | FONZONE v. OTERI et al |
| **Case Number:** | 5:12-cv-05726-MH |
| **Filer:** | |
| **WARNING: CASE CLOSED on 09/30/2019** | UNTRUE |
| **Document Number:** | 165 |

**Docket Text:**
SCHEDULING ORDER: FINAL PRETRIAL CONFERENCE SET FOR 4/12/2021 09:00 AM BEFORE MAGISTRATE JUDGE MARILYN HEFFLEY. DISCOVERY DUE BY 10/5/2020. JURY SELECTION SET FOR 4/27/2021 09:30AM BEFORE MAGISTRATE JUDGE MARILYN HEFFLEY. MOTIONS DUE BY 11/5/2020. MOTION IN LIMINE DUE BY 1/20/2021. TRIAL DATE SET FOR 4/27/2021 09:30 AM BEFORE MAGISTRATE JUDGE MARILYN HEFFLEY.. SIGNED BY MAGISTRATE JUDGE MARILYN HEFFLEY ON 6/5/20. 6/5/20 ENTERED AND COPIES MAILED AND E-MAILED.(mbh, )

**5:12-cv-05726-MH Notice has been electronically mailed to:**

MICHAEL EIDEL     meidel@foxrothschild.com, jjaggers@foxrothschild.com

AARON SHOTLAND     aaron.shotland@phila.gov, anne.taylor@phila.gov

JOANN FONZONE     jo76erjo@aol.com

**5:12-cv-05726-MH Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=6/5/2020] [FileNumber=16952647-0
] [83a80af18d3da554ce0d43c99301d28b4774e14812cc3e1941027b8aa56207ebb96
03cba755db3c8e71ceaee9f971dec4a4fbebc418c0786354bc27ec644d14d]]

## CERTIFICATE OF SERVICE

I hereby certify taht I have on this day caused to be served a true and correct copy of the

aforementioned MoTION To Correct on the parties listed below at the addresses as listed:
RECORD-Operative
complaint (inclusion of defedants) opeatre complaits
served 7/07/15 with

Robert Foster, Esq.
Reger Rizzo & Darnell
2929 Arch St. , 13th floor
Philadelphia, Pa. 19104

City of Philadelphia law dept.(police, John Evans, Riverside Facility, O. Fisher, Bench
1515 Arch St. 14th Floor                                                          warrant unit- defendants)
Philadelphia, Pa. 19102

E.Kotchian, D.Ayers, G.Engel
Philadelphia Dist. Attorney's office
3 Penn square
Philadelphia, Pa, 19107

Defender Associates
1441 Sansum St.
Philadelphia, Pa, 19107

Richard Patton
1223 Locust St. 4th floor
Philadelphia, Pa 19107

By: Jo Ann Fonzone , Esquire aka Judy Mc Grath

08/03/20