**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **JOANN FONZONE,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| v. | : | **No. 12-5726** |
| | : | |
| **JOE OTERI, et al.,** | : | |
| **Defendants.** | : | |

# ORDER

AND NOW, this _____ day of _____, 2020, upon consideration of Defendants' Motion for Partial Summary Judgment, and Any Responses Thereto, it is **HEREBY ORDERED** that the Motion is **GRANTED**, and Plaintiff's claims of False Arrest, False Imprisonment, 1st Amendment Retaliation, Premises Liability, and Unlawful Seizure against the Defendants are hereby **DISMISSED** with prejudice.

BY THE COURT:

_____
Heffley, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANN FONZONE, | : | |
|               **Plaintiff,** | : | |
| | : | **Civil Action** |
|      v. | : | **No. 12-5726** |
| | : | |
| JOE OTERI, et al., | : | |
|               **Defendants.** | : | |

**DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

      The City of Philadelphia, James Kisielewski, Lesinette Ortiz, Mark Kovacs, and Christopher Bee ("Municipal Defendants"), by and through undersigned counsel, hereby file this Motion for Partial Summary Judgment pursuant to Rule 56.1 of the Federal Rules of Civil Procedure. Defendants respectfully request that this Court grant this motion for the reasons set forth below.

**I.    Background**

      Plaintiff Joann Fonzone initiated this lawsuit on October 9, 2012 by filing a Complaint. See Docket No. 1. She filed a second amended complaint on July 7, 2015, which the Court Order was the operative Complaint in this matter on July 22 2015. See Docket Nos. 46 and 51.

**I.    DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On October 6, 2010, Plaintiff Joann Fonzone attended a Philadelphia Phillies playoff game at Citizen's Bank Park.

2. During the game, Plaintiff was arrested by members of the Philadelphia Police Department for disorderly conduct.

3. Philadelphia Phillies Security Officer Joe Oteri provided the Philadelphia Police Department with a statement regarding his observations of Plaintiff's behavior on the

1

date in question.  See Joe Oteri's signed statement attached.

4. Oteri stated that the Phillies received complaints about a female (Plaintiff) being disruptive in the seats during the game. Id. at 1.

5. A hostess went down to speak with her twice, asking her to sit down. Plaintiff refused to cooperate. Id.

6. The hostess called for security and Mr. Oteri arrived first. Id.

7. Oteri asked her to sit down multiple times and she refused. Id.

8. Oteri asked her to come to the top of the steps to speak with his supervisor so she would not interrupt other fans. She refused. Id.

9. Mr. Oteri asked if she would move to a handicapped section, she said "go f**k yourselves and I'll do whatever I want". Id. at 2.

10. At that point, Oteri made the decision to eject Plaintiff. Id.

11. When a female police officer attempted to escort her out, Plaintiff swung her arm and struck the police officer. Id.

12. When a male sergeant and the female officer attempted to escort Plaintiff to the police room, she refused, and made her legs go limp causing the officers to have to drag her while she was still swinging at them. Id.

13. When everyone arrived in the police room, the officers tried to obtain her information but she was still "acting up". Id.

14. The officers were polite the whole time. Id.

15. Oteri never saw any police officer strike Plaintiff or slam her into a wall or railings. Id. at 3.

16. Joe Oteri testified at Plaintiff's waiver trial for disorderly conduct on October 2, 2013 consistently with the statement he gave police. See Notes of Testimony at 6:16-22:7.

## II. LEGAL STANDARD

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. See id. All inferences must be drawn, and all doubts resolved in favor of the non-moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying these portions of the record that it believes demonstrate the absence of material fact disputes. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party, and may not rest on mere denials. See id. at 321, n.3; First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co., 824 F.2d 277, 282 (3d Cir. 1987).

In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." Celotex, 477 U.S. at 322-24. The non-moving party must adduce more than a mere

3

scintilla of evidence in its favor to defeat the moving party's summary judgment motion. See Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989). Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." Schwartz v. Hospital of Univ. of Pa., 1993 WL 153810 at *2 (E.D. Pa. May 7, 1993). Furthermore, "[p]laintiff cannot simply reassert factually unsupported allegations in its pleadings." Poles v. St. Joseph's Univ., 1995 WL 542246 at *5 (E.D. Pa. Sept. 11, 1995) (citing Celotex, 477 U.S. at 325).

### III. ARGUMENT

**A. Probable Cause Existed For Plaintiff's Arrest, Therefore her False Arrest and False Imprisonment Claims Fail.**

The Fourth Amendment protects individuals against unreasonable searches and seizures, and includes a right to be free from false arrest or imprisonment.[1] U.S. Const. Amend. IV. While the existence of probable cause is generally a jury question, it may be appropriate for summary judgment where "the uncontroverted facts could not lead a reasonable person to find that probable cause was lacking." Telepo v. Palmer Township, 40 F. Supp.2d 596, 611 (E.D. Pa. 1999); accord Dreary v. Three Un-named Police Officers, 746 F.2d 185, 192 (3d Cir. 1984) (holding that a probable cause determination is appropriate for summary judgment where there are no genuine issues of material fact and no credibility issues).

