REC'D APR 2 0 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JO ANN FONZONE AKA JUDY MC GRATH, Plaintiff-Appellant          Civil Action
                                                                5-12-cv-5726
                                                                Jury Trial Demanded

                              vs.

JOE OTERI, et al,  Defendants- Respondents

MOTION TO REOPEN CIVIL RIGHTS PERSONAL INJURY  ACTION

Plaintiff Jo Ann Fonzone, by and through her attorney, hereby moves this Honorable Court to

reconsider and vacate  its order of  April22, 2022, June 16, 2022 and August 3, 2022 ,reopen and

reinstate this case pursuant to FRCP  60(b)  and in support  thereof avers the following:


From the start of this civil rights/personal injury litigation Plaintiff has Demanded a Jury Trial

in original Complaint prepared by her then attorney Mr. Bailey,as is her right under the Constitution

7th Amendment and  FRCP 38.Motion to Reopen judgment based on mistaake,inadvertence,surprise

or neglect based on one year time limitation 60b motion here was timely filed and as it tolled NOA

filing, all issues  in brief shall be reviewed. Lizardo v. US, 619 F.3d 273 (3d Cir. 2010).

Plaintiff has been denied her constituional right to a jury trial or any consideration of the merits

of her case.Instead, this action was dismissed  in error on FRCP41(b) grounds after defendants

requested  this dismissal . There is clear error here as there are genuine issues of  fact in dispute.

A District Court has the power to terminate an action ... dismissals are justified only where the

underlying facts are not subject to fair dispute Henderson v. Shineski, 131 Sct. 1197(2011).


Though the dismissal was April 22, 2022, Plaintiff had no Notice of this until she went to the

Federal court clerk in Allentown, Pa to inquire if there were any recent Orders on her April 18,

2022 filing on thePoulis factor Clerk Evelyn Renner provided Plaintiff a copy of the April 22, 2022

Order May 3 . Plaintiff filed April 18, 2022 ,in compliance with April 4 order ,her response to court

rule to show cause why case should not be dismissed for failure to prosecute. Plaintiff also filed a Notebook of Exhibits.

At the March 10, 2022 phone conference, Plaintiff told the court she had a year long scheduled appointment with her neurologist April 19,2022 for new migraine treatment ,asked for more time. Plaintiff filed Motion to Vacate the Dismissal Order which was denied June 16,2022. However, as evidenced by the attached , Plaintiff again did not receive the Order until she received a copy from the Federal Court clerk in Allentown, Pa.  Matt Sheetz on July 8, 2022.

Upon receipt of the Order,Plaintiff filed Petition to Reopen Civil Action July 11,2022 ,#218 when there was no Order ,she filed it again July 15,2022 , #221 and there was still no Order.

Plaintiff finally got an Order of denial of Petition of August 3, 2022 from defense counsel as an Exhibit  later in August 2022. This was the last remaining motion filed in the District Court; therefore Plaintiff's Notice of Appeal  was  filed early  July 13, 2022 and should not have been docketed until afterAugust 3, 2022.The case was not final or appealable until August 3,2022 when the Petition to Reopen was denied by a new Magistrate.

As Plaintifff wanted to preserve her Appeal rights, while waiting for a ruling on her Petition to Reopen, she filed Notice of Appeal and IFP application., #220 .

Plaintiff's Motion to Vacate, #217 is final judgment ,was denied June 16, 2022 ; ergo this Motion to Reopen , according to FRCP 60(b) and  Blitch v. US, 39 F4th 827(2022) ;this Motion is timely filed within one year of the denial. New Arguments appear in # 204,214,216,218, 221 of the Docket.

Perusing the Order of August 3, 2022, Plaintiff contends she does in fact have new arguments and  facts to justify relief under FRCP 60(b).  An error was made on the docket  September 30, 2019, though Plaintiff was unaware until July 5, 2020 by email from the court. The document number then was #164 and after several efforts ,it was finally corrected on the docket  later in 2020 The error  stated " WARNING :  CASE CLOSED on 9/30/2019.

Of course, this error was prejudicial to Plaintiff as she tried to get other counsel to help her because when looking at the docket, they read "the case was closed. " The case was NOT closed , but stayed or put in civil suspense  ........(see attached)

Docket 12-5726

From:  .com (jo76erjo@aol.com)

To:     carlene-kohut@paed.uscourts.gov

Date:  Friday, April 14, 2023, 1:59 PM EDT

Ms. Kohut, I'm writing t inquire if  some documents I fled in my case  are still in the court file. I filed about 40 sets of Interrogatories  with Motions to compel and I filed a Notebook of Exhibits  with a 9 page Index. These are important for the court  to consider and as the case has moved from Phila. to Reading to Phila. to Allentown,  I know it is possible that things could get displaced. Im going to file a Motion to Reopen  soon as the incidents at issue were not considered on the merits and and the injuries caused me serious disabling health conditions, some were just recently discovered, some discovered three years ago and others ongoing and permanent since original date of incidents. I also filed a 911 audio CD when I called for help as I was being physically assaulted. Please let me know if this is still in the file , if not I can provide another copy. Thank you.
Jo Ann Fonzone, Esquire , Plaintiff

*Ord depos/duket Transcript/#96 , medic reports opp audio CD, Police Advisory Commission CD Interview*

On August 30, 2021, Plaintiff filed and served a partial , not complete filing in compliance with the magistrate's Pre Trial Stipulation Order. It was a partial filing because plaintiff was undergoing treatment for her physical injuries as a result of the aggravated assaults she suffered October 6, 2010. Plaintiff will have continuous treatment for the rest of her life with orthopaedic, neurologist, and cardiologists because of the severe head, neck, chest, shoulder , back, and right hand trauma she endured during the horriffic physical assaults and battery , reckless endangerment, harrassment , all of which should have been prosecuted by the district attorney ,but were not, he is in Federal prison for bribery .

Plaintiff, in compliance with the pre Trl iaStipulation order, has filed 1., 2., 3., 4., 6.,7, 5.,(is included in 2).Plaintiff is in total compliance with the Courts Pre -Trial Stipulation order, yet her case is dismissed on a FRCP 41(b) failure to prosecute,when Defendants did not comply. Defendants never answered Plaintiff's Complaint or Amended complaint,yet she is penalized?

Plaintiff has throughout this litigation been in compliance with every court order and has timely filed pleadings, motions, Answers to defendants discovery (unlike defendants who have provided no discovery answers or information )which severely impeded Plaintiff in her right to obtain information through Interrogatories, written deposition questions, subpoenas,all unanswered .It is not Plaintiff who has been dilatory or acting in bad faith.

Plaintiff has been providing medical reports to both the court and defendants as required to provide continuous answers to Interrogatories and Document Production requests.

On April 23, 2022 the Phillies organization signed a certified receipt of Plaintiff's subpoena for a videotape of the area in the concourse at the stadium on October 6, 2010 .Plaintiff was standing watching the game for 10-15 minutes when abruptly without cause was grabbed from behind by her arms by two police officers and dragged across the concourse ,thrown onto a chair in the police room, handcuffed ,her bag was searched and Plaintiff watched Sgt.Kovacs remove her souvenir Playoff ticket .

, Plaintiff was further and more seriously injured for having called 911 for help because of the dispatch policy of calling the stadium police in the room ,where kelewishky was, instead of another police district to check on the situation.where there was an out of control violent officer .

The City and Phillies org. policy of having security guard determine or fabricate probable cause to have an innocent injured patron arrested because he injured her was deliberately indifferent in its training , hiring and supervising in proper police and security guard procedure.Bergdoll v. City of York, et al, 515 Fed. Appx.165 (2013). Plaintiff's civil and constitutional rights were violated by security and police because there was no probable cause to arrest her.

The holdng in Wilson v. Philadelphia Hosing Authority 735 A.2d 172 (Pa. Cmwith.1999) is analogous to this case., where the court found the real estate exception to apply.In Wilson," the Plaintiff was injured on authority property when a third party pushed her , causing her to fall and hit the stump of a metal pole protruding from the ground, thereby injuring her ankle." this court found that even though a third party set the action in motion that caused the fall, it was not the superseding cause of the injury. " The court went on " that even though a third party's conduct was an intervening superseding cause , the Authority would still be liable for its negligent conduct."

In the instant case, the intervening cause of injury was not caused by the physical characteristics of the stadium but by intervening factors. In fact, there were more than one intervening factors. Fonzone was pushed into the stadium seatback first by oteri , then both Oteri and Kelewishcky each time hitting her head on the seat and body on cement ground. A half hour later, Fonzone was thrown against the wall and fell to the cement ground twice, then struck repeatedly on her chest with kelewischky's nightstick. The intervening factors from 5;45 to 6;15 pm were Oteri, Kelewiisschy and Bee, when pushed up stairs and dragged across the stadium concourse.Here,the cement ground,cement floor,stairs and stadium seat were the metal pole inWilson,but the pushng and throwing of Fonzone intoand against the seatback,wall,causing falls on the cement ground which caused the injuries,and the nightstick beating.The Plaintiff's premises liabilty and Monell claims stand.(This is a new record)

ٮ Plaintiff contends that the above mentioned suffices for the Court to reinstate

this civil action under 61(b) (1), courts may relieve a party from a final judgment

for "mistake, inadvertence , surprise or excusable neglect" because it was a mistake

that Plaintiff did not receive a copy of the Orders of April and June; or it was inadvertenrtly

not mailed to her by the clerk or there was mail tampering ,but it was excusable because she

had no Notice that her case had been dismissed which is the harshest penalty for a plaintiff.

ٮ Plaintiff hereby incorporates by reference her Motion of June 14, 2022 stating with clarity

reasons that she did not fail to prosecute this action despite of all the odds against her.

ٮ Though Plaintiff does not agree that it is necessary for her to use Rule 60(b)(3) to be granted

" relief from the judgment of dismissal, based on fraud, misrepresentation or misconduct by

opposing party"; she wlll nevertheless discuss the components of this Rule. Plaintiff has

asserted throughout this litigation that there was a cover up by defendants to protect the

violent perpetrators that seriously injured her, first Oteri and then Officer kelewchky. There

was no probable cause to arrest her; she called 911 for help and they all hid the audio of the

call for more than two years as they refused to acknowledge Plaintiff was taken toEmergency

Room after Sargeant Addison noticed that she needed medical attention. There was other

exculpatory evidence suppressed and witheld , many other acts of police and prosecutor

misconduct and misrepresentations to the courts,blatant lies, slander about Plaintiff. All of

this is contained in Plaintiff's Affidavit including the fact that a warrant was issued based on

lies to the court. Plaintiff notified the Municipal clerk, the District attorney and her lawyer

( Mr. Dixon)she had an appoitment with her cardiologist and would not be in court Sept.21,2011

, yet they got a bench warrant for her non-appearance knowing her legitmate reason for her

absence.

`.Opposing parties were aware of the 911 audio because the police made it from the call; plaintiff purchased the CAD report of the exact time the call was made. The suppression of exculpatory evidence is a Brady violation and more than that it was police and prosecutor misconduct .
Plaintiff requested all police reports from them with filings in Municipal court and Right to Know requests, and the CD and other police reports (where Lieutenant and Sargeant found Fonzone's IA complaint valid , and the report generated when police transported Fonzone to the ER were all deliberately witheld. This was not just misconduct,it was also wilful misrepresntation; there were four deliberate discovery violations by prosecution in Municipal court; as they intentionally deceived the court and knowingly, maliciously prosecuted an innocent injured crime victim.

.The aforementioned evidence of misrepresentation, misconduct , and fraud are Rule 61(b)(3) grounds for vacating the dismissal order. Under 60(d), (3) this court also has the power to vacate the dismissal because defendants with all their wrongful acts committed FRAUD on the Court. Why wasnt the PFA (stated vicarious abuse)along with the Plaintiff's IA complaint sent to district attorney by the investigator as required? Defendants as state actors along with oteri who conspired with them perpetrated fraud and cover up of their criminal acts after they seriously injured then maliciously prosecuted an innocent individual.Black v. Bayer.