The determination whether probable cause to arrest exists is a factual analysis that must be performed by the officers at the scene. Sharrar v. Felsing, 128 F.2d at 818 (3d Cir. 1997).

---

[1] False arrest and false imprisonment are nearly identical claims that are generally analyzed together. The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention, where such detention is unlawful if it is the consequence of a false arrest. Karkut v. Target Corp., 453 F. Supp. 2d 874 (E.D. Pa. 2006).

4

Obviously, it is neither feasible nor desirable for officers on the street to take it upon themselves to conduct a trial on the spot to establish guilt or innocence.  See Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974) ("there is no constitutional or statutory requirement that before an arrest can be made the officer must conduct a trial").  Instead, the Fourth Amendment provides that seizure is not unlawful if it is based upon probable cause.

The Court should dismiss Plaintiff's false arrest and false imprisonment claims because the Defendants had probable cause to arrest Plaintiff for disorderly conduct.  Under Pennsylvania law, disorderly conduct exists if an individual, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," engages in "tumultuous behavior," "makes unreasonable noise," or creates a "physically offensive condition."  See 18 Pa. Cons. Stat. § 5503.  If an officer has probable cause to believe that an individual has committed disorderly conduct, then that individual cannot sue the officer for false imprisonment or false arrest.  See Spiker v. Whittaker, 553 F. App'x 275, 278 (3d Cir. 2014); see also Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (holding same for equivalent state-law claims of false arrest and false imprisonment).

Generally, police may rely on the statements of a victim or eyewitness to a crime when making a probable cause determination as "it is well-established that when an officer has received . . . information from some person – normally the putative victim or an eyewitness – who it seems reasonable to believe is telling the truth, he has probable cause." United States v. Richards, No. 08-37, 2008 WL 3874302 at *2 (D.V.I. Aug. 15, 2008), citing Spiegel v. Cortese, 196 F.3d 171, 724 (7th Cir. 1999).  "It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of an attacker" since "it is difficult to

5

imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." Richards, 2008 WL 3874302, at *2, citing Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991).

Based on eye-witness Joe Oteri's observations of Plaintiff's behavior, the record reflects that the Defendant officers had probable cause to arrest Plaintiff for causing a disturbance at the Phillies game. Joe Oteri was a security guard for the Philadelphia Phillies and had been employed in that capacity for six (6) years at the time of the incident at issue. See Notes of Testimony at 8:4-8:9. He was a reliable and trustworthy eyewitness to Plaintiff's behavior, and Plaintiff has adduced no evidence that shows the police had any reason not to believe his allegations. No reasonable juror could find that the Defendant Officers lacked a reasonable belief that Plaintiff was behaving in a disorderly manner, given Mr. Oteri's observations of Plaintiff refusing to sit down at a Phillies game, disrupting fans around her, using vulgar language and physically assaulting a female police officer. See SUMF 1-15. While Plaintiff denies that she was acting in such a manner, those denials are self-serving, and the Defendant Officers were not required to credit Plaintiff's self-serving statements. See Stolarik v. City of Wilkes-Barre, 2013 U.S.Dist. LEXIS 155788, 2013 WL 5874811, *12 (M.D. Pa. Oct. 30, 2013) and Lyons v. Salem Twp., No. CV 3:16-1513, 2019 WL 4750212, at *6 (M.D. Pa. Sept. 30, 2019).

Additionally, qualified immunity protects the Defendants from liability for false arrest. Qualified immunity shields officers from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." See

6

George v. Rehiel, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotations omitted). A right only qualifies as clearly established if its "contours . . . are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *See Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2078 (2011) (citations and quotations omitted) (emphasis added). Given Joe Oteri's eyewitness testimony of Plaintiff's behavior including refusing to sit down at a Phillies game, disrupting fans around her, using vulgar language and physically assaulting a female police officer, no reasonable police officer would believe that arresting her for disorderly conduct was a violation of a clearly established right. Plaintiff can cite to no case law which would put the Defendant Officers on notice that arresting someone who is causing a disturbance at a professional sporting event based on a member of the security staff's eye witness observations, was a violation of a clearly established right. Therefore, Defendants are entitled to qualified immunity for Plaintiff's arrest.