.. Every Order by the previous Federal Judges was mailed by U. S. Mail to Plaintiff. On page 4 of magistrate Heffley's memorandum, , she incorrectly states that "a case management confernce was held Jan. 24, 2019 and Fonzone requested a continuance becasue she had obtained counsel" .
The fact is that defense counsel Shotland had asked for continuance because his wife was having a baby #128, 129. Other continuances by defense were for other family medical emergencies and vacations. Item #130 is the Transcript of 12/12/18 mentioned where the counsel Fonzone paid to be at the conference failed to appear, and Judge Schmel wanted to phone her; his clerk did. Plaintiff has provided a copy of the transcript she purchased to the court.

A police officer must not be automatically believed by any fact finder that anything he says is true , correct or accurate. The level of police misconduct, brutality, improper police procedure( resulting in egregious violations of individual's constitutional and civil rights), is increasing at astounding measures throughout the United States. An individual can read a newspaper or watch the news to understand this unfortunate reality.

A bad cop could lie, perjure, and fabricate evidence to unjustly attempt to attack the credibility of an individual , (particularly if an arrest is wrongful and criminal charges are dismissed), in order to protect his reputation and attempt to protect himself and others from civil liability for the wrongful arrest, malicious prosecution, false imprisonment, and misconduct in violating the rights of an innocent individual.

The government must not tolerate and condone this improper police behavior. With the increasing number of police misconduct incidents being reported to the authorities, like the Attorney General public corruption Unit, for example, it is the responsibility of the Government agencies , Courts and superior law enforcement to investigate the reported incidents for any motive and wrongdoing behind the misconducts. It is the responsibility and jurisdiction of these agencies to act upon reported incidents of misconduct and rights violations in effort to weed out any possible or evident abuse of power, victim witness intimidation obstruction of justice, non compliance of subpoenaed evidence, wrongful arrests, malicious prosecutions, bribery, false implication of innocent people in the criminal system, perjury, harrassment, and corruption .

The investigation into allegations of police misconduct and malicious prosecutions by the district attorneys are required in order to protect and preserve the integrity of the legal system and guarantee individuals the rights that the state and federal constitution guarantees all citizens. Injustice to one is an injustice to us all. Martin Luther King.

3. FACTS

AFFADAVIT

Jo Ann Fonzone  was  injured  on October 6, 2010 while at Citizens Bank Park by the security , Joe
Oteri, and police personnel, Officers Bee and Kelowscky.   Jo Ann was  on a Phillies playoff package
trip with other fans  and went  to the game a Trans Bridge bus trip  from Allentown, PA  at  around 2
p.m.  Upon arrival at the stadium, Jo Ann and Florence , the woman seated next to her on the bus and at
the stadium  had  their photos taken by the Phillies photographer  at around 5:15 p. m. Jo Ann and
Florence  ate  snacks and drank soda  on the bus.

After the photo was taken, we went to our seats , section 108, row 32.  Jo Ann then decided to go to the
Majestic store and did so. The store was crowded and she waited in line, then finally went in and
looked around and purchased a Roy Halladay  t-shirt and put it on.  As  she walked back to her seat,
she  got a beer and went to her seat. ( As it was a cold, damp rainy evening, she drank just a sip  and put
the almost full bottle in the container in  front of her). Jo Ann  had had the flu the week before  and
thats  why she had only one ticket. By the time she got to the bus company to get the tickets she was on
the waiting list for two,  there was only one seat  left.

Right before the game started, Jo Ann called a friend to tell him that she was at the game, but as the
stadium crowd was so loud, she couldn't have the conversation and put her phone in her left jacket
pocket.  WIP Radio said that it was the loudest game ever played at the stadium. Roy Halladay was on
the mound , the game was  very exciting as he was  doing  great. ( in fact this was a no-hitter game  ,
the Phillies  won 4-0 against  Cinnicinati).

Around the second inning, as Jo Ann  and everyone else was standing and cheering  with Rally towels,
a man in a blue shirt  began to grab at her right arm. The man  kept  doing that and it was hurting her
arm. Jo Ann didnt know who he was or why he was pulling and grabbing her arm, so she naturally
moved a step to her left  to get away from his grabbing.  Soon, a very large  man in a white shirt started
to assist  the blue shirted man in grabbing  and pulling  and pushing Jo Ann so that she was pushed into
the seat in front of her and her head hit the seat and she fell to the ground.   ( THEN, JO ANN SAW A
GUY INFRONT OF HER AND A FEW SEATS TO HER RIGHT, GRAB THE SECURITY  MAN'S
ARM AND SAY' LET HER ALONE, SHE'S NOT DOING ANYTHING WRONG".) But, the men
dragged her out of the seating area and pushed her up the steps and placed her behind the seating area
in the concourse. Jo Ann stood  there around the concession stands  without incident and watched the
game. The men , who now she was aware of were security and police, were nearby. There were other
people in the vicinity also  standing  and watching the game .

About 10-15 minutes  later, Jo Ann was grabbed from behind by Kelechewsicky and Bee  by the arms
and dragged  across the concourse.  Her feet were dragging so that only her heels were touching the
ground and her arms were restrained by the officers  grasps. While this  was happening, she yelled,
"what are you doing? I just wanted to watch the game? What are you doing, you are hurting my arms.
" The very large officer  replied, "We  just want to talk to you." finally, Jo Ann was  taken into the
room behind the concession stands, which she now knows is the police room.

Jo Ann  was  thrown into a chair in the police room and her red bag was taken  from her.  There were 3
men  sitting at desks in front of computers, one of them Kovacs, was in a police uniform. Kovacs
searched  the red bag, took my Phillies  playoff souvenir ticket from my bag and it was never returned
to me.  Kovacs and kelewchisky found my attorney ID card and a card from an Internal Affairs
Sargeant from Allentown and became  extremely angry upon seeing this. "  "Oh, you're a lawyer."

By this time, Jo Ann was very upset, crying and in pain from the trauma she had just experienced. She was put in handcuffs, and as she still had a sinus infection, there was snot running from her nose and, a they would not give her a tissue. When Jo Ann asked them, why they were doing this and what was she charged with, they replied," a man wanted everyone to sit down ."

Minutes later, the very large cop , who she now knows is named kelechewsicky, took her from the chair into an adjacent room, a smaller room, and when the door closed, he threw her against he wall, so that she fell to the ground. Jo Ann's right arm, wrist, hand and shoulder were hit harshly . Jo Ann then got her phone and called 911 for help as she was afraid that she would be killed. She told the 911 woman her name , where she was and that she was in a jail cell and being physically assaulted by the police. Jo Ann mentioned officers kovacs and bee but could not pronounce kelechewsicky as she was so distraught and traumatized. Officer Bee was in the police room , and there were security and police out in the hallway.

The police then came back into the room and again threw her against the wall. Jo Ann tried to call 911 again, but then heard the door open and could not speak to 911 and put the phone in her pocket. This time, the large officer kelechewsicly said" We know you have a phone, give me the phone". He took the phone , threw me against the wall again, and this time when on the ground, he took the nightstick , placed it on my chest and began striking me with the stick repeatedly.

Sometime later, Jo Ann was taken out of the jail cell room and thrown onto the chair in the larger room. At no time , was she given any Miranda warnings or told she was under arrest , though she asked them if she was and what was the charge. Officer kovacs replied by saying "why do you have an Internal Affairs card?" Jo Ann thought they were going to make her leave the stadium at this point, but instead she was taken to a police precinct by a male and a female police officer. She now knows their names are Officers Person and Ortiz.

When Jo Ann got to the precinct, she was fingerprinted, photographed and put in a cell . she was allowed to make a phone call and called a lawyer , Cheryl Gaston, who she had met at a Legal Intelligencer luncheon for women lawyers earlier in the year. She told her what had happened to her.

After some more time, the Sargeant on duty Addison when making rounds saw that my arm and hand were very bruised, contused and swollen. He told me that I needed to go to the hospital, and would be taken there. I was in severe pain, my arm, hand , shoulder and head and felt very beaten and battered. I had to wait for the transport officers and eventually was taken to Jefferson Emergency Room at about 9:30 and got to the ER about 10:00 p.m. While waiting in the triage, I had a grand mal seizure from the head trauma hours earlier at the stadium. My blood pressure was very high before that happened, and I began trembling. I was taken to the ER in handcuffs and handcuffed to the ER bed. I had x-rays on my hand and shoulder, and was given a urine test because I thought I had a yeast infection from the antibiotics I had taken for the flu and sinus infection the week before.

I was given prescription tylenol with codeine for pain while in the ER and a prescription but did not fill it because I am allergic to codeine. I was taken back to the police headquarters around 3:00 a.mr, though I was in severe pain in my chest, head and entire right side. When taken to an ER by the police, a patient does not get admitted to the hospital even if he or she should be.

At police headquarters, I was locked in a cell for several hours and then the hospital discharge papers were brought to me. Finally, I was taken to a room for video arraignment and was questioned by a very arrogant unhelpful pre-trial services employee. She wouldn't let me answer some of the questions.

Then, I spoke with the bail commisioner Mr. O'Brien, told him I wanted to represent myself and that I was not guilty and was the injured victim. He released me on my signature or ROR. As I couldn't move my right arm or hand because of the swelling, ( I thought I had broken bones), I signed an "x" with my left hand. Sometime later, I was released . ( I could not write or drive for 3 or 4 weeks as I am right handed.) I was not feeling well, had a concussion, but walked into a police station on the way to the Greyhound station and tried to report the aggravated assault . At 11ᵗʰ and Wharton, the officer at the front window, Alexander looked at my bruised and contused arm and hand and said that I couldnt file a report and had to do that at Internal Affairs. I left and started walking, at a gas station I asked a young man if he would drive me to the bus station, he was kind enough to do that. I then had to buy a bus ticket as the bus to the game had left after the game the night before. Being a victim always costs the victim I paid $158.00 for the game and transportation.


I got home about 4;30 p.m. October 7, 2010. the next day I went to my family physician. She saw the large contusion on my chest and sent me for an immediate chest x-ray and echocardiogram. Jo Ann could not lift her right arm above her head for the chest x-ray as it was excrutiatingly painful, so the Radiologist could only take one view.I have been treating with cardiologists since then and have been in the hospital two more times , March and September 2011 for the heart condition , atrial fibrilation,I have as a result of being beaten on my chest by the police on October 6, 2010.I take medication for the heart condition. I was also diagnosed with PTSD like a veteran and suffer form nightmares, flashbacks, sleeplessness since the incident.

While recovering from a March 2011 hospital stay, Jo Ann phoned and sent medical documents to the Defenders to inform them that she could not be in court April 29. she called LaRue Werthy on April 28, 2011 to make sure they would get a continuance and tell the Judge why I could not be there. The Defenders neglected to do that, and Jo Ann discovered six weeks later that a bench warrant had been issued on April 29, the day Jo Ann was with her cardiologist.

A similar incident occurred in September 2011, though Jo Ann had retained a private attorery because she was not being properly represented by the Defenders. Jo Ann had an appointment with a cardiologist scheduled September 21, 2011, so she filed for continuance on September 9, 2011, and told the attorney Mr. Dixon that she could not be there on September 21, 2011. A bench warrant was issued, Mr Dixon did not tell his client this, though she called him many times to ask him what happened in court on that day. He did not answer his phone or return her calls despite the messages she left.