**B. Plaintiff's Claim that her Souvenir Ticket was taken by Defendants Fails**

Plaintiff alleges that the Defendant Officers unlawfully took her game ticket. Third Amd. Cmplt. at ¶45-47. According to Sal DeAngelis, Manager of Ballpark Operations/Security, Plaintiff's ticket was confiscated by the Phillies security according to Phillies policy. See Statement of Sal DeAngelis. Additionally, Joe Oteri told police that a Phillies security guard confiscated Plaintiff's ticket, not Philadelphia Police. See Statement of Joe Oteri, p. 2. Plaintiff's self-serving allegation that the Defendant Officers took her ticket is unsupported elsewhere in the record, and contradicted by both Sal DeAngelis and Joe Oteri, who are 3rd party witnesses and not interested parties. Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. Gonzalez v. Sec'y of Dep't of Homeland Sec., 678

F.3d 254, 263 (3d Cir. 2012). Therefore, Plaintiff has failed to adduce competent evidence to support a claim that the Defendants unlawfully seized her ticket, and this claim should be dismissed.

C. **Plaintiff's 1st Amendment Retaliation Claim Fails Because Probable Cause Existed for Her Arrest**

Plaintiff's First Amendment retaliation claim fails for two reasons. First, even if a litigant establishes a prima facie case of First Amendment retaliation, the court should still grant summary judgment against such a claim if an officer "would have undertaken the action complained of" regardless of the litigant's speech. Bergdoll, 515 F. App'x at 169-170. In other words, a complainant must "show that [his] speech was the but-for cause of [his] arrest." *Id.* at 170. Here, as in Bergdoll, there is no evidence in the record which indicates that it was Plaintiff's speech, rather than her unwillingness to sit down and refrain from bothering other Phillies fans that led to his arrest. Id. Therefore, Plaintiff's First Amendment retaliation claim fails as a matter of law.

Second, the Defendants enjoy qualified immunity from Plaintiff's retaliation claim because probable cause existed for her arrest. In Primrose v. Mellott, 541 F. App'x 177 (3d Cir. 2013), the Third Circuit held that it is not clearly established that an arrest supported by probable cause can give rise to a First Amendment violation. *Id.* at 180 n.2. Given such a legal landscape, the Defendants enjoy qualified immunity from Plaintiff's First Amendment retaliation claim. See id.; see also Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause.").

D. **Plaintiff's Premises Liability Claim Fails**

8

Plaintiff alleges that she purchased a ticket to the baseball game at Citizens Bank Park, and the City of Philadelphia[2], as a landowner, violated the standard of care owed to Plaintiff as a business invitee of the ballpark. Third Amended Compl. ¶¶ 83–85.  According to Fonzone, the City has a duty to protect invitees from tortious acts of third parties or employees, and thus is liable for the negligent or intentional acts of security guards and police officers.

The Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541-8564, includes certain exceptions to immunity, one of which is the real property exception. 42 Pa. Cons. Stat. § 8542; see Williams v. Phila. Hous. Auth., 873 A.2d 81, 85–86 (Pa. Commw. Ct. 2005). As relevant here, the real property exception in the Act provides that a local agency may be held liable for negligent acts relating to the "care, custody or control of real property in the possession of the local agency." 42 Pa. Cons. Stat. § 8542(b)(3). For the real estate exception to apply, the negligence must make the real property itself unsafe for its intended use. Snyder v. Harmon, 562 A.2d 307, 312 (Pa. 1989). Stated otherwise, the negligence must create a defect in the real estate. Id. Further, it must be the dangerous condition or defect in the real estate that causes the injury. Mascaro v. Youth Study Center, 523 A.2d 1118, 1123 (Pa. 1987). If a defect merely facilitates an injury to be caused by the acts of other persons, the defect or dangerous condition is not actionable. Id. Finally, the real estate exception must be narrowly construed to effect the General Assembly's intent to insulate state and local agencies from tort liability. Id.  The real estate exception does not, as Plaintiff alleges, create a duty of the City to protect invitees from tortious acts of 3rd parties or employees.  As Plaintiff has failed to adduce evidence that there was any

---

[2] Plaintiff previously made a Monell claim against the City of Philadelphia which was dismissed by Order of the Court on September 5, 2017.

9

kind of dangerous condition or defect existing at Citizen's Bank Park which caused her injuries, the City is immune from her premises liability claim, and it should be dismissed.

Date:  November 5, 2020                          Respectfully submitted,

                                                    /s/  *Aaron Shotland*
                                                    Aaron Shotland, Esq.
                                                    City of Philadelphia Law Department
                                                    Civil Rights Unit
                                                    1515 Arch Street, 14th Floor
                                                    Philadelphia, PA 19102

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOANN FONZONE, : | |
|         Plaintiff, : | |
| : | **Civil Action** |
|     v. : | **No. 12-5726** |
| : | |
| JOE OTERI, et al., : | |
|         Defendants. : | |

## **CERTIFICATE OF SERVICE**

    I hereby certify that on the date below, the Defendants' Motion was filed via the Court's electronic filing system and is available for viewing and downloading.

Date: November 5, 2020                Respectfully submitted,

                                                                /s/ *Aaron Shotland*
                                                               Aaron Shotland, Esq.
                                                               City of Philadelphia Law Department
                                                               Civil Rights Unit
                                                               1515 Arch Street, 14th Floor
                                                               Philadelphia, PA 19102