In the middle of the night at 2:00a.m. September 23, 2011, the bench warrant unit stormed into Jo Ann's mother's home while they were sleeping to arrest Jo Ann on a bench warrant for not appearing in court the previous day. Naturally, Jo Ann and her mother were traumatized by this gestapo like action, but Jo Ann was taken away by a swarm of law enforcement. The building was surrounded as though she was a fugitive rather than a sports fan wrongly charged with disorderly conduct for standing up at a playoff game.

Jo Ann was handcuffed and shackled and driven at a speed of 100 miles an hour on the turnpike toward Philadelphia to go to bench warrant court which opens at 8;00 a.m. . Jo Ann said to the driver, "please slow down so that we get there safely," he replied that, he" was going with the speed of the traffic."

Jo Ann began to have palpitations and go into atrial fibrilation and told the driver he better take her to the hospital. Jo Ann did not know where he was going and she was taken to Frankford hospital ER in

shackles and handcuffs. An echocardiogram was done, and because she was a prisoner, she was not admitted and otherwise would have been. Jo Ann was later taken to RCF prison instead of the court on Filbert St. Upon arrival, the bench warrant officers gave the bench warrant and my ER discharge papers to the Corrections Officer. Jo Ann Fonzone did not get these papers back, though she requested them during her time at RCF and several times since then by phone , in person and subpoena to the warrant officers, and the RCF Director, Chris Thomas, and requests to the legal staff of RCF and the Warden . Jo Ann Fonzone has also been denied copies of the transport forms of prisoner to hospital of October 6, 2010 and September 23, 2011.

Jo Ann was afraid for her life while at RCF. At the time, She was unaware of the PaRCrim P 150 (A) (5), that a person can only beheld on a bench warrant for 72 hours. Jo Ann called her mother and asked her to get a lawyer to get her out of RCF as she was not getting her heart medication and was not feeling well . Jo Ann was also afraid of some of the inmates that were detoxing from heroin, one of them , her roommate threatened to kill her, and finally Jo Ann got herself moved to another jail cell.

Jo Ann's sister and mother retained a new private lawyer Mr. Frumer. Jo Ann was told by her sister that Mr. frumer told her he was going to meet Jo Ann in court on Monday at bench warrant hearing court and she wold be released from there. Frumer did not get her out Friday or the next day and should have known about Rule 150. He should have called the sheriff or the warden to find out why his client had not been brought to court. Jo Ann was scheduled to go to court September 26 at noon for bench warrant hearing, but was not allowed to get on the bus to court with the others , though she was in line and at the door that day. The Officer, Fisher told her she had to wait until Wednesday. Mr. frumer was aware that Jo Ann had an Argument on a civil case in Lehigh County scheduled for September 27, 2011. When she was not present at the Argument, her civil case was dismissed ex parte. Jo Ann was instead taken to bench warrant court on September 28, 2001 and released from there at about 3;00 p.m. So, Jo Ann was imprisoned for 6 days on a bench warrant because she had an appointment with her cardiologist on September 21, 2011. Jo Ann does not tolerate the heart meds well and different meds and doses have been tried to try to avoid side effects , like migraines ,which leave her tired and with erratic blood pressure.

When do the violent perpetrators of aggravated assault, reckless endangerment that cause innocent individuals serious injuries and damages get arrested, prosecuted and imprisoned instead of punishing their victims?

Commonwealth of PA
County of Lehigh

Sworn and subscribed before me
this 25th day of June 2012

ESQUIRE    6/26/12

Jo Ann Fonzone, Esquire

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lisa Hein, Notary Public
South Whitehall Twp., Lehigh County
My Commission Expires Dec. 17, 2013
Member, Pennsylvania Association of Notaries

The Phillies org. possessor of land was under a duty to the public who enter ,then the police who took custody of Appellant and deprive her of normal opportunities for protection both had a duty to aid or call for medical assisatance within a reasonable time Neither Oteri or the stadium police called medical help for Appellant. Fonzone called for medical help while in police custody and finally got the police hospital report after two years of both police and prosecution hiding that and other exculpatory evidence from her and the Court. The first police report was the 911 call audio and CAD report when Fonzone called for help. The other suppressed police reports were : hospital police report, two Internal Affairs police reports signed as valid by a Sargeant and Lieutenant Appleton.All of these are significant evidence that police and prosecutor were on notice of the incidents sufficient to create triable fact regarding any breach of duty by Appellees The aid should have been rendered at the stadium within reasonable time as Oteri and the police dispatcher knew Fonzone needed medical help. Reason v. Kathryn's Korner Thrift Shop 169 A.3d 96 ,2017Pa Super 266..Fonzone got medical help several hours later after being taken to the 1st District then the ER. Oteri and the police clearly breached the standard of care, breach caused injuries to Fonzone and she suffered irreparable damages.Phillips v Cricket Lighters, 76 Pa 644 ,841A.2d1000(Pa.2003).Fonzone was the only one injured;she is the victim and is not precluded from asserting that because the merits were  not addressed by the District Court .

Fonzone a ticket holder,gave notice with 911 call she was in danger, Ford v. Jeffries 474 Pa. 588, 379 A.2d 111, 115 (Pa1977) ruled, "It is well established that a defendant does have a duty to guard against the criminal acts of superseding third parties unless he realized or should have realized the likelihood of such a situation.".Conversely, a duty to protect a business invitee from third party conduct arises if the owner has reason to anticipate such conduct. Reason Id. The City and Phillies had reason to anticipate misconduct from security and police after Oteri went to wrong section and after 911 call.

. CONCLUSION
    District court erred; it was abuse of discretion and manifest injustice to dismiss civil rights personal injury action as Appellant was seriously injured and suffered some permanent physical disabilities as a result of defendants misconduct; all defendants from Third Amended Complaint are liable pursuant to Black v. Bayer, C.A.3d (Pa. 1982)672 F.2d 309. Decision should be reversed.

| | | |
|---|---|---|
| | | HONORABLE LEGROME D. DAVIS ON 7/7/15. 7/8/15 ENTERED AND COPIES E-MAILED AND MAILED TO PRO SE PLFF.(kw, ) (Entered: 07/08/2015) |
| 07/08/2015 | 48 | PETITION for leave of court to file supplemental claims as included as Counts VII and VIII in amended complaint, Certificate of Service, filed by PRO SE PLFF JOANN FONZONE. (kw, ) (Entered: 07/08/2015) |
| 07/20/2015 | 49 | Response to Petition to Amend re 48 Application/Petition by JOE OTERI, PHILLIES. (Attachments: # 1 Certificate of Service) (FOSTER, ROBERT) (Entered: 07/20/2015) |
| 07/21/2015 | 50 | ANSWER to 46 Amended Complaint by OFFICER BEE, OFFICER KELECHEWISCKY, OFFICER KOVAC, LESINETTE ORTIZ. (SHOTLAND, AARON) (Entered: 07/21/2015) |
| 07/21/2015 | 🔒 | (Court only) ***Issue Joined (fb) (Entered: 07/22/2015) |
| 07/22/2015 | 51 | ORDER THAT PLAINTIFF'S REQUEST FOR LEAVE OF THE COURT TO INCLUDE SUPPLEMENTAL CLAIMS IS DENIED. PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL TO ASSIST HER IS DENIED. ALL PARTIES ARE INSTRUCTED THAT THE OPERATIVE COMPLAINT IN THIS MATTER IS THE DOCUMENT ENTITLED "AMENDED COMPLAINT" AND DOCKETED AS "SECOND AMENDED COMPLAINT" FILED JULY 7, 2015. THIS DOCUMENTS IS PROPERLY REFERRED TO AS "THIRD AMENDED COMPLAINT". SIGNED BY HONORABLE LEGROME D. DAVIS ON 7/22/15. 7/23/15 ENTERED AND COPIES MAILED TO PRO SE AND E-MAILED.(mbh, ) (Entered: 07/23/2015) |
| 08/11/2015 | 52 | PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY TO DEFENDANTS ANSWER PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 7(a)(7) filed by JOANN FONZONE.. (Attachments: # 1 REPLY, # 2 REPLY)(lbs, ) (Entered: 08/11/2015) |
| 08/11/2015 | 53 | PETITION FOR RECONSIDERATION OF ORDER OF JULY 23, 2015, REQUEST FOR IFP STATUS, AND REPLY TO DEFENDANTS 12(B)(6) MOTION OF JULY 20, 2015 by JOANN FONZONE. (lbs, ) (Entered: 08/11/2015) |
| 08/19/2015 | 54 | ORDER THAT PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY TO DEFENDANTS' ANSWER IS DENIED. SIGNED BY HONORABLE LEGROME D. DAVIS ON 8/19/15. 8/20/15 ENTERED AND COPIES MAILED TO PRO SE AND E-MAILED. (mbh, ) (Entered: 08/20/2015) |
| 08/19/2015 | 55 | ORDER THAT PLAINTIFF'S REQUEST FOR RECONSIDERATION IS DENIED. PLAINTIFF'S REQUEST FOR IN FORMA PAUPERIS IS DENIED WITHOUT PREJUDICE. SIGNED BY HONORABLE LEGROME D. DAVIS ON 8/19/15. 8/20/15 ENTERED AND COPIES MAILED TO PRO SE AND E-MAILED.(mbh, ) (Entered: 08/20/2015) |
| 09/08/2015 | 56 | |

ALLEGATIONS OF FRAUD AND ID THEFT SENT TO SSA INSPECTOR GENERAL 08/06/15

The estranged spouse Cary Woods aka David lee Roth, (we are legally separated since 1993), and his lawyer Alex Rahman ( who pretended to be my divorce , employment and injury lawyer in 1993, with a Power of Attorney which I signed when I was physically injured and incapacitated and he was) a New York lawyer, have acted illegally to continue their perpetration of fraud. Retaliations of serious physical , legal and financial injuries occur each time I report them to governemnt agencies or courts.These injuries are accomplished through bribery, stalking, threats and intimidation by their investigators or employees..

In 1999, after Rahman had me falsely arrested when I asked him to return my files to me, I revoked the POA, but believe that he is continuing to illegally use it as though it is valid to interfere in my legal and financial matters ,thereby assisting the estranged spouse in the perpetuation of fraud and RICO criminal activities.

I have survived many injuries since 1993 in New York and Pennsylvania. Prior to 1993, I also suffered injuries in California.

In 2010, the co-conspirators even bribed a newspaper reporter to libel me and assasinate my character to cause me further injury and damage and to gain advantage in the divorce and other litigation.

In 1980, unbeknownst to me at the time, Woods an agent with the William Morris talent agency in Beverly Hills, California,through a contract which he signed as agent and me principal, made deals for profit with entertainment corporations with creative writing which I provided until December 1994, when I stopped all communication with him.

In 1983, I signed my life away on a marriage contract with the evil sociopath. From 1979

when we met at New York University while both in college there , until 1994 I sent Cary Woods

countless personal writings  or intellectual property  which he used in the entertainment business.

I was unaware of his alias famous name at the time and discovered that fact in 1993 when an

entertainment lawyer friend of  mine  in Los Angeles told me that and  about the Morris contract..

From the Morris and marriage contracts, around 1990, I became his partner in a film company Fried

-Woods Films,and  prior to that, named an officer at a major NY corporation around 1981. I had no

knowledge of any of this until 1993 ,and have never received  any of the  directly deposited

profits , royalties, salaries, or benefits. In 1994,  after  I discovered  their  fraud, another name ,

Judy Mc Grath was attached to my social secutiy number , in their attempt to hide the fraud and

unauthorized use of my SSN. I  have had my SSN since 1970.Judy Mc Grath is President of MTV

Networks.

When I learned of the RICO fraud  around 1993, I decided to get a divorce  from the fraud Cary

Woods, and have been trying to ever since. Very unfortunately for me  ,while still in California ,I

phoned Alex Rahman , and  told him about the situation. He said, " Don't hire divorce lawyers in

Los Angeles , come back  to the east coast and I 'll be your lawyer." I was unaware of his disloyalty

The conspirators prevent me from severing legal ties  to the  marriage and employment contracts

with bribery, abuse ,intimidation, corruption. Somehow, they dissuade  any lawyer I retain from

effectively and loyally representing me, completing the legal work as per the retainer agreement.

The conspirators have me physicallyinjured repeatedly to keep me incapacitated and unable to work

as a lawyer  and earn a living. This continuous retalaition is a  RICO pattern and practice of abuse,

physical (vicarious since 1993), legal and financial. Just where is the money being reported and

deposited?

I have a permanent Protection From Abuse Order against my estranged spouse which is supposed to protect me from abuse and vicarious abuse like false arrest in any state. Clearly, it does not.

The criminal and civil RICO activities have physically disabled me with a heart condition and other serious injuries since 1981. Of course, these injuries have also prevented me from having the successful legal career that I worked hard for ,deserved and should have had.

Though the continuous victim of the RICO crimes, I am often misreated with disrespect and worse, because the government has not helped me, a Sarbanes-Oxley whistleblower.

In 2001, I filed and won a legal malpractice judgment against Rahman, but as he misrepresented and lied to the reporter , the libelous article of 2010 is wrong. Rahman even defrauded a federal bankruptcy court in North Carolina about his income ( where he moved after being disbarred in New York) so that I could not collect the judgment monies.

There are continuous obstacles , injuries and damages to my personal and professional life because the government has failed to EVER investigate or take action on my allegations of abuse, bribery, corruption, conspiracy, misconduct, fraud , ID theft.

It is true, evil will reign when good people do nothing to stop them. Crime victims will try.

Jo Ann Fonzone, Esquire

IN THE UNITED STATES  DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENSYLVANIA

JO ANN FONZONE aka JUDY MC  GRATH, PLAINTIFF

VS.

JOE OTERI,ET AL , DEFENDANTS

CIVIL ACTION
PERSONAL INJURY
JURY TRIAL DEMANDED
NO.12-CV-5726

PLAINTIFF'S MOTION TO  STRIKE  NON-PARTY MOTION FOR A PROTECTIVE ORDER

Preliminarily, it's quite ironic that this non-party is requesting a protective order  to prevent  the

disclosure of information requested when  Plaintiff has Permanent Protection From Abuse  Order

against one of  the non-party's clients  in a somewhat related legal action, divorce , Id theft , injury,

and entertainment contract dissolution.

Another peculiar fact is that  Plaintiff was denied discovery and any Interrogatory answers or

documents produced which  she requested  during the course of that crucial , continuing identity

theft , fraud, retaliation  personal injury litigation.  Oddly, as soon as Plaintiff served Interrogatories

in that Id theft action, the corporate defendants somehow made sure she was unable to appear for

Argument and  got the case dismissed ex parte.

Discovery was not completed  because  that action was dismissed ex parte  though the Court

was advised that Plaintiff was indisposed,  ill with a heart condition and unable  to appear for the

scheduled Argument  on September 27, 2011. Plaintiff reasserts her position that she is a victim of

fraud and  D theft for  decades as related to an entertainment contract and a marriage contract. Both

contracts  were in issue with  the  litigation dismissed ex parte  a few years ago and nonparty

counsel represented defendants in that litigation.Plaintiff continues to suffer from ths suppression

and nondisclosure of information surrounding the contracts including but not limited to inability to

get a divorce and sever both contracts, hidden salaries and benefits to which she should be entitled

as the corprations are still using her social security number for tax and other purpsoes, defamation,

libel, false arrest, stalking, serious physical injuries.

Plaintiff contends that the written deposititon or Interrogatories at issue in the current injury litigation must not be quashed or voided by this Court. To support her contention that the Interrogatories to non-party counsel are not improper, procedurally or substaantially defective, Plaintiff avers the following :

Contrary to nonparty counsel's mistaken belief, Plaintiff did not yet subpoena for a deposition pursuant to Fed. R.Civ.P. 45. Plaintiff properly served depositions by written questions according to the Federal Rules of discovery 31 (a)(1)which state that a party may , by written questions, depose any person without leave of court . Personal service is not required by the Rules. Plaintiff's written questions are in compliance with the Federal Rules of Discovery requesting non -privileged matter that is relevant to any party's claim- including the existence, descritpion, nature , custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverabe matter Fed.RCiv.P 26 (b)(1).

Where good cause is shown, the Court may order discovery of any matter relevant to subject matter involved in the action. Plaintiff maintains that there is sufficient good cause for the court to order the nonparty counsel to comply with the requested discovery. Plaintiff has substantial need for the materials in preparation of her case and is otherwise unable to obtain them without undue hardship and severe retaliatory pain.Matthenson v.Baxter HealthcareCorp.438 F.3d 763(7th Cir.2006 Nonparty counsel cannot show that the written deposition questions were asked in bad faith, or in such a manner as to annoy , embarrass, or oppress , and therefore, FRCP 30 (d) is inapplicable for the Court to deny the requested discovery.Plaintiff is the person continuously oppressed.

A court may only make a protective order for good cause shown under FRCP 26 (c). Plaintiff contends there was no such showing and there can be no such good cause showing as there is no compelling reason for denying Plaintiff the information requested.The facts do not comprise any prohibition against the discovery of trial preparation material for a nonparty under 26 (b)(3). Plaintiff asserts that the requested discovery is not confidential or work product privilege. As a

matter of law an exception to the work product material, applies here. Fed.RCiv.P 26 (b)(3) provides that any person on request and without the required showing obtain a person's own previous statement about the action or its subject matter. For purposes of these provisions, a statement previously made means: 1) a written statement signed or otherwise adopted or approved by the person making it, or 2) a contemporaneous, stenographic, mechanical, electrical or other recording-or a TRANSCRIPTION of it-that recites substantially verbatim the person's oral statement. 26 (b)(3)(c). Plaintiff would like to have the transcript of the civil Argument ex parte September 27, 2011 as she would like to know what was said to the court to have her Id theft injury action dismissed ex parte rather than Argument rescheduled or continued. Questions10,11

The nonparty managed to escape providing discovery responses in the litigation as defendants when they got that case dismissed ex parte a few years ago. The requested discovery prohibition is not absolute under Rule 26 (b)(3) and but for the Id theft injury litigation dismissal prior to completion of discovery she would have received the requested discovery in that ID theft litigation.

After all, the discovery requested is relevant to Plaintiff's claims and defendants defenses and proportional to the needs of the case pursuant to FRCP 26 (b)(1). Further, defendants in this litigation have requested Plaintiff's tax returns, employment information and other things which she cannot provide without the requested nonparty discovery replies. The requests directly concern her health and safety, right to get a divorce as she is legally separated since 1993, Permanent Protection From Abuse Order, social security number and theft thereof, her identity, her entertainment employment contracts, with her estranged spouse prior to and subsequent to the marraige contract, divorce, hidden employment, earnings, and financial records, subpoenas for records from prior corporate and bank defendants dated ironically OCTOBER 6, etc.

Plaintiff certainly has the right to know the information which is directly relevant and about her which has been illegally undisclosed for years and continuously causes her harm and injury. The requested information and documents are not confidential as they pertain to the Plaintiff and

must no longer be suppressed under any umbrella or blanket protective orders , conspiracy to hide

records and information or ex parte dismissals.

Among the factors this court must consider in deciding on a protective order includes : the

importance of the issues at stake in the matter ,Plaintiff's relative access to the relevant

information, Plaintiff's resources within her possession and control versus that which wrongly

witheld, the importance of the discovery in resolving the issues , and whether the burden of the

proposed discovery outweighs its likely benefit under Rule 26 (b)(1).

A party may obtain discovery of work product absent waiver on a sufficient showing of need and

hardship. In re Seagate Tecchnology, LLC. 497 F.3d 1360 (Fed. Cir. 2007), 128 S Ct. 1445 (2008).

Plaintiff has alleged conspiracy to commit fraud and ID theft against the corporate defendants in

the prior action, she has a substantial need of discovery materials in preparation of her case here

as defendants have put employment and financial records, earnings, income and tax returns in

issue in its discovery .

Contrary to Ms. Wischusen's claim that the written deposition questions are attorney client

privileged or work product , Plaintiff strongly disagrees . As Plaintiff was libeled and has a

defamation action, she has a right to know if there is ongoing interference and slander being

spewed about unethically by opposing counsel and others in litigation to which she is a party. If

she does not know about such acts and who is involved, how can she prepare for litigation?

It may be true that Plaintiff knows some of the answers to questions posed to Ms. Wischusen,

however this Court does not , therefore, it is crucial for her to provide the requested discovery

for the Court as it relates to the instant action..

Question 11 is a request for the Transcript of the proceeding September 27, 2011 when the injury

action was dismissed ex parte., and Plaintiff does not have that information. Question 3 is of

extreme relevance and importance for purposes of the instant litigation as defendants in the prior

action are banks and entertainment corporations directly involved with Plaintiff and her estranged

spouse.  One of the companies Fried- Woods films , Plaintiff was a partner with her estranged

spouse, until it went defunct and another company was incorporated, then another.  Fraud of others

 like this  misconduct has caused Plaintiff ongoing injuries  and compels her to file tax extensions

with the IRS to inform them of these criminal activities, and that she is not and has not ever

received the salaries from the illegal use of her social security number at these entertainment

corporations.For several years , Plaintiff was unaware of the entertainment contract with Wiliam

Morris which made her estranged spouse her agent; he had signed and it was valid without the

principal's signature.The IRS tells Plaintiff  it is a divorce dispute, and it is, but it is also ID theft

and fraud which are  allegedly federal crimes.

Similarly, the other questions are all important and  answers from Ms. Wischusen are necessary

so Plaintiff can then  properly prepare her case and provide accurate and complete answers  to the

 discovery requested of her in the instant litigation, and refute  the false information for the Court.

Plaintiff  asserts that the discovery requests are indeed relevant as  defendants in this litigation

 have raised  in their answers and  April 21, 2016  deposition of Plaintiff certain claims and defenses

 directly related  and  relevant to subject matter  in this  case.

Defendants included in its FRCP 26 materials completely unrelated , irrelevant  and not probative

 to the subject matter of this litigation, yet totally prejudicial , false, unverified, untrue libelous news

 opinions and  Internet articles in their attempt to  attack her ,prejudice this Court against Plaintiff

 and gain advantage in this injury litigation.. Defendants are acting in extreme bad faith as this  has

nothing to do with the merits of this injury action, unless they are part of a conspiracy to injure her.

Plaintiff  has a separate defamation action , and  if defendants are allowed to bring in this irrelevant

 material, it would cause Plaintiff annoyance, embarrassment, oppression and undue burden.

WHEREFORE ,Plaintiff respectfully requests this Court strike the protective order motion ,allow

 the relevant non-party discovery, compel complete accurate answers in the interests of justice, truth

 disclosure and due process of law.            Respectfully submitted



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Stone Manor Corporate Center
2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel 215.345.7500   Fax 215.345.7507
www.foxrothschild.com

Clair E. Wischusen
Direct Dial: (215) 918-3559
Email Address: cwischusen@foxrothschild.com

<u>VIA FIRST CLASS MAIL</u>

September 15, 2011

JoAnn Fonzone, Esquire
2242 W. Tilghman Street, Apt. C1
Allentown, PA 18104

Re:   <u>Fonzone v. Chase Manhattan Bank, et al.</u>

Dear Ms. Fonzone:

I received a set of documents from you by package dated September 6, 2011.  The documents were unnumbered, and many of the documents appeared to be originals marked with ink.  For your records, enclosed please find copies of the documents I received from you, which have been bates-stamped FON0001 – FON0095.

Very truly yours,

Clair E. Wischusen

CW:cew
Enclosures

A Pennsylvania Limited Liability Partnership

California   Connecticut   Delaware   District of Columbia   Florida   Nevada   New Jersey   New York   Pennsylvania

CERTIFICATE OF SERVICE

I  Jo Ann Fonzone, Esquire  aka Judy Mc Grath hereby certify that I have  this day caused to be

served a true and correct copy of  the Motion to Strike Motion for protective order upon the

following at the addresses  listed below:

Clair Wischusen, Esq.
2700 Kelly Road
Warrington, Pa 18976

Aaron Shotland, Esq.
1515 Arch St. 14ᵗʰ floor
Philadelphia, Pa 19102

Philadelphia District Attorney
3 S.Penn Square
Philadelphia, Pa 19107

BY: _____
Jo Ann Fonzone, Esq. aka Judy Mc Grath

October  19, 2016

3.

Exhibits

INDEX

A. PLAINTIFF'S LETTER TO POLICE COMMISSIONER OF JULY 2012


B. PLAINTIFF'S INTERNAL AFFAIRS COMPLAINT OF NOVEMBER 30,2010 WITH ATTACHMENTS (INCLUDING PERMANENT PROTECTION FROM ABUSE ORDER AGAINST ESTRANGED SPOUSE CARY WOODS aka DAVID LEE ROTH FOR DIRECT AND VICARIOUS ABUSE )

 C.  POLICE CITATION OF OCTOBER 6, 2010 SIGNED BY NOT AT SCENE OFFICER ORTIZ


 D.  POLICE HOSPITAL TRANSPORT REPORT SIGNED BY SARGEANT ADDISON


 E. INTERNAL AFFAIRS REPORT OF LIEUTENANT APPLETON DESGINATING PLAINTFF A CONFIDENTIAL INFORMANT AND DETERMINATION OF VALID COMPLAINT


F. INTERNAL AFFAIRS REPORT OF SARGEANT MIDDLETON WITH DETERMINATION OF PLAINTIFF'S COMPLAINT AS VALID OR FOUNDED


G. REPORT OF JOHN EVANS PROMOTED AND ASSIGNED TO INTERNAL AFFAIRS SOON AFTER OFFSITE SIGNING SUPERVISORY REPORT TO HAVE PLAINTIFF ARRESTED


 H. INTERVIEW ON CD OF PLAINTIFF AT POLICE ADVISORY COMMISSION OFFICE OCTOBER 6, 2011


 I.  TRANSCRIPT OF PLAINTIFF'S DEPOSITION OF APRIL 21, 2015


J. TRANSCRIPT OF PLAINTIFF'S 911 CALL FOR HELP OCTOBER 6, 2010 AFTER BEING THROWN AGAINST THE WALL THE FIRST TIME BY OFFICER KELEWISCHKY


K. PLAINTIFF'S AFFIDAVIT NOTARIZED JUNE 26,2012

 L.  PHOTOGRAPH OF PLAINTIFF AND FLORENCE JURAITIS OCTOBER 6, 2010 PRIOR TO PLAYOFF GAME

   M.PHOTO OF SPORTS ILLUSTRATED CENTERFOLD OF OCOTOBER 6, 2010

PLAYOFF GAME DEPICTING ALL FANS STANDING WITH RALLY TOWELS

N. POLICE HOSPITAL TRANSPORT # 42106 REPORT OF OCTOBER 6, 2010 SIGNED BY SARGEANT ADDISON  AND CONCEALED BY LAW ENFORCEMENT UNTIL JULY 3, 2012

O.  CIVIL RIGHTS ENFORCEMENT COMPLAINT FORM  SENT TO OFFICE OF PA ATTORENY GENERAL  JULY 3, 2012

 P. CORRESPONDENCE FROM OAG  TO JOANN FONZONE, ESQ. REGARDING LETTER OF  JULY 3, 2012

Q. CORRESPONDENCE FROM FRANK FINA OF OAG DATED OCTOBER 3, 2012

R. LETTER  OF JULY 11,2012 ADVISING PLAINTIFF OF PHILA.DISTRICT ATTORNEY'S DISAPPROVAL  WITHOUT  INVESTIGATION OF PRIVATE CRIMINAL COMPLAINT AGAINST JOE OTERI PREPARED BY DISTRICT ATTORNEY'S OFFICE JULY 3, 2012

S.PRIVATE CRIMINAL COMPLAINT OF PLAINTIFF AGAINST JOE OTERI  AUGUST 7,2012

T. PRIVATE CITIZEN APPEAL OF MUNICIPAL COURT DECISION ON CITIZEN COMPLAINT  DATED DECEMBER 17, 2012

U. NOTICE OF MOTIONS HEARING OF PLAINTIFF'S PRIVATE CITIZEN COMPLAINT SCHEDULED FOR JANUARY 17, 2013

V.  TRANSCRIPT OF  JANUARY 17, 2013 HEARING  AND  DENIAL OF HEARING  ON PLAINTIFF'S PRIVATE CRIMINAL COMPLAINT  AT  ADA  ENGLE 'S  REQUEST

W. NOTICE OF APPEAL OF SUMMARY DISODERLY CONDUCT  CHARGE FILED FEBRUARY 11, 2013 BY CO-COUNSEL  MARNI SNYDER

X.  TRANSCRIPT REFLECTING DISMISSAL OF CHARGES AGAINST JO ANN FONZONE BY JUDGE KOSINSKI AUGUST 22, 2012

Y. JO ANN FONZONE'S  INTERVIEW WITH JOHN EVANS  AND OFFICER CHRISTINE MC SHEA JANUARY 28, 2011

Z. JO ANN FONZONE'S CORRESPONDENCE SENT TO KATHLEEN KANE  OCTOBER 15, 2013

A. 1. JO ANN FONZONE'S RIGHT TO KNOW REQUESTS  AND CORRESPONDENCE TO LAW ENFORCEMENT AGENCIES  AND THE RIGHT TO KNOW OFFICE

B.1. COPIES OF SUBPOENAS SERVED UPON 4 DEFENSE WITNESSESS

C.1.TRANSCRIPT NOVEMBER 21, 2013 WITH ROBERT FOSTER, ATTORNEY FOR JOE OTERI TESTIFYING WHILE JO ANN FONZONE WAS NOT  IN THE COURTROOM  AS THE SCHEDULED DATE WAS CHANGED WITHOUT NOTICE TO HER

D. 1  LETTER FROM JUDGE KOSINSKI  DATED NOVEMBER 17, 2012 TO
JO ANN FONZONE ADVISING HER THAT SHE COULD NOT FILE
EXPUNGEMENT PETITION BECAUSEE THEY HAD APPEALED

E.1. COPY OF JO ANN FONZONE'S EXPUNGEMENT PETITION SHE TRIED TO FILE

F. 1. COPY OF SUBPOENA OF OCTOBER 6, 2009  TO CHASE MANHATTAN BANK FOR
RECORDS ANCILLARY TO PLANTIFF'S DIVORCE ACTION

G.1 COPIES OF SUBPOENAS TO MTV NETWORKS, TIME WARNER, INC. FOR
RECORDS ANCILLARY TO DIVORCE ONGOING SINCE 1993 AND IDTHEFT ACTIONS

H.1  Jo ANN FONZONE'S LETTER TO  ADA KOTCHIAN JUNE 2012  REGARDING
DISCOVERY DOCUMENTS NOT YET PRODUCED THOUGH ORDERED  BY  FOUR
MUNICIPAL COURT JUDGES

I.1. COPY OF  COMMON PLEAS  COURT ORDER IN DIVORCE  2006

J.1. AFFIDAVITS  AND PHOTOGRAPHS

K.1. VCAP COMPLAINTS

L.1.COPY OF BENCH WARRANT  ISSUED  APRIL 2011WHILE JoANN FONZONE
WAS  RECOVERING  AFTER RECENT DISCHARGE FROM CARDIAC HOSPITAL

M.1.TRANSMITTAL LETTER FROM JEFFERSON HOSPITAL TO IA STATING  ER
RECORD SENT

N.1. IRS  FORMS , FTC INFO  REGARDING ID THEFT

O.1. U.S.ATTORNEY  NY  COMPLAINT  OF 11/11/05  BY Jo ANN fONZONE

P.1. PARS

Q.1. LETTER FROM NY AG OFFICE 2005 REGARDING MTV NETWORKS

R.1.  MEDICAL REPORTS  (WILL BE SENT TO  COUNSEL AND CHAMBERS)

S.1.  COPY OF  PRIOR COURT  DOCUMENTS  IN ACTIONS  RELATED ,
BROUGHT  IN AND  MADE ISSUE BY  DEFENDANTS  AND  NON-PARTY
TO THIS  LITIGATION  TO PREJUDICE PLAINTIFF

3.  PLANTIFF'S EXHIBITS  ( PAGE4- FOLLOWING  INDEX  of  3pages of EXHI BITS)

T1. Applcation for continuance -filed and served upon Mnicipal court clerk and District attorney because Fonzone had scheduled cardiologist appt.certified mail card receipt  signed

U1. Plaintiff's Interrogatories filed , third time accepted by Michele H. Clerk with Motion

V1.  Petition of Reconsideration of Order Jan.18,2013  Muni Court after case was dismissed with prejudice August 22, 2012   .Fonzone had no inent  to be disorderly , the evidence was insufficient to demonstrate that she acted with the intent of promoting or facilitating the offense of disorderly conduct, she exercised her 1st Amendment right to cheer for her team at a playoff game. If protected by 1st am. , behavior that might annoy or irritate someone is not disorderly conduct. Com. v. Gowan , 582 A.2d 879 (Pa. Super. 1990).

W1. Letter to Dominic Rossi  of  court compliance  5/11/17

X1. United States District Court Notice of lawsuit signed by Don Bailey, Esquire to Joe Oteri and other defendants

Y1.Municipal Transcript of 07/20/12 with Judge O'Neill, though case "must be tried" according to Judge Stack , O'neill continued it again at request of asst. Prosecutor Kotchian

Z1. Letterof Lucy Chin of US District Court  dated 10/20/2016 to Jo Ann Fonzone, Esquire returning Interrogatories , later resent and filed with  clerks Nicole and Michele's authorization with Motion

A2. Phila. Muni court docket page stating Fonzone's Bench warrant hearing  scheduled for Sept. 26, 2011 at noon; though guard would not let her go  or be released untl Sept. 28,2011 wherebyshe could not attend her scheduled Argument in Lehigh County civil case of Id theft

B2. Copy of Trans Bridge  round trip  ticket receipt of 10/06/10 departing Allentown 2:05 pm for 5:05 game in Philadelphia and one way ticket from Phila. To Allentown 10/07/10 departing 12'30 pm on Bieber Tourways bus line

C2. Information of summary disorderly conduct dated July3, 2013 with no facts but element of misdemeanor disorderly conduct

D2. Criminal complaint without any affidavit of probable cause by police of Oct. 7, 2010

E.2. Transcript of June 13, 2012 wherein Judge Stack after colloquy with Fonzone and asst prosecutor kotchian rued that Fonzone could represent herself  over kotchian's objection

F.2 Letter from Kotchian of Dec.21, 2012 falsely stating Judge Neuffeld ordered  Fonzone needed another lawyer knowing Judge Stack had several months prior ruled Fonzone could represent herself. Alos included was long hidden and suppressed by police and prosecution was hospital incident report when police took Fonzone to Emergency Room; this was exculpatory evidence wrongly witheld under Brady v. Maryland  as it stated Fonzone was injured prior to arrest- by Oteri . Prosecutor had report  more than two years as its date stamped Dec. 13, 2010.

G2. Jo Ann Fonzone's Entry of Appearance   dated June 13, 2012

H2. Newspaper articles about false arrest

I.2  Email to witness about libelous inaccurate  blog

J2. Paragraphs almost verbatim typed  on same paper about incident full of inaccuracies ,
( including the wrong seat section ), fabrications of untruths  with oteri 's name and an off
scene female officer ortiz's name  on it. There  was no sworn affidavit of probable cause .

K.2. Pretrial report containing incorrect information including weight of Plaintiff (who never
weighed  more than 115 pounds in her life), report states 145 pounds; other info ommitted
like fact Fonzone livng with her mother, her occupation lawyer and other  omitted facts

L2. Municipal court dockets conflicting names of arresting officers, some  name Ortiz ( false)
others state Bee, but none mentioned Kelewischky , the officer that brutally assaulted
Fonzone in police room.

M2. Letter from Kelly at Defender Associates to Fonzone telling her she is not allowed to have
copies of her exculpatory  materials- her 911 audio CD, police reports, etc.

N2. Email from Len Berman to Fonzone day after the playoff game  where Roy Halladay had
a no-hitter  nearly perfect game  evidencing Fonzone's intent to watch  the playoff game.

O 2. Title page of ID theft appeal to Pa Supreme Court when trial court dismissed case Sept.27
2011 in Lehigh Co.because Fonzone was unlawfully detained at Riverside until Sept.28.

P2. Letter from IRS August. 19, 2021 to Jo Ann Fonzone, Esquire  (named executor and Estate
lawyer ) for the Estate of Carl W. Alio, Sr.

Q2. Seal of Phila.common Pleas court Admission History of Jo Ann Fonzne to Riverside from
Sept. 23, 2011 to Sept. 28, with her medical intake  report stating  cardiac condition

R2.Page from Muni court docket 10/07/2010-evidencng the wrongful continuation of malicious
prosecution after Fonzone had the charge dropped with prejuidce August 22, 2012.

S2. Envelope from City of Philadelphia law Dept. To Jo Ann Fonzone, Esquire  of 6/14/2012

T2. Operative complaint filed July 7, 2015 pursuant to Judge Davis Order of July 22, 2015
wherein  no  defendants  were dismissed with prejudice

U2.First page of Plaintiff's Amended complaint filed by counsel Mr. Bailey January 11, 2013

V2. Subpoena to Chris Thomas of Riverside to produce warrant of September 21, 2011 and  app
ear in Muni court.

W2.Victims comp. Claim of 07/0/12 against Joe Oteri ( as soon as Claimant learned his name)

X2. Letter from IRS & Dept. Of  Veterans Affairs to J. Fonzone, Esquire Estate lawyer and
named Executrix in Will of Carl W. Allio, Sr. ( no compensation  paid)

Y.2  Letter from Stacy Brendlinger of VCAP dated Jan. 26, 2011 stating they have no police report
      on file which states JoAnn Fonzone was a crime victim .This is because  police and prosecutor
wrongly witheld exculpatory evidence ,three police reports and 911 audio CD which evidenced
Fonzone was  an injured crime victim prior to arrest-while Oteri harrassed and pushed her into seat.
Other documents from and to VCAP  also attached.

Z2. Municipal court Transcript  of December 12, 2012

A.3. Letter from Foxrothschild to Jo Ann Fonzone, Esquire  of September 15, 2001 , Re; Fonzone v.
Chase Manhattan bank, MTV, Warner Brothers about Fonzone's ID theft action scheduled for
Argument September 27, 2011. Fonzone could not appear as she was unlawfully detained  six days
on a three day bench warrant hold ( for not appearing in court though she had filed for continuance
as she had cardiologist appointment and told her lawyer  that).Her important ID theft-fraud case was
dismissed ex parte  in Lehigh County Court of Common Pleas.

B3. Letter from Adm. Asst. To Dept.Court Admin. First Judicial District as proof Jo Ann Fonzone
requested transcript for Oct. 3, 2013 from reporter Vaquez who states she has no transcript from the
ex parte proceeding on this day with Judge Foglietta and asst.prosecutor kotchian.

C3. Letter to Charles Mapp, Deputy Court Admin. Phila. Dated June 11, 2017 from Jo Ann
Fonzone, Esq.  Re: case dismissed with prejudice August 22, 2012; however asst. Prosecutor
Kotchian wrongly proceeded with prosecution by misrepresenting facts to Common Pleas Judges,
knowing Fonzone was then representing herself  June, July. Kotchian failed to serve Fonzone with
Appeal and thus continued her harrassment of the injured crime victim.

D3.  October 4, 2017 filng by Jo Ann Fonzone

E.3 Letter to Lucy Chin and Michele Hemmer ,U S District court clerks of  Dec. 23, 2016 with
enclosures of 3 sets of Interrogatories  for filing as relevant to Motions filed to compel answers.

F.3  Non-party  witness Jack Ferryman's Answers to Plaintiff Jo Ann Fonzone's Interrogatories

G.3. Requests for Pre-trial Discovery-includng all police reports and exculpatory evidence  and
Request for Bill of Particulars filed by Jo Ann Fonzone, Esquire 9/09/11 with the Continuance
request be cause of a scheduled cardiologist appointment

H3.Petition to vacate filed by Douglas Earle , Esq. March 2, 2012 ,paid attorney for JoAnn Fonzone

      I.3. Request to Staff of Riverside  for immediate release  for  scheduled bench warant
            hearing Sept. 26, 2011 and becasue it was more than three days so Fonzone was
            unlawfully detained , and could not appear at civil court Argument  in Lehigh County;
            copy of  Items Received at Riverside taken from Fonzone including bench warraant
            which stated Rule 150(A)(5) person can only be held on bench warrant three days,  and
             heart medication (which Fonzone was not  getting while at Riverside)

J.3 Petition for Immediate withdrawal of prosecution and Immediate Disposition of this Matter
Based on Wrongful Arrest and Defects in Procedure and Motion to Dismiss for Failure  to allege
essential elements and No Probable Cause filed  in Municipal court Nov.9,2011 by Jo Ann Fonzone,
Esquire
 K.3. Plaintiff's Motion for Extension of Time To Reply to Defense Response to Plaintff's Second
Motion to compel answers to Discovery filed April 9 2018

L.3 Copy of  page of Plaintiff's Motion  filed in United States Court of Appeals for the Third Circuit as per Magistrate to Reinstate all Defendants in the case  per Amended Operative complaint filed July 7, 2015 entry 51 on docket  .

M.3Order of  District Court Judge Davis November 4, 2016  , "it is hereby ORDERED that Defendants shall submit a response by November 10, 2016".to Plaintiff's Discovery

N.3.Pages 61-64 from transcript January 18,2013  Jo Ann Fonzone testimony about October 6, 2010 (unnecesary because case was dismissed with prejudice August 22, 2012)

O.3 Pages 81-84 from transcript March 19,2014 ( unnecesary because case was dismissed with prejudice August 22, 2012.)

P.3.  CLE Certificates

Q.3. Copy of Order from Municipal court Judge Eubanks signed  January 29, 2013 appearing she had vacated  the sumamry disorderly conduct charge against Jo Ann Fonzone pursuant to Motion filed by Marni  Snyder. This order was not provided to Ms. Fonzone until a few years later.

R.3.Letter from Pa Office of Attorney General Civil rights Division Harold Dunbar of September 18,2012 acknowledging receiptof Jo Ann Fonzone's,Esquire correspondenc September 6, 2012

S.3. Copy of fax to Judge Foglietta from appointed lawyer  Richard Patton August 19,2013 prejudicing,libeling Jo Ann Fonzone prior to ever meeting him and prior to her ever being in that Judge's courtroom

T.3.Copy of note sent to Debra Rainy,apponted lawyer after patton replaced ,about next court date of November 22, 2013 with copies of  four witness subpoenas to make sure are present that day

U.3. Tax documents of Jo Ann Fonzone ,  put in issue by opposing counsel

V.3.        Credit reports of Jo Ann Fonzone

W.3. Municipal court docket page 10 of 15 evidencing 5/23/12  "Fonzone found competent  though privatge lawyer Frumer and asst. Prosecutor Ayers had possession of  Dr.,Smith M.D.. psych report deeming Fonzone COMPETENT diagnosed with PTSD October 19, 2011 upon evaluation

X.  3. Philadelphia police department Investigation report witheld from Fonzone for 2/12  years) stating wrong time of inciden t, wrong weight of Fonzone, wrong name of complaining witness, prepared by an off scene police woman -Ortiz

Y.3.Letter from Dr Spinosa, M.D.,Jo Ann Fonzone's primary care physician 's medical opinion that Jo Ann has no psych problems ,and she takes no medications on a regular basis dated Nov1, 2005.

Z3.Copy of  contract with William Morris Talent Agency stamped  by agency ,original signed by agent at time , making it valid(unbeknownst at Fonzone), later , spouse estranged spouse Cary Woods ,estranged since 1993. Woods used Fonzone's creative writings for profit in entertainment business since 1980 , attached name Judy Mc Grath to her ssn and has  taken 100% of profits.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOANNE FONZONE,                          :
                                          :      CIVIL ACTION
            Plaintiff,                    :
                                          :
      v.                                  :      NO. 12-5726
                                          :
JOE OTERI, et al.,                        :
                                          :
            Defendants.                   :

*FILED SEP 3 0 2019*

**ORDER**

**AND NOW**, this 30th day of September, 2019, after having conducted a telephone

conference with Plaintiff Joanne Fonzone and counsel for the Defendants, **IT IS HEREBY**

**ORDERED** as follows:

1.     The Clerk of Court is directed to place this case in CIVIL SUSPENSE in order to

       permit Plaintiff time to obtain legal counsel;

2.     Plaintiff shall have until January 31, 2020 to obtain counsel to enter an

       appearance on her behalf; and

3.     A telephone conference regarding the status of the case will be held on Monday,

       February 3, 2020 at 9:00 AM.


                              BY THE COURT:



*ENTERED*
*OCT - 1 2019*
*CLERK OF COURT*

                              /s/ Marilyn Heffley
                              MARILYN HEFFLEY
                              UNITED STATES MAGISTRATE JUDGE

Activity in Case 5:12-cv-05726-MH FONZONE v. OTERI et al Teleph...                    https://mail.aol.com/webmail-std/en-us/PrintMessag

From: ecf_paed@paed.uscourts.gov,
To: paedmail@paed.uscourts.gov,
Subject: Activity in Case 5:12-cv-05726-MH FONZONE v. OTERI et al Telephone Conference
Date: Fri, Jun 5, 2020 12:32 pm

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

United States District Court

Eastern District of Pennsylvania

**Notice of Electronic Filing**

The following transaction was entered on 6/5/2020 at 12:32 PM EDT and filed on 6/5/2020
Case Name:        FONZONE v. OTERI et al
Case Number:      5:12-cv-05726-MH
Filer:
WARNING: CASE CLOSED on 09/30/2019    → UNTRUE   It was stayed,
Document Number: 164

**Docket Text:**
Minute Entry for Telephone Conference held on 6/5/20 before MAGISTRATE JUDGE MARILYN HEFFLEY (mbh, )

**5:12-cv-05726-MH Notice has been electronically mailed to:**

MICHAEL EIDEL    meidel@foxrothschild.com, jjaggers@foxrothschild.com

AARON SHOTLAND    aaron.shotland@phila.gov, anne.taylor@phila.gov

JOANN FONZONE    jo76erjo@aol.com

**5:12-cv-05726-MH Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=6/5/2020] [FileNumber=16952156-0
] [7a7ce4953f88e26d8bc8eb38da9e7fd8a46316adb2df3d810e3be4c5ae8a4a64ba2
e88d3464041651c7b53444bb697df35660e79f6af20ad1bde2d2f475590a6]]

1 of 1                                                                                            7/23/2020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOANNE FONZONE,                          :
                                         :        CIVIL ACTION
                    Plaintiff,           :
                                         :
          v.                             :        NO. 12-5726
                                         :
JOE OTERI, et al.,                       :
                                         :
                    Defendants.          :

**ORDER**

**AND NOW**, this 22nd day of April, 2022, upon consideration of the Order to Show

Cause why the case should not be dismissed for failure to prosecute (Doc. No. 202), Plaintiff

Joanne Fonzone's Response to this Court's Order to Show Cause (Doc. No. 204), Defendants

City of Philadelphia, James Kisielewski, Lisenette Ortiz, and Mark Kovacs' Response to the

Court's Rule to Show Cause for Failure to Prosecute (Doc. No. 205), Defendant Christopher

Bee's Response to the Court's Rule to Show Cause for Failure to Prosecute (Doc. No. 207),

Defendant Christopher Bee's Amended Response to the Court's Rule to Show Cause for Failure

to Prosecute (Doc. No. 209); and Plaintiff Joanne Fonzone's Reply to Defendants' Response and

Motion to Dismiss Personal Injury/Civil Rights Action for Lack of Prosecution (Doc. No. 211),

**IT IS HEREBY ORDERED** that Plaintiff's case is dismissed with prejudice for failure to

prosecute pursuant to Federal Rule of Civil Procedure 41(b).  The Clerk of Court shall mark this

case **CLOSED**.

5/3/22
Evelyn
Renner
Clerk
Allentown
Fed Court

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOANNE FONZONE,                        :
                                       :      CIVIL ACTION
                    Plaintiff,         :
                                       :
         v.                            :      NO. 12-5726
                                       :
JOE OTERI, et al.,                     :
                                       :
                    Defendants.        :

## ORDER

**AND NOW**, this 16th day of June, 2022, upon consideration of Plaintiff's Motion to

Vacate Order of Dismissal of Civil Rights Personal Injury Action (Doc. No. 216), it is **HEREBY**

**ORDERED** that Plaintiff's Motion is **DENIED**.[1]

---

[1]   On April 22, 2022, this Court entered a Memorandum Opinion and Order dismissing
Plaintiff's case with prejudice for failure to prosecute. Doc. Nos. 212, 213. Federal Rule of
Civil Procedure 60(b) allows a court to grant a party relief from a final judgment in specified
circumstances. Plaintiff indicates in her Motion that she seeks relief on the basis of Rules
60(b)(1) and (3). See Doc. No. 216 at 7-9. Pursuant to Rule 60(b)(1), courts may relieve a party
from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Plaintiff
claims that she is entitled to relief under Rule 60(b)(1) because she was never mailed a copy of
the April 22, 2022 Order by U.S. Mail or electronically. Doc. No. 216 at 7. However, the
docket indicates that both the Memorandum Opinion and Order were entered on the docket and
e-mailed to Plaintiff at the email address for Plaintiff listed on the docket on April 22, 2022.
Doc. Nos. 212, 213; see also Notice to Pro Se Litigants (E.D. Pa. Apr. 9, 2020), *available at*
https://www.paed.uscourts.gov/documents/notices/not_pro%20se%20email%20address.pdf
("The email address that is provided will be used to serve copies of orders on the *pro se*
litigant."). To the extent Plaintiff claims she did not timely receive a copy of the April 22, 2022
Order dismissing her case, she does not state a basis for granting relief pursuant to Rule 60(b)(1)
from this Court's dismissal for failure to prosecute.

A motion pursuant to Rule 60(b)(3) allows relief from judgment based on fraud,
misrepresentation, or misconduct by an opposing party. "To prevail, the movant must establish
that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the
moving party from fully and fairly presenting his [or her] case." Stridiron v. Stridiron, 698 F.2d

(Footnote continued on next page)

*Matt Sheetz* provided this
7/8/22   Order to Plaintiff
1st previous (paragraph) Order received

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOANN FONZONE,          :     CIVIL ACTION
                Plaintiff,     :
                               :
    vs.                        :
                               :
JOE OTERI, et al.,             :     No. 12-5726
                Defendants.    :

## ORDER

**AND NOW**, this 3rd day of August, 2022, upon consideration of Plaintiff Joann
Fonzone's petitions to reopen a civil action (ECF Nos. 218, 221), the defendants' responses
thereto (ECF Nos. 227, 229), and the plaintiff's affidavit and motion for permission to appeal *in
forma pauperis* (ECF No. 220), it is hereby **ORDERED as follows:**

1. Plaintiff's motions to reopen the civil action (ECF Nos. 218, 221) are **DENIED.**[1]

2. Plaintiff's motion for permission to appeal *in forma pauperis* (ECF No. 220) is
   **GRANTED.**

BY THE COURT:

Pamela A. Carlos
Digitally signed by Pamela A. Carlos
Date: 2022.08.03 14:40:22 -04'00'

PAMELA A. CARLOS
U.S. Magistrate Judge

---

[1] Having been unsuccessful in petitioning the court to vacate the dismissal order, *see* ECF No. 217 (footnote order
denying plaintiff's motion to vacate the dismissal order because plaintiff failed to demonstrate basis for the
requested relief under Federal Rule of Civil Procedure 60(b)), plaintiff again seeks to reopen the present matter. Her
motions do not present any new argument or facts justifying such relief. As such, her request is denied for all the
reasons set forth in Judge Heffley's thorough and well-reasoned opinion dismissing this matter, *see* ECF No. 212,
and order denying plaintiff's previous petition to reopen, *see* ECF No. 217.

The Honorable Larry Krasner
Philadelphia District Attorney
3 Penn Square
Philadelphia, Pa 19107

Re: CP-51-43169-2010, MC-51-CR-0000061-2013

Dear Mr. Krasner:

Im writing to request that you review my summary disorderly conduct case and drop the charge since I was physically disabled by the incidents for which I was falesly arested. Moreover, after a few defense lawyers who did absolutely nothing but allow the case to be continued, drag me through mental health court, then allow the psych report to be witheld from the judge for more than eight months, I took over the case and got the case dismissed with prejudice.

Unconstitutionally and unethically, an asst. prosecutor appealed the dismissal, went to a judge, didnt tell the judge the case was dismissed, and proceeded to drag me throught the system in violation of my righis. The case began in 2010 and ended in 2014, though it was actually dismissed three times.

I filed Motions to dismiss in November 2010 and was denied the right to argue it, and the lawyers would not do it for me. I was denied my right to jury trial, I was acquitted January 18, 2013, then the asst prosecutor ( who witheld all the discovery I requested since 2010) whined to the Judge so she gave her a summary disorderly conduct .

There was no investigation or hearing on my private citizen complaint against the violent man Oteri who caused me serious head trauma , concussion, chronic migraines , etc. then lied to police to falsely implicate me and no thorough unbiased investigation of the police brutality complaint which I filed. I was truly the crime victim here of violent aggravated assaults , first by Oteri, then by police as I was thrown against the wall twice the struck repeatedly by the officer's nightstick because he thought I had a camera phone. I called 911 for help when he left the jail cell room the first time, he returned when he

knew I called 911.The police and prosecutor witheld the exculpatory 911 audio CD from me and the court for two years.  The hospital report states that I was injured prior to arrest. ( That was by Oteri.) There was a great amount of police and prosecutor misconduct throughout , including non-compliance with FOIA requests for all police reports. It took me over two years to obtain  the hospital report which evidenced that I was taken to the Emergency Room by police after one Sargeant saw how badly I was bruised and swollen from the assaults.

Suddenly, that Sargeant was taken off the investigation and the officer who was not on scene  John Evans was then soon  promoted to IA and my complaint after signing to have me arrested at Citizens Ban park. This was a serious conflict of interest.And he told every officer he questioned that I filed a complaint against them which was untrue.

It also took PAC to help me get the IA reports hidden by police and prosecutors wherein a Lieutenant and a Sargeant stated that I had a valid complaint against the police and was a confidential informant.

I would sincerely appreciate if you would look into this matter and render justice by dismissing the summary disorderly conduct charge. I did nothing wrong or illegal at the game, doing the wave , sitting and standing like all other fans when I was approached by Oteri for no reason who the pulled, pushed me until my head hit the back of the seat in front of me. He went to the wrong seat section.
I was exercising my 1ˢᵗ Amendment right to cheer for my team and one can not be guilty of disorderly conduct for so doing. Commonwealth v. Masterangelo.

Thank you for your anticipated prompt attention to this matter.

Sincerely,

Jo Ann Fonzone, Esq.



**St Luke's**

Spine & Pain Associates

501 Cetronia Road, Suite 125
Allentown, PA 18104

451 Chew Street, Suite 103
Allentown, PA 18102

830 Ostrum Street
Bethlehem, PA 18015

3 Parkinsons Road
East Stroudsburg, PA 18301

1700 St. Luke's Boulevard, Suite 200
Easton, PA 18045

575 S. 9th Street, Suite 6
Lehighton, PA 18235

755 Memorial Parkway, Suite 201
Phillipsburg, NJ 08865

143 N. Railroad Street
Tamaqua, PA 18252

1534 Park Avenue, Suite 310
Quakertown, PA 18951

**Phone: (484) 526-7246**

## POST PROCEDURE
## DISCHARGE INSTRUCTIONS  4/13/23

1. Do not apply heat to any area that is numb. If you have discomfort or soreness at the injection site, you may apply ice today, 20 minutes on and 20 minutes off. Tomorrow you may use ice or warm, moist heat. Do not apply ice or heat directly to the skin.

2. If you experience severe shortness of breath, go to the Emergency Room.

3. You may have numbness for several hours from the local anesthetic. Please use caution and common sense, especially with weight-bearing activities.

4. You may have an increase or change in the discomfort for 36-48 hours after your treatment. Apply ice and continue with any pain medicine you have been prescribed.

5. Do not do anything strenuous today. You may shower, but no tub baths or hot tubs today. You may resume your normal activities tomorrow, but do not "overdo it". Resume normal activities slowly when you are feeling better.

6. If you experience redness, drainage or swelling at the injection site, or if you develop a fever above 100 degrees, please call The Spine and Pain Center at (484) 526-7246 or go to the Emergency Room.

7. Continue to take all routine medicines prescribed by your primary care physician unless otherwise instructed by our staff. Most blood thinners should be started again according to your regularly scheduled dosing. If you have any questions, please give our office a call.

8. The procedure you had done today was _Right CC, t.f. ill lmb_.

***If you have a problem specifically related to your procedure, please call our office at (484) 526-7246. Problems not related to your procedure should be directed to your primary care physician.***

| THESE INSTRUCTIONS HAVE BEEN REVIEWED WITH ME. | | | |
|---|---|---|---|
| PATIENT SIGNATURE | PATIENT PRINTED NAME | DATE | TIME |
| NURSE SIGNATURE | NURSE PRINTED NAME | DATE | TIME |

**Lehigh Valley
Health Network**

Grip L 45 R 10

Patient Appointment _____
Med Clear Appointment/ _____
Surgery Date 4/28/23
Physical Therapy _____
Post-Op Appointment _____

❑ 2310 Highland Ave. **Bethlehem** PA 18020   610-691-4300 (phone)
❑ 2545 Schoenersville Rd. **Bethlehem** PA 18017   484-884-2439 (phone)
❑ 1503 N. Cedar Crest Blvd. **Allentown** PA 18104   610-871-9110 (phone)
❑ 1200 S. Cedar Crest Blvd. **Allentown** PA 18103   610-402-8686 (phone)

Julie
(610) 861-1010

## Preoperative Patient Instructions

Stop
Anti-Hytamine
5 days
before
surgery

**To be completed in the office: _White copy_ to LVHN.    _Yellow copy_ to the Patient.**

1. On the day of surgery, check in at the front desk of LVHN. Have your insurance card & photo ID (driver's license) available so we can make a copy of the original.

2. Please be prepared to pay applicable co-pays _and_ deductibles. We take cash, cashier checks, Visa, Mastercard, Discover and American Express.

3. A responsible adult must be available to transport you to and from LVHN the entire day. Please note that a parent and/or guardian of a minor must remain in the building the entire time the minor is present. A responsible adult must stay with you at home for 24 hours following surgery. Failure to comply will result in probable cancellation of procedure.

4. Please do not bring children to the hospital unless there is another adult with you who will be responsible for them during your procedure. Failure to comply will result in probable cancellation of procedure.

5. Wear loose fitting clothing: for shoulder surgery, a loose fitting, "button up the front" shirt is preferable. Please do not shave any body part within 24 hours of surgery.

6. Please leave all jewelry and valuables at home, we cannot be responsible for loss. Please remove all jewelry prior to arrival, including any and all piercings. Not removing jewelry can result in burns and other injuries to patients.

7. No food or drink should be consumed after midnight. You may consume up to 6 ounces of clear liquid up to 4 hours before surgery.

8. If you are **Diabetic**, take half the usual dose of insulin the day of surgery, unless otherwise instructed. Do not take oral hypoglycemics, "sugar pills" the morning before surgery. If you have an insulin pump, please consult your medical doctor or endocrinologist for instructions.

9. Take all **AM** medication(s) with a small sip of water, unless otherwise instructed.

10. If you are an asthmatic, please take your inhalers as prescribed. If you have a "rescue" or "emergency" inhaler, please take 2 puffs the night before surgery, 1 puff the morning of surgery and bring that inhaler with you to LVHN.

11. Please discontinue herbal medicine the day of surgery. Do not take any herbs the day of surgery.

12. Please call your surgeon if you are taking "blood thinners" such as Coumadin (warfarin), aspirin, Ticlid, Plavix, Aggrenox, or anti-inflammatory medication such as Motrin, Aleve, etc. Please discontinue using blood thinners _____ days before procedure. Please discontinue using anti-inflammatory medications _____ days before procedure.

13. If applicable, bring crutches, walkers, slings, etc. If you do not have the necessary medical equipment, LVHN will provide the item. The item will be billed to your insurance carrier. If the item is not covered, you will be responsible for the cost of the item.

14. If you have been prescribed a CPAP device for sleep apnea, please bring your equipment to LVHN.

15. If you develop severe cough or flu-like symptoms, fever or any infection in the days prior to your procedure, **NOTIFY YOUR SURGEON AND/OR THE ANESTHESIOLOGIST.**

16. Unforeseen pre- , intra- , or post-operative events may necessitate admission to a hospital.

17. A member of the LVHN staff will contact you the day prior to surgery between the hours of 3:00 PM and 6:00 PM with your time to report to LVHN. We will contact you on Friday for those procedures to be performed on Mondays.

I, _____ have read and understand the following instructions.
**Patient's Signature (or Guardian)**

Date 3-30-23

Rev 10/22   POI812B

## GREEN HILLS DENTISTRY

### ARI FORGOSH, DMD

1150 Glenlivet Drive, Suite C38, Allentown PA 18106   |   Phone: 610.395.0980   |   Fax: 484.223.1933   |   www.ghdentistry.com

Highmark Wholecare
PO Box #173
Sidney, NE 69162

JoAnn Fonzone
ID# 24013039
7/19/1958

S:

    Awareness of change in tooth position
    Pain in her temporal
    Change in bite – the way her teeth fit together
    Tinnitus
    Frequent headaches
    Trauma to the right side of her body in 2010
    Deviated septum
    Poor sleep

O:

    Myalgia at the medial pterygoid and superficial masseter
    Generalized crowding of teeth – upper and lower
    Limited range of motion in protrusion
    Tension and tenderness with loading of the joints – could not load joints
    Bilateral click with deviation to the right
    Significant bilateral lingual tori
    Buccal exostoses
    Incisive papilla
    Moderate tongue tie
    Generalized moderate wear on upper and lower teeth
    Flattened contour with intact cortication and osteophyte formations present at the right condyle
    Flattened contour with intact cortication at the posterior aspect of the left condyle
    Posterior height of contour at the left condyle is positioned inferiorly
    Flattened contour at the posterior slope of the right joint
    Condyles are located posterior of center, narrowing the posterior joint spaces
    Right condylar process is shorter in vertical height than the left
    Nasal septum deviates to the left
    Facial mid-line shifted to the right
    Central embrasure space is not parallel with the midline and perpendicular to the same plane

A:

    Clencher
    Degenerative joint disease in the right condyle, may be stable, remodeled stage

Posteriorly positioned condyles may predispose to anteriorly displaced discs and compression of the retrodiscal tissues with the posterior surface of the condyles

M19.91 Osteoarthrosis, localized
M79.11 Myalgia of mastication muscle
H93.1 Tinnitus

P:

E1399 – orthotic appliance therapy
4-7 months of monitoring to establish stable joints
Referral for sleep study - negative

Sincerely,

2/06/23

Sharon Giannini

## Loss of a tooth

When a permanent tooth is accidentally knocked out, appropriate emergency medical care is required, whether the tooth loss (tooth avulsion) happens to a child or an adult. Permanent teeth that are knocked out sometimes can be reimplanted if you act quickly. A broken tooth, however, can't be reattached. For more information, see page 369.

## Temporomandibular joint disorders

### Signs and symptoms

- Tenderness of your jaw muscles
- A dull aching pain in front of your ear
- A clicking sound or grating sensation when opening your mouth or chewing
- Locking of the joint, making it difficult to open or close your mouth
- Headache

The temporomandibular joints (TMJs) are the hinge-like joints that connect both sides of your lower jaw (mandible) to your skull. As with many other joints, the bony surfaces are covered with cartilage and are separated by a small disk that prevents the bones from rubbing against one another. Muscles that enable you to open and close your mouth also serve to stabilize these joints, which are located about a half inch in front of each ear canal.

When you open your mouth, the mandible moves downward and forward. For normal jaw function, both TMJs must work in synchrony. If the movement of both joints isn't coordinated, the disk that separates the lower jaw from the skull can slip out of position, resulting in jaw malfunction. Should your mouth be forced open rapidly or too far, the jaw can become dislocated.

As with other joints, the TMJ is susceptible to various disorders such as osteoarthritis, rheumatoid arthritis and other forms of inflammation. Other causes of TMJ pain include wear and tear on the joint, injury, stress, an improperly aligned bite and poorly fitting braces or other dental appliances. In rare instances, tumors may arise in this area.

Chronic tension and anxiety may cause you to habitually maintain a clenched jaw or grind your teeth —

a condition called bruxis[...]
people are unaware that [...]
their teeth because it oft[...]
while sleeping.

This overuse of your [...]
supporting muscles may [...]
pain and a headache wh[...]
awake in the morning. T[...]
associated with temporo[...]
lar disorders can vary fr[...]
to severe, and the condi[...]
temporary or chronic.

### Diagnosis

Your doctor or dentist [...]
for any sounds your jaw [...]
observe its range of mo[...]
amining your bite can r[...]
malities in the alignmen[...]
teeth and in the movem[...]
jaw. Conditions such as [...]
ing, a tipped tooth, teet[...]
due to earlier loss of ot[...]
certain inherited charac[...]
may produce misalign[...]
subsequent pain.

In addition, by exam[...]
patterns, your dentist c[...]
mine if you chronically [...]
teeth. Feeling the joint [...]
move it also may help [...]
determine the cause of [...]
tion. And an X-ray or r[...]
onance imaging (MRI) [...]
your doctor or dentist [...]
abnormalities.

### Treatment

Aside from asking you [...]
overusing your jaw, yo[...]
dentist may suggest o[...]
the following treatmer[...]

***Anti-inflammatory n[...]***
To reduce inflammatio[...]
tor or dentist may adv[...]
aspirin or another nor[...]
anti-inflammatory dr[...]
such as ibuprofen (M[...]
others). For severe pa[...]
mation, your doctor c[...]
inject a corticosteroid [...]
joint.

***Corrective dental tre[...]***
Your dentist may be a[...]
prove your bite by ba[...]



**Temporal bone**

**Lower jawbone (mandible)**

Cartilage is destroyed

Your temporomandibular joints (TMJs) are hinged joints situated one on each side of your head where the lower jawbone (mandible) connects with the temporal bone of your skull. Inflammation, injury or dislocation of this joint can cause pain.



**GREEN HILLS DENTISTRY**

ARI FORGOSH, DMD

1150 Glenlivet Drive, Suite C38, Allentown, PA 18106 | Phone: 610.395.9920 | Fax: 484.223.1933 | www.ghdentistry.com

To Whom it May Concern,

I am writing on behalf of my patient, your member, JoAnn Fonzone, in support of insurance coverage for medically necessary treatment. I am a general dentist with 23 years' experience, and a special interest and advanced training in treating people with Temporo-Mandibular Disorders and facial pain.

JoAnn Fonzone was referred to me by an orthodontist (Dr. Aejaaz Issa) who, in consultation with a board certified Oral and Maxillofacial Radiologist (Dr. Kent Thompson, BeamReaders), recognized signs and symptoms of degenerative joint disease with osteophyte formation of the right mandibular condyle. This was confirmed via Cone Beam CT scan.

Upon clinical exam, Ms. Fonzone presented with significant myofascial pain of the muscles of mastication specifically on the right side. Evaluation of her occlusion revealed Dawson Class II malocclusion with interferences on the right side. These findings are consistent with her symptoms and her reported history of trauma.

Conservative appliance therapy was initiated. The orthotic is designed to mimic a perfected occlusion in an effort to reduce muscle hyperactivity cased by the malocclusion which, in turn, could be caused by the changes seen in the right joints. Establishing a properly balanced occlusion is the key step in reducing muscle pain and inflammation in the joint, allowing the system to stabilize and symptoms to improve. Ms. Fonzone is to wear the appliance full-time until we observe reduced symptoms combined with a stable occlusion on the appliance for a minimum of 3 consecutive months.

Once this is established, we will begin to formulate a plan to perfect her occlusion in her own dentition without the need for full-time orthotic use. A nighttime appliance may still be indicated. Ms. Fonzone understands that if tis conservative approach is not successful, or if she relapses in the future, she may require surgery to correct the injury to her Temporo-Mandibular joint.

Given this further information, and the fact that I am aware of no medical professional or in-network dentists in our area qualified to treat this type of injury, I request that you consider your denial of benefits for these services.

Thank you,

Dr. Forgosh

CERTIFICATE OF SERVICE


I, Jo Ann Fonzone Esquire aka Judy Mc Grath hereby certify that I have on this day caused to be

served by U. S. Mail  in the matter  District court   # 12-5726 upon the following  Respondents as

listed below:


Kathryn Farris (rep.Kovacs,Ortiz,Riverside,Fisher,Bench warrant unit Bee, Keleswhki,Evans )
City of Philadelphia
 1515 Arch St.                                        Micheal Eidel Fox Rothchild
                                                      2700 Kelly road
. 14th floor                                          Warrington, Pa 18976
Philadelphia, Pa 19102


James Binns
1125 Walnut St.                                       Phillies Org. management
Phila. Pa. 19107                                      One Citizen bank park Way
                                                       Phila. Pa 19148

Philadelphia District AttorneyOffice
Kotchian, Aers, Engle
3 Penn Square                                         Richard patton
Phila. Pa 19107                                       1223 Locust St.
                                                       Phila. ,Pa 19107

Defender Assocs.
Dennis Kelly                                           Robert Foster
1441 Sansum St.                                       2929 Arch St. 13th floor
Phila. Pa 19107                                        Phila.,Pa 18104


Date 4/20/23                            By _____

                                        Jo Ann Fonzone, Esquire aka Judy Mc Grath
                                           confidential  bar status 203914
                                           631 Primrose Lane, Allentown, Pa 18